**OKEEFE & ASSOCIATES**
**LAW CORPORATION, P.C.**
Sean A. O'Keefe, State Bar No. 122417
sokeefe@okeefelawcorporation.com
26 Executive Park, Suite 250
Irvine, California 92614
Telephone: 949-334-4135
Facsimile: 949-209-2625

Attorneys for Elliot Lander and
Abraham Stuart Rubin, defendants

# UNITED STATES BANKRUPTCY COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

### Los Angeles Division

| | |
|---|---|
| IN RE<br><br>GLENROY COACHELLA, LLC,<br><br>    Debtor, | CASE NO.: 2:21-bk-11188-BB<br><br>**OPPOSITION OF A. STUART RUBIN AND ELLIOT LANDER TO MOTION TO APPOINT A TRUSTEE; DECLARATION OF SEAN A. O'KEEFE IN SUPPORT THEREOF**<br><br>Date: March 10, 2021<br>Time: 10:00 a.m.<br>Court: Courtroom 1539<br>255 E. Temple Street<br>Los Angeles, CA 90012 |

Stuart Rubin and Elliot Lander, as parties-in-interests in this case, hereby submit the within *Opposition* to the *Motion to Appoint A Trustee* (the "Motion") filed by U.S. Real Estate Credit Holdings III-A, LP ("USRC").

## I

## **JOINDER IN OPPOSITION**

In the Motion, USRC contends the Chapter 11 case filed by Glenroy Coachella, LLC (the "Debtor") "cries out" for the appointment of a Chapter 11 trustee. In fact, there is no evidence before the Court justifying the "extraordinary" relief demanded in the Motion, and certainly no grounds exist justifying the imposition of such relief without a full hearing on the merits wherein the Debtor is afforded cross-examination rights.

The core allegations in the Motion are 1) Mr. Rubin and Mr. Lander intentionally and fraudulently understated the prepetition construction budget for the Debtor's Coachella hotel project (the "Project") by 50%, 2) Mr. Rubin's son was hired as the Project manager, 3) the Debtor's funds were used to acquire a luxury vehicle, and 4) the Debtor's principals have failed to cooperate with the receiver that USCR installed prepetition. These contentions are untrue, or they are unpersuasive because they fail to address the relevant post-petition issue—why these unproven and disputed allegations would somehow prevent the CRO being employed to manage this case and the Project from performing his duties?

As for the first contention, the construction budget was prepared based upon data provided to the Debtor by Doug Wall Construction, a licensed general contractor, and a swathe of other experts. This budget was then reviewed and approved by USRC's asset manager, Calmwater Capital—a lender with expertise in the hospitality construction field. If this budget was fraudulently understated by fifty percent as alleged, Calmwater's expert due diligence team would have discovered this obvious fact and made inquiry of the responsible party—*the general contractor*—before it approved the loan.

Calmwater's after-the-fact-blame is self-serving nonsense. As USRC is well aware, Mr. Lander is a medical doctor, with no expertise in hotel construction, who was a passive investor in this transaction. In the case of Mr. Rubin, he was and is the manager of the Debtor and he is a

8

sophisticated real estate investor from a five- or ten-thousand-foot perspective. He is not an architect, a structural engineer, or an expert in Inland Empire construction costs. That expertise was held by the general contractor and the other experts employed to bid on and build out the Project. If the construction budget was materially in error, the fault lies at the foot of the general contractor, not Mr. Rubin. Moreover, cost overruns, even catastrophic overruns, are all too common in the construction industry, and litigation over the same is a constant in the California Courts.

As USRC is well aware, Dr. Lander never received or had input on the budget data. USRC's suggestion that it relied upon the judgment of a urologist in assessing the merits of the Project is not just incredible, but nonsensical. In the case of Rubin, he had no reason to question the expert opinions he was provided by the construction professionals.[1] *Moreover, neither Lander nor Rubin had any desire to pour millions of dollars of their own money into a project they knew was destined to fail*. To the contrary, as the principal equity players in this venture, they had more incentive than USRC to see the Project completed on time, and on, if not under budget. The simple fact is construction projects often become "money pits" despite the best of intentions and bankruptcy follows.

