1  **JOHN A. MESSINA, JR. (SBN 171148)**
2  **EVAN L. SMITH (SBN 101369)**
   **JEFFREY J. VAN WICK (SBN 330915)**
3  **MESSINA & HANKIN LLP**
   **24910 Las Brisas Road, Suite 102**
4  **Murrieta, CA 92562**
   jmessina@messinahankinlaw.com
5  elsmith@messinahankinlaw.com
   jvanwick@messinahankinlaw.com
6  **Telephone: (951) 894-7332**
7  **Fax: (951) 346-3334**

8  **Attorneys for A. STUART RUBIN.**

9

10            **UNITED STATES BANKRUPTCY COURT**

11      **CENTRAL DISTRICT OF CALIFORNIA-LOS ANGELES DIVISION**

12

13 **In re:**                        ) **CASE NO.: 2:21-bk-11188-BB**
                                      ) **CHAPTER 11**
14 **GLENROY COACHELLA, LLC,**        )
                                      ) **MOTION FOR ORDER DISQUALIFYING**
15            **DEBTOR.**             ) **REED SMITH LLP, AND/OR ANY OF ITS**
                                      ) **ATTORNEYS, FROM REPRESENTING U.S.**
16                                    ) **REAL ESTATE CREDIT HOLDINGS III-A, LP**
                                      ) **DUE TO CONFLICTS OF INTEREST GIVEN**
17                                    ) **ITS ONGOING REPRESENTATION OF**
                                      ) **DEBTOR, AND PRIOR REPRESENTATION**
18                                    ) **OF DEBTOR'S MANAGER; MEMORANDUM**
                                      ) **OF POINTS AND AUTHORITIES; AND**
19                                    ) **DECLARATIONS OF A. STUART RUBIN,**
                                      ) **ANNETTE RUBIN, EVAN L. SMITH, AND**
20                                    ) **PATRICK C. McGARRIGLE.**
                                      )
21                                    )
                                      ) **[To Be Set By Court]**
22                                    )
                                      )
23                                    )
                                      )
24                                    )

25 _____
   ///
26
   ///
27
   ///
28

**TO THE HONORABLE SHERI BLUEBOND, UNITED STATES BANKRUPTCY JUDGE; U.S. REAL ESTATE CREDIT HOLDINGS III-A, LP ("USRECH") AND ITS ATTORNEYS OF RECORD REED SMITH, LLP; RICHARD MARSHACK CHAPTER 11 TRUSTEE; OFFICE OF THE UNITED STATES TRUSTEE; AND ALL OTHER INTERESTED PERSONS OR ENTITIES:** Creditor A. Stuart Rubin ("Rubin"), both individually, and in his capacity as the Manager and owner of Glenroy Coachella Holdings, LLC, which is the sole Member of debtor Glenroy Coachella, LLC ("Glenroy"), hereby moves for an order disqualifying  the law firm Reed Smith, LLP, and/or any of its attorneys (collectively "Reed Smith"), from continuing to represent creditor USRECH in this case due to Reed Smith's existing and ongoing breaches of its duties of loyalty and confidentiality under the California Rules of Professional Conduct to its current client Glenroy, and to its prior clients Rubin and his wife, Annette Rubin.

## SUMMARY OF MOTION

Reed Smith is engaged in incurable conflicts of interest and must be disqualified from continuing to serve as USRECH's attorneys of record in this Chapter 11 case.  At the time it substituted into this case as attorneys of record for Glenroy's secured creditor USRECH, Reed Smith was already representing Glenroy in a still unresolved insurance matter which commenced in December 2018.  Reed Smith's representation of Glenroy and USRECH disqualifies it from proceeding as USRECH's counsel of record for the following reasons.

First, Reed Smith's simultaneous representation of both Glenroy and USRECH, its adversary, in related matters *automatically* disqualifies Reed Smith as counsel.

Second, Reed Smith's pre-existing representation of Glenroy raises the irrebuttable presumption that Reed Smith has breached its duty of confidentiality to Glenroy.

These breaches of duty to Glenroy by Reed Smith are compounded by the fact that from 2017 through 2018, it represented Rubin and Annette Rubin as plaintiffs' attorneys of record in a civil action in the United States District Court, Central District of California (case # 2:17-cv-

07627-PSG-SS, the "Civil Matter"), and in undertaking to represent USRECH has also breached the duties it owes them.

## MEMORANDUM OF POINTS & AUTHORITIES

### 1. Facts

For reasons that are in dispute that led to the interruption of a luxury hotel development project in the Riverside County City of Coachella (the "Project"), USRECH and its non-party manager, Calmwater Asset Management, LLC ("CW"), initiated a civil action against Glenroy and others, including Rubin, in the Riverside County Superior Court (case # RIC 1905743, the "Riverside Case"). [Decl. of S. Rubin, ¶ 2]. Thereafter, with USRECH threatening to foreclose under the *Deed of Trust, Security Agreement, Fixture Filing, and Financing Statement* recorded against the Project's real estate, on February 15, 2021, Glenroy filed a voluntary petition for relief under Chapter 11, United States Bankruptcy Court for the Central District of California to commence this case (Case # 2:21-bk-11188-BB, the "Bankruptcy Case"). [Decl. of S. Rubin, ¶ 3].

Initially, USRECH was represented by the law firm Raines Feldman, LLP in the Riverside Case, however, Raines Feldman, LLP promptly and properly withdrew as counsel of record when it merged with the law firm Rosenfeld, Wolff & Klein, and was informed that for the previous 25+ years the latter firm had been attorneys for the principals of Glenroy, Mr. and Mrs. Rubin, their family trust, and their multiple business interests including Glenroy, for which it had done an extensive amount of substantial legal work directly related to the Project. [Decl. of S. Rubin, ¶ 4; and Decl. of McGarrigle, ¶ 2]. USRECH then engaged Reed Smith, who substituted into the Riverside Case as its attorneys of record on November 23, 2020, and received client files from Rosenfeld, Wolff & Klein, which Rubin is informed and believes contain extensive information relating to its longstanding relationships with the Rubins, including confidential and privileged information concerning them personally, their family trusts, Glenroy, and their other business interests. [Decl. of S. Rubin, ¶ 5].

At the time Reed Smith undertook its representation of USRECH, it was already representing Glenroy with respect to a mid-six figures insurance claim relating to HVAC equipment which had been stolen from the building site of the Project (the "Insurance Matter"), with respect to which the Reed Smith attorney handling the Insurance Matter recommended that Glenroy pursue a bad-faith lawsuit against the insurers.  [Decl. of S. Rubin, ¶ 6 and Exhibit "A"].

Not long before representing Glenroy in the Insurance Matter, Reed Smith also represented the Rubins for over a year in the "Civil Matter", which settled in their favor at mediation, for which they paid Reed Smith several hundred thousand dollars in attorney's fees. [Decl. of S. Rubin, 7; and Decl. of Smith, ¶ 2 and Exhibit "B" ].

The facts of its prior representation of the Rubins, and its ongoing representation of Glenroy, should have been revealed to Reed Smith by a conflict check at the time USRECH sought its services, yet despite its substantial relationship with the Rubins and Glenroy, Reed Smith not only proceeded to undertake the adverse representation of USRECH, it also never informed the Rubins or Glenroy that it proposed to do so, nor did it seek or obtain their informed consent as required by the California Rules of Professional Conduct.  [Decl. of S. Rubin, ¶ 8].

On November 30, 2019, attorney Patrick McGarrigle, who was representing Glenroy in other matters, sent an e-mail notifying Christopher Rivas and Marsha Houston, the Reed Smith partners handling the Riverside Case for USRECH, that Reed Smith's representation in the Riverside Case constituted an actual conflict of interest and that neither Glenroy nor Mr. Rubin consented to Reed Smith representing CW in an adverse manner against them.  On December 1, 2019, Ms. Houston replied as follows:

> "Patrick –
> Your clients' consent is not needed for Reed Smith to serve as counsel in this matter. Both of the referenced insurance recovery matters were resolved long before this matter, involved lawyers who no longer work at Reed Smith, and are not substantially related to the current matter.... "

[Decl. of McGarrigle, ¶ 3 and Exhibit "C"]

Ms. Houston is misinformed, because Rubin in his capacity as Manager of Glenroy was never informed by Reed Smith that the Insurance Matter had been resolved, and in response to an inquiry by his attorney prior to bringing this motion Richard Giller, the former Reed Smith partner who had been handling the matter, confirmed it was unresolved when he left Reed Smith in the Fall of 2019. [Decl. of Smith, ¶ 3, and Exhibit "D"].

Shortly after learning of Reed Smith's conflicts, Rubin's attorney on May 4, 2021, sent a letter with supporting exhibits to Lorenzo E. Gasparetti, managing partner of Reed Smith's Los Angeles office, on which Ms. Houston and Mr. Rivas were copied, giving notice of the disqualifying conflicts of interest and breaches of duty, and demanding Reed Smith's immediate withdrawal from all pending actions and proceedings in which Glenroy was a party. In response he received a dismissive email from Reed Smith partner Peter Kennedy. [Decl. of Smith, ¶ 4, and Exhibits "E" and "F"].

To date, Reed Smith continues to represent USRECH in the both the Riverside Case and Bankruptcy Case, and apparently continues to neglect its responsibilities as counsel for Glenroy in the Insurance Matter. Finally, in addition to the above-described breaches of duty, Reed Smith has failed to respond to Mrs. Rubin's multiple calls requesting information on the status of the Insurance Matter after the original handling attorney left the firm. [Decl. of A. Rubin, ¶ 2]. In sum Reed Smith's multiple ethical breaches and conflicts of interest require that it be disqualified from serving as USRECH's attorneys in the Bankruptcy Case.

## 2. <u>Argument</u>

### A. <u>The Court Has The Authority To Disqualify Reed Smith As Attorney Of Record In The Bankruptcy Case</u>

"[A] court's power to disqualify an attorney from appearing in a particular case derives from the power of every court to control the conduct of attorneys practicing before it." *In re Muscle Improvement, Inc.* (Bankr. C.D. Cal. 2010) 437 BR. 389, 393. "The federal courts in California do not have their own rules of professional conduct for lawyers... Local Rule ("LBR") 2090–2(a) of the Bankruptcy Court for the Central District of California, which governs the

professional responsibility of attorneys practicing before this court, incorporates by reference the district court's local rule 83–3.1.2, which requires that attorneys comply with the California Rules of Professional Conduct, as interpreted by California case law." *Id*. Accordingly, [the U.S. Bankruptcy Court for the Central District of California] turn[s] to the applicable California rules and case law to determine the motion before the court." *Id*.

## B. Reed Smith Is Automatically Disqualified As Counsel In This Proceeding Due To Its Disloyalty To Glenroy

Reed Smith's representation of Glenroy in the Insurance Matter, and its simultaneous representation of USRECH *against* Glenroy in the Bankruptcy Case, violates Reed Smith's duty of loyalty to Glenroy (and to the Rubins as the underlying equity owners of Glenroy) and constitutes a concurrently adverse representation which *automatically* disqualifies Reed Smith from representing USRECH in this proceeding.

"A Lawyer owes undivided loyalty to his client". *Ishmael v. Milington* (1966) 241 Cal. App. 2d 520, 526. "A lawyer shall not, without informed written consent from each client… represent a client if the representation is directly adverse to another client in the same or a separate matter." (Rule 1.7(a) of the California Rules of Professional Conduct.) "[A]bsent consent, a lawyer may not act as an advocate in one matter against a person the lawyer represents in some other matter, even when the matters are wholly unrelated." (Rule 1.7(a) of the California Rules of Professional Conduct. Com. 1.) "The primary value at stake in cases of simultaneous or dual representation is the attorney's duty—and the client's legitimate expectations—of *loyalty,* rather than confidentiality." *Flatt v. Superior Court* (1994) 9 Cal.4th 275, 284.

The original framework for assessing an attorney's duty of loyalty in the context of dual representation was laid down by the California Supreme Court in *Anderson v. Eaton* (1930) 211 Cal. 113 as follows:

"One of the principal obligations which bind an attorney is that of fidelity, the maintaining inviolate the confidence reposed in him by those who employ him, and at every peril to himself to preserve the secrets of his client. [Citation Omitted.] This

obligation is a very high and stringent one. It is also an attorney's duty to protect his client in every possible way, and it is a violation of that duty for him to assume a position adverse or antagonistic to his client without the latter's free and intelligent consent given after full knowledge of all the facts and circumstances. [Citation Omitted.] *By virtue of this rule an attorney is precluded from assuming any relation which would prevent him from devoting his entire energies to his client's interests*. Nor does it matter that the intention and motives of the attorney are honest. The rule is designed not alone to prevent the dishonest practitioner from fraudulent conduct, but as well to preclude the honest practitioner from putting himself in a position where he may be required to choose between conflicting duties, or be led to attempt to reconcile conflicting interests, rather than to enforce to their full extent the rights of the interest which he should alone represent." *Id.* at 293 (emphasis added).

"In evaluating conflict claims in dual representation cases, the courts have accordingly imposed a test that is more stringent than that of demonstrating a substantial relationship between the subject matter of successive representations." *Flatt v. Sup. Ct.* 9 Cal. 4th 275, 284. "Even though the simultaneous representations may have *nothing* in common, and there is *no* risk that confidences to which counsel is a party in the one case have any relation to the other matter, disqualification may nevertheless be *required."* *Id*. "Indeed, in all but a few instances, the rule of disqualification in simultaneous representation cases is a *per se* or "automatic" one." *Id*.

The California Supreme Court in *Flatt* explained that:

"The reason for [the per se] rule is evident, even (or perhaps especially) to the nonattorney. A client who learns that his or her lawyer is also representing a litigation adversary, even with respect to a matter *wholly unrelated* to the one for which counsel was retained, cannot long be expected to sustain the level of confidence and trust in counsel that is one of the foundations of the professional relationship. All legal technicalities aside, few if any clients would be willing to suffer the prospect of their attorney continuing to represent them under such circumstances. As one commentator on modern legal ethics has put it: "Something seems radically out of place if a lawyer sues one of the lawyer's own present clients in behalf of another client. Even if the representations have nothing to do with each other, so that no confidential information is apparently jeopardized, the client who is sued can obviously claim that the lawyer's *sense of loyalty* is askew." [Citation Omitted.] It is for that reason, and not out of concerns rooted in the obligation of client confidentiality, that courts and ethical codes alike prohibit an attorney from simultaneously representing two client adversaries, even where the substance of the representations are unrelated." *Id*. at 542-43

*In re Glenroy Coachella, LLC*                                                    *Case No.: 2:21-bk-11188-BB*

Reed Smith is clearly breaching its duty of loyalty to Glenroy by representing USRECH against Glenroy in this proceeding. Reed Smith's double-dealing necessarily prevents it from "devoting its entire energies" to *either* Glenroy *or* USRECH, since Reed Smith was and is intimately involved in the evaluation, prosecution, and litigation of the Insurance Matter which is an asset of Glenroy's Chapter 11 estate. On the one hand, Reed Smith is (or should be) advocating for the Glenroy estate to bring a sizeable insurance claim to fruition, while on the other hand, Reed Smith is working against the Glenroy estate by representing its adversary in this bankruptcy proceeding. It is patently disloyal and unfair, to both Glenroy and USRECH, to permit Reed Smith to continue litigating USRECH's bankruptcy proof of claim against Glenroy's assets which, due to its ongoing representation of the competitor, Reed Smith is ethically bound to preserve and protect.