USRC's hue and cry about the employment Mr. Rubin's son in a nominal oversight role is a contrivance as well. The general-in-chief in any large construction project is the general contractor (the "GC"). The GC bids the job, hires and manages the subcontractors, and pays these subs from loan draws. The fact that Mr. Rubin's twenty-three-year son may have played a minor role in this construction effort is of no moment unless USRC can detail *what actions he took to thwart the completion of the Project*. Since that evidence is not before the Court. USRC's cronyism allegation is not worth the paper it's written on.

As for the contention that Mr. Rubin used $120,000 of corporate funds to buy a luxury car, this is false. He paid for the car from his own money. Moreover, how could this de minimis prepetition expenditure have any relevance whatsoever. *Mr. Rubin invested over $10.0 million into the Project*. If, as suggested, he is guilty of "squandering" approximately 1% of these invested

---

[1] Mr. Lander was not provided any budget data, being a passive investor.

8

dollars on a luxury vehicle, prepetition, that certainly is not grounds for the appointment a trustee post-petition.

Mr. Rubin and Dr. Lander's decision not to work USRC's out-of-state receiver, Edwin W. Leslie ("Mr. Leslie"), was possibly the most, if not the only prudent choice they could have made under the circumstances. Mr. Leslie's record in the hospitality industry is abysmal. (See exhibits to OKeefe Declaration). He has over $5.0 million in unpaid judgments against him arising from his past work in the field. Two of his hotel management companies ended up in Chapter 7 cases, and his last venture, a hotel deal with the City of Waterloo in Iowa, was a complete bust. To top it off, Mr. Leslie has filed personal bankruptcy four times and in each instance these filings were dismissed for lack of compliance.

USRC's choice of Mr. Leslie, an insolvent serial bankruptcy filer, as their managerial champion, is, without more grounds for the summary denial of the Motion for the following reasons:

A. Mr. Leslie's insolvency and history of failure and litigation in the hospitality field renders him unfit to serve in this case in *any* capacity;

B. No prudent lender would select an insolvent out-of-state receiver with this track record to manage the Project unless his assigned task was to thwart the rehabilitation of the Project, not to save it; and

C. Mr. Leslie apparently has an existing and continuing contractual relationship with Calmwater, aka USRC. This relationship deprives him of the ability to play any role in this case and arguably renders his receivership untenable under California law. See California Rules of Court, rule 3.1179(a) (Receiver must serve as a neutral actor). Mr. Leslie is anything but neutral: His role is to do USRC's and Calmwater's bidding, not to work in the best interests of all creditors.

In summary, none of the evidence submitted in support of the Motion "cries out" for the appointment of a trustee. *At worst* it evidences a failure on the part of both the Debtor *and USRC* to correctly assess the costs associated with the completion of the Project. The installation of the CRO

8

Case 2:21-bk-11188-BB    Doc 65    Filed 03/03/21    Entered 03/03/21 22:43:22    Desc
Main Document    Page 5 of 10

proposed by the Debtor will eliminate any further risks in this regard and provide a recovery opportunity for creditors and equity holders, as opposed to recovery for USRC alone.

## II

## LEGAL AUTHORITIES

**A.**     **The Statutory Provision**.

Section 1104(a) of the bankruptcy code provides:

**(a)**     At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee—

**(1)** for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or

**(2)** if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

11 U.S.C. § 1104(a).

**B.**     **The Burden of Proof**.

The appointment of a trustee under Chapter 11 is an extraordinary remedy. In re Bayou Group, LLC, 564 F.3d 541, 546 (2d Cir.2009); Lopez-Munoz, 553 B.R. 179, 189–91 (B.A.P. 1st Cir. 2016), aff'd sub nom. In re Lopez-Munoz, 866 F.3d 487 (1st Cir. 2017). There is a strong presumption is favor of retaining control in the debtor-in-possession. See In re G-I Holdings, Inc., 385 F.3d 313, 319 (3d Cir. 2004). The better reasoned cases hold this relief should not be granted unless the party seeking the appointment of a trustee proves its case under by clear and convincing evidence.[2] See In re Sharon Steel Corp., 871 F.2d 1217, 1225–26 (3d Cir. 1989) ("The party moving for appointment of a trustee ... must prove the need for a trustee ... by clear and convincing evidence."); In re G-I Holdings, Inc., 385 F.3d 313, 319 (3d Cir. 2004).