Concurrent representations which involve *completely* unrelated matters are sufficient ground for disqualification, a fortiori, Reed Smith's simultaneous representation of the *substantially related* interests here is more than sufficient to disqualify Reed Smith. See e.g., *Jeffry v. Pounds* (1977) 67 Cal.App.3d 6 (holding law firm disqualified when, without the knowledge and consent of the current client, it undertakes to represent a third party in suing that client on an unrelated matter); *Cal West Nurseries v. Sup. Ct.* (2005) 129 Cal. App. 4th 1170 (holding that trial court abused discretion by denying motion for disqualification where adverse parties were simultaneously represented by same counsel in unrelated actions); *Truck Ins. Exch. V. Fireman's Fund Ins. Co.*(1992) 6 Cal. App. 4th 1050, 1057 (holding that automatic disqualification rule applicable to dual representation conflicts cannot be avoided by severing of the relationship with the pre-existing client); *Civil Service Com. V. Sup. Ct.* (1984) 163 Cal. App. 3d 70, 78 ("an attorney may simply not undertake to represent an interest adverse to those of a current client without the client's approval"); *Cinema 5 Ltd. V. Cinerama, Inc.* (2nd Cir. 1976) 528 F.2d 1384 ("Where the relationship is a continuing one, adverse representation is prima facie improper); and *Hull v. Celanese Corp.* (2nd Cir. 1975) 513 F.2d 571 ("Because an attorney must

avoid not only the fact, but even the appearance, of representing conflicting interests, [concurrent adverse representation] requires his disqualification")

### C.  Reed Smith's Antecedent Representation of Glenroy And The Rubins Raises The Irrebuttable Presumption That Reed Smith's Current Representation Of USRECH Breaches Reed Smith's Duty Of Confidentiality To Glenroy And The Rubins

Reed Smith must be disqualified as a result of its successive representation of Glenroy and USRECH, since its prior existing and ongoing representation of Glenroy in the Insurance Matter, and prior representation of the Rubins in the Civil Matter, raises the (irrebuttable) presumption that Reed Smith acquired confidential information about Glenroy from its prior representations which it may utilize *against* Glenroy in this bankruptcy proceeding.

As fiduciaries, lawyers are bound "to the most conscientious fidelity – *uberrima fides*." *Cox v. Delmas* (1893) 99 Cal. 104, 123.  "Among those fiduciary obligations were the duties of loyalty and confidentiality, which continue in force even after the representation had ended." *Oasis West Realty, LLC v. Goldman* (2011) 51 Cal. 4th 811, 821.  A lawyer may not do anything that will injuriously affect a former client in any matter in which the lawyer formerly represented the client; nor may the lawyer use or disclose the former client's confidential information to the former client's disadvantage.  California Rule of Professional Conduct 1.9(a) & Com. 1; *Wutchumna Water Co. v. Bailey* (1932) 216 Cal. 564, 571.

"With respect to the successive representation of clients with potentially adverse interests, the courts have recognized that the chief fiduciary value jeopardized is that of client *confidentiality*."  *Flatt*, supra, 9 Cal. 4th at 283.  "Thus, where a former client seeks to have a previous attorney disqualified from serving as counsel to a successive client in litigation adverse to the interests of the first client, the governing test requires that the client demonstrate a '*substantial relationship* ' between the subjects of the antecedent and current representations." *Id.*  "Where the requisite substantial relationship between the subjects of the prior and the current representations can be demonstrated, access to confidential information by the attorney in the

course of the first representation (relevant, by definition, to the second representation) is *presumed* and disqualification of the attorney's representation of the second client is mandatory." *Id*. "[I]n the usual case when the substantial relationship of the matters is established, the inquiry ends and the disqualification should be ordered." *River West, Inc. v. Nickel* (1987) 188 Cal. App. 3d 1297, 1304.

A "substantial relationship" between the former representation and the current representation is said to exist "when it appears by virtue of the nature of the former representation or the relationship of the attorney to his former client confidential information material to the current dispute would normally have been imparted to the attorney." *H.F. Ahmanson & Co. v. Salomon Brothers, Inc.* (1991) 229 Cal.App.3d 1445, 1454. "In other words, the courts focus less on the meaning of the words 'substantial' and 'relationship' and look instead at the practical consequences of the attorney's representation of the former client." *Id*. "The courts ask whether confidential information material to the current dispute would normally have been imparted to the attorney by virtue of the nature of the former representation." *Id*. "The court should focus on the similarities between the two factual situations, the legal questions posed, and the nature and extent of the attorney's involvement with the cases." *Id*. "As part of its review, the court should examine the time spent by the attorney on the earlier cases, the type of work performed, and the attorney's possible exposure to formulation of policy or strategy." *Id*.

In *William H. Raley Co. v. Sup. Ct*. 149 Cal. App. 3d 1042, a lawyer was on the Bank's trust investment committee. The lawyer belonged to a large firm which did some legal work for the Bank, though none of the work was trust-oriented. The Bank owned stock of a company that was a defendant in a real property dispute. When the plaintiff in the dispute retained a lawyer from the lawyer's firm, the company moved to disqualify the lawyer. The Court of Appeal held that it was an abuse of discretion to deny the company's motion, and reasoned that "neither [the lawyer] nor the court can be assured that, in the course of casual conversations or meetings…[the lawyer] will not obtain confidential information about [the defendant]." The *Raley* Court acknowledged that the lawyer had been "sealed off" and "isolated" from receiving any

information about the lawsuit, but still maintained that the lawyer's role on the trust committee was sufficiently related to the lawsuit to "create[] a risk of misappropriation of confidential information". *Id*.

Here, there is a stronger nexus between Reed Smith's successive representations than the law firm's successive representations in *Raley*.  Indeed, there is a direct, overlapping relationship between the subject matter of Reed Smith's representations, since the Insurance Matter is an asset of Glenroy's bankruptcy estate, and Reed Smith also is presumed to have obtained information contained in Raines Feldman, LLP's files from its disqualifying merger with the Rubins' lawyers of 25 years, Rosenfeld, Wolff & Klein.  No such overlap in the subject matter existed in *Raley*, but the *Raley* Court still found that the lawyer's role on the Bank's trust committee and his law firm's representation of the plaintiff were substantially related.

Moreover, here there is far greater risk that Reed Smith may misappropriate or misapply confidential information than was present in *Raley*.  Reed Smith was closely involved with the clients and dedicated many man hours on the Insurance and Civil Matters, therefore, it certainly gleaned confidential information which would  assist in the evaluation, prosecution, settlement, and litigation of legal and factual issues in the Bankruptcy Case.  In *Raley*, however, the lawyer's mere presence on a trust committee for the Bank, who owned the defendant company, was sufficient to warrant disqualification.  When the plaintiff hired a lawyer from the lawyer's firm, the *Raley* Court held that there was an impermissible risk of misappropriating confidential information, even though it believed the lawyer had been successfully "isolated" from information relating to the lawsuit.  See also, *Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft* (1999) 69 Cal. App. 4th 223 (prior representation of insurance underwriters disqualified counsel from suing insurance company on behalf of plaintiffs); and *Pour Le Bebe, Inc. v. Guess? Inc.* (2003) 112 Cal. App. 4th 810 (prior representation of defendant company's principals in separate matters disqualified law firm from representing plaintiff.)

*In re Glenroy Coachella, LLC*                                    *Case No.: 2:21-bk-11188-BB*

1

## RELIEF SOUGHT

WHEREFORE, Rubin prays that the Court find in its favor, and order that Marsha

Houston and Christopher Rivas, and the law firm of Reed Smith, are hereby disqualified from

representing USRECH in this Title 11 case due to their conflicts of interest.

DATED: _July 7, 2021_                                     **MESSINA & HANKIN, LLP**

                                                          By: _____Evan L Smith_____
                                                          **EVAN L. SMITH**
                                                          **Attorneys for A. STUART RUBIN**

**Declaration of A. Stuart Rubin**

1

2

## DECLARATION of A. STUART RUBIN

3      I, A. Stuart Rubin, declare:

4      1. I am an individual over the age of 21 years, and am an individual creditor of the Glenroy

5  Coachella, LLC Chapter 11 estate, and am the Manager of Glenroy Coachella, LLC's sole and managing

6  Member, Coachella Holdings, LLC in which I am an equity owner.  I am making this declaration in

7  support of my *MOTION FOR ORDER DISQUALIFYING REED SMITH LLP, AND/OR ANY OF ITS*

8  *ATTORNEYS,  FROM REPRESENTING U.S. REAL ESTATE CREDIT HOLDINGS III-A, LP DUE TO*

9  *CONFLICTS OF INTEREST GIVEN ITS ONGOING REPRESENTATION OF DEBTOR, AND PRIOR*

10  *REPRESENTATION OF DEBTOR'S MANAGER* in the Chapter 11 case currently pending before this

11  court styled *In re Glenroy Coachella, LLC*, case # 2:21-bk-11188-BB.  I have personal knowledge of the

12  facts set forth below and, if called as a witness, could and would attest thereto.  No waiver of the

13  attorney-client privilege, or of any other privilege, is made, intended, or implied hereby.

14      2. For reasons that are in dispute that led to the interruption of a luxury hotel development project

15  in the Riverside County City of Coachella (the "Project"), USRECH and its non-party manager,

16  Calmwater Asset Management, LLC ("CW"), initiated a civil action against Glenroy and others,

17  including myself, in the Riverside County Superior Court (case # RIC 1905743, the "Riverside Case").

18

19      3. When USRECH threatened to foreclose under the *Deed of Trust, Security Agreement, Fixture*

20  *Filing, and Financing Statement* recorded against the Project's real estate, on February 15, 2021, Glenroy

21  filed a voluntary petition for relief under Chapter 11, United States Bankruptcy Court for the Central

22  District of California to commence this case (Case # 2:21-bk-11188-BB, the "Bankruptcy Case").

23      4. Initially, USRECH was represented by the law firm Raines Feldman, LLP in the Riverside

24  Case, however, Raines Feldman, LLP promptly and properly withdrew as counsel of record when it

25  merged with the law firm Rosenfeld, Wolff & Klein, and was informed that for the previous 25+ years

26  the latter firm had been attorneys for myself and my wife, Annette Rubin, as principals of Glenroy, our

27  family trust, and our multiple business interests including Glenroy, for which it had done an extensive

28  amount of substantial legal work directly related to the Project.

5. As replacement counsel, USRECH then engaged Reed Smith, who substituted into the Riverside Case as its attorneys of record on November 23, 2020, and received client files from Rosenfeld, Wolff & Klein, which I am informed and believe contain extensive information relating to its longstanding relationships with my family and our interests, including confidential and privileged information concerning us personally, our family trusts, Glenroy, and our other business interests.

6. At the time Reed Smith undertook its representation of USRECH, it was already representing Glenroy with respect to a mid-six figures insurance claim relating to HVAC equipment which had been stolen from the building site of the Project (the "Insurance Matter"), with respect to which the Reed Smith attorney handling the Insurance Matter recommended to me that Glenroy pursue a bad-faith lawsuit against the insurers. Attached hereto as Exhibit "A" is a true copy of the November 30, 2018, *Representation Engagement Letter* by and between Reed Smith and Glenroy with respect to the Insurance Matter.

7. Not long before representing Glenroy in the Insurance Matter, Reed Smith also represented my wife and I for over a year in the "Civil Matter", which settled in our favor at mediation, for which we paid Reed Smith several hundred thousand dollars in attorney's fees.

8. Despite its substantial relationship with my family and Glenroy, Reed Smith not only proceeded to undertake the adverse representation of USRECH, it also never informed us or Glenroy that it proposed to do so, nor did it seek or obtain our informed consent as I understand is required by the California Rules of Professional Conduct.

**IN WITNESS WHEREOF,** this declaration is executed under penalty of perjury this 6th day of July 2021, at Los Angeles, California.

A. STUART RUBIN

# Declaration of Annette Rubin

## DECLARATION of ANNETTE RUBIN

I, Annette Rubin, declare:

1. I am an individual over the age of 21 years, and am married to A. Stuart Rubin, who is an individual creditor of the Glenroy Coachella, LLC Chapter 11 estate, and the Manager of Glenroy Coachella, LLC's sole and managing Member, Coachella Holdings, LLC, in which I have an equity interest. I am making this declaration in support of my husband's *MOTION FOR ORDER DISQUALIFYING REED SMITH LLP, AND/OR ANY OF ITS ATTORNEYS, FROM REPRESENTING U.S. REAL ESTATE CREDIT HOLDINGS III-A, LP DUE TO CONFLICTS OF INTEREST GIVEN ITS ONGOING REPRESENTATION OF DEBTOR, AND PRIOR REPRESENTATION OF DEBTOR'S MANAGER* in the Chapter 11 case currently pending before this court styled *In re Glenroy Coachella, LLC*, case # 2:21-bk-11188-BB. I have personal knowledge of the facts set forth below and, if called as a witness, could and would attest thereto. No waiver of the attorney-client privilege, or of any other privilege, is made, intended, or implied hereby.

2. In 2020 and 2021 I placed more than 50 telephone calls to Reed Smith requesting information on the status of the Glenroy Insurance Matter. At first I was unaware that the attorneys who had been handling the matter, Richard Giller and Ashley Rodriguez had left Reed Smith, because no one bothered to inform us of those facts, and to date Reed Smith has not responded to my inquiries, nor has it informed us of the identity of the attorney(s) now assigned to handle the Insurance Matter (if anyone even has been), or of the current status of the matter.

**IN WITNESS WHEREOF,** this declaration is executed under penalty of perjury this 6th day of July 2021, at Los Angeles, California.

_____
**ANNETTE RUBIN**

**Declaration of Evan L. Smith**

### DECLARATION of EVAN L. SMITH

I, Evan L. Smith, declare:

1. I am an attorney at law, duly admitted to practice before this court, and a Member in good standing of the State Bar of California. I am an Of Counsel attorney with the law firm Messina & Hankin, LLP, attorneys of record for A. Stuart Rubin in the Chapter 11 case currently pending before this court styled *In re Glenroy Coachella, LLC*, case # 2:21-bk-11188-BB, and am making this declaration in support of my client's *MOTION FOR ORDER DISQUALIFYING REED SMITH LLP, AND/OR ANY OF ITS ATTORNEYS, FROM REPRESENTING U.S. REAL ESTATE CREDIT HOLDINGS III-A, LP DUE TO CONFLICTS OF INTEREST GIVEN ITS ONGOING REPRESENTATION OF DEBTOR, AND PRIOR REPRESENTATION OF DEBTOR'S MANAGER* (the "Motion"). I have personal knowledge of the facts set forth below and, if called as a witness, could and would attest thereto. No waiver of the attorney-client privilege, or of any other privilege, is made, intended, or implied hereby.

2. Attached hereto as Exhibit "B" is a true copy of the online case docket for the action styled *Abraham Stuart Rubin et al. v. Certain Underwriters at Lloyds London etc.*, case # 2:17-cv-07627-PSG-SS, which I downloaded from the United States District Court, Central District of California (Western Division-Los Angeles) ecf site on July 6, 2021, and which lists the law firm Reed Smith LLP as attorneys of record for plaintiffs A. Stuart Rubin and Annette Rubin.

3. On June 18, 2021, as due diligence prior to bringing the Motion, I emailed former Reed Smith partner Richard Giller, and inquired whether the Glenroy insurance claims were still unresolved at the time he left Reed Smith. Mr. Giller emailed me back stating "I am not aware that any resolution of the Coachella project insurance claims had been effectuated before I left Reed Smith". Attached hereto as Exhibit "D" is a true copy of that email thread, which I offer as evidence not of the truth of Mr. Giller's statement, but instead as evidence that he made that statement to me.