---

[2] The Ninth Circuit has not ruled on this burden issue yet.

8

C. **Application of The Standard**.

Although prepetition conduct can be considered in the analysis under Section 1104(a), the true focus is on the actions taken by the debtor or the management of the debtor *post-petition*. See In re Eagle Creek Subdivision, LLC, No. 08–04292, 2009 WL 613173, at 2 (Bankr.E.D.N.C. Mar. 9, 2009) ("Generally, the court must narrow its focus to the actions of current management when investigating cause for appointment of a trustee." (citation omitted)). Isolated instances of prepetition mismanagement, or even of fraud, dishonesty or other misconduct by the debtor are not sufficient to support a finding of cause under § 1104(a)(1). See Gomez v. U.S. Trustee, No. 7:09–CV–496, 2010 WL 582706, at *2 (W.D.Va. Feb. 18, 2010) (recognizing "that the mere existence of a prior felony conviction will not justify the appointment of a trustee in every Chapter 11 case...."). Absent strong evidence of *postpetition* mismanagement or misconduct, the courts are disinclined to appoint a trustee because "[s]peculation that a debtor may do something in the future does not overcome the strong presumption that the debtor should be permitted to remain in possession in a chapter 11 case or justify the additional costs of a trustee." In re Sletteland, 260 B.R. 657, 671–72 (Bankr. S.D.N.Y. 2001)("The Debtor's past act, for which he is paying dearly, does not constitute the type of "incompetence or gross mismanagement" which is required in order to justify the appointment of a trustee."). The Third Circuit cogently addressed this issue in Comm. of Dalkon Shield Claimants v. A.H. Robins Co., 828 F.2d 239, 241–42 (4th Cir. 1987) in affirming the denial of a motion to appoint a trustee, where, unlike this case, it was supported by the creditors committee:

> It asserts that Robins' lack of candor and preferential treatment of certain pre-petition creditors were dishonest and otherwise constituted cause. Like the *242 district court, we recognize that Robins' conduct was improper and warranted a civil contempt sanction. But a policy of flexibility pervades the bankruptcy code with the ultimate aim of protecting creditors. A determination of cause, therefore, is within the discretion of the court and due consideration must be given to the various interests involved in the bankruptcy proceeding. "[T]he concepts of incompetence, dishonesty, gross mismanagement and even fraud all cover a wide range of conduct.... Implicit in a finding of incompetence, dishonesty, etc., for purposes of section 1104(a)(1), is whether the conduct shown rises to a level sufficient to warrant the appointment of a trustee." *General Oil,* 42 B.R. at 409. Obviously, to require the appointment of a trustee, regardless of the consequences, in the event of an act of dishonesty by the debtor, however slight or immaterial, could frustrate the purpose of the Bankruptcy

8

> Act. Section 1104(a)(1), therefore, must be construed, if possible, to make it harmonious with the Act in its entirety. Such a construction requires that the courts be given discretionary authority to determine whether conduct rises to the level of "cause."

Comm. of Dalkon Shield Claimants v. A.H. Robins Co., 828 F.2d 239, 241–42 (4th Cir. 1987); see also In re Crescent Beach Inn, 22 B.R. 155, 159 (Bankr.D.Me.1982) (holding that the debtor's mismanagement, which was due to its lack of sophistication, did not constitute gross mismanagement required under § 1104(a)(1), particularly in the absence of any signs of postpetition mismanagement).

Mere allegations, which are contested, that a debtor or its management have engaged in fraud, dishonesty, or other similar conduct, are not sufficient to warrant appointment of a trustee. See In re Piedmont Center Invs., LLC, No. 11–06178, 2011 WL 5903398, at *3–4 (Bankr.E.D.N.C. Sept. 8, 2011); In re Concord Coal Corp.,11 B.R. 552, 553 (Bankr.S.D.W.Va. 1981) (holding that appointment of a trustee is not warranted where "fraud and dishonesty have been alleged but not proven."). The movant has the burden of proof and it must demonstrate gross mismanagement of the property or fraud by clear and convincing evidence. In re Brown, 2000 WL 34541413, 10 (Bankr.E.D.N.C.2000).