4. Messina & Hankin, LLP was formally engaged as attorneys for A. Stuart Rubin on April 16, 2021. In connection with reviewing materials from both the Riverside Case and the Bankruptcy Case, I first learned of Reed Smith's conflicts of interest in late April 2021. Therefore, on May 4, 2021, I sent a

letter with supporting exhibits to Lorenzo E. Gasparetti, managing partner of Reed Smith's Los Angeles office, on which Ms. Houston and Mr. Rivas were copied, giving notice of the disqualifying conflicts of interest and breaches of duty, and demanding Reed Smith's immediate withdrawal from all pending actions and proceedings in which Glenroy was a party.  In response he received a dismissive email from Reed Smith partner Peter Kennedy.  True copies of my letter to Mr. Gasparetti, and of Mr. Kennedy's email to me, are respectively attached hereto as Exhibits "E" and "F".

    **IN WITNESS WHEREOF,** this declaration is executed under penalty of perjury this 7th day of July 2021, at Murrieta, California.

_____
**EVAN L. SMITH**

*In re Glenroy Coachella, LLC*                                                 *Case No.:  2:21-bk-11188-BB*

**Declaration of Patrick C. McGarrigle**

## DECLARATION of PATRICK C. McGARRIGLE

I, Patrick C. McGarrigle, declare:

1. I am an attorney at law, duly admitted to practice before this court, and a Member in good standing of the State Bar of California. I am the Managing Principal of McGarrigle, Kenney & Zampiello, APC, attorneys of record for A. Stuart Rubin in a civil action pending in the Riverside County Superior Court, which has been consolidated under the Riverside Case # RIC 1905743, and am making this declaration in support of my client's *MOTION FOR ORDER DISQUALIFYING REED SMITH LLP, AND/OR ANY OF ITS ATTORNEYS, FROM REPRESENTING U.S. REAL ESTATE CREDIT HOLDINGS III-A, LP DUE TO CONFLICTS OF INTEREST GIVEN ITS ONGOING REPRESENTATION OF DEBTOR, AND PRIOR REPRESENTATION OF DEBTOR'S MANAGER.* I have personal knowledge of the facts set forth below and, if called as a witness, could and would attest thereto. No waiver of the attorney-client privilege, or of any other privilege, is made, intended, or implied hereby.

2. On or about November 9, 2020, I learned that Raines Feldmann, LLP, the law firm that was representing plaintiff U.S. Real Estate Credit Holdings III-A, L.P. ("USRECH") in the Riverside Case, had merged with the law firm Rosenfeld, Wolff & Klein, which for the previous 25+ years had been attorneys for the principals of Glenroy, Mr. and Mrs. Rubin, their family trust, and their multiple business interests including Glenroy, for which it had done an extensive amount of substantial legal work directly related to the Project. On November 12, 2020, I sent a letter to Nathan Carle and Hamid Rafajoo, the Raines Feldman, LLP attorneys handling the case detailing the conflicts of interest their firm has assumed when it merged with Rosenfeld, Wolff & Klein. Thereafter, following exchanges of additional emails further detailing the conflicts, by an email dated November 18, 2020, Mr. Carle informed me that his firm was withdrawing and that Reed Smith, LLP would be substituting in as counsel, with attorneys Marsha Houston and Christopher Rivas handling the matter.

3. After being informed by Mr. Carle that his firm was withdrawing, I learned for the first time that Reed Smith, LLP also had extensive disqualifying conflicts of interest with both the Rubins and

1    Glenroy.  Therefore, on November 30, 2020, I telephoned Christopher Rivas of Reed Smith, LLP and left

2    him a voicemail message concerning his firm's actual conflicts of interest, which I followed with an

3    email.  On December 1, 2020, I received back an email from Ms. Houston, a true copy of which is

4    attached hereto as Exhibit "C", which inaccurately asserted:

5        "Patrick –

6

7        Your clients' consent is not needed for Reed Smith to serve as counsel in this matter.  Both of the

8        referenced insurance recovery matters were resolved long before this matter, involved lawyers

9        who no longer work at Reed Smith, and are not substantially related to the current matter….".

10        **IN WITNESS WHEREOF,** this declaration is executed under penalty of perjury this 7th day of

11    July 2021, at Chatsworth, California.

12

13                           PATRICK C. McGARRIGLE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit "A"



**ReedSmith**

Reed Smith LLP
355 South Grand Avenue
Suite 2900
Los Angeles, CA 90071-1514
+1 213 457 8000
Fax +1 213 457 8080
reedsmith.com

Richard C. Giller
Direct Phone: +1 213 457 8028
Email: rgiller@reedsmith.com

November 30, 2018

**Attorney Work Product - Privileged and Confidential**

**Via Email**

Mr. Stuart Rubin
Glenroy Coachella, LLC
1801 S. La Cienega Blvd, Suite 301
Los Angeles, CA 90035

**Re: Representation Engagement Letter**

Dear Stuart:

Thank you for engaging Reed Smith to represent Glenroy Coachella, LLC in connection with insurance coverage for a theft claim totalling approximately $300,000 to $400,000 in connection with HVAC inventory on-site for the Glenroy Coachella hotel construction project ("Engagement"). The relevant policies of insurance involved in this claim are: (1) Endurance American Speciality Insurance Co. ("Endurance" or "Sompo"), Policy No. IMU100121135-00; and (2) Westchester Surplus Lines ("Westchester" or "Chubb"), Policy No. I1113323A001. This letter will confirm the scope and work and will describe the arrangement and terms we discussed pursuant to which we will represent Glenroy Coachella, LLC.

Our representation of Glenroy Coachella, LLC is subject to both parties' agreement as set forth in this letter and the enclosed Standard Terms and Conditions of Engagement ("Standard Terms"). We have not been engaged by Glenroy Coachella, LLC for any project other than as set forth herein.

As indicated, unless otherwise specified in this engagement letter, the terms of the Engagement will be in accordance with our Firm's enclosed Standard Terms. We invite your attention to two provisions within these terms that are particularly important to us in order for us to undertake the representation contemplated here. First, "Exclusion of Owners, Subsidiaries, Officers, Directors and Employees" defines and provides limitations as to what entities the attorney-client relationship shall extend to under this representation. Second, "Future Conflicts in Unrelated Matters" addresses future conflicts of interest that may occur for us and provides for your advanced consent to these conflicts while you remain a current client. We ask that you consider these terms, as well as all of the other provisions of the Standard Terms, prior to agreeing to engage us as counsel.

My current hourly rate is $675 per hour, and current rates for other Reed Smith partners, and associates who will work on the Engagement, range from $430 to $480 per hour. These rates are subject to periodic adjustment as outlined in the Standard Terms. Our policy on expenses, including those for which it is Glenroy Coachella, LLC's initial responsibility to pay, is contained in the Standard Terms.

US_ACTIVE-143800269.1

**EXHIBIT** _A_

Mr. Stuart Rubin
November 30, 2018
Page 2

We normally receive a retainer from new clients. Based on the resources we will be committing at the outset, we request a retainer of $10,000.00. We will hold that retainer to apply against our statements.

If the terms of this engagement letter and the Standard Terms meet with your approval, please sign below and return the enclosed copy of same, keeping the second copy for your files. If, in the alternative, you have any questions regarding this letter, the enclosed and incorporated Standard Terms, or otherwise our representation of Glenroy Coachella, LLC, please contact me. Your communication to us to proceed with this matter, prior to sending us a signed copy of this letter, will be recognized and relied upon by us as your acceptance of the letter along with the Standard Terms. We look forward to the opportunity to work with and for you.

Very truly yours,

Richard C. Giller

RCG:jm

Enclosure

Accepted By:

GLENROY COACHELLA, LLC

By: _____

Title: _____

Date: _____12\15\18_____


EXHIBIT A

## Reed Smith LLP
### Standard Terms and Conditions of Engagement

The following standard terms and conditions of engagement are incorporated in and made a part of the engagement letter for each matter that Reed Smith LLP ("Reed Smith" or "Firm") is engaged to represent "Client," as defined in the engagement letter. To the extent Client provides the Firm with different, supplemental, or alternative terms, the terms provided hereunder shall prevail unless Firm specifically agrees otherwise in writing.

***Fees.*** Reed Smith will bill Client on a monthly basis unless otherwise specified in the engagement letter for a specific matter. Each bill will provide a detailed accounting of services rendered and/or recorded during the immediately preceding month. The "services rendered" will be broken down into two separate components: (i) legal services provided by our attorneys, paralegals and other professionals, and (ii) reimbursable

costs and expenses incurred by Reed Smith in connection with its representation of Client. With respect to legal services, Client will be billed on an hourly basis (unless otherwise specified) at rates which will vary with the nature of the matter, as well as with the experience and skill of the attorney, paralegal or professional rendering the services. Please note that our regular hourly rates are typically adjusted as of January 1 of each year and may, from time to time, be adjusted at other times during the year.

***Reimbursable Costs.*** The second component of "services rendered" shown on our bill to Client will be a summary of expenses by category which includes: long distance telephone, postage, photocopy/scan/print, facsimile charges, secretarial and word processing overtime, etc. See table below:

| Costs & Expenses | |
|---|---|
| **Service** | **Charge** |
| Outgoing Faxes | *From a fax machine:* $1/p U.S./£1/p UK <br> *From a desktop:* Long distance charges |
| Copy/Scan/Print | *Black/White:* 15¢/p U.S./£0.25/p UK <br> *Color:* $1/p U.S./£1/p UK |
| Telephone | Actual long distance charges on Firm systems and on Firm or other calling cards |
| Courier/Overnight Services | Actual charges incurred |
| Postage | Actual charges incurred |
| Electronic Research | Actual charges incurred |
| In-House Video Conferencing | Actual cost of call plus $15 (£25)/hr for technical support |
| Third Party Conference Calls | Actual invoiced cost |
| Technology Support | Hourly rate for technician time plus all direct costs |
| Overtime | Actual charge incurred when overtime is warranted |
| Third Party Services such as: transcripts, title searches, title insurance, filing and recordation fees and taxes, and other transaction-related disbursements, such as expert witnesses and consultants and investigators. | Items over $1,000 are typically sent directly to client for payment. Otherwise, costs for such services are billed to clients at actual invoiced cost. |



| Data Hosting | Actual charges incurred |
| --- | --- |

While many expense costs are generally paid by the Firm and then charged to Client, it is our practice to forward invoices for significant filing fees or disbursements (e.g., $1,000 or higher) to Client for direct payment to the vendor. In addition, if substantial costs are to be advanced in connection with the matter, it is our practice to obtain a retainer from Client to cover such costs.

*Retainer.* It is the Firm's policy to require an initial retainer before commencing legal services for a new client. The amount of the retainer is specified in the attached engagement letter. As monies become due for legal fees and expenses, those items will be deducted from the Retainer, with notice to you of those deductions. Of course, with respect to any other matters we may undertake on the Client's behalf, we may request an additional retainer that is reasonable in light of the anticipated scope of the task at hand.

Unless Client elects that the retainer (or other funds provided to the Firm in trust) to be placed in a separate account, applicable law may require the Firm to deposit retainers into an account from which interest generated from the account is used to provide legal services to the indigent or for other purposes that benefit the public and that are related to legal services. If Client desires Client's deposit to be placed in a trust account with interest payable to Client, please so advise on an Advance Deposit Form, along with Client's taxpayer identification number on a properly executed W-9 Form. Reed Smith's trust accounts are held in approved financial institutions, and bear interest at the bank's rates for this type of account. The choice of bank, however, is subject to change at our discretion.

*Payment.* Unless otherwise specifically agreed in the engagement letter, we expect payment from Client within 30 days of the invoice date, as prompt and full payment for our services is vital to our ability to efficiently provide legal services to all clients. Client agrees to pay our invoice within 30 days of the bill date, unless otherwise specified in the letter. In the event Client fails to pay any invoice within 45 days of receipt of such invoice, the Firm reserves the right, and Client agrees to allow the Firm, to automatically withdraw from this engagement and representation upon written notice of such withdrawal.

*Interest on Overdue Accounts.* Client further understands and agrees that if payment is not made within 30 days of the bill date, Client's account shall be considered past due, after which an interest charge will be added to the outstanding balance in an amount equal to .83% per month. We also reserve the right to discontinue services if our bills are not paid in a timely manner, and to seek payment for all outstanding and accrued fees and expenses.

*Term of Engagement.* Either of us may terminate the engagement at any time for any reason by written notice, subject on our part to applicable rules of professional conduct. If Client so requests, we will suggest possible successor counsel. If permission for withdrawal is required by a court, we will promptly apply for such permission, in accordance with local court rules, and Client agrees to engage successor counsel to represent Client.

*Information/Client Responsibilities.* We will keep Client informed of the status of all matters and, as appropriate, will send Client copies of correspondence, pleadings and/or other relevant documents which we initiate and copies of correspondence, pleadings and/or other relevant documents we receive from others. Client agrees to cooperate fully with the Firm and to provide promptly all information known or available to Client relevant to the Firm's representation of Client's interests, including furnishing all documents requested by us.

*Termination and Conclusion of Attorney-Client Relationship.* Unless previously terminated, our representation of the Client will terminate, and the attorney-client relationship shall be deemed concluded, after our completion of all matters for which we have represented Client. But no later than the date of the invoice under which the last matter was billed in full. The Firm expects full payment for any amounts owed at that time.

*Post-Engagement Matters.* Client has engaged the Firm to provide legal services in connection with a specific matter as described in the engagement letter. After completion of the matter, changes may occur in the applicable laws or regulations that could have an impact on the Client's future rights and liabilities. Unless Client engages the Firm to provide additional

2


EXHIBIT A

advice on issues arising from the matter, we have no continuing obligation to advise Client with respect to future developments.

***Deal Lists.*** The Firm reserves the right to use the Client's name and/or the descriptive elements of corporate finance transactions the Client has undertaken with our assistance, in deal lists communicated to our existing or prospective clients or the media, unless Client instruct us otherwise.

***External Electronic Communication Authorization.*** The Firm may send documents or other information that is covered by the attorney-client or work product privileges using external electronic communication ("EC") (via the internet or other network). Client understands that EC is not an absolutely secure method of communication. Client acknowledges and accepts the risk and authorizes the Firm to use EC means to communicate with Client or others necessary to effectively represent the Client. If there are certain documents with respect to which the Client wishes to maintain absolute confidentiality, the Client must advise the Firm in writing not to send them via EC and the Firm will comply with Client's request.

***Internal Communications.*** There are occasions when lawyers in the Firm find it useful and helpful to discuss our professional obligations to clients with lawyers experienced in such matters. Accordingly, as part of our agreement concerning our representation of Client, Client agrees that if we determine in our own discretion during the course of the representation that it is either necessary or appropriate to consult with our Firm's Legal Department (either the Firm's in-house counsel or, if we choose, outside counsel) we have Client's consent to do so. Any such communications are and will be deemed to be communications protected by the Firm's attorney-client privilege, and our representation of Client shall not, thereby, waive any attorney-client privilege that the Firm may otherwise have protecting the confidentiality of our communications with counsel.

***Future Conflicts In Unrelated Matters.*** The Firm's ability to represent any and all clients is governed by the applicable rules of professional conduct, which include but are not limited to rules regarding conflicts of interest between multiple clients of a law firm or between a law firm and its clients (collectively, "the Conflicts Rules"). Except as we may have already disclosed, the Firm is not presently aware of a conflict created by the proposed representation of Client that

would trigger the Conflicts Rules at this time. However, the nature and scope of the Firm's work for other clients may give rise to conflicts of interest in the future. The purpose of this section of the Standard Terms is to explain how the Firm proposes to resolve future conflicts issues so that the Client can decide whether or not to be represented by the Firm. In other words, the purpose of this section is to establish a waiver of future conflicts but to do so subject to the conditions and limitations noted herein.