### D.    USRC's Has Not Established "Cause" for Relief.

As explained above, USRC has not provided the kind of detailed evidence that would justify the relief prayed for. To the extent the construction budget was understated – the prime charge leveled at Mr. Rubin and Lander, this fault was shared by USRC as well. Construction projects rarely go according to plan. Moreover, the installation of the CRO proposed by the Debtor essentially takes off the table the risks cited by USRC, even assuming the veracity of its false allegation.

### III

### CONCLUSION

Chapter 11 incorporates a strong negotiation dynamic. It forces parties who otherwise might be able to leave the table with all of the proverbial marbles, to work with other stakeholders. As the Court is well aware, secured creditors often try to preempt this dynamic by rushing into court in the early days of a Chapter 11 case, as USRC has done here, trumpeting the merits of a relief from stay

8

motion or a motion to appoint a trustee. The courts routinely deny such motions and allow the case to "season" in order to allow the above-referenced negotiating dynamic time to work. No risk or threat has been presented in the Motion, never mind proven, that justifies upending the Chapter 11 applecart at this early stage in the case. The Debtor, working with the incoming CRO, should be afforded a reasonable time to present its reorganization proposal to all of the stakeholders.

DATED: March 3, 2021                          OKEEFE & ASSOCIATES
                                              LAW CORPORATION, P.C.

                                              By: /s/ Sean O'Keefe
                                              _____
                                              Sean A. O'Keefe, attorneys for A.
                                              Stuart Rubin and Elliot Lander

8

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 26 Executive Park, Suite 250, Irvine, CA 92614.

A true and correct copy of the foregoing document entitled: **OPPOSITION OF STUART RUBIN AND ELLIOT LANDER TO MOTION TO APPOINT A TRUSTEE; DECLARATION OF SEAN A. O'KEEFE IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On March 3, 2021, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 3/2/2021 | Sean A. O'Keefe | /s/ Sean A. O'Keefe |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

-1-

# NEF LIST

- **Steven M Berman**  sberman@slk-law.com, awit@shumaker.com;bgasaway@shumaker.com
- **Daren Brinkman**  office@brinkmanlaw.com, 7764052420@filings.docketbird.com
- **Caroline Djang**  caroline.djang@bbklaw.com, laurie.verstegen@bbklaw.com;wilma.escalante@bbklaw.com
- **Jenny L Doling**  JD@jdl.law, dolingjr92080@notify.bestcase.com
- **Eryk R Escobar**  eryk.r.escobar@usdoj.gov
- **Douglas Harris**  Douglas.harris@alston.com
- **Mark S Horoupian**  mhoroupian@sulmeyerlaw.com, mhoroupian@ecf.inforuptcy.com;ccaldwell@sulmeyerlaw.com
- **Marsha A Houston**  mhouston@reedsmith.com
- **Michael S Kogan**  mkogan@koganlawfirm.com
- **Timothy R Laquer**  trl@ddclaw.com, trl@ddclaw.com
- **Leib M Lerner**  leib.lerner@alston.com, autodockettest-lax@alston.com
- **Crystle Jane Lindsey**  crystle@wsrlaw.net, crystle@cjllaw.com;gabby@wsrlaw.net;dairi@wsrlaw.net
- **Matthew D Pham**  mpham@hahnlawyers.com, marias@hahnlawyers.com;mpham@ecf.courtdrive.com
- **Dean G Rallis**  drallis@hahnlawyers.com, marias@hahnlawyers.com;mpham@hahnlawyers.com;drallis@ecf.courtdrive.com;drallis@ecf.inforuptcy.com
- **Debra Riley**  driley@allenmatkins.com
- **Christopher O Rivas**  crivas@reedsmith.com, chris-rivas-8658@ecf.pacerpro.com
- **James R Selth**  jim@wsrlaw.net, jselth@yahoo.com;dairi@wsrlaw.net;gabby@wsrlaw.net;vinnet@ecf.inforuptcy.com
- **Alan G Tippie**  atippie@sulmeyerlaw.com, atippie@ecf.courtdrive.com;pdillamar@sulmeyerlaw.com
- **United States Trustee (LA)**  ustpregion16.la.ecf@usdoj.gov
- **Daniel J Weintraub**  dan@wsrlaw.net, vinnet@ecf.inforuptcy.com;gabby@wsrlaw.net;dairi@wsrlaw.net