<u>The Scope of the Waiver</u>

The Firm only requires Client's waiver for future work for other clients that is entirely factually and legally unrelated to the work we shall do for Client, but is adverse to Client or Client's interest. Thus, the Firm does not recognize that this waiver would allow it:

- at any time, to attack the work that the Firm performs for the Client;
- to affect the independence of the Firm concerning work that the Firm performs for the Client;
- at any time, to disclose or use adversely to the Client, or to place itself in a position to disclose or use, any confidential and nonpublic information of the Client;
- at any time, to allow lawyers [or nonlawyer staff] who work for the Client to simultaneously work adversely to the Client; or
- for so long as the Firm continues to represent the Client, to allege criminal conduct by the Client.

Outside of these limitations, the Firm is and will remain free to represent other clients adversely to the Client. In other words, we may represent other clients in negotiations, business transactions, litigation, alternative dispute resolution, administrative proceedings, discovery disputes, or other legal matters even if those matters are adverse to Client or Client's interests. For example, and solely by way of illustration, the Firm could represent another client in a contractual dispute against Client, including litigation, provided we did not advise Client concerning the contract in question or have confidential information of Client that bears directly on the aspect of the contract in dispute.

Although the Client may revoke this waiver as to future matters at any time, such revocation will not



affect any matters undertaken by the Firm prior to receipt of notice by the Firm of the revocation. In addition, and to the extent permitted by the applicable rules of professional conduct, the Client must consent to the Firm's withdrawal from the Client's matters if withdrawal is necessary for the Firm to continue representing other clients. If the Firm does withdraw from a matter, however, it will assist Client in transferring the matter to other counsel of Client's choice and will not bill Client for legal fees, expenses, or other charges arising from the need to assist successor counsel in coming up to speed.

Considerations Relating to Client's Decision to Provide the Waiver

Having made you aware of this conflicts waiver and its potential implications for you, we ask that you state exception to agreeing to this waiver if you have any unanswered or unaddressed reservations or concerns. We also strongly encourage you to discuss this waiver with independent counsel of your choice.

As we have already explained, there are questions that Client should address before a decision to agree to waive future conflicts is made:

- Is there a material risk of adverse disclosure or use of confidential client information?
- Is there a material risk that the Firm will be less zealous or eager when representing the Client because of other adverse representations?
- Is the Client ready, willing, and able to live by the commitment this waiver requires in the future?

As to the first two questions, we believe that any risk to the Client is minimal to nonexistent in light of the protections and limitations contained in this and other sections of the Standard Terms as well as the rules of professional conduct that the Firm is bound by. As to the final question, that is necessarily the Client's choice and not ours. However, the Client's agreement to provide this waiver is fundamental to and necessary for the Firm's agreement to represent the Client.

***Clients with Competing Interests.*** Some of our current or future clients are likely to operate in the same industry or sector as you and may have interests which are adverse to you. You accept that we may act for such other clients. We will continue to have rigorous procedures to identify conflicts and ensure the

confidentiality of the information you or other clients provide to us. Where you request us to act for you on a matter where you are one of a number of parties competing for the same asset (for example, in a tender or corporate auction or in an insolvency situation), you agree that we may act for other parties on the same matter provided we comply with applicable ethical rules and are able to act in the best interests of each client.

***Insurance or Third Party Billing.*** Client may wish to determine whether Client has insurance to cover its exposure concerning matters for which Reed Smith shall serve as Client's counsel. Absent an express and specific requirement in the Scope of Engagement above identifying Reed Smith as responsible, Client shall be responsible for (1) determining whether Client has insurance coverage associated with the Scope of Engagement and (2) for tendering any claim or suit to Client's insurer. It is possible that Client or Reed Smith may secure the agreement of an insurance company that Reed Smith may act as Client's counsel. Some insurance companies impose restrictions on the type, amount of or hourly rate for legal services for which they will pay and may further refuse reimbursement for various cost items. In addition, some insurance companies may unilaterally impose other restrictions which are different from the terms provided hereunder. While Reed Smith will, of course, work cooperatively with any insurance company defending Client, and make every effort to minimize the expense not absorbed by Client's insurance company, Reed Smith's engagement agreement is with Client, and Client agrees to pay promptly Reed Smith's invoices, and Client will seek such reimbursement from the insurance company as may be appropriate. In the event a billing dispute arises between Client and the insurance carrier, Reed Smith will advise Client and, if Client wishes, Reed Smith will represent Client in connection with that dispute, at Reed Smith's standard hourly rates.

Additionally, upon request, we will forward or address our invoices to a third party designated by Client, other than an insurance company. Client agrees that in so requesting, Client waives any conflict of interest arising under applicable law which requires Client's consent for us to accept payment of legal fees from a party other than the represented client. We commit to Client that our representation of Client shall not be made less independent through the acceptance of fees

- 4 -

EXHIBIT A

for our services to Client from a party other than Client.

*Matters Involving Patents.* We do not offer the service of annuity/maintenance fee payments on pending and granted patents. Therefore, Client is required to either contract with a direct-pay firm for payment of annuities/maintenance fees or undertake payment of such fees on Client's own behalf. If requested, we can assist Client in identifying such a firm but Client agrees to inform us of its election in this regard. Further, Client agrees that if Client does not report to us how annuity/maintenance fee payments will be made for Client's pending and granted patents, that we may conclude, and therefore may rely upon, that Client has arranged to have the fees paid by some means other than through us.

*Responses to Audit Letters.* If Client engages an accountant to audit Client's financial statements, it is likely the accountant will request, during the audit, that Reed Smith provide a written description of all pending or threatened claims for lawsuits to which Reed Smith has given substantive attention on Client's behalf. This request is typically a standardized letter provided by the accountant which Client is requested to send to Reed Smith. Minimum fees for responses to audit letters will be billed at $550 for non-profit entities, $1050 for non-public, for-profit entities, and $1,550 for public entities. Client agrees that these fixed fees are reasonable in view of the time Reed Smith shall spend in preparing letters to Client's auditor. However, if more than three hours of time is necessary, we will charge our regular hourly rates.

*Disposition of Records.* Reed Smith is not obligated to keep files/records related to a matter after that matter is finished unless required to do so by operation of law. Reed Smith may destroy any file materials (hard copy or electronic form) after termination of the matter involved, unless Client requests those materials within thirty days of notification of Reed Smith's intent to destroy them.

*Exclusion of Owners, Subsidiaries, Officers, Directors and Employees.* Our client for purposes of our representation is Client as specifically identified in the engagement letter for the matter, and not, unless expressly named in the engagement letter, any "Affiliates" of Client. "Affiliates" of Client that are excluded from the meaning of Client include, but are not limited to (a) shareholders or constituent partners, members, or other equity stakeholders, (b) parent,

sister, brother and subsidiary companies, (c) joint ventures, limited partnerships, general partnerships, limited liability companies or other unincorporated entities in which Client may have an ownership interest, (d) officers, (e) directors, (f) employees, or (g) any other party related by family relationship, management position or capacity, contractual, cross-ownership or otherwise. *Should Client feel it necessary and appropriate to change the identified client or to include any of the foregoing within the definition of "Client" for a particular matter, please discuss this matter with us before engaging us.* Our objective in this policy is to avoid situations where (1) true clients or parties in interest being represented by our Firm find themselves being sued or in an adverse position to another client of our Firm because our records did not properly identify the client, or (2) after undertaking our representation of Client (or another client), and investing considerable time and dollars on Client's behalf, we are forced to withdraw from a representation because of a conflict which could have been identified earlier with accurate client identification at the inception of our attorney client relationship.

## California Arbitration Clause.

Client has the right to require a non-binding fee arbitration pursuant to Business & Professions Code §§ 6200-6206 in the event of a dispute over fees. Should such a dispute over fees arise, whether or not Client elects to have any fee dispute with Reed Smith arbitrated by such non-binding arbitration, Client and Reed Smith agree any and all controversies, disputes or claims (no matter how characterized or classified) arising out of, in connection with, or in relation to the interpretation, performance or breach of this Agreement (including without limitation the competency of any services provided and Reed Smith's rights to fees earned and expenses incurred), shall be finally determined, at the request of Client or Reed Smith, by binding arbitration conducted in accordance with the then existing rules for commercial arbitration of the American Arbitration Association by an independent private retired California judge, mutually selected by the parties, and judgment upon any award rendered by the arbitrator may be entered by any State or Federal court having jurisdiction thereof. If the parties cannot agree upon a retired judge, then each party shall select one judge and then the two judges shall select a third judge who shall act as sole arbitrator. The decision of the two judges in selecting

EXHIBIT A

the third judge shall be final and incontestable by any party. All arbitrator's fees will be initially apportioned equally between the parties, but the arbitrator shall reapportion arbitration fees as part of the award of costs in favor of the prevailing party. The parties agree that arbitration can be compelled by a court located in California, that arbitration cannot be avoided by the filing of any other lawsuit or proceeding, and that provisional or ancillary remedies can be sought without waiver of arbitration rights. The parties intend that this Agreement to arbitrate be valid, enforceable and irrevocable.

The prevailing party in any arbitration or action to interpret or enforce terms of this Agreement shall be entitled to an award of reasonable attorneys' fees and expenses incurred in the arbitration or action, including any confirmation or enforcement action. It is expressly agreed Reed Smith may elect to represent themselves in any such dispute and resulting arbitration, and if so would be entitled to the reasonable value of such

services in the event Reed Smith is the prevailing party.

**Client's** agreement to arbitrate disputes is not a condition of Reed Smith agreeing to represent Client, and if Client does not wish to agree to arbitrate, Client should advise Reed Smith before signing this Agreement so Reed Smith can delete this section of the Agreement. In addition, Client is free to and should discuss the advisability of arbitration with other counsel or advisors.

By signing this Agreement, Client agrees that, in the event of any dispute arising out of or relating to this Agreement, the relationship, or the services performed (including, but not limited to, disputes regarding attorneys' fees or expenses and those alleging negligence, breach of fiduciary duty, fraud, or any claim based upon a statute), such disputes shall be resolved by submission to binding arbitration as agreed herein.

v-2015-2

EXHIBIT A

**Exhibit "B"**

Query   Reports   Utilities   Help   Log Out

ACCO,(SSx),CLOSED,DISCOVERY,MANADR,PROTORD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA (Western Division - Los Angeles)
## CIVIL DOCKET FOR CASE #: 2:17-cv-07627-PSG-SS

Abraham Stuart Rubin et al v. Certain Underwriters at Lloyds,
London, Subscribing to Certificate Number SRD526993
Assigned to: Judge Philip S. Gutierrez
Referred to: Magistrate Judge Suzanne H. Segal
Demand: $75,000
Cause: 28:1332 Diversity-Breach of Contract

Date Filed: 10/17/2017
Date Terminated: 11/02/2018
Jury Demand: Plaintiff
Nature of Suit: 110 Insurance
Jurisdiction: Diversity

**Plaintiff**

**Abraham Stuart Rubin**                    represented by **Richard Conant Giller**
Reed Smith LLP
355 South Grand Avenue Suite 2900
Los Angeles, CA 90071-1514
213-457-8000
Fax: 213-457-8080
Email: rgiller@reedsmith.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ashley Della Mariko Rodriguez**
Reed Smith LLP
355 South Grand Avenue Suite 2900
Los Angeles, CA 90071
213-457-8000
Fax: 213-457-8080
Email: arodriguez@reedsmith.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Annette Rubin**                    represented by **Richard Conant Giller**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ashley Della Mariko Rodriguez**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Certain Underwriters at Lloyds, London,**          represented by **Joan Elaine Cochran**
**Subscribing to Certificate Number**                Cochran Davis and Associates
**SRD526993**                                        36 Malaga Cove Plz, Ste 206

EXHIBIT B

Palos Verdes, CA 90274
310-373-0900
Email: joan@cochranlaw1.com
*ATTORNEY TO BE NOTICED*

**Lisa Kralik Hansen**
Cochran, Davis & Associates, P.C.
36 Malaga Cove Plaza
Suite 206
Palos Verdes Estates, CA 90274
United Sta
310-373-0900
Fax: 310-373-0244
Email: lisa@cochranlaw1.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/17/2017 | 1 | COMPLAINT Receipt No: 0973-20678675 - Fee: $400, filed by Plaintiffs Abraham Stuart Rubin, Annette Rubin. (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Attorney Richard Conant Giller added to party Abraham Stuart Rubin(pty:pla), Attorney Richard Conant Giller added to party Annette Rubin(pty:pla))(Giller, Richard) (Entered: 10/17/2017) |
| 10/17/2017 | 2 | CIVIL COVER SHEET filed by Plaintiffs Abraham Stuart Rubin, Annette Rubin. (Giller, Richard) (Entered: 10/17/2017) |
| 10/17/2017 | 3 | Request for Clerk to Issue Summons on Complaint (Attorney Civil Case Opening), 1 , Civil Cover Sheet (CV-71) 2 filed by Plaintiffs Abraham Stuart Rubin, Annette Rubin. (Giller, Richard) (Entered: 10/17/2017) |
| 10/17/2017 | 4 | NOTICE of Interested Parties filed by Plaintiffs Abraham Stuart Rubin, Annette Rubin, identifying Plaintiff Abraham Stuart Rubin, Plaintiff Annette Rubin, Defendant Certain Underwriters at Lloyd's, London, subscribing to Ceritificate Number SRD526993, Syndicate HIS33. (Giller, Richard) (Entered: 10/17/2017) |
| 10/18/2017 | 5 | NOTICE of New Case Number and Judge Assignment by Clerk. This case is hereby converted from case type MC to case type CV because the incorrect case type was used at case opening. A new case number has therefore been assigned to this case. District Judge Philip S. Gutierrez and Magistrate Judge Suzanne H. Segal are assigned to this new case number. All future documents must be filed under the new case number, which is 2:17-cv-07627-PSG-SSx. The previous case number, 2:17-mc-00126, is hereby terminated. (car) (Entered: 10/18/2017) |
| 10/18/2017 | 6 | NOTICE OF ASSIGNMENT to District Judge Philip S. Gutierrez and Magistrate Judge Suzanne H. Segal. (car) (Entered: 10/18/2017) |
| 10/18/2017 | 7 | NOTICE TO PARTIES OF COURT-DIRECTED ADR PROGRAM (car) (Entered: 10/18/2017) |
| 10/18/2017 | 8 | 21 DAY Summons Issued re Complaint (Attorney Civil Case Opening), 1 as to Defendant Certain Underwriters at Lloyds, London, Subscribing to Certificate Number SRD526993. (car) (Main Document 8 replaced on 10/18/2017) (car). (Entered: 10/18/2017) |
| 10/18/2017 | 9 | NOTICE OF CLERICAL ERROR: Due to clerical error summons was not previously signed by the case opening clerk Re: Summons Issued (Attorney Civil Case Opening) 8 **Summons has been corrected and replaced** (car) (Entered: 10/18/2017) |

| 10/18/2017 | 10 | STANDING ORDER REGARDING NEWLY ASSIGNED CASES by Judge Philip S. Gutierrez. (ji) (Entered: 10/18/2017) |
|---|---|---|
| 10/26/2017 | 11 | PROOF OF SERVICE Executed by Defendant Abraham Stuart Rubin, Annette Rubin, upon Defendant Certain Underwriters at Lloyds, London, Subscribing to Certificate Number SRD526993 served on 10/20/2017, answer due 11/13/2017. Service of the Summons and Complaint were executed upon Edwin T. Smith, Esq. authorized to accept service at Mendes and Mount LLP on behalf of Certain Underwriters at Lloyd's, London, Subscribing to Certificate Number SRD526993 in compliance with Federal Rules of Civil Procedure by personal service.Original Summons NOT returned. (Giller, Richard) (Entered: 10/26/2017) |
| 10/26/2017 | 12 | PROOF OF SERVICE Executed by Plaintiff Abraham Stuart Rubin, Annette Rubin, upon Defendant Service of the Summons and Complaint were executed upon Eileen Ridley, Attorney for Foley & Lardner LLP and authorized to accept service for Certain Underwriters at Lloyd's, London, Subscribing to Certificate Number SRD526993 in compliance with Federal Rules of Civil Procedure by personal service.Original Summons NOT returned. (Giller, Richard) (Entered: 10/26/2017) |
| 11/08/2017 | 13 | STIPULATION Extending Time to Answer the complaint as to Certain Underwriters at Lloyds, London, Subscribing to Certificate Number SRD526993 answer now due 11/27/2017, re Complaint (Attorney Civil Case Opening), 1 filed by Defendant Certain Underwriters at Lloyds, London, Subscribing to Certificate Number SRD526993. (Attorney Lisa Kralik Hansen added to party Certain Underwriters at Lloyds, London, Subscribing to Certificate Number SRD526993(pty:dft))(Hansen, Lisa) (Entered: 11/08/2017) |
| 11/27/2017 | 14 | ANSWER to Complaint (Attorney Civil Case Opening), 1 with JURY DEMAND filed by Defendant Certain Underwriters at Lloyds, London, Subscribing to Certificate Number SRD526993.(Attorney Joan Elaine Cochran added to party Certain Underwriters at Lloyds, London, Subscribing to Certificate Number SRD526993(pty:dft))(Cochran, Joan) (Entered: 11/27/2017) |
| 11/28/2017 | 15 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents RE: Answer 14 . The following error(s) was/were found: Local Rule 7.1-1 No Notice of Interested Parties and/or no copies. In response to this notice, the Court may: (1) order an amended or correct document to be filed; (2) order the document stricken; or (3) take other action as the Court deems appropriate. You need not take any action in response to this notice unless and until the Court directs you to do so. (bm) (Entered: 11/28/2017) |
| 11/28/2017 | 16 | *CERTIFICATION AND* NOTICE of Interested Parties filed by Defendant Certain Underwriters at Lloyds, London, Subscribing to Certificate Number SRD526993, identifying Abraham Stuart Rubin, Annette Rubin, Certain Underwriters at Lloyd's, London subscribing to Certificate No. SRD526993, Syndicate HIS33 (Hiscox Syndicates Limited) at Lloyd's. (Cochran, Joan) (Entered: 11/28/2017) |
| 11/28/2017 | 17 | ORDER SETTING SCHEDULING CONFERENCE by Judge Philip S. Gutierrez. Scheduling Conference set for 3/26/2018 at 2PM. (wm) (Entered: 11/28/2017) |
| 03/13/2018 | 18 | JOINT REPORT Rule 26(f) Discovery Plan *Meeting* filed by Plaintiffs Abraham Stuart Rubin, Annette Rubin.. (Giller, Richard) (Entered: 03/13/2018) |
| 03/21/2018 | 19 | MINUTE ORDER (IN CHAMBERS) VACATING SCHEDULING CONFERENCE by Judge Philip S. Gutierrez: On the Courts own motion, the Scheduling Conference presently set for March 26, 2018 is VACATED, and the following dates are hereby set. Please review the Courts trial order for further details. Opening Expert Witness Disclosure: 10/9/18, Rebuttal Expert Witness Disclosure: 10/30/18, Expert Discovery Cut-off: |

EXHIBIT B

| | | |
|---|---|---|
| | | 11/20/18, Trial Estimate is 3 days. Amended Complaint due by 4/26/2018. Discovery cut-off 10/2/2018. Motions due by 10/16/2018. Final Pretrial Conference set for 12/17/2018 at 2:30 PM. Jury Trial set for 1/8/2019 at 9:00 AM. (vv) (Entered: 03/21/2018) |
| 03/21/2018 | 20 | ORDER FOR JURY TRIAL by Judge Philip S. Gutierrez: Final Pretrial Conference set for 12/17/2018 at 2:30 PM. Jury Trial set for 1/8/2019 at 9:00 AM. (vv) (Entered: 03/21/2018) |
| 03/21/2018 | 21 | ORDER/REFERRAL to ADR Procedure No 3 by Judge Philip S. Gutierrez: Case ordered to a private mediator based upon a stipulation of the parties or by the court order. ADR Proceeding to be held no later than 11/2/18. (vv) (Entered: 03/21/2018) |
| 03/22/2018 | 22 | Notice of Appearance or Withdrawal of Counsel: for attorney Ashley Della Mariko Rodriguez counsel for Plaintiffs Abraham Stuart Rubin, Annette Rubin. Adding Ashley D. Rodriguez as counsel of record for Plaintiff Abraham Stuart Rubin and Annette Rubin for the reason indicated in the G-123 Notice. Filed by Plaintiffs Ashley D. Rodriguez. (Attorney Ashley Della Mariko Rodriguez added to party Abraham Stuart Rubin(pty:pla), Attorney Ashley Della Mariko Rodriguez added to party Annette Rubin(pty:pla)) (Rodriguez, Ashley) (Entered: 03/22/2018) |
| 03/22/2018 | 23 | NOTICE of Change of Attorney Business or Contact Information: for attorney Ashley Della Mariko Rodriguez counsel for Plaintiffs Abraham Stuart Rubin, Annette Rubin. Filed by Plaintiffs Abraham Stuart Rubin and Annette Rubin. (Rodriguez, Ashley) (Entered: 03/22/2018) |
| 09/07/2018 | 24 | Joint STIPULATION to Continue trial from January 8, 2019 to April 8, 2019, Joint STIPULATION for Central District Trial on April 8, 2019 filed by Defendant Certain Underwriters at Lloyds, London, Subscribing to Certificate Number SRD526993. (Attachments: # 1 Declaration, # 2 Exhibit, # 3 Proposed Order)(Hansen, Lisa) (Entered: 09/07/2018) |
| 09/12/2018 | 25 | ORDER ON STIPULATION TO MODIFY SCHEDULING ORDER 24 by Judge Philip S. Gutierrez: DENIED BY ORDER OF THE COURT. (ab) (Entered: 09/13/2018) |
| 09/19/2018 | 26 | STIPULATION for Protective Order filed by Defendant Certain Underwriters at Lloyds, London, Subscribing to Certificate Number SRD526993. (Attachments: # 1 Proposed Order)(Hansen, Lisa) (Entered: 09/19/2018) |
| 09/27/2018 | 27 | JOINT REPORT of SETTLEMENT filed by Defendant Certain Underwriters at Lloyds, London, Subscribing to Certificate Number SRD526993. (Hansen, Lisa) (Entered: 09/27/2018) |
| 10/02/2018 | 28 | ORDER REGARDING STIPULATION FOR PROTECTIVE ORDER by Magistrate Judge Suzanne H. Segal re Stipulation for Protective Order 26 . (mr) (Entered: 10/02/2018) |
| 10/26/2018 | 29 | STIPULATION to Dismiss Case pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii) filed by Defendant Certain Underwriters at Lloyds, London, Subscribing to Certificate Number SRD526993.(Hansen, Lisa) (Entered: 10/26/2018) |
| 11/02/2018 | 30 | STIPULATION to Dismiss Case pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii) filed by Defendant Certain Underwriters at Lloyds, London, Subscribing to Certificate Number SRD526993. (Attachments: # 1 Proposed Order)(Hansen, Lisa) (Entered: 11/02/2018) |
| 11/02/2018 | 31 | STIPULATION OF VOLUNTARY DISMISSAL OF THE ACTION WITH PREJUDICE; ORDER by Judge Philip S. Gutierrez: IT IS SO ORDERED. (Made JS-6. Case Terminated.) (bm) (Entered: 11/05/2018) |

EXHIBIT B

PACER Service Center

| Transaction Receipt | | | |
|---|---|---|---|
| 07/05/2021 14:08:58 | | | |
| PACER Login: | <span style="background:black">    </span> | Client Code: | |
| Description: | Docket Report | Search Criteria: | 2:17-cv-07627-PSG-SS Start date: 5/27/2016 End date: 7/6/2021 |
| Billable Pages: | 5 | Cost: | 0.50 |



EXHIBIT B

**Exhibit "C"**

**From:** Houston, Marsha A. <MHouston@ReedSmith.com>
**Sent:** Tuesday, December 1, 2020 12:57 PM
**To:** Patrick McGarrigle <PatrickM@mkzlaw.com>; Rivas, Christopher O. <CRivas@ReedSmith.com>
**Subject:** RE: Conflict of Interest Notice (Our File No. 9075-028)

Patrick-
Your clients' consent is not needed for Reed Smith to serve as counsel in this matter.   Both of the referenced insurance recovery matters were resolved long before this matter, involved lawyers who no longer work at Reed Smith, and are not substantially related to the current matter.
Regards,
Marsha

**Marsha A. Houston**
213.457.8067
818.314.8823 (cell)
mhouston@reedsmith.com

**Reed Smith** LLP

355 S. Grand Ave., Suite 2900
Los Angeles, CA 90071
213.457.8000
Fax 213.457.8080
Bio: http://www.reedsmith.com/marsha_houston/

Abu Dhabi | Beijing | Century City | Chicago | Dubai | Falls Church | Greece | Hong Kong | Houston | London | Los Angeles | Munich | New York | Paris | Philadelphia | Pittsburgh | Princeton | Richmond | San Francisco | Shanghai | Silicon Valley | Singapore | Washington DC | Wilmington

**From:** Patrick McGarrigle <PatrickM@mkzlaw.com>
**Sent:** Monday, November 30, 2020 3:33 PM
**To:** Rivas, Christopher O. <CRivas@ReedSmith.com>
**Cc:** Houston, Marsha A. <MHouston@ReedSmith.com>
**Subject:** Conflict of Interest Notice (Our File No. 9075-028)

**EXTERNAL E-MAIL - From PatrickM@mkzlaw.com**

Chris –

I just called you ten minutes or so ago and left you a voice mail concerning Reed Smith's actual conflict of interest as it has represented Glenroy Coachella, LLC concerning the hotel project and various matters related thereto and also represented Stuart Rubin (and his wife) in connection with an insurance claim.  Richard Giller, Esq. is the named partner.

Given how RF was compelled to substitute out, did Reed Smith conduct any due diligence/conflicts check before substituting in?

Glenroy Coachella, LLC and Mr. Rubin do not consent to Reed Smith's representation of Calmwater in an adverse manner against Glenroy or Mr. Rubin or your firm filing any papers adversely against them.


EXHIBIT  C

All rights and remedies are reserved.

Best regards,

**Patrick C. McGarrigle, Esq.**
McGarrigle, Kenney & Zampiello, APC
9600 Topanga Canyon Boulevard, Suite 200
Chatsworth, California 91311
818-998-3300 T
818-998-3344 F
**thefirm@mkzlaw.com**



**Exhibit "D"**

**Evan Smith**

| | |
|---|---|
| **From:** | Giller, Richard C. <richard.giller@pillsburylaw.com> |
| **Sent:** | Friday, June 18, 2021 2:23 PM |
| **To:** | Evan Smith |
| **Cc:** | John Messina, Jr.; srubin@rprp.com; Annette Rubin (ar@rprp.com) |
| **Subject:** | RE: Reed Smith Representation of Glenroy Coachella, LLC Issues |

Evan –

I am not aware that any resolution of the Coachella Project insurance claims had been effectuated before I left Reed Smith.

Best,
Richard

**Richard C. Giller | Partner**
Pillsbury Winthrop Shaw Pittman LLP
725 South Figueroa Street, Suite 2800 | Los Angeles, CA 90017-5406
t +1.213.488.3624
richard.giller@pillsburylaw.com | website bio

**From:** Evan Smith <elsmith@messinahankinlaw.com>
**Sent:** Friday, June 18, 2021 11:47 AM
**To:** Giller, Richard C. <richard.giller@pillsburylaw.com>
**Cc:** John Messina, Jr. <jmessina@messinahankinlaw.com>; srubin@rprp.com; Annette Rubin (ar@rprp.com) <ar@rprp.com>
**Subject:** Reed Smith Representation of Glenroy Coachella, LLC Issues

Dear Mr. Giller:

We are attorneys of record for Mr. Stuart Rubin in connection with Glenroy Coachella, LLC's Chapter 11 case which is pending in the U.S. Bankruptcy Court, Central District of California (case # 2:21-bk-11188-BB), and in a related Superior Court action involving the Coachella hotel project for which you were handling the matter described in the attached engagement letter when you were with Reed Smith LLP. Reed Smith substituted in as counsel for the project owners' major secured creditor in both cases without giving notice to either Mr. and Mrs. Rubin (who you while at Reed Smith represented in a federal action against Lloyd's of London) or to Glenroy Coachella LLC. Reed Smith also did not seek their permission to undertake the adverse representation. In response to our conflict demand letter (attached), Reed Smith has continued to deny the Glenroy insurance claim matter you were still handling up to the time you moved to your current firm remains pending. Therefore, we are planning on moving to seek an order disqualifying them from serving as counsel for the secured creditor in the Bankruptcy case. Before doing so I am writing to you to confirm whether at the time you left Reed Smith the Glenroy insurance claims were still unresolved, as I do not want to make any false claims against them. Please advise, and thank you.

Sincerely yours,

Evan



1

**EVAN L. SMITH**
*OF COUNSEL*



MESSINA & HANKIN LLP
LAWYERS

*Temecula Valley Office*
*24910 Las Brisas Road, Suite 102, Murrieta, California 92562*
*Newport Beach Office*
*1400 Quail Street, Suite 200, Newport Beach, California 92660*

*Telephone:* (951) 894-7332; *Writer's Direct Extension:* 119
*Writer's Mailing Address:* Temecula Valley; *Direct Dial:* (951) 894-7332
*Writer's E-mail:* ELSmith@MessinaHankinLaw.com
*Website:* www.MessinaHankinLaw.com

CONFIDENTIALITY NOTICE: This e-mail and any attached files from Messina & Hankin LLP may contain information that is privileged, confidential and/or exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you received this e-mail by accident, please notify the sender immediately and destroy this e-mail and all copies of it. We may scan and or monitor emails sent to and from our servers to ensure regulatory compliance to protect our clients and business.

The contents of this message, together with any attachments, are intended only for the use of the individual or entity to which they are addressed and may contain information that is legally privileged, confidential and exempt from disclosure. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please notify the original sender or the Pillsbury Winthrop Shaw Pittman Service Desk at Tel: 800-477-0770, Option 1, immediately by telephone and delete this message, along with any attachments, from your computer. Nothing in this message may be construed as a digital or electronic signature of any employee of Pillsbury Winthrop Shaw Pittman. Thank you.


EXHIBIT D

**Exhibit "E"**

# MESSINA & HANKIN, LLP

JOHN A. MESSINA, JR.
THEODORE M. HANKIN
DAVID A. GRABHORN
EVAN L. SMITH
JEFFREY VAN WICK

L A W Y E R S
24910 LAS BRISAS ROAD, SUITE 102
MURRIETA, CALIFORNIA 92562
www.MessinaHankinLaw.com

TELEPHONE: (951) 894-7332
AUTHOR'S EXTENSION: 119
FACSIMILE: (951) 346-3334
Email: ELSmith@MessinaHankinLaw.com

NEWPORT BEACH OFFICE

1400 QUAIL STREET
SUITE 200
NEWPORT BEACH, CA 92660
(949)383-4356

May 4, 2021

**By Electronic Mail; lgasparetti@reedsmith.com,and
By GSO Overnight**.

Lorenzo E. Gasparetti, Managing Partner
Reed Smith LLP
355 South Grand Avenue, Suite 2900
Los Angeles, California 90071

Re: Notice of Disqualifying Conflict of Interest, and
Demand for Withdrawal from Pending Actions & Proceedings.
And Demand for Preservation of Records and Things.

Dear Mr. Gasparetti:

We are legal counsel for Mr. A. Stuart Rubin and Mrs. Annette Rubin in connection with the following pending matters where Mr. Rubin is either a party defendant or an interested person in one or more capacities (Mrs. Rubin is not a party to either matter):

1. As attorneys of record in the civil action currently pending in the Riverside County Superior Court styled *U.S. Real Estate Credit Holdings III-A, LP v. Glenroy Coachella LLC, et al., case number RIC 1905743 (the "Riverside Case"); and*

2. As attorneys of record in the Chapter 11 Bankruptcy Case currently pending in the United States Bankruptcy Court for the Central District of California-Los Angeles Division styled *In re Glenroy Coachella, LLC, case number 2:21-bk-11188-BB (the "Bankruptcy Case").*

In both the Riverside Case and the Bankruptcy Case, Reed Smith LLP are attorneys of record for U.S. Real Estate Credit Holdings III-A, LP ("USRECH") and its non-party manager Calmwater Asset Management, LLC ("CW"). Mr. Rubin is the CEO and Managing Member of Glenroy Coachella LLC ("Glenroy"). Glenroy is currently the Debtor in the Bankruptcy Case, and under the administration of Mr. Richard Marshack, Chapter 11 Trustee, who along with the attorney for the United States Trustee is copied on this letter.



EXHIBIT E

*Lorenzo E. Gasparetti, Managing Partner*
*Re: Notice of Disqualifying Conflict of Interest, etc.*
*Page ~2~ of ~3~*

Prior to November 2019 USRECH, and we believe CW, were represented in the Riverside Case by the law firm of Raines Feldman, which had to withdraw when it merged with the law firm of Rosenfeld, Wolff & Klein, who had been attorneys for the Rubins and their business interests, including Glenroy, for over 25 years. USRECH and CW at that time hired Reed Smith which substituted into the Riverside Case as plaintiff's attorneys of record, with the matter being handled by partners Marsha A. Houston and Christopher O. Rivas, and we are informed and believe Raines Feldman transferred to Reed Smith all or some of their client files which include information derived from the records of their long term prior representation of the Rubins and/or Glenroy.

### Reed Smith's Conflicts

At the time Reed Smith undertook its representation of USRECH and CW it already was representing Glenroy on a mid-six figures insurance claim, with respect to which the handling attorney was recommending a bad-faith lawsuit against the insurers. A copy of the engagement letter is attached hereto as Exhibit "1". Additionally, Reed Smith had not long before represented the Rubins for approximately two years in a civil action that after discovery was settled at mediation for approximately $ 600,000.00 (which is also the approximate amount of the legal fees the Rubins paid Reed Smith for handling the case), all of which must have been revealed by a conflict check. Despite its substantial relationship with the Rubins, Reed Smith never informed the Rubins or Glenroy of its proposed representation of USRECH and CW, nor did it seek or obtain their informed consent to do so as required by California Rules of Professional Conduct Rules 1.7 and 1.8.2 (as to Glenroy) and 1.9 (as to the Rubins).

By email dated November 30, 2019, attorney Patrick McGarrigle, who was representing Glenroy on certain matters notified both Christopher Rivas and Marsha Houston of the foregoing conflicts, and also informed them that neither Glenroy nor Mr. Rubin consented to Reed Smith representing CW in an adverse manner against them. Ms. Houston replied as follows on December 1, 2019 (see attached Exhibit "2"):

"Patrick-
Your clients' consent is not needed for Reed Smith to serve as counsel in this matter. Both of the referenced insurance recovery matters were resolved long before this matter, involved lawyers who no longer work at Reed Smith, and are not substantially related to the current matter.
Regards,
Marsha"

Ms. Houston must have been misinformed because her email is wrong on all points apart from the fact that attorney Richard Giller, who had been handling the Glenroy insurance claim, is no longer with Reed Smith having moved to Pillsbury Winthrop. The insurance claim has not been resolved and is currently an asset of Glenroy's Chapter 11 estate, against which Reed Smith has been taking aggressive action against the interests of both Glenroy and Mr. Rubin.


EXHIBIT *E*

*Lorenzo E. Gasparetti, Managing Partner*
*Re: Notice of Disqualifying Conflict of Interest, etc.*
*Page ~3~ of ~3~*

Therefore, on behalf of Mr. and Mrs. Rubin and their interests we hereby demand that Reed Smith agree to withdraw as counsel for USRECH and/or CW in both the Riverside Case and the Bankruptcy Case. If we do not have written confirmation that Reed Smith will do so by 5:00 p.m. PDT on Wednesday May 5, 2021, we will proceed to take measures to seek its disqualification in both cases. Additionally, our clients continue to fully reserve their rights against Reed Smith and all other persons involved, and we therefore demand that Reed Smith take appropriate measures to protect the confidentiality of their and Glenroy's confidential information, and also preserve and maintain from spoliation any and all records related to this matter, whether physical, digital, or of any other type.

Sincerely yours,

Evan L. Smith

cc: By Electronic Mail Only,

Richard Marshack – rmarshack@marshackhays.com
Ed Hays – ehays@marshackhays.com
Eryk R. Escobar (USTP) – eryk.r.escobar@usdoj.gov
Marsha A. Houston -mhouston@reedsmith.com
Christopher O. Rivas -crivas@reedsmith.com



Exhibit "1"

EXHIBIT _E_



Richard C. Giller
Direct Phone: +1 213 457 8028
Email: rgiller@reedsmith.com

Reed Smith LLP
355 South Grand Avenue
Suite 2900
Los Angeles, CA 90071-1514
+1 213 457 8000
Fax +1 213 457 8080
reedsmith.com

November 30, 2018

**Attorney Work Product - Privileged and Confidential**

**Via Email**

Mr. Stuart Rubin
Glenroy Coachella, LLC
1801 S. La Cienega Blvd, Suite 301
Los Angeles, CA 90035

Re:  **Representation Engagement Letter**

Dear Stuart:

Thank you for engaging Reed Smith to represent Glenroy Coachella, LLC in connection with insurance coverage for a theft claim totalling approximately $300,000 to $400,000 in connection with HVAC inventory on-site for the Glenroy Coachella hotel construction project ("Engagement"). The relevant policies of insurance involved in this claim are: (1) Endurance American Speciality Insurance Co. ("Endurance" or "Sompo"), Policy No. IMU100121135-00; and (2) Westchester Surplus Lines ("Westchester" or "Chubb"), Policy No. I1113323A001. This letter will confirm the scope and work and will describe the arrangement and terms we discussed pursuant to which we will represent Glenroy Coachella, LLC.

Our representation of Glenroy Coachella, LLC is subject to both parties' agreement as set forth in this letter and the enclosed Standard Terms and Conditions of Engagement ("Standard Terms"). We have not been engaged by Glenroy Coachella, LLC for any project other than as set forth herein.

As indicated, unless otherwise specified in this engagement letter, the terms of the Engagement will be in accordance with our Firm's enclosed Standard Terms. We invite your attention to two provisions within these terms that are particularly important to us in order for us to undertake the representation contemplated here. First, "Exclusion of Owners, Subsidiaries, Officers, Directors and Employees" defines and provides limitations as to what entities the attorney-client relationship shall extend to under this representation. Second, "Future Conflicts in Unrelated Matters" addresses future conflicts of interest that may occur for us and provides for your advanced consent to these conflicts while you remain a current client. We ask that you consider these terms, as well as all of the other provisions of the Standard Terms, prior to agreeing to engage us as counsel.

My current hourly rate is $675 per hour, and current rates for other Reed Smith partners, and associates who will work on the Engagement, range from $430 to $480 per hour. These rates are subject to periodic adjustment as outlined in the Standard Terms. Our policy on expenses, including those for which it is Glenroy Coachella, LLC's initial responsibility to pay, is contained in the Standard Terms.

ABU DHABI ♦ ATHENS ♦ AUSTIN ♦ BEIJING ♦ CENTURY CITY ♦ CHICAGO ♦ DUBAI ♦ FRANKFURT ♦ HONG KONG ♦ HOUSTON ♦ KAZAKHSTAN ♦ LONDON ♦ LOS ANGELES ♦ MIAMI ♦ MUNICH
NEW YORK ♦ PARIS ♦ PHILADELPHIA ♦ PITTSBURGH ♦ PRINCETON ♦ RICHMOND ♦ SAN FRANCISCO ♦ SHANGHAI ♦ SILICON VALLEY ♦ SINGAPORE ♦ TYSONS ♦ WASHINGTON, D.C. ♦ WILMINGTON

US_ACTIVE-143800269.1-JAMARDOR 11/30/2018 9:58 AM



EXHIBIT 1

EXHIBIT E

Mr. Stuart Rubin
November 30, 2018
Page 2

We normally receive a retainer from new clients. Based on the resources we will be committing at the outset, we request a retainer of $10,000.00. We will hold that retainer to apply against our statements.

If the terms of this engagement letter and the Standard Terms meet with your approval, please sign below and return the enclosed copy of same, keeping the second copy for your files. If, in the alternative, you have any questions regarding this letter, the enclosed and incorporated Standard Terms, or otherwise our representation of Glenroy Coachella, LLC, please contact me. Your communication to us to proceed with this matter, prior to sending us a signed copy of this letter, will be recognized and relied upon by us as your acceptance of the letter along with the Standard Terms. We look forward to the opportunity to work with and for you.

Very truly yours,

Richard C. Giller

RCG:jm

Enclosure

Accepted By:

GLENROY COACHELLA, LLC

By: _____

Title: _____

Date: ____12\15\19_____



### Reed Smith LLP
### Standard Terms and Conditions of Engagement

The following standard terms and conditions of engagement are incorporated in and made a part of the engagement letter for each matter that Reed Smith LLP ("Reed Smith" or "Firm") is engaged to represent "Client," as defined in the engagement letter. To the extent Client provides the Firm with different, supplemental, or alternative terms, the terms provided hereunder shall prevail unless Firm specifically agrees otherwise in writing.

*Fees.* Reed Smith will bill Client on a monthly basis unless otherwise specified in the engagement letter for a specific matter. Each bill will provide a detailed accounting of services rendered and/or recorded during the immediately preceding month. The "services rendered" will be broken down into two separate components: (i) legal services provided by our attorneys, paralegals and other professionals, and (ii) reimbursable

costs and expenses incurred by Reed Smith in connection with its representation of Client. With respect to legal services, Client will be billed on an hourly basis (unless otherwise specified) at rates which will vary with the nature of the matter, as well as with the experience and skill of the attorney, paralegal or professional rendering the services. Please note that our regular hourly rates are typically adjusted as of January 1 of each year and may, from time to time, be adjusted at other times during the year.

*Reimbursable Costs.* The second component of "services rendered" shown on our bill to Client will be a summary of expenses by category which includes: long distance telephone, postage, photocopy/scan/print, facsimile charges, secretarial and word processing overtime, etc. See table below:

| Costs & Expenses | |
| --- | --- |
| Service | Charge |
| Outgoing Faxes | *From a fax machine:*  $1/p U.S./£1/p UK<br>*From a desktop:*  Long distance charges |
| Copy/Scan/Print | *Black/White:*  15¢/p U.S./£0.25/p UK<br>*Color:*  $1/p U.S./£1/p UK |
| Telephone | Actual long distance charges on Firm systems and on Firm or other calling cards |
| Courier/Overnight Services | Actual charges incurred |
| Postage | Actual charges incurred |
| Electronic Research | Actual charges incurred |
| In-House Video Conferencing | Actual cost of call plus $15 (£25)/hr for technical support |
| Third Party Conference Calls | Actual invoiced cost |
| Technology Support | Hourly rate for technician time plus all direct costs |
| Overtime | Actual charge incurred when overtime is warranted |
| Third Party Services such as: transcripts, title searches, title insurance, filing and recordation fees and taxes, and other transaction-related disbursements, such as expert witnesses and consultants and investigators. | Items over $1,000 are typically sent directly to client for payment. Otherwise, costs for such services are billed to clients at actual invoiced cost. |

  

EXHIBIT E    EXHIBIT 1

| Data Hosting | Actual charges incurred |
|---|---|

While many expense costs are generally paid by the Firm and then charged to Client, it is our practice to forward invoices for significant filing fees or disbursements (e.g., $1,000 or higher) to Client for direct payment to the vendor. In addition, if substantial costs are to be advanced in connection with the matter, it is our practice to obtain a retainer from Client to cover such costs.

*Retainer.* It is the Firm's policy to require an initial retainer before commencing legal services for a new client. The amount of the retainer is specified in the attached engagement letter. As monies become due for legal fees and expenses, those items will be deducted from the Retainer, with notice to you of those deductions. Of course, with respect to any other matters we may undertake on the Client's behalf, we may request an additional retainer that is reasonable in light of the anticipated scope of the task at hand.

Unless Client elects that the retainer (or other funds provided to the Firm in trust) to be placed in a separate account, applicable law may require the Firm to deposit retainers into an account from which interest generated from the account is used to provide legal services to the indigent or for other purposes that benefit the public and that are related to legal services. If Client desires Client's deposit to be placed in a trust account with interest payable to Client, please so advise on an Advance Deposit Form, along with Client's taxpayer identification number on a properly executed W-9 Form. Reed Smith's trust accounts are held in approved financial institutions, and bear interest at the bank's rates for this type of account. The choice of bank, however, is subject to change at our discretion.

*Payment.* Unless otherwise specifically agreed in the engagement letter, we expect payment from Client within 30 days of the invoice date, as prompt and full payment for our services is vital to our ability to efficiently provide legal services to all clients. Client agrees to pay our invoice within 30 days of the bill date, unless otherwise specified in the letter. In the event Client fails to pay any invoice within 45 days of receipt of such invoice, the Firm reserves the right, and Client agrees to allow the Firm, to automatically withdraw from this engagement and representation upon written notice of such withdrawal.

*Interest on Overdue Accounts.* Client further understands and agrees that if payment is not made within 30 days of the bill date, Client's account shall be considered past due, after which an interest charge will be added to the outstanding balance in an amount equal to .83% per month. We also reserve the right to discontinue services if our bills are not paid in a timely manner, and to seek payment for all outstanding and accrued fees and expenses.

*Term of Engagement.* Either of us may terminate the engagement at any time for any reason by written notice, subject on our part to applicable rules of professional conduct. If Client so requests, we will suggest possible successor counsel. If permission for withdrawal is required by a court, we will promptly apply for such permission, in accordance with local court rules, and Client agrees to engage successor counsel to represent Client.

*Information/Client Responsibilities.* We will keep Client informed of the status of all matters and, as appropriate, will send Client copies of correspondence, pleadings and/or other relevant documents which we initiate and copies of correspondence, pleadings and/or other relevant documents we receive from others. Client agrees to cooperate fully with the Firm and to provide promptly all information known or available to Client relevant to the Firm's representation of Client's interests, including furnishing all documents requested by us.

*Termination and Conclusion of Attorney-Client Relationship.* Unless previously terminated, our representation of the Client will terminate, and the attorney-client relationship shall be deemed concluded, after our completion of all matters for which we have represented Client. But no later than the date of the invoice under which the last matter was billed in full. The Firm expects full payment for any amounts owed at that time.

*Post-Engagement Matters.* Client has engaged the Firm to provide legal services in connection with a specific matter as described in the engagement letter. After completion of the matter, changes may occur in the applicable laws or regulations that could have an impact on the Client's future rights and liabilities. Unless Client engages the Firm to provide additional

2




advice on issues arising from the matter, we have no continuing obligation to advise Client with respect to future developments.

*Deal Lists.* The Firm reserves the right to use the Client's name and/or the descriptive elements of corporate finance transactions the Client has undertaken with our assistance, in deal lists communicated to our existing or prospective clients or the media, unless Client instruct us otherwise.

*External Electronic Communication Authorization.* The Firm may send documents or other information that is covered by the attorney-client or work product privileges using external electronic communication ("EC") (via the internet or other network). Client understands that EC is not an absolutely secure method of communication. Client acknowledges and accepts the risk and authorizes the Firm to use EC means to communicate with Client or others necessary to effectively represent the Client. If there are certain documents with respect to which the Client wishes to maintain absolute confidentiality, the Client must advise the Firm in writing not to send them via EC and the Firm will comply with Client's request.

*Internal Communications.* There are occasions when lawyers in the Firm find it useful and helpful to discuss our professional obligations to clients with lawyers experienced in such matters. Accordingly, as part of our agreement concerning our representation of Client, Client agrees that if we determine in our own discretion during the course of the representation that it is either necessary or appropriate to consult with our Firm's Legal Department (either the Firm's in-house counsel or, if we choose, outside counsel) we have Client's consent to do so. Any such communications are and will be deemed to be communications protected by the Firm's attorney-client privilege, and our representation of Client shall not, thereby, waive any attorney-client privilege that the Firm may otherwise have protecting the confidentiality of our communications with counsel.

*Future Conflicts In Unrelated Matters.* The Firm's ability to represent any and all clients is governed by the applicable rules of professional conduct, which include but are not limited to rules regarding conflicts of interest between multiple clients of a law firm or between a law firm and its clients (collectively, "the Conflicts Rules"). Except as we may have already disclosed, the Firm is not presently aware of a conflict created by the proposed representation of Client that

would trigger the Conflicts Rules at this time. However, the nature and scope of the Firm's work for other clients may give rise to conflicts of interest in the future. The purpose of this section of the Standard Terms is to explain how the Firm proposes to resolve future conflicts issues so that the Client can decide whether or not to be represented by the Firm. In other words, the purpose of this section is to establish a waiver of future conflicts but to do so subject to the conditions and limitations noted herein.

The Scope of the Waiver

The Firm only requires Client's waiver for future work for other clients that is entirely factually and legally unrelated to the work we shall do for Client, but is adverse to Client or Client's interest. Thus, the Firm does not recognize that this waiver would allow it:

- at any time, to attack the work that the Firm performs for the Client;
- to affect the independence of the Firm concerning work that the Firm performs for the Client;
- at any time, to disclose or use adversely to the Client, or to place itself in a position to disclose or use, any confidential and nonpublic information of the Client;
- at any time, to allow lawyers [or nonlawyer staff] who work for the Client to simultaneously work adversely to the Client; or
- for so long as the Firm continues to represent the Client, to allege criminal conduct by the Client.

Outside of these limitations, the Firm is and will remain free to represent other clients adversely to the Client. In other words, we may represent other clients in negotiations, business transactions, litigation, alternative dispute resolution, administrative proceedings, discovery disputes, or other legal matters even if those matters are adverse to Client or Client's interests. For example, and solely by way of illustration, the Firm could represent another client in a contractual dispute against Client, including litigation, provided we did not advise Client concerning the contract in question or have confidential information of Client that bears directly on the aspect of the contract in dispute.

Although the Client may revoke this waiver as to future matters at any time, such revocation will not

EXHIBIT E EXHIBIT 1

affect any matters undertaken by the Firm prior to receipt of notice by the Firm of the revocation. In addition, and to the extent permitted by the applicable rules of professional conduct, the Client must consent to the Firm's withdrawal from the Client's matters if withdrawal is necessary for the Firm to continue representing other clients. If the Firm does withdraw from a matter, however, it will assist Client in transferring the matter to other counsel of Client's choice and will not bill Client for legal fees, expenses, or other charges arising from the need to assist successor counsel in coming up to speed.

Considerations Relating to Client's Decision to Provide the Waiver

Having made you aware of this conflicts waiver and its potential implications for you, we ask that you state exception to agreeing to this waiver if you have any unanswered or unaddressed reservations or concerns. We also strongly encourage you to discuss this waiver with independent counsel of your choice.

As we have already explained, there are questions that Client should address before a decision to agree to waive future conflicts is made:

- Is there a material risk of adverse disclosure or use of confidential client information?
- Is there a material risk that the Firm will be less zealous or eager when representing the Client because of other adverse representations?
- Is the Client ready, willing, and able to live by the commitment this waiver requires in the future?

As to the first two questions, we believe that any risk to the Client is minimal to nonexistent in light of the protections and limitations contained in this and other sections of the Standard Terms as well as the rules of professional conduct that the Firm is bound by. As to the final question, that is necessarily the Client's choice and not ours. However, the Client's agreement to provide this waiver is fundamental to and necessary for the Firm's agreement to represent the Client.

*Clients with Competing Interests.* Some of our current or future clients are likely to operate in the same industry or sector as you and may have interests which are adverse to you. You accept that we may act for such other clients. We will continue to have rigorous procedures to identify conflicts and ensure the

confidentiality of the information you or other clients provide to us. Where you request us to act for you on a matter where you are one of a number of parties competing for the same asset (for example, in a tender or corporate auction or in an insolvency situation), you agree that we may act for other parties on the same matter provided we comply with applicable ethical rules and are able to act in the best interests of each client.

*Insurance or Third Party Billing.* Client may wish to determine whether Client has insurance to cover its exposure concerning matters for which Reed Smith shall serve as Client's counsel. Absent an express and specific requirement in the Scope of Engagement above identifying Reed Smith as responsible, Client shall be responsible for (1) determining whether Client has insurance coverage associated with the Scope of Engagement and (2) for tendering any claim or suit to Client's insurer. It is possible that Client or Reed Smith may secure the agreement of an insurance company that Reed Smith may act as Client's counsel. Some insurance companies impose restrictions on the type, amount of or hourly rate for legal services for which they will pay and may further refuse reimbursement for various cost items. In addition, some insurance companies may unilaterally impose other restrictions which are different from the terms provided hereunder. While Reed Smith will, of course, work cooperatively with any insurance company defending Client, and make every effort to minimize the expense not absorbed by Client's insurance company, Reed Smith's engagement agreement is with Client, and Client agrees to pay promptly Reed Smith's invoices, and Client will seek such reimbursement from the insurance company as may be appropriate. In the event a billing dispute arises between Client and the insurance carrier, Reed Smith will advise Client and, if Client wishes, Reed Smith will represent Client in connection with that dispute, at Reed Smith's standard hourly rates.

Additionally, upon request, we will forward or address our invoices to a third party designated by Client, other than an insurance company. Client agrees that in so requesting, Client waives any conflict of interest arising under applicable law which requires Client's consent for us to accept payment of legal fees from a party other than the represented client. We commit to Client that our representation of Client shall not be made less independent through the acceptance of fees

EXHIBIT E    EXHIBIT 1

for our services to Client from a party other than Client.

*Matters Involving Patents.* We do not offer the service of annuity/maintenance fee payments on pending and granted patents. Therefore, Client is required to either contract with a direct-pay firm for payment of annuities/maintenance fees or undertake payment of such fees on Client's own behalf. If requested, we can assist Client in identifying such a firm but Client agrees to inform us of its election in this regard. Further, Client agrees that if Client does not report to us how annuity/maintenance fee payments will be made for Client's pending and granted patents, that we may conclude, and therefore may rely upon, that Client has arranged to have the fees paid by some means other than through us.

*Responses to Audit Letters.* If Client engages an accountant to audit Client's financial statements, it is likely the accountant will request, during the audit, that Reed Smith provide a written description of all pending or threatened claims for lawsuits to which Reed Smith has given substantive attention on Client's behalf. This request is typically a standardized letter provided by the accountant which Client is requested to send to Reed Smith. Minimum fees for responses to audit letters will be billed at $550 for non-profit entities, $1050 for non-public, for-profit entities, and $1,550 for public entities. Client agrees that these fixed fees are reasonable in view of the time Reed Smith shall spend in preparing letters to Client's auditor. However, if more than three hours of time is necessary, we will charge our regular hourly rates.

*Disposition of Records.* Reed Smith is not obligated to keep files/records related to a matter after that matter is finished unless required to do so by operation of law. Reed Smith may destroy any file materials (hard copy or electronic form) after termination of the matter involved, unless Client requests those materials within thirty days of notification of Reed Smith's intent to destroy them.

*Exclusion of Owners, Subsidiaries, Officers, Directors and Employees.* Our client for purposes of our representation is Client as specifically identified in the engagement letter for the matter, and not, unless expressly named in the engagement letter, any "Affiliates" of Client. "Affiliates" of Client that are excluded from the meaning of Client include, but are not limited to (a) shareholders or constituent partners, members, or other equity stakeholders, (b) parent,

sister, brother and subsidiary companies, (c) joint ventures, limited partnerships, general partnerships, limited liability companies or other unincorporated entities in which Client may have an ownership interest, (d) officers, (e) directors, (f) employees, or (g) any other party related by family relationship, management position or capacity, contractual, cross-ownership or otherwise. *Should Client feel it necessary and appropriate to change the identified client or to include any of the foregoing within the definition of "Client" for a particular matter, please discuss this matter with us before engaging us.* Our objective in this policy is to avoid situations where (1) true clients or parties in interest being represented by our Firm find themselves being sued or in an adverse position to another client of our Firm because our records did not properly identify the client, or (2) after undertaking our representation of Client (or another client), and investing considerable time and dollars on Client's behalf, we are forced to withdraw from a representation because of a conflict which could have been identified earlier with accurate client identification at the inception of our attorney client relationship.

**California Arbitration Clause.**

Client has the right to require a non-binding fee arbitration pursuant to Business & Professions Code §§ 6200-6206 in the event of a dispute over fees. Should such a dispute over fees arise, whether or not Client elects to have any fee dispute with Reed Smith arbitrated by such non-binding arbitration, Client and Reed Smith agree any and all controversies, disputes or claims (no matter how characterized or classified) arising out of, in connection with, or in relation to the interpretation, performance or breach of this Agreement (including without limitation the competency of any services provided and Reed Smith's rights to fees earned and expenses incurred), shall be finally determined, at the request of Client or Reed Smith, by binding arbitration conducted in accordance with the then existing rules for commercial arbitration of the American Arbitration Association by an independent private retired California judge, mutually selected by the parties, and judgment upon any award rendered by the arbitrator may be entered by any State or Federal court having jurisdiction thereof. If the parties cannot agree upon a retired judge, then each party shall select one judge and then the two judges shall select a third judge who shall act as sole arbitrator. The decision of the two judges in selecting




the third judge shall be final and incontestable by any party. All arbitrator's fees will be initially apportioned equally between the parties, but the arbitrator shall reapportion arbitration fees as part of the award of costs in favor of the prevailing party. The parties agree that arbitration can be compelled by a court located in California, that arbitration cannot be avoided by the filing of any other lawsuit or proceeding, and that provisional or ancillary remedies can be sought without waiver of arbitration rights. The parties intend that this Agreement to arbitrate be valid, enforceable and irrevocable.

The prevailing party in any arbitration or action to interpret or enforce terms of this Agreement shall be entitled to an award of reasonable attorneys' fees and expenses incurred in the arbitration or action, including any confirmation or enforcement action. It is expressly agreed Reed Smith may elect to represent themselves in any such dispute and resulting arbitration, and if so would be entitled to the reasonable value of such

services in the event Reed Smith is the prevailing party.

Client's agreement to arbitrate disputes is not a condition of Reed Smith agreeing to represent Client, and if Client does not wish to agree to arbitrate, Client should advise Reed Smith before signing this Agreement so Reed Smith can delete this section of the Agreement. In addition, Client is free to and should discuss the advisability of arbitration with other counsel or advisors.

By signing this Agreement, Client agrees that, in the event of any dispute arising out of or relating to this Agreement, the relationship, or the services performed (including, but not limited to, disputes regarding attorneys' fees or expenses and those alleging negligence, breach of fiduciary duty, fraud, or any claim based upon a statute), such disputes shall be resolved by submission to binding arbitration as agreed herein.

v-2015-2





Exhibit "2"

EXHIBIT *E*

**From:** Houston, Marsha A. <MHouston@ReedSmith.com>
**Sent:** Tuesday, December 1, 2020 12:57 PM
**To:** Patrick McGarrigle <PatrickM@mkzlaw.com>; Rivas, Christopher O. <CRivas@ReedSmith.com>
**Subject:** RE: Conflict of Interest Notice (Our File No. 9075-028)

Patrick-
Your clients' consent is not needed for Reed Smith to serve as counsel in this matter.   Both of the referenced insurance recovery matters were resolved long before this matter, involved lawyers who no longer work at Reed Smith, and are not substantially related to the current matter.
Regards,
Marsha

**Marsha A. Houston**
213.457.8067
818.314.8823 (cell)
mhouston@reedsmith.com

**Reed Smith** LLP

355 S. Grand Ave., Suite 2900
Los Angeles, CA 90071
213.457.8000
Fax 213.457.8080
Bio: http://www.reedsmith.com/marsha_houston/

Abu Dhabi | Beijing | Century City | Chicago | Dubai | Falls Church | Greece | Hong Kong | Houston | London | Los Angeles | Munich | New York | Paris | Philadelphia | Pittsburgh | Princeton | Richmond | San Francisco | Shanghai | Silicon Valley | Singapore | Washington DC | Wilmington

**From:** Patrick McGarrigle <PatrickM@mkzlaw.com>
**Sent:** Monday, November 30, 2020 3:33 PM
**To:** Rivas, Christopher O. <CRivas@ReedSmith.com>
**Cc:** Houston, Marsha A. <MHouston@ReedSmith.com>
**Subject:** Conflict of Interest Notice (Our File No. 9075-028)

EXTERNAL E-MAIL - From PatrickM@mkzlaw.com

Chris –

I just called you ten minutes or so ago and left you a voice mail concerning Reed Smith's actual conflict of interest as it has represented Glenroy Coachella, LLC concerning the hotel project and various matters related thereto and also represented Stuart Rubin (and his wife) in connection with an insurance claim.  Richard Giller, Esq. is the named partner.

Given how RF was compelled to substitute out, did Reed Smith conduct any due diligence/conflicts check before substituting in?

Glenroy Coachella, LLC and Mr. Rubin do not consent to Reed Smith's representation of Calmwater in an adverse manner against Glenroy or Mr. Rubin or your firm filing any papers adversely against them.



All rights and remedies are reserved.

Best regards,

**Patrick C. McGarrigle, Esq.**
McGarrigle, Kenney & Zampiello, APC
9600 Topanga Canyon Boulevard, Suite 200
Chatsworth, California 91311
818-998-3300 T
818-998-3344 F
thefirm@mkzlaw.com



EXHIBIT 2

EXHIBIT E

Exhibit "F"

## Evan Smith

| | |
|---|---|
| **From:** | Kennedy, Peter J. <PKennedy@ReedSmith.com> |
| **Sent:** | Wednesday, May 5, 2021 4:18 PM |
| **To:** | Evan Smith |
| **Cc:** | John Messina, Jr.; rmarshack@marshackhays.com; EHays@MarshackHays.com; eryk.r.escobar@usdoj.gov |
| **Subject:** | FW: Motion to Appoint Trustee |

Dear Mr. Smith-
Your letter of today's date has been referred to me for handling.  Please direct any further correspondence on this topic to my attention.  My colleagues will continue to handle the merits of the case.

Your clients' threat of disqualification has been raised twice before by your predecessor counsel: on 30 November 2020, and again on 18 February 2021.  This current threat has no more merit than the prior threats, and we reject your assertion that we have a disqualifying conflict.  Any disqualification effort, brought after months of litigation and with your client on the brink of a contempt finding, will be seen as a frivolous attempt to delay the inevitable and distract from the merits.

Peter J. Kennedy
Reed Smith LLP
355 South Grand Avenue
Suite 2900
Los Angeles, CA 90071
(213) 457-8062 - direct
pkennedy@reedsmith.com

**From:** Kennedy, Peter J.
**Sent:** Friday, February 19, 2021 3:33 PM
**To:** 'dan@wsrlaw.net' <dan@wsrlaw.net>
**Cc:** 'jim@wsrlaw.net' <jim@wsrlaw.net>; 'crystle@wsrlaw.net' <crystle@wsrlaw.net>
**Subject:** FW: Motion to Appoint Trustee

Dan-
I'm helping the firm with your client's claim of a disqualifying conflict of interest, originally asserted on 30 November 2020 and responded to the next day.   Going forward, please direct any correspondence on that subject to me; my colleagues will continue to handle the merits of the case.

The attorney-client relationship terminated in June 2019, the date of the last invoice in this matter (attached) as agreed by your client in the attached engagement letter.  Also, the lawyers who worked on the matter have since left the firm.

Thanks,
Peter

Peter J. Kennedy
Reed Smith LLP
355 South Grand Avenue
Suite 2900
Los Angeles, CA 90071



EXHIBIT F

(213) 457-8062 - direct
pkennedy@reedsmith.com

**From:** Daniel J. Weintraub <dan@wsrlaw.net>
**Sent:** Thursday, February 18, 2021 8:09 AM
**To:** Houston, Marsha A. <MHouston@ReedSmith.com>; Rivas, Christopher O. <CRivas@ReedSmith.com>
**Cc:** Jim Selth <jim@wsrlaw.net>; Crystle J. Lindsey <crystle@wsrlaw.net>
**Subject:** Motion to Appoint Trustee

**EXTERNAL E-MAIL - From dan@wsrlaw.net**

Marsha

I was disappointed to learn that you blatantly misrepresented yourself and your position to me in our call yesterday.  I asked when we spoke at 1 if you had seen the demand for turnover delivered to the receiver and what your client's position was regarding our turnover demand.  You responded that  they hadn't decided yet, that you would be speaking with them later and would likely be able to get back to me with their position today.  Five hours later you filed your 25 page motion to appoint a trustee with 5 supporting declarations with hundreds of pages of exhibits.  You also deliberately set the motion for a date allowing the least amount of time possible for the debtor to respond despite the fact that there is a receiver in place and no cash or business operations whatsoever and no need for an expedited hearing.

The debtor requests that you continue the hearing for 30 days to allow it to conduct discovery, interview and retain an independent CRO and have full and fair opportunity to prepare and present its opposition.  There is no good faith basis for what you've done and its apparent you are trying to jam up the debtor and deprive it of an opportunity to reorganize and properly respond to your motion.  We will agree to defer our turnover demand until resolution of your motion.  If you do not agree please let me know and we file an emergency motion seeking such relief from the Court.  This shouldn't be necessary under the circumstances of this case.

It has also come to our attention that your firm previously represented Glenroy Coachella, LLC on this very project and Stuart and Annette Rubin personally.  Your firm has a clear conflict of interest which is not covered by your firm's boilerplate conflict waiver and raises serious ethical issues.   The debtor intends to move to disqualify your firm and reserves all rights with respect to same.

Please provide me with your prompt response to our request to continue the hearing.

Dan

Daniel J. Weintraub
Weintraub & Selth, APC
11766 Wilshire Boulevard, Suite 1170
Los Angeles, CA  90025
(310) 207-1494
(310) 442-0660 Fax
dan@wsrlaw.net
www.wsbankruptcylaw.com





NOTICE TO RECIPIENT:  THIS E-MAIL IS MEANT FOR ONLY THE INTENDED RECIPIENT OF THE TRANSMISSION AND THIS COMMUNICATION IS INTENDED TO BE PRIVILEGED BY LAW.  IF YOU RECEIVED THIS E-MAIL IN ERROR, ANY REVIEW, USE, DISSEMINATION, DISTRIBUTION,

OR COPYING OF THIS E-MAIL IS STRICTLY PROHIBITED.  PLEASE NOTIFY US IMMEDIATELY OF THE ERROR BY RETURN-E-MAIL AND
PLEASE DELETE THIS MESSAGE FROM YOUR SYSTEM.  THANK YOU IN ADVANCE FOR YOUR COOPERATION.

* * *

This E-mail, along with any attachments, is considered confidential and may well be legally privileged. If you have
received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this
message from your system. Please do not copy it or use it for any purposes, or disclose its contents to any other
person. Thank you for your cooperation.

Disclaimer Version RS.US.201.407.01



# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

24910 Las Brisas Road, Suite 102, Murrieta, CA 92562

A true and correct copy of the foregoing document entitled (*specify*): Motion for Order Disqualifying Reed Smith LLP,
And/Or Any Of Its Attorneys, From Representing U.S. Real Estate Credit Holdings III-A, L.P. Due to Conflicts of Interest
Given Its Ongoing Representation of Debtor, and Prior Representation of Debtor's Manager; Memorandum of Points
and Authorities; and declarations of A. Stuart Rubin; Annette Rubin; Evan L. Smith; and Patrick C. McGarrigle.
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in
the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
07/07/2021          , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that
the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated
below:

☑ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL:**
On (*date*)          07/07/2021          , I served the following persons and/or entities at the last known addresses in this bankruptcy
case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail,
first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the
judge <u>will be completed</u> no later than 24 hours after the document is filed.

Debtor:  Glenroy Coachella, LLC, 1801 S. La Cienega Blvd., Suite 301, Los Angeles, CA 90035

☑ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)    07/07/2021         , I served
the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is
filed.

Hon. Sheri Bluebond                          Peter Kennedy, Esquire
U.S. Bankruptcy Court-Roybal Building         Reed Smith , LLP
255 E. Temple Street, Suite 1534/Courtroom 1539    355 S. Grand Avenue, Suite 2900
Los Angeles, CA 90012                        Los Angeles, CA 90071

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

07/07/2021      Carol A. Shewman
Date            Printed Name                              Signature

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                    **F 9013-3.1.PROOF.SERVICE**

- **ATTORNEY FOR INTERESTED PARTY EFO FINANCIAL GROUP LLC:** Steven M Berman sberman@slk-law.com, awit@shumaker.com; bgasaway@shumaker.com
- **ATTORNEY FOR CREDITOR SAXON ENGINEERING SERVICES INC:** Daren Brinkman office@brinkmanlaw.com, 7764052420@filings.docketbird.com
- **ATTORNEY FOR CREDITOR DOUG WALL CONSTRUCTION:** Caroline Djang caroline.djang@bbklaw.com, laurie.verstegen@bbklaw.com; wilma.escalante@bbklaw.com
- **INTERESTED PARTY COURTESY NEF:** Jenny L Doling JD@jdl.law, dolingjr92080@notify.bestcase.com
- **ATTORNEY FOR CREDITORS LASERSCOPIC MEDICAL CLINIC, LLC; LASERSCOPIC SPINAL CENTERS OF AMERICA, INC.; AND JOE SAMUEL BAILEY:** Jonathan R Doolittle jonathan.doolittle@pillsburylaw.com
- **ATTORNEY FOR U.S. TRUSTEE (LA):** Eryk R Escobar eryk.r.escobar@usdoj.gov
- **ATTORNEY FOR TRUSTEE RICHARD A MARSHACK (TR):** Chad V Haes chaes@marshackhays.com, chaes@ecf.courtdrive.com; cmendoza@ecf.courtdrive.com; cmendoza@marshackhays.com; kfrederick@ecf.courtdrive.com
- **ATTORNEY FOR CREDITOR BLAIR AIR, INC.:** Brian S Harnik bharnik@rhlawfirm.com, bharnik@rhlawfirm.com
- **INTERESTED PARTY COURTESY NEF:** Douglas Harris Douglas.harris@alston.com
- **ATTORNEY FOR CREDITOR ORCO BLOCK & HARDSCAPE:** William C Hoggard wch@wchlawgroup.com, admin@wchlawgroup.com
- **INTERESTED PARTY COURTESY NEF:** Mark S Horoupian mhoroupian@sulmeyerlaw.com, mhoroupian@ecf.inforuptcy.com; ccaldwell@sulmeyerlaw.com
- **ATTORNEY FOR CREDITOR U.S. REAL ESTATE CREDITOR HOLDINGS III-A, LP:** Marsha A Houston mhouston@reedsmith.com
- **INTERESTED PARTY COURTESY NEF:** Michael S Kogan mkogan@koganlawfirm.com
- **ATTORNEY FOR INTERESTED PARTY GARY STIFFELMAN:** Timothy R Laquer trl@ddclaw.com, trl@ddclaw.com
- **INTERESTED PARTY COURTESY NEF:** Leib M Lerner leib.lerner@alston.com, autodockettest-lax@alston.com
- **ATTORNEY FOR DEBTOR GLENROY COACHELLA, LLC:** Crystle Jane Lindsey crystle@wsrlaw.net, crystle@cjllaw.com; gabby@wsrlaw.net; dairi@wsrlaw.net
- **TRUSTEE RICHARD A MARSHACK (TR):** Richard A Marshack (TR) pkraus@marshackhays.com, rmarshack@iq7technology.com; ecf.alert+Marshack@titlexi.com
- **ATTORNEY FOR TRUSTEE RICHARD A MARSHACK (TR):** Ed Hays ehays@marshackhays.com
- **ATTORNEY FOR INTERESTED PARTY STUART RUBIN:** Sean A OKeefe sokeefe@okeefelc.com, seanaokeefe@msn.com
- **INTERESTED PARTY COURTESY NEF:** Matthew D Pham mpham@hahnlawyers.com, marias@hahnlawyers.com; mpham@ecf.courtdrive.com
- **ATTORNEY FOR CREDITOR GF INVESTMENT GROUP, INC. DBA THE INVESTMENT CENTER, A CALIFORNIA CORPORATION:** Maria Plumtree agrow@plumtreelaw.com, mplumtree@plumtreelaw.com
- **INTERESTED PARTY COURTESY NEF:** Dean G Rallis, Jr drallis@hahnlawyers.com, marias@hahnlawyers.com; mpham@hahnlawyers.com; drallis@ecf.courtdrive.com; drallis@ecf.inforuptcy.com
- **ATTORNEY FOR CREDITOR CALIFORNIA STATEWIDE COMMUNITIES DEVELOPMENT AUTHORITY:** Debra Riley driley@allenmatkins.com
- **ATTORNEY FOR CREDITOR U.S. REAL ESTATE CREDITOR HOLDINGS III-A, LP:**

Christopher O Rivas crivas@reedsmith.com, chris-rivas-8658@ecf.pacerpro.com
- **ATTORNEY FOR DEBTOR GLENROY COACHELLA, LLC:** James R Selth jim@wsrlaw.net, jselth@yahoo.com; dairi@wsrlaw.net; gabby@wsrlaw.net; vinnet@ecf.inforuptcy.com
- **ATTORNEY FOR INTERESTED PARTY LATHAM MANAGEMENT & CONSULTING SERVICES, INC.:** Leonard M Shulman lshulman@shulmanbastian.com
- **ATTORNEY FOR INTERESTED PARTY EDWIN W. LESLIE, RECEIVER:** Alan G Tippie atippie@sulmeyerlaw.com, atippie@ecf.courtdrive.com; pdillamar@sulmeyerlaw.com
- **U.S. TRUSTEE (LA):** United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov
- **ATTORNEY FOR DEBTOR GLENROY COACHELLA, LLC:** Daniel J Weintraub dan@wsrlaw.net, vinnet@ecf.inforuptcy.com; gabby@wsrlaw.net; dairi@wsrlaw.net

**20 LARGEST CREDITOR**
BARAJAS PLASTERING CO.
81-328 AVENIDA ROMERO
INDIO, CA 92201-2865

**20 LARGEST CREDITOR**
BENTLEY FINANCIAL SERVICES
ONE PORSCHE DRIVE
ATLANTA, GA 30354

**20 LARGEST CREDITOR**
CARRIER JOHNSON
185 W. F ST., SUITE 500
SAN DIEGO, CA 92101-4012

**20 LARGEST CREDITOR**
CITY OF COACHELLA
1515 SIXTH ST.
COACHELLA, CA 92236-1757

**20 LARGEST CREDITOR**
CITY OF COACHELLA
53-990 ENTERPRISE WAY
COACHELLA, CA 92236-2724

**20 LARGEST CREDITOR**
COLLIERS PROJECT LEADERS
135 NEW ROAD
MADISON, CT 06443-2508

**20 LARGEST CREDITOR**
DESIGN DEVELOPMENT CO.
28035 DOROTHY DR., SUITE 100
AGOURA HILLS, CA 91301-2635

**20 LARGEST CREDITOR**
HUGH T. SMITH CO.
5383 ROBERTS RD.
YUCCA VALLEY, CA 92284-2163

**20 LARGEST CREDITOR**
KMA CONSULTING
C/O KEITH MATOI
151 KALMUS DR., SUITE C230
COSTA MESA, CA 92626-7965

**20 LARGEST CREDITOR**
L & W SUPPLY CORPORATION
P.O. BOX 838
BELOIT, WI 53512-0838

**CREDITORS COMMITTEE / 20
LARGEST CREDITOR**
LEGACY FOODSERVICE DESIGN LLC
2380 THAYER AVE
HENDERSON, NV 89074-5415

**20 LARGEST CREDITOR /
SECURED CREDITOR**
MASCORRO CONCRETE
CONSTRUCTION INC
P.O. BOX 910
THOUSAND PALMS, CA 92276-0910

**20 LARGEST CREDITOR**
NEIL ROSENFIELD BAKER TILLY
15760 VENTURA BLVD., SUITE
1100
ENCINO, CA 91436-3044

**20 LARGEST CREDITOR**
ORCO BLOCK & HARDSCAPE
11100 BEACH BLVD
STANTON, CA 90680-3219

**20 LARGEST CREDITOR**
RTM ENGINEERING
CONSULTANTS, LLC
650 E. ALGONQUIN RD., SUITE 250
SCHAUMBURG, IL 60173-3824

**CREDITORS COMMITTEE /
20 LARGEST CREDITOR**
SAXON ENGINEERING 2605
TEMPLE HEIGHTS DR.,
SUITE A
OCEANSIDE, CA 92056

**20 LARGEST CREDITOR**
SMS ARCHITECTS
18004 SKY PARK CIR., SUITE 200
IRVINE, CA 92614-6484

**20 LARGEST CREDITOR**
SYSTEMS WATERPROOFING, INC.
223 WEST BLUERIDGE AVE.
ORANGE, CA 92865-4226

**20 LARGEST CREDITOR**
TLR ENTERPRISES, INC.
74875 VELIE WAY
PALM DESERT, CA 92260-1965

**20 LARGEST CREDITOR**
WEST COAST SAND AND GRAVEL INC.
P.O. BOX 5067
BUENA PARK, CA 90622-5067

**CREDITORS COMMITTEE / 20
LARGEST CREDITOR**
MIKE COOPER
C/O LEGACY FOODSERVICE
DESIGN
505 EAST WINDMILL LANE, SUITE
1C #316
LAS VEGAS, NV 89123