D. EDWARD HAYS, #162507
ehays@marshackhays.com
CHAD V. HAES, #267221
chaes@marshackhays.com
MARSHACK HAYS LLP
870 Roosevelt
Irvine, California 92620
Telephone: (949) 333-7777
Facsimile: (949) 333-7778

Attorneys for Chapter 11 Trustee,
RICHARD A. MARSHACK

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>GLENROY COACHELLA, LLC,<br><br>Debtor. | Case No. 2:21-bk-11188-BB<br><br>Chapter 11<br><br>TRUSTEE'S MOTION TO APPROVE COMPROMISE WITH U.S. REAL ESTATE CREDIT HOLDINGS III-A, L.P. RE LENDER'S CONSENT TO SALE FREE AND CLEAR OF LIEN AND TO APPROVE CREDIT BID; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF RICHARD A. MARSHACK IN SUPPORT<br><br>Hearing:<br>Date:   August 18, 2021<br>Time:   10:00 a.m.<br>Ctrm:   1539[1] |

/ / /

/ / /

/ / /

---

[1] Due to the COVID-19 outbreak, Judge Bluebond will be holding all hearings remotely until further notice. Some hearings will be held via telephone using CourtCall and some hearings will be held via ZoomGov. The cover page for the publicly posted hearing calendar will state whether the hearings that day will be held via telephone by CourtCall or via ZoomGov. The calendar is posted to the public at least two weeks prior to the hearing and can be accessed at the following web address: http://ecf-ciao.cacb.uscourts.gov/CiaoPosted/?jid=BB (Click on the "Select Judge" tab on the upper left side of the screen and select Judge Bluebond).

# TABLE OF CONTENTS

1.    Summary of Argument ................................................................................................. 2

2.    Background Information ............................................................................................... 3

3.    The Real Property ....................................................................................................... 4

   A.    Ownership and Encumbrances ............................................................................ 4

   B.    Marketing Efforts to Sell the Real Property ....................................................... 5

   C.    Valuation of the Property and Anticipated Completion Costs ............................ 5

4.    Details of the Compromise .......................................................................................... 6

   A.    Brief Summary .................................................................................................... 6

   B.    Detailed Summary ............................................................................................... 6

5.    Legal Argument ......................................................................................................... 13

A.    Approval of the Agreement is in the best interest of the Estate ............................ 13

   i.    Probability of Success ....................................................................................... 14

   ii.    Difficulties in Collection ................................................................................. 15

   iii.    Complexity .................................................................................................... 15

   iv.    Expense, inconvenience, or delay ................................................................. 16

6.    Conclusion ................................................................................................................ 16

Declaration of Richard A. Marshack .............................................................................. 17

MOTION TO APPROVE AGREEMENT FOR SECTION 363 SALE

# TABLE OF AUTHORITIES

**Cases**

*ATKN Company v. Guy F. Atkinson Company of California (In re Guy F. Atkinson Company)*,
  242 B.R 497, 502 (B.A.P. 9th Cir. 1999) ................................................................................. 13

*Goodwin v. Mickey Thompson Entertainment Group, Inc. (In re Mickey Thompson Entertainment
  Group, Inc.)*,
  292 B.R. 415, 420 (B.A.P. 9th Cir. 2003)................................................................................. 13

*In re A & C Properties*,
  784 F.2d 1377, 1380-81 (9th Cir. 1986), cert. den. ............................................................ 13, 16

*In re Pacific Gas and Elec. Co.*,
   304 B.R. 395, 417 ................................................................................................................ 13

*In re Roger*,
  3493 F.Supp.3d 940, 968 (C.D. Cal. 2019) .............................................................................. 13

IN re WCI Cable, Inc.,
  282 B.R. 457, 473-74 (Bankr D. Or. 2002) .............................................................................. 13

*Martin v. Robinson*,
  479 U.S. 854, 107 S.Ct. 189 (1989)......................................................................................... 13

*Schmitt v. Ulrich (In re Schmitt)*,
  215 B.R. 417, 424 (B.A.P. 9th Cir. 1997)................................................................................ 13

**Rules**

Fed. R. Bankr. Proc. 9019........................................................................................................ 13

Rule 9019 ................................................................................................................................. 13

MOTION TO APPROVE AGREEMENT FOR SECTION 363 SALE
4833-2572-3362,v.1/1015-142

TO THE HONORABLE SHERI BLUEBOND, UNITED STATES BANKRUPTCY JUDGE, THE

DEBTOR, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL INTERESTED

PARTIES:

Richard A. Marshack, in his capacity as Chapter 11 Trustee ("Trustee") of the bankruptcy

estate ("Estate") of Glenroy Coachella, LLC ("Debtor"), has reached a compromise and settlement

("Agreement") with U.S. Real Estate Credit Holdings III-A, L.P. ("Lender") to facilitate the

Trustee's sale of the real property located at 84150 Avenue 48, Coachella, California 92201 ("Real

Property"), which includes a luxury hotel project ("Project"). The Real Property and the Project are

collectively referred to as the "Property." Pursuant to the Agreement, Lender has agreed to a sale of

the Property free and clear of its lien for a discounted amount, in addition to other meaningful

consideration and concessions summarized below. Alternatively, if Trustee is unable to sell the

property to a third-party purchaser for the minimum agreed-upon price acceptable to Lender, the

Agreement includes provisions for Lender to credit bid. The settlement avoids the cost and risk of

litigation which likely would result in Trustee being unable to realize any benefit to the Estate from

the administration of the Property. Trustee believes that, in the business judgment, the compromise

is fair and equitable and in the best interest of the Estate.

## 1.    Summary of Argument

A bankruptcy court may approve a trustee's proposed compromise where it is fair and

equitable. In this case, Debtor borrowed money from Lender and secured the debt with a deed of

trust against its 70.5% tenant-in-common interest in the Property that was in the process of being

developed into a luxury hotel in Coachella, California. Prior to bankruptcy, Debtor and the other

tenants-in-common who pledged their collective 29.5% interests in the Property to Lender defaulted

on the loan and Lender commenced judicial and non-judicial foreclosure proceedings. A receiver

was also appointed by the Riverside County Superior Court more than a year before this bankruptcy

was filed.

Notwithstanding Trustee's best efforts, Trustee has been unable to locate an interested buyer

who can pay enough for the Property to satisfy all of the senior liens on the Property, let alone

Lender's lien.   Thus, as a practical matter, Trustee cannot sell the Property without a compromise

MOTION TO APPROVE AGREEMENT FOR SECTION 363 SALE
4833-2572-3362,v.1/1015-142

with Lender. Lender disputes that there is a bona fide dispute regarding its lien and contends that Trustee cannot sell the Property free and clear of its lien absent its consent. While Trustee could object to Lender's claim in an effort to sell the Property for an amount less than Lender's liens over Lender's objections, he has concluded that any proposed sale that is opposed by Lender likely will result in litigation and protracted appeals which very well could lead to relief from stay and foreclosure before any contested sale could be consummated. If Lender forecloses, the sales price undoubtedly will be for less than a negotiated third-party sale. Plus, if Lender forecloses judicially, there will be a substantial deficiency claim that will dilute the Estate's unsecured creditor body.

As such, and in order to realize some certain benefit to the Estate, Trustee has negotiated an agreement pursuant to which Lender will consent to a sale free and clear of its lien for an amount that is a substantially discounted to Lender's secured claim, provide carve-outs for the benefit of the Estate's administrative claims, and subordinate the balance of its claim otherwise secured by its lien to general unsecured creditors. In exchange, Trustee has agreed to permit Lender to credit bid in the absence of third-party purchasers on condition that it fund an escrow to pay holders of mechanics liens that are determined to be allowed, valid, and senior in priority and to release any claims held by the Estate. In sum, the proposed agreement creates a path for Trustee to avoid the risk of losing the Property in foreclosure and to realize substantial benefits from its administration.

Trustee respectfully requests that the Court approve the proposed compromise in order to facilitate his efforts to sell the property to the highest bidder in connection with a court-supervised auction. Trustee is working on finalizing a proposed purchase and sale agreement with a proposed buyer that has already signed a letter of intent. Trustee anticipates filing a sale motion shortly. For all the foregoing reasons, Trustee respectfully requests that the Court approve the Agreement attached as **Exhibit 1**.

## 2.    Background Information

On February 15, 2021, Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code.

On March 19, 2021, as Dk. No. 126, the Court entered an order approving the United States Trustee's application for the appointment of a Chapter 11 Trustee. Marshack Decl.

On the petition date, Debtor's primary asset was a 70.5% interest in the Real Property and a 100% interest in the Project. Debtor owned the Real Property as a tenant-in-common with three other non-debtor entities: Force Rubin LLC (3.7885%); Force Rubin 2, LLC (21.2115%); and Coachella Resort, LLC (4.5%) (collectively, the "TICs"). To facilitate Trustee's sale of the Real Property, the TICs have delivered grant deeds transferring their collective 29.5% interest in the Real Property to Trustee ("Deeds"). The Deeds were recorded on July 2, 2021.

Trustee and the TICs entered into an Agreement regarding the transfer of the TIC Deeds to the Estate ("TIC Agreement"). On July 13, 2021, as Dk. No. 295, Trustee filed a Motion for Order Approving the TIC Agreement re: Estate's Receipt of Deeds from TICs ("TIC Motion"). The Court entered an order granting the TIC Motion on July 28, 2021.

## 3.   The Real Property

### A.    Ownership and Encumbrances

Based on Trustee's review of preliminary title reports, the following liens are recorded against the Property.

The California Statewide Communities Development Authority ("PACE") holds a lien ("PACE Liens") and there are Mello Roos assessments in favor of the Community Facilities District No. 2005 ("Mello Roos Assessments"). The PACE Liens and Mello Roos Assessments have asserted that their claims total approximately $11,400,000 and are first-in-priority on par with delinquent real property taxes in the approximate amount of $688,477.

There are approximately 33 mechanics' liens totaling approximately $9 million that have been recorded against the Real Property ("Mechanic's Liens"), and at least 13 *lis pendens* recorded regarding lawsuits filed by mechanics to foreclose their liens ("Lis Pendens").

There is a deed of trust recorded in favor of Lender, which has filed a secured proof of claim in the amount of $30,878,944.46 ("Lender's Lien"). Certificates of Indebtedness were recorded against the Real Property by the Receiver and in favor of Lender totaling $2,406,718.57 ("Receiver Certificates"), and Trustee is informed that additional Receiver's Certificates have been issued and, although not recorded, are of super-priority status against any non-Debtor interests in accordance with the order appointing the receiver in the state court action which remains pending.

MOTION TO APPROVE AGREEMENT FOR SECTION 363 SALE

There are ongoing disputes between the holders of the Mechanic's Liens and Lender regarding whose liens have priority.

Lastly, there is a judgment in the amount of $94,275.04 recorded against the Real Property on August 29, 2019, related to a U.S. District Court lawsuit entitled *Silhouette Outdoor Furniture, Inc. v. Glenroy Coachella, LLC*, Case No. EDCV 19-00373-CJC(KKx) ("Silhouette Lien").

## B.    Marketing Efforts to Sell the Real Property

Upon his appointment, Trustee immediately mobilized with his professionals to investigate and ascertain the Debtor's assets and liabilities, with a primary focus on creating a path for the Property to be administered for the benefit of the Estate. Trustee has met with a number of parties potentially interested in purchasing the Property. To date, Trustee has a signed letter of intent. Proceeding with finalizing a proposed purchase and sale agreement, however, was slowed by negotiations to get Lender's consent to a sale free and clear of its lien for a substantially discounted amount, without which it would have been difficult, if not impossible, for Trustee to effectuate a sale. Also, there were delays caused by the time spent obtaining the TIC Deeds in a form that would be accepted for recording. Trustee is now proceeding with the purchase and sale agreement and expects to file a motion to approve a proposed sale shortly.

## C.    Valuation of the Property and Anticipated Completion Costs

Trustee spent considerable time investigating and analyzing the anticipated costs to complete construction of the Hotel and the Project. To that end, Trustee and his professionals interviewed Mr. Lyle of Coldwell Banker and Mr. Reay of Atlas Hospitality who specialize in the marketing of similar hotel projects in the Coachella Valley. Trustee assessed the market report for Coachella Valley hotel comparables obtained from Coldwell Banker.

Based on the information provided by Mr. Lyle and Mr. Reay, it appeared to that there was little to no equity in the Property based on the amount of recorded liens. Moreover, given the lack of liquid assets in the Estate, Trustee concluded that the Estate was not in a position to finance the completion of construction. As such, a sale of the Property is the best course of action for the Estate and Trustee has now secured Lender's consent to a sale in exchange for payment of not less than $27.2 million (plus any post-petition taxes and related delinquencies paid by Lender), which is an

5

MOTION TO APPROVE AGREEMENT FOR SECTION 363 SALE

1  amount that is substantially less than Lender's secured claims, which are in excess of $33 million.[2]

2      If the proposed compromise is approved and a third-party sale consummated, the Estate will

3  benefit from the elimination of as much as $57 million in liens ($15 million due to PACE, Mello

4  Roos, and real property taxes; $9 million in recorded mechanics liens; and $33.2 million claimed due

5  by Lender).

6  **4.    Details of the Compromise**

7      **A.    Brief Summary**

8      Under the Agreement, Lender consents to Trustee's sale of the Property including the

9  personal property associated with the Project as-is, where-is and free and clear of Lender's liens. The

10  sale must close by September 30, 2021. Any sale to a cash buyer must provide sufficient proceeds

11  such that Lender receives not less than $27,200,000, plus any real property taxes and penalties paid

12  by Lender during the pendency of this bankruptcy case. From this amount, Lender will carve-out

13  $200,000 for the benefit of Trustee and his retained professionals. If bidding results in an increased

14  sales price, the Estate will receive additional carve-outs of $200,000 out of every additional $1

15  million received by Lender. The Bid Procedures, which are the subject of a separate, concurrently-

16  filed motion, will include a minimum initial overbid of $200,000 and subsequent minimum overbid

17  increments of $100,000. In the absence of a third-party purchaser paying enough to cover Lender's

18  minimum $27.2 million release price, Lender will be required to purchase the Property for a credit

19  bid of at least $22 million.

20      **B.    Detailed Summary**

21  THE FOLLOWING IS A SUMMARY OF THE AGREEMENT FOR CONVENIENCE

22  PURPOSES ONLY AND SHALL NOT CONSTITUTE A BASIS FOR INTERPRETATION OF

23  THE AGREEMENT – THE PRECISE LANGUAGE OF THE AGREEMENT CONTROLS THE

24  AGREEMENT BETWEEN THE PARTIES:

25      **1.   Buyer.**  The purchaser of the Property, which purchaser may be a third party or Lender
26  (or their nominee (is referred to as "Buyer").

27  _____
    [2]  As set forth in the Agreement, which is summarized in this Motion, should Trustee effectuate a
28  sale that is sufficient to pay Lender more than the minimum amount it has agreed to accept, such
    funds shall be paid to Lender in accordance with the Agreement.

**2. Seller.** Richard A. Marshack, in his capacity as bankruptcy trustee for Glenroy Coachella, LLC is referred to as "Seller" or "Trustee." Seller intends to file a motion seeking entry of an order converting Debtor's bankruptcy case to Chapter 7. Lender does not oppose conversion.

**3. Purchase and Sale.** Seller is selling all of the bankruptcy estate's right, title, and interest, if any, in and to the following (collectively, "Property" (i) that certain land located in the County of Riverside, State of California, identified by APNs 603-220-061, 603-220-065, 603-220-067, 603-220-068, and 603-220-069, comprising approximately thirty-five (35) acres, as more particularly described in that certain Deed of Trust dated April 26, 2018, and recorded in the Official Records of Riverside County as Doc. No. 2018- 0162476 ("Land"), (ii) the partially completed hotel resort on the Land ("Improvements" , and together with the Land, "Real Property"), (iii) the tenancy-in-common interests granted to Seller by Coachella Resort, LLC, Force Rubin, LLC, and Force Rubin 2, LLC; (iv) all rights, privileges, and easements appurtenant to the Land, (v) all developments rights, including any development agreements related to the Real Property; (vi) all right, title, and interest in any intangible personal property used in relation to the ownership, development, or operation of the Real Property; (vii) all tangible personal property, including construction materials, equipment, appliances, and furnishings, owned by Seller located on the Real Property or purchased in connection with its development, even if stored off site; all such foregoing Property to be sold free and clear of all liens, claims, encumbrances, and interests other than the Mello Roos Bonds and PACE Bonds and as set forth in any Court order approving the sale; and (viii) all tax attributes of Seller (including, by way of example, any net operating losses) arising from or related to the Property.

The "Property" also includes the Estate's interest, if any, in development rights and entitlements to develop on the Real Property a full service hotel comprising approximately 199,026 square feet of gross building area that will include, without limitation the following (collectively, "Hotel"); (i) 51 one-story villas split between two-, four- and six-bedroom structures comprising a total of 250 guestrooms, (ii) four restaurants, (iii) outdoor pool, (iv) fitness center, (v) full-service spa with six treatment rooms, (vi) outdoor event space, (vii) approximately 11,125 square feet of dedicated meeting space, (viii) surface parking for approximately 377 automobiles, all built behind an 11-foot high privacy wall, and (ix) the North East corner parcel entitled for a midrise hotel.

Seller is not the title owner of, and is not selling, the adjacent parcel upon which an operating dispensary is located and which is commonly known as "Parcel 5."

Property to be sold does not include any causes of action or claims held by Seller in his capacity as trustee for the Debtor's bankruptcy estate (for the sake of clarity, the foregoing does not limit the Seller's releases of claims against Lender as set forth below).

Upon approval of this Agreement, Trustee will make available for inspection and copying any non-privileged information and or documents he may have in his possession, with respect to any claims Lender may have against other parties with respect to the construction loan ("Loan") made to the Debtor and its tenants-in-common (together, "Borrowers"), and any Borrowers' affiliates or respective principals (including, without limitation, Stuart Rubin and Elliot Lander) or claims by such parties against Lender and/or other claims Lender may have in connection with the Loan, which is secured by the Property, and will continue to make such information and documents available post-closing at the request of Lender.

The sale will also be subject to the following terms:

- The sale of the foregoing Property will be on an "as-is," "where-is" basis:
- There are no representations or warranties, except as to such warranties regarding title to the Property, the ability to transfer title to the Property, and contracts containing warranties to the extent assumed by Buyer, which rights and interests will be free and clear of any liens, claims, encumbrances, and interests except for the Mello Roos Bonds and PACE Bonds and

MOTION TO APPROVE AGREEMENT FOR SECTION 363 SALE

as set forth in any Court order approving the sale (which shall include normal and customary rights that run with the land such as easements);

- All due diligence to be completed prior to bidding; and
- All bids to be made without any financing or other contingencies.

**5. Closing.** The sale must close on or before September 30, 2021 ("Closing"). Additionally, until the auction on Seller's 363 Motion concludes, Trustee will have the right to seek higher and better cash bids for the Property even after any potentially interested party makes a bid or after Trustee executes proposed letters of intent or purchase and sale agreements. Concurrent with the court hearing on the 363 Motion, Seller will conduct an auction in open court to determine if there are higher and better cash offers. Trustee shall determine the highest and best offer for the Property after consultation with, and subject to the consent of, the Lender if such terms differ from those set forth in this Agreement.

The Bid Procedures, which are the subject of a separate motion filed concurrently herewith, shall include, without limitation, a minimum initial overbid increment of $200,000 and subsequent minimum overbid increments of $100,000, provided that should Lender credit bid, it may do so in larger increments (as may any other qualified cash bidders with respect to their respective bids).

**6. Consideration.** The consideration for the Proposed Transaction is comprised of the following components:

- A sale of the Property to a "cash" purchaser paying sufficient proceeds such that Lender receives not less than $27,200,000, **plus** any real property taxes and penalties paid by Lender during the pendency of this bankruptcy case, which amount must be unconditionally paid to Lender and may not be subject to objections, contest, dispute, clawback, escrow, any contingencies, any payment to other claimants or lienholders, or to any surcharge under Section 506(c) of the Bankruptcy Code and no part of which may be withheld by the Trustee for any reason, including without limitation the payment of any administrative claims or professional fees Acceptable Cash Payment.

- In the absence of a third-party "cash" purchaser able to deliver the Acceptable Cash Payment to Lender effective as of Bid Deadline, Lender shall be deemed to have tendered a credit bid in the minimum amount of $22,000,000 ("Minimum Credit Bid"). Lender shall have the right to increase its credit bid up to the maximum amount of its claims, which Trustee acknowledges are no less than $30,000,000 pursuant to Section 363(k) of the Bankruptcy Code (a condition that shall expressly be provided for in an order approving the Bid Procedures). Lender shall not be under any obligation to submit the Minimum Credit Bid, nor shall it be deemed to have tendered a credit bid, unless the following conditions have been satisfied (together, the "Minimum Credit Bid Conditions"): (i) Lender's claims shall have been allowed in full pursuant to a final non-appealable order approving the Compromise Motion, (ii) the TIC Deeds shall remain enforceable, and (iii) there shall have been no materially changed circumstances with respect to the Property or its title.

- If Lender is required to credit bid in the absence of a third-party cash purchaser able to deliver the Acceptable Cash Payment to Lender and otherwise satisfy the terms of this Agreement, it must provide Seller funds in the amount of $4,000,000 ("Escrow Fund"), which amount must be deposited in a sub-escrow account within 2 business days of the entry of a court order approving any sale to Lender. The Escrow Fund deposit will be held by Seller in trust pending resolution of the seniority of mechanics liens vis-à-vis the Lender's lien and disbursement following such resolution. Trustee may only disburse Escrow Funds pursuant to Lender's express written agreement or, in the absence of such agreement, pursuant to an order of the Court upon determination that a particular mechanics lien claimant has a duly-perfected, enforceable lien in an allowed amount that is senior to Lender's lien against the Property. Lender will be responsible for prosecuting any objections to the validity, priority, and extent of mechanics liens and will bear the costs of its own

8

representation. Lender and Trustee, however, shall also use their best efforts to resolve all such claims by not later than October 31, 2021.

• To the extent Trustee distributes monies from the Escrow Fund to holders of mechanics liens that are determined to be allowed and senior to Lender, he shall be entitled to compensation from the Escrow Fund pursuant to Section 326 (to the extent such funds are not fully consumed by allowed distributions to senior liens); provided that the distributions upon which the Section 326 fee is calculated shall be reduced by the attorneys' fees incurred by Lender in the bankruptcy proceedings in challenging the priority, extent or amount of any such claims. In no event will the reduction for attorney's fees be more than $300,000.

• Lender will pay certain administrative fees of the Trustee and/or funds for the purposes of funding administrative expenses of the estate and/or making distributions to creditors as follows ("Estate Payments"):

o (1) should Lender be the successful purchaser (including by virtue of its credit bid), Lender will pay Trustee the sum of $200,000 which funds will be earmarked for and first be used to pay allowed compensation of Trustee and his retained counsel Marshack Hays LLP; or

o (2) should a sale to a third-party cash purchaser (i.e., a Buyer other than Lender) be approved and should Lender receive the Acceptable Cash Amount (as defined below), then Lender carves-out and consents to $200,000 from such sale to be paid to Trustee (the payment of which shall not be deemed to affect claims for allowance of administrative claims), instead of Lender to be earmarked for and first used to pay the allowed compensation of Trustee and his retained counsel, Marshack Hays LLP. Additionally, should the Acceptable Cash Amount be exceeded (for the avoidance of doubt, reference to the "Acceptable Cash Amount" shall mean $27,200,000 plus any real property taxes and penalties paid by Lender during the pendency of this bankruptcy case), the Estate Payment shall be increased from $200,000 as follows:
  ▪ Should Lender receive $1,000,000 above the Acceptable Cash Amount through a cash sale to a third-party or if Lender makes a credit bid between $27,200,000 and $28,199,999.99 (plus any real property taxes and penalties paid by Lender during the pendency of this bankruptcy case) which becomes the highest and best offer, it will remit to the Trustee an additional $200,000, for a total Estate Payment of $400,000.
  ▪ Should the Lender Receive $2,000,000 above the Acceptable Cash Amount through a cash sale to a third-party or if Lender makes a credit bid equal to or exceeding $28,200,000 (plus any real property taxes and penalties paid by Lender during the pendency of this bankruptcy case), it will remit to the Trustee an additional $200,000, for a total Estate Payment of $600,000, with similar increases for each additional $1,000,000 in third-party cash or Lender credit bid.

• Buyer's assumption of Debtor's liability for, and agreement to take title to the Property subject to, those certain bonds issued by the [Community Facilities District No. 2018-1 of the City of Coachella (Glenroy)] related to the construction of the Property ("Mello Roos Bonds"), which are approximately [$5,680,000], and those certain bonds issued by the[California Statewide Communities Development Authority] and related to the construction of the Property ("PACE Bonds"), which are approximately [$7,900,000] (exclusive of accruing interest and costs), such assumptions of liability to be confirmed acceptable to the above-referenced entities that provided such Bonds.

• Should Soucialize, Inc. or its nominees become a "stalking horse" bidder on terms consistent with this Agreement, including without limitation, with a bid sufficient to make the Acceptable Cash Payment to Lender, and should another third-party cash bidder

9

successfully purchase the Property, then Lender will consent to the first $100,000 of funds to be received by Lender above the Acceptable Cash Payment being remitted to Soucialize, Inc. or its nominee as a break-up fee, which shall only be paid if another purchaser successfully closes its sale and remits the proceeds.

• Should Lender be the successful Buyer for less than a full credit bid, its deficiency claim will include continuing accruing fees, costs, and interest at the default rate, as well as funds actually disbursed from the Escrow Fund (and for the sake of clarity, such fees, costs, and interest are continuing to accrue without regard to any credit bids).

• Without regard to whether Lender is the successful Buyer, Lender shall be entitled to an allowed deficiency claim in the amount of its filed proof of claim less amounts actually credit bid or received pursuant to a sale in this bankruptcy estate which claim shall be subordinated to all other allowed unsecured claims, provided that there shall be no subordination of such deficiency claim to any claim of Seller's tenants-in-common (Coachella Resort, LLC, Force Rubin, LLC, and Force Rubin 2, LLC), or any interest holders or principals of Seller, affiliates or tenants-in-common, including Stuart Rubin, Elliot Lander, Joseph Rubin, or Gary Stiffelman, or their respective affiliates or assigns. Nor shall there by any subordination of any allowed deficiency claim to Doug Wall Construction, Inc.

• Lender shall have an allowed Chapter 11 administrative claim the amount of $400,000, which reflects that Lender has been incurring more than $130,000 per month in administrative costs since the Petition Date, and will continue to incur such costs throughout the sale process outlined herein, **plus** any real property taxes and penalties paid by Lender during the pendency of this bankruptcy case (except to the extent Lender is reimbursed for such real property taxes and penalties from a cash bidder, which, for the sake of clarity, such amount shall not be inclusive of the $27,200,000 referenced above) ("Allowed Administrative Claim"), which Allowed Administrative Claim is not subject to objection, offset, reduction, or disallowance. No portion of the Allowed Administrative Claim will be paid from the Estate Payment. To the extent the Estate Payment does not pay all allowed Chapter 11 administrative claims of Trustee and his retained professionals, $200,000 of the Allowed Administrative Claim shall be subordinated solely to the remaining unpaid Chapter 11 administrative claims of Trustee, Marshack Hays LLP, and Grobstein Teeple LLP. Thereafter, Lender's Allowed Administrative Claim shall be paid *pari passu* with other allowed Chapter 11 administrative claims.

**7. Waivers and Releases.** For the avoidance of doubt, the waivers and releases set forth in the Agreement are intended as binding agreements subject only to the Bankruptcy Court's approval of the Compromise Motion, and the consideration for which includes, among other things, Lender's agreement to accept the Acceptable Cash Payment in lieu of filing a motion for relief from stay or consummating a foreclosure sale after obtaining relief from stay, Lender's agreements to continue deadlines as set forth in this Agreement, and Lender's agreement to present the Minimum Credit Bid should the Bidding Procedures Motion (which obligation to credit bid remains subject to the Minimum Credit Bid Conditions).

In consideration of the foregoing:

• Trustee agrees that the collateral of Lender shall not under any circumstances be subject to surcharge pursuant to Section 506(c) of the Bankruptcy Code.

• Trustee, on behalf of the Debtor, its successors and assigns, and the Debtor's estate (the "Estate Releasing Parties"), releases, acquits, and forever discharges Lender, all of Lender's predecessors in interest, and all of Lender's past and present officers, directors, attorneys, affiliates, employees, and agents, of and from any and all claims, demands, obligations, liabilities, indebtedness, breaches of contract, breaches of duty, or of any relationship, acts, omissions, misfeasance, malfeasance, causes of action, defenses, offsets,

debts, sums of money, accounts, compensation, contracts, controversies, promises, damages, costs, losses and expenses, of every type, kind, nature, description, or character, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, each as though fully set forth herein at length (each, an "Estate Released Claim" and collectively, the "Estate Released Claims"), that the Estate Releasing Parties now have or may acquire as of the date this Agreement becomes effective by approval of a final nonappealable order approving the Compromise Motion, at which time Lender will be obligated to submit the Minimum Credit Bid, subject only to the Minimum Credit Bid Conditions, as defined above (hereafter, the "Release Date"), including without limitation, those Estate Released Claims in any way arising out of, connected with, or related to any and all prior credit accommodations provided by the Lender, or any of Lender's predecessors in interest, to the Debtor, any claims for fraud, rescission, etc., and any agreements, notes or documents of any kind related thereto, or the transactions contemplated thereby or hereby, or any other agreement or document referred to herein or therein.

• Except as set forth in this Agreement, Lender, including all of Lender's predecessors in interest and all of Lender's past and present officers, directors, attorneys, affiliates, employees, and agents (collectively, "Lender Releasing Parties"), does hereby release, acquit, and forever discharge Trustee and the Estate, of and from any and all claims, demands, obligations, liabilities, indebtedness, breaches of contract, breaches of duty, or of any relationship, acts, omissions, misfeasance, malfeasance, causes of action, defenses, offsets, debts, sums of money, accounts, compensation, contracts, controversies, promises, damages, costs, losses and expenses, of every type, kind, nature, description, or character, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, each as though fully set forth herein at length (each, a "Lender Released Claim" and collectively, the "Lender Released Claims") that the Lender Releasing Parties now have or may acquire as of the date this Agreement becomes effective by the Release Date, including without limitation, those Lender Released Claims in any way arising out of, connected with, or related to actions taken by Trustee (in his representative and personal capacities) and his retained professionals and the transactions contemplated hereby. For the avoidance of doubt, such Lender Released Claims shall not release, and shall not be deemed to release, any claims or defenses of any type that Lender may have against Coachella Resort, LLC, Force Rubin, LLC, and Force Rubin 2, LLC, Stuart Rubin, Elliot Lander, Gary Stiffelman, or their respective past and present officers, directors, attorneys, affiliates, employees, and agents. Additionally, the foregoing Lender Released Claims shall not prohibit the Lender from notifying the Estate or naming it as a party-in-interest in any action by Lender to clear title to the Property (e.g., for purposes of removing any encumbrances to title or clearing title), provided that Lender may not assert a monetary claim against the Debtor's estate in connection with such actions.

• With regard to Section 1542 of the California Civil Code, the parties agree to assume the risk of any and all unknown, unanticipated, or misunderstood defenses. The parties further intend that with regard to the Estate Released Claims and the Lender Released Claims, they waive and release all rights and benefits which the Releasing Parties might otherwise have under Section 1542 of the California Civil Code with regard to the release of such unknown, unanticipated, or misunderstood defenses and Released Claims.

• Additionally, Trustee agrees to the allowance of Lender's claim in the full amount of its filed proofs of claim (subject to the subordination provisions above), and will file the Compromise Motion concurrent with the filing of the Bid Procedures Motion to ensure that Lender's claims is allowed in such amount prior to any auction. Trustee agrees that should any creditor object to any portion of Lender's claim, Lender's right to credit bid on the terms set forth herein, or challenge the Compromise Motion, that Trustee will not proceed with the Section 363 Motion until such challenge has been fully resolved by the Bankruptcy Court and subject to a final non-appealable order, and that the Trustee will make all reasonable efforts to support Lender's efforts to expeditiously resolve such a challenge, including filing pleadings in furtherance of effectuating this agreement. To provide time for resolution of any

11

such challenge (and as further consideration for the releases and agreements set forth herein), Lender shall forbear from filing a motion for relief from stay and consummating a foreclosure sale after obtaining relief from stay pending resolution of such opposition; but, the dates set forth herein for any sale to close shall not be extended unless expressly agreed to in writing by Lender. Should it appear to Lender by that a sale may not close by the September 30, 2021 deadline, Lender may file a motion for relief from the automatic stay on or after September 7, 2021, for hearing on September 28, 2021, and may commence with foreclosure promptly after the Trustee has abandoned the Property, but in any event, regardless of whether the Trustee has abandoned at that time, may foreclose by not later than October 8, 2021.

**8.  Closing Conditions.**  Closing of any sale is conditioned upon:

•      Trustee having recorded deeds transferring the ownership interests of all other tenants-in-common to the bankruptcy estate in the Official Records of the County of Riverside and provided copies of same to the Buyer;

•      Buyer being capable of obtaining title insurance, upon closing, regardless of any pending or threatened appeals by any third parties;

•      Accuracy of representations and performance of pre-closing covenants;

•      Obtaining necessary consents, approvals, and authorizations except as otherwise ordered by the Court;

•      The Bankruptcy Court shall have issued a "Sale Order: that, among other things, (i) approves any Definitive Agreements and authorizes Seller to enter into and consummate the transactions contemplated by any Definitive Agreements; (ii) authorizes the delivery of the Property to Buyer free and clear of all "interests" within the meaning of Section 363(f) of the Bankruptcy Code and including free and clear of all liens, claims, and encumbrances except for Mello Roos Bonds, PACE Bonds, and as expressly included in any Court Order; (iii) authorizes, pursuant to Section 365 of the Bankruptcy Code, the assumption by Seller and assignment of all contracts related to the Property to the Buyer with Buyer being responsible for any cure payments and establishing any adequate assurance of future performance required by the Court; (iv) determines and finds that Buyer is a "good faith Buyer" within the meaning of Section 363(m) of the Bankruptcy Code; (v) finds that the purchase price for the Property (including any credit bids) is "reasonably equivalent value" for the Property; (vi) relieves Buyer and its affiliates of any potential liabilities for a claim that the transactions contemplated by the Definitive Agreements constitute a fraudulent conveyance, fraudulent transfer, or similar claim; (vii) finds that the Definitive Agreements were negotiated, proposed, and entered into by Trustee and Buyer without collusion, in good faith, and from an arms-length bargaining position; (viii) provides that Trustee and Buyer have not engaged in any conduct that would cause or permit the Definitive Agreements to be avoided under Section 363(n) of the Bankruptcy Code; (ix) relieves Buyer and its affiliates of any potential responsibility to any Seller, or any other person, for liabilities relating to the Property or transactions contemplated by the Definitive Agreements; (x) provides that all liabilities of Seller, except as otherwise set forth herein or pursuant to Court Order, prior to Closing shall be the sole responsibility of the Seller; (xi) that the "Sale Order" is a "Final Order;" and (x) that  the order granting the Compromise Motion is a "Final Order."

•      The Bankruptcy Court shall have issued a "Final Order" approving the Compromise Motion.

MOTION TO APPROVE AGREEMENT FOR SECTION 363 SALE

4833-2572-3362,v.1/1015-142

**5.     Legal Argument**

**A.     Approval of the Agreement is in the best interest of the Estate.**

Under Rule 9019, the court may approve a compromise or settlement on motion by the trustee. Fed. R. Bankr. Proc. 9019. It is well-established that a compromise should be approved if it is "in the best interest of the estate . . . and is fair and equitable for the creditors." *Schmitt v. Ulrich (In re Schmitt)*, 215 B.R. 417, 424 (B.A.P. 9th Cir. 1997); *ATKN Company v. Guy F. Atkinson Company of California (In re Guy F. Atkinson Company)*, 242 B.R 497, 502 (B.A.P. 9th Cir. 1999) ("At its base, the approval of a settlement turns on the question of whether the compromise is in the best interest of the estate.") The standards to be applied to the approval of a settlement include:

> 1) the probability of success of the litigation on its merits;
> 2) the difficulties in collection on a judgment;
> 3) the complexity of the litigation involved; and
> 4) the expense, inconvenience or delay occasioned by the litigation, and the interest of creditors.

*United States v. Edwards,* 595 F.3d 1004, 1012 (9th Cir. 2020) (quoting *In re A & C Properties*, 784 F.2d 1377, 1380-81 (9th Cir. 1986), cert. den., *Martin v. Robinson*, 479 U.S. 854, 107 S. Ct. 189 (1989).

"It is not necessary to satisfy each of these factors provided that the factors as a whole favor approving the settlement." *In re Pacific Gas and Elec. Co.*, 304 B.R. 395, 417 (citing IN re WCI Cable, Inc., 282 B.R. 457, 473-74 (Bankr D. Or. 2002)). Moreover, "a court generally gives deference to a trustee's business judgment in deciding whether to settle a matter…." *Goodwin v. Mickey Thompson Entertainment Group, Inc. (In re Mickey Thompson Entertainment Group, Inc.)*, 292 B.R. 415, 420 (B.A.P. 9th Cir. 2003). Lastly, "the court is not permitted to substitute its own judgment for that of the bankruptcy trustee when analyzing the sufficiency of a compromise." *In re Roger*, 3493 F.Supp.3d 940, 968 (C.D. Cal. 2019).

Here, the *A&C* factors weigh in favor of approving the Agreement. The Agreement provides a path for the administration of the Property which will result in the elimination of as much as $56 million in liens. Plus, Lender's deficiency claim will be subordinated to all other general unsecured claims. Absent the Agreement, Trustee does not believe he can sell the Property for an amount sufficient to pay Lender's liens in full and that any sale free and clear of Lender's lien for an amount

1    insufficient to pay its liens in full would not be able to be consummated. In the absence of a timely

2    sale, Lender would be able to seek relief from stay in this single asset real estate case and Lender

3    will foreclose. If Lender foreclosed judicially, its deficiency judgment would be substantial and

4    would dilute other unsecured creditors' recoveries.

5         In his business judgment, Trustee has concluded that the Agreement is a fair and equitable to

6    creditors. Because all four *A&C* factors weigh in favor of approving the Agreement, as explained

7    below, the Court should approve the Agreement.

8              ### i.    Probability of Success

9         The probability of success of the litigation factor weighs in favor of approving the

10   compromise. Lender is owed more than $33 million based on its deed of trust and the Receiver

11   Certificates. Trustee has significant concerns that Lender would obtain relief from stay if it filed a

12   motion given the expiration of the SARE deadline and the likely lack of equity in the Property.

13   Absent the Agreement, a foreclosure by Lender will provide no benefit to the Estate. To mitigate

14   against this outcome, the Trustee has entered the Agreement which includes Lender's agreement to,

15   among other things, accept a discounted release price that is not less than $27.2 million

16   (substantially less than its secured claims) and its agreement to subordinate its deficiency claim.

17        While Debtor believes the Estate may have defenses and potential claims against Lender,

18   such litigation would be extremely costly and would be subject to the inherent and substantial risk of

19   loss in litigation related to the Property. Trustee and his counsel have analyzed the claims raised

20   between Debtor and its insiders (who are personal guarantors of Lender's claims) and Lender that

21   are currently pending in the Riverside County Superior Court including Debtor's claims for

22   rescission and fraud, which are claims that the Debtor has not yet asserted in the Riverside County

23   Superior Court, but which Debtor has discussed with Trustee.

24        After completing his investigation, Trustee has concluded that the risk to the Estate of

25   prosecuting and losing such claims are too great and that the Estate is better off proceeding with the

26   Agreement. If such litigation was unsuccessful, the Estate would receive no benefit from the

27   Property and the creditor body would be substantially diluted by a foreclosure sale and a large

28   deficiency claim. In order to avoid such a risk and unfavorable outcome and to minimize the

14

1   administrative and litigation costs of the Estate, Trustee has exercised his business judgment in

2   deciding to enter the Agreement.

3               ii.      **Difficulties in Collection**

4          The difficulty in collecting on a judgment, should one be entered in favor of the Trustee in

5   the pending litigation with Lender, weighs in favor of approving the compromise. Upon Court

6   approval, the Agreement authorizes Trustee to sell the Property free and clear of liens, claims, and

7   interests, including Lender's liens. If, on the other hand, this Motion is denied, Lender may obtain

8   relief from the automatic stay (a very low bar in this single asset real estate case) and foreclose on

9   the Property. Assuming the Estate successfully defeats Lender's relief from stay motion pending

10  resolution of the litigation, Trustee is concerned that the current upward trend in the real estate

11  market could reverse and that the condition of the incomplete project may be substantially worsen

12  before he could be in a position to sell the Property. For these reasons, pursuing a sale after

13  protracted litigation is inherently less certain than settling now and allowing the Trustee to

14  immediately market the Property for sale.

15              iii.     **Complexity**

16         Should further litigation be necessary, Trustee believes that the legal issues will be

17  substantively complex, and development of the necessary evidence could prove difficult and

18  expensive, especially if Debtors' principals fail to cooperate. Moreover, the evidentiary burden of

19  proving any alleged claims against Lender and/or seeking to invalidate its liens would be on the

20  Trustee. After reviewing the competing claims in the state court action, Trustee has concluded that

21  such claims are incredibly complex and would required substantial resources that the Estate does not

22  have. Additionally, if Lender obtains relief from stay and consummates a foreclosure, the ability to

23  successfully continue with and prevail on such state court claims becomes more problematic.

24         There is no certainty that the result from continued litigation with Lender would be better

25  than the settlement achieved. Trustee has therefore determined that settlement of the matter is

26  appropriate. This factor, therefore, weighs in favor of approving the compromise.

27  / / /

28

MOTION TO APPROVE AGREEMENT FOR SECTION 363 SALE

4833-2572-3362,v.1/1015-142

### iv.    Expense, inconvenience, or delay

The inherent risk of loss in litigation, the costs associated with litigation, and the delay in the administration of the Estate weigh in favor of approving the compromise. To prevail, the Estate will need to defeat motions and claims being prosecuted by a formidable opponent and Trustee will have to devote substantial resources to litigation of uncertain claims and defenses. On the other hand, the Agreement provides an avenue the Estate to obtain substantial benefit from the administration of the Property including the elimination of substantial secured claims and the subordination of what could be a substantial unsecured deficiency claim. The Agreement is also in the best interest of creditors because it provides certainty to creditors of the Estate, reduces expense to the Estate, and will eliminate the delay caused by litigation.

In sum, because the *A&C* factors weigh in favor of approving the Agreement, which is a fair and equitable agreement in the best interest of creditors, the Court should approve the Agreement.

## 6.    Conclusion

Because the settlement on the terms set forth in the Agreement will provide a sure benefit to the Estate and will minimize further administrative costs to the Estate, Trustee respectfully requests that this Court enter an order:

1.    Granting the Motion;

2.    Approving the Agreement attached as **Exhibit 1** to the Marshack Declaration;

3.    Authorizing Trustee to execute any other documents which may be necessary to consummate the Agreement; and

4.    For such other relief as the Court deems just and proper.

Dated: July 28, 2021                                MARSHACK HAYS LLP


                                                    By:  */s/ D. Edward Hays*
                                                        D. EDWARD HAYS
                                                        CHAD V. HAES
                                                        Attorneys for Chapter 11 Trustee,
                                                        Richard A. Marshack

MOTION TO APPROVE AGREEMENT FOR SECTION 363 SALE
4833-2572-3362,v.1/1015-142

# Declaration of Richard A. Marshack

I, RICHARD A. MARSHACK, declare and state:

1.      I am the duly-appointed Chapter 11 Trustee of the bankruptcy estate ("Estate") of Glenroy Coachella, LLC ("Debtor"). The matters stated below are within my own knowledge or information and, if called upon to testify, I could and would competently testify thereto.

2.      I make this declaration in support of my to approve a settlement agreement ("Agreement") with U.S. Real Estate Credit Holdings III-A, L.P. ("Lender" or "Calmwater"). A true and correct copy of the Agreement is attached hereto as **Exhibit 1**.

3.      I reviewed the docket in this case prior to execution of this Declaration to refresh my memory as to the dates on which particular documents were filed.

4.      On February 15, 2021, Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code.

5.      On March 19, 2021, as Dk. No. 126, the Court entered an order approving the United States Trustee's application for the appointment of a Chapter 11 Trustee.

6.      Since my appointment, my professionals and I have investigated and spent hundreds of hours conducting due diligence analyzing whether there was any value to be realized from the real property scheduled by Debtor to be located at and commonly known as 84-141 Avenue 48, Coachella, California ("Real Property").

7.      Debtor owns approximately 70.5% of the Real Property as a tenant-in-common with three other non-debtor entities ("TICs"). To facilitate a sale of the Real Property, the other approximate 29.5% of the Real Property has been deeded to me. The deeds were recorded on July 2, 2021, and an order approving the TIC Agreement was entered on July 28, 2021.

8.      The Real Property is encumbered by California Statewide Communities Development Authority ("PACE") liens against the Real Property ("PACE Liens") and Mello Roos assessments by the Community Facilities District No. 2005 ("Mello Roos Assessments") which total approximately $11,400,000. he PACE Liens and Mellos Roos Assessments are in first priority along with delinquent real property taxes in the approximate amount of $688,477.

MOTION TO APPROVE AGREEMENT FOR SECTION 363 SALE
4833-2572-3362,v.1/1015-142

9.      There are approximately 33 mechanic's liens totaling approximately $9 million that have been recorded against the Real Property ("Mechanic's Liens"), and at least thirteen *lis pendens* related to pending lawsuits have been recorded ("Lis Pendens").

10.     There is also a deed of trust held by U.S. Real Estate Credit Holdings III-A ("Calmwater"), which has filed a secured proof of claim in the amount of $30,878,944.46 ("Calmwater Lien"). Certificates of Indebtedness were recorded against the Real Property by the Receiver and in favor of Calmwater totaling $2,406,718.57 ("Certificates").

11.     There are disputes between the holders of the Mechanic's Liens and Calmwater regarding whose liens have priority.

12.     Lastly, there is a judgment in the amount of $94,275.04 recorded against the Real Property on August 29, 2019, related to a U.S. District Court lawsuit entitled *Silhouette Outdoor Furniture, Inc. v. Glenroy Coachella, LLC*, Case No. EDCV 19-00373-CJC(KKx) ("Silhouette Lien").

13.     According to the Schedules, Debtor's 70.5% of the Real Property was worth $52.2 million as of the Petition Date.

14.     I have met with a number of parties potentially interested in purchasing the Real Property. To date, I have an executed letter of intent with a prospective purchaser and am in the process of finalizing a purchase and sale agreement. I expect to file a motion to approve the proposed sale prior to the hearing on this motion.

15.     I have spent considerable time investigating and analyzing the anticipated costs to complete construction of the Hotel and the Project. To that end, my professionals and I have interviewed Mr. Lyle of Coldwell Banker and Mr. Reay of Atlas Hospitality who specialize in the marketing of similar hotel projects in the Coachella Valley. I assessed the market report for Coachella Valley hotel comparables obtained from Coldwell Banker.

16.     Based on the information provided by Mr. Lyle and Mr. Reay, there appears to be little to no equity in the Property. Based on the lack of liquid assets in the Estate, I do not believe that the Estate is in a position to finance the completion of construction. The sale of the Real Property is the best course of action for the Estate because Lender has agreed to a discounted release

18

price of $27,200,000 should the sale with Buyer be consummated. If that transaction is concluded,

tens of millions of dollars of debt against the Estate will be eliminated.

17.     While Debtor believes the Estate may have defenses and potential claims against

Lender, such litigation would be extremely costly and would be subject to the inherent and

substantial risk of loss in litigation related to the Property. I and my counsel have analyzed the

claims raised between Debtor and its insiders (who are personal guarantors of Lender's claims) and

Lender that are currently pending in the Riverside County Superior Court including Debtor's claims

for rescission and fraud, which are claims that the Debtor has not yet asserted in the Riverside

County Superior Court, but which Debtor's counsel has discussed with Trustee.

18.     After completing my investigation, I have concluded that the risk to the Estate of

prosecuting and losing such claims are too great and that the Estate is better off proceeding with the

Agreement. If such litigation was unsuccessful, the Estate would receive no benefit from the

Property and the creditor body would be substantially diluted by a foreclosure sale and a large

deficiency claim. In order to avoid such a risk and unfavorable outcome and to minimize the

administrative and litigation costs of the Estate, I have decided to enter the Agreement.

19.     If this Motion is denied, Lender may obtain relief from the automatic stay (which

likely will be a very low bar in this single asset real estate case) and foreclose on the Property.

Assuming the Estate successfully defeats Lender's relief from stay motion pending resolution of the

litigation, I am concerned that the real estate market could reverse its current upward trend and that

the condition of the Property (which remains subject to the receivership) may be substantially

worsen before I could be in a position to sell the Property. Plus, interest, taxes, and receivership

costs continue to accrue diluting any possible value to the Estate.

20.     Should further litigation be required if this compromise were not approved, I believe

that the legal issues will be substantively complex, and development of the necessary evidence could

prove difficult and expensive, especially if Debtors' principals fail to cooperate. Moreover, the

evidentiary burden of proving any alleged claims against Lender and/or seeking to invalidate its liens

would be on the Estate. After reviewing the competing claims in the state court action, I have

concluded that such claims are incredibly complex and would require substantial resources that the

19

MOTION TO APPROVE AGREEMENT FOR SECTION 363 SALE

4833-2572-3362,v.1/1015-142

1  Estate does not have. Additionally, if Lender obtains relief from stay and consummates a

2  foreclosure, the ability to successfully continue with and prevail on such state court claims becomes

3  more problematic.

4      21.    I believe that the inherent risk of loss in litigation, the costs associated with litigation,

5  and the delay in the administration of the Estate weigh in favor of approving the compromise. To

6  prevail, the Estate will need to defeat motions and claims being prosecuted by a formidable opponent

7  and I will have to devote substantial resources to litigation of uncertain claims and defenses (which

8  resources the Estate lacks).

9      22.    On the other hand, the Agreement provides an avenue for the Estate to obtain

10  substantial benefit from the administration of the Property including the elimination of substantial

11  secured claims and the subordination of what could be a substantial unsecured deficiency claim.

12      23.    The Agreement is also in the best interest of creditors because it provides certainty to

13  creditors of the Estate, reduces expense to the Estate, and will eliminate the delay caused by

14  litigation.

15      24.    For these reasons, it is my business judgment that the proposed settlement is

16  reasonable, represents a fair and equitable resolution of the various disputes between the Estate and

17  Lender, and is in the best interests of creditors and the Estate.

18      25.    I seek the Court's approval of the proposed settlement.

19      I declare that the foregoing is true and correct under the penalty of perjury. Executed July 28,

20  2021.

21  _____
    RICHARD A. MARSHACK

22

23

24

25

26

27

28

MOTION TO APPROVE AGREEMENT FOR SECTION 363 SALE
4833-2572-3362,v.1/1015-142

**EXHIBIT 1**

DocuSign Envelope ID: 607046EE-037E-479C-AD01-FD1998D3BF78

July 21, 2021

## SETTLEMENT AGREEMENT AND
## TERMS OF CONSENT FOR SECTION 363 SALE

This Settlement Agreement and Terms of Consent for Section 363 Sale ("Agreement") includes the material terms of potential transactions (collectively, "Proposed Transaction") by Richard A. Marshack, in his capacity as Trustee ("Trustee" or "Seller"), to sell property of the bankruptcy estate of Glenroy Coachella, LLC ("Debtor") pursuant to a 363 Motion, Bidding Procedures Motion, and Compromise Motion (each as defined below) on terms to which U.S. Real Estate Credit Holdings III-A, L.P. ("Lender") consents.  This Agreement, when approved by the Bankruptcy Court, shall inure to the benefit of, and be binding upon, the respective agents, predecessors, successors, and assigns of the Lender, Debtor, and Trustee (in his representative capacity), the creditors of the estate, and the estate.  The agreements and releases set forth herein shall survive any conversion of the Debtor's bankruptcy case or the appointment of any successor trustee, and the releases contemplated herein shall survive the dismissal of the case.

This Agreement does not constitute a commitment by Lender to purchase any property from Seller other than being required to tender the Minimum Cash Bid in the event that Trustee is not able to sell to a third party on the terms set forth herein subject to the conditions set forth herein.  Should Lender successfully purchase property through a credit bid from Seller, the following material terms, conditions, covenants, representations, warranties, and other provisions will be further documented in definitive legal documentation should Lender so request (collectively, "Definitive Agreements").  The Definitive Agreements may include provisions not specifically described herein, but as may be negotiated and agreed upon by the parties so long as such provisions are neither material nor inconsistent with this Agreement.  Lender's obligations under this Agreement including its obligation to acquire the Property (as specified below) are subject to bankruptcy court approval of this Agreement including approval of the contemplated Section 363 sale.

This Agreement is intended to bind Lender and the Debtor's estate (through the Trustee), with respect to agreements set forth below, including with respect to the releases set forth herein and the procedures regarding any Proposed Transaction, provided that such agreements are subject to the Court's approval of the Compromise Motion and appropriate bidding procedures (including the qualification of bidders) as described below and in the Bidding Procedures Motion.

| 1. **Buyer** | The purchaser of the Property (defined below), which purchaser may be a third party or Lender (or their nominee) is referred to as ("Buyer"). |
|---|---|
| 2. **Seller** | Richard A. Marshack, in his capacity as bankruptcy trustee for Glenroy Coachella, LLC is referred to as "Seller" or "Trustee." Seller intends to file a motion seeking entry of an order converting Debtor's bankruptcy case to Chapter 7. Lender does not oppose conversion. Trustee will provide Lender with a copy of the motion for Lender's review and input prior to filing. Lender retains the right to file a |

DocuSign Envelope ID: 607046EE-037E-479C-AD01-FD1998D3BF78

| | |
|---|---|
| | response to the Motion if Trustee does not accept any proposed revisions to the form of the Motion. |
| **3.  Purchase and Sale** | Seller is selling all of the bankruptcy estate's right, title, and interest, if any, in and to the following (collectively, "<u>Property</u>"):  (i) that certain land located in the County of Riverside, State of California, identified by APNs 603-220-061, 603-220-065, 603-220-067, 603-220-068, and 603-220-069, comprising approximately thirty-five (35) acres, as more particularly described in that certain Deed of Trust dated April 26, 2018, and recorded in the Official Records of Riverside County as Doc. No. 2018-0162476 ("<u>Land</u>"), (ii) the partially completed hotel resort on the Land ("<u>Improvements</u>", and together with the Land, "<u>Real Property</u>"), (iii) the tenancy-in-common interests granted to Seller by Coachella Resort, LLC, Force Rubin, LLC, and Force Rubin 2, LLC; (iv) all rights, privileges, and easements appurtenant to the Land, (v) all developments rights, including any development agreements related to the Real Property; (vi) all right, title, and interest in any intangible personal property used in relation to the ownership, development, or operation of the Real Property; (vii) all tangible personal property, including construction materials, equipment, appliances, and furnishings, owned by Seller located on the Real Property or purchased in connection with its development, even if stored off site; all such foregoing Property to be sold free and clear of all liens, claims, encumbrances, and interests other than the Mello Roos Bonds and PACE Bonds and as set forth in any Court order approving the sale; and (viii) all tax attributes of Seller (including, by way of example, any net operating losses) arising from or related to the Property.<br><br>For the avoidance of doubt, the term "Property" also includes the Estate's interest, if any, in development rights and entitlements to develop on the Real Property a full service hotel comprising approximately 199,026 square feet of gross building area that will include, without limitation the following (collectively, "<u>Hotel</u>"): (i) 51 one-story villas split between two-, four- and six-bedroom structures comprising a total of 250 guestrooms, (ii) four restaurants, (iii) outdoor pool, (iv) fitness center, (v) full-service spa with six treatment rooms, (vi) outdoor event space, (vii) approximately 11,125 square feet of dedicated meeting space, (viii) surface parking for approximately 377 automobiles, all built behind an 11-foot high privacy wall, and (ix) the North East corner parcel entitled for a mid-rise hotel.<br><br>Seller is not the title owner of, and is not selling, the adjacent parcel upon which an operating dispensary is located and which is commonly known as "Parcel 5."  Upon commencement of its bankruptcy case, Glenroy Coachella, LLC owned approximately 70.5% of the Real Property as a tenant-in-common with three other |

EXHIBIT 1, PAGE 22

DocuSign Envelope ID: 607046EE-037E-479C-AD01-FD1998D3BF78

non-debtor entities. To facilitate a sale of the Property, the other approximate 29.5% of the Property has been deeded to Seller which deeds have been recorded in the Official Records of Riverside County as Instrument Nos. 2021-0401985, 2021-0401986, and 2021-0401987 (the "TIC Deeds").

Property to be sold does not include any causes of action or claims held by Seller in his capacity as trustee for Debtor's bankruptcy estate (for the sake of clarity, the foregoing does not limit the Seller's releases of claims against Lender as set forth below).

Upon approval of this Agreement, Trustee will make available for inspection and copying any non-privileged information and or documents he may have in his possession, with respect to any claims Lender may have against other parties with respect to the construction loan ("Loan") made to Debtor and its tenants-in-common (together, "Borrowers"), and any Borrowers' affiliates or respective principals (including, without limitation, Stuart Rubin and Elliot Lander) – or claims by such parties against Lender – and/or other claims Lender may have in connection with the Loan, which is secured by the Property, and will continue to make such information and documents available post-closing at the request of Lender.

The sale will also be subject to the following terms:

- The sale of the foregoing Property will be on an "as-is," "where-is" basis;

- There are no representations or warranties, except as to such warranties regarding title to the Property, the ability to transfer title to the Property, and contracts containing warranties to the extent assumed by Buyer, which rights and interests will be free and clear of any liens, claims, encumbrances, and interests except for the Mello Roos Bonds and PACE Bonds and as set forth in any Court order approving the sale (which shall include normal and customary rights that run with the land such as easements);

- All due diligence to be completed prior to bidding; and

- All bids to be made without any financing or other contingencies.

Since his appointment, Trustee has diligently pursued every potential sale opportunity for the Property and has discussed a potential sale of the Property with multiple potential purchasers.  Trustee has met multiple potential purchasers at the Property to allow them to inspect it and conduct due diligence. Trustee has also spoken with more than five potential brokers regarding additional marketing of the Property. But, there has been a lack of interest from any such brokers regarding such marketing and all but one declined to even discuss terms of a

3

EXHIBIT 1, PAGE 23

DocuSign Envelope ID: 607046EE-037E-479C-AD01-FD1998D3BF78

| | |
|---|---|
| | listing agreement. Trustee has thus determined, in his business judgment, that there is no feasible marketing strategy through a third-party broker under the constraints and limitations of this case. The Parties further acknowledge that the Property has been marketed for years prior to bankruptcy without success. Given the lack of financial resources of this estate and the lack of any meaningfully productive marketing opportunities through a third-party broker, Trustee believes that the best way to realize any value from this Property for the benefit of the estate is to continue his efforts to sell the Property directly to the prospective purchasers who have expressed interest in the Property. Lender agrees to fully cooperate with Trustee's efforts. |
| **4.  Assumption and Assignment** | Buyer reserves the right to designate contracts to be assigned by Seller relating to the Property (including, without limitation, the development rights set forth above, any construction agreements, any warranties, design, and construction contracts, and contracts regarding the management or operation of the Property), prior to bidding. In addition to the Purchase Consideration, Buyer shall be responsible for all amounts necessary to cure any defaults required as a condition of assumption for any designated contracts. Seller reserves the right to terminate or reject all contracts not expressly designated for assumption and assignment. |
| | Buyer will neither assume any liabilities of Seller nor take title to Property subject to any liens, claims, encumbrances or interests except for Mello Roos Bonds and PACE Bonds and as set forth in the Sale Motion and any Court order approving the sale (which shall include normal and customary rights that run with the land such as easements). |
| **5.  Closing** | The sale must close on or before September 30, 2021 ("Closing"). |
| | The Trustee shall file with the Court appropriate pleadings ("363 Motion") seeking approval of the sale ("Sale") of the Property free and clear of all claims, liens, encumbrances and interests pursuant to Section 363 of Title 11 of the United States Code as set forth in Section 10, below, which pleadings shall include a motion ("Bid Procedures Motion") for approval of bid procedures ("Bid Procedures"), as well as a motion to approve portions of this Agreement which represent a compromise of the estate's alleged claims against Lender under Rule 9019 of the Federal Rules of Bankruptcy Procedure ("Compromise Motion"). The 363 Motion will identify the liens, claims, and interests upon which the Property will be sold free and clear. Trustee agrees that Lender must approve in writing the form and content of such motions and related orders to ensure compliance with this Agreement. Final Orders in form and substance acceptable to Lender granting the relief sought in the Bid |

EXHIBIT 1, PAGE 24

DocuSign Envelope ID: 607046EE-037E-479C-AD01-FD1998D3BF78

|  |  |
|---|---|
|  | Procedures Motion, Compromise Motion, and 363 Motion shall be entered by the court.<br><br>Certain bidding procedures (subject to further detail in the Bidding Procedures Motion, as approved by Lender) are as set forth below in Section 10.  Additionally, until the auction on Seller's 363 Motion concludes, Trustee will have the right to seek higher and better cash bids for the Property even after any potentially interested party makes a bid or after Trustee executes proposed letters of intent or purchase and sale agreements. Concurrent with the court hearing on the 363 Motion, Seller will conduct an auction in open court to determine if there are higher and better cash offers.  Trustee shall determine the highest and best offer for the Property after consultation with, and subject to the consent of, the Lender if such terms differ from those set forth in this Agreement.<br><br>The Bid Procedures shall include, without limitation, a sale process, including a minimum initial overbid increment of $200,000 and subsequent minimum overbid increments of $100,000, provided that should Lender credit bid, it may do so in larger increments (as may any other qualified cash bidders with respect to their respective bids). |
| **6.  Consideration** | The consideration for the Proposed Transaction is comprised of the following components:<br><br>• A sale of the Property to a "cash" purchaser paying sufficient proceeds such that Lender receives not less than $27,200,000, **plus** any real property taxes and penalties paid by Lender during the pendency of this bankruptcy case, which amount must be unconditionally paid to Lender and may not be subject to objections, contest, dispute, clawback, escrow, any contingencies, any payment to other claimants or lienholders, or to any surcharge under Section 506(c) of the Bankruptcy Code and no part of which may be withheld by the Trustee for any reason, including without limitation the payment of any administrative claims or professional fees ("Acceptable Cash Payment").  For the avoidance of doubt, the Acceptable Cash Payment is not intended as a cap on Lender's recovery, but only as a minimum acceptable amount.  Lender consents to a sale free and clear of its liens, claims, and interests should any cash sale pay it the Acceptable Cash Payment.  Any such cash purchaser must also pay any and all outstanding and/or delinquent real property taxes and interest, including the taxes due on April 12, 2021, the amount of which shall not reduce the Acceptable Cash Payment. The Acceptable Cash Payment must be paid to Lender within two business days of the latter of the entry of an order approving the Proposed Transaction |

EXHIBIT 1, PAGE 25

DocuSign Envelope ID: 607046EE-037E-479C-AD01-FD1998D3BF78

and the receipt of the sale proceeds by the Trustee or any escrow agent appointed to effectuate the closing.

- In the absence of a third-party "cash" purchaser able to deliver the Acceptable Cash Payment to Lender effective as of Bid Deadline, Lender shall be deemed to have tendered a credit bid in the minimum amount of $22,000,000 ("Minimum Credit Bid"). Lender shall have the right to increase its credit bid up to the maximum amount of its claims, which Trustee acknowledges are no less than $30,000,000 pursuant to Section 363(k) of the Bankruptcy Code (a condition that shall expressly be provided for in an order approving the Bid Procedures). Lender shall not be under any obligation to submit the Minimum Credit Bid, nor shall it be deemed to have tendered a credit bid, unless the following conditions have been satisfied (together, the "Minimum Credit Bid Conditions"): (i) Lender's claim shall have been allowed in full pursuant to a final non-appealable order approving the Compromise Motion, (ii) the TIC Deeds shall remain enforceable, and (iii) there shall have been no materially changed circumstances with respect to the Property or its title.

- If Lender is required to credit bid in the absence of a third-party cash purchaser able to deliver the Acceptable Cash Payment to Lender and otherwise satisfy the terms of this Agreement, it must provide Seller funds in the amount of $4,000,000 ("Escrow Fund"), which amount must be deposited in a sub-escrow account within 2 business days of the entry of a court order approving any sale to Lender. The Escrow Fund deposit will be held by Seller in trust pending resolution of the seniority of mechanics liens vis-à-vis the Lender's lien and disbursement following such resolution. Trustee may only disburse Escrow Funds pursuant to Lender's express written agreement or, in the absence of such agreement, pursuant to an order of the Court upon determination that a particular mechanics lien claimant has a duly-perfected, enforceable lien in an allowed amount that is senior to Lender's lien against the Property. Lender will be responsible for prosecuting any objections to the validity, priority, and extent of mechanics liens and will bear the costs of its own representation. Lender and Trustee, however, shall also use their best efforts to resolve all such claims by not later than October 31, 2021. Lender reserves the right to seek an order from the Bankruptcy Court for release of unpaid funds from the Escrow Fund, thereafter. Trustee will support any objection by Lender (which Trustee believes is well-grounded in fact and supported by law) to the amount, priority, or extent

EXHIBIT 1, PAGE 26

DocuSign Envelope ID: 607046EE-037E-479C-AD01-FD1998D3BF78

of the claim of Doug Wall Construction, Inc., which was contractually and expressly subordinated to the claim of Lender and therefore subject to a bona fide dispute and not entitled to participate in the Escrow Fund, but in any event the Trustee agrees to refrain from taking any position that is adverse to Lender's position with respect to Doug Wall Construction, Inc.'s claim, including through oral argument or by filing any objection or other pleadings. Lender will indemnify the estate for the claim of Doug Wall Construction, Inc., up to $1,300,000, should such claim later be determined to have priority over Lender's claim. If Lender specifically requests that the Trustee file pleadings related to the prosecution or support of Lender's litigation relating to the mechanic's liens as required by this paragraph, and only to the extent approved by Lender pursuant to an agreed budget, Trustee's counsel shall be entitled to administrative expenses from the Escrow Fund. To the extent Trustee distributes monies from the Escrow Fund to holders of mechanics liens that are determined to be allowed and senior to Lender, he shall be entitled to compensation from the Escrow Fund pursuant to Section 326 (to the extent such funds are not fully consumed by allowed senior liens); provided that the distributions upon which the Section 326 fee is calculated shall be reduced by the attorneys' fees incurred by Lender in the bankruptcy proceedings in challenging the priority, extent or amount of any such claims. In no event will the reduction for attorneys' fees be more than $300,000. For the sake of clarity, the Escrow Fund is not intended nor shall it be used for distributions to Doug Wall Construction, Inc. (whose claim is covered by the above-referenced indemnity provisions), and Trustee shall not be entitled to any fee as a consequence of the Lender making any direct payments to Doug Wall Construction, Inc. Trustee will also not be entitled to compensation for any funds returned to Lender as not being necessary to pay allowed senior liens.

- Lender will pay certain administrative fees of the Trustee and/or funds for the purposes of funding administrative expenses of the estate and/or making distributions to creditors as follows ("Estate Payment"):

  o (1) should Lender be the successful purchaser (including by virtue of its credit bid), Lender will pay Trustee the sum of $200,000 which funds will be earmarked for and first be used to pay allowed compensation of Trustee and his retained counsel Marshack Hays LLP; or

EXHIBIT 1, PAGE 27

DocuSign Envelope ID: 607046EE-037E-479C-AD01-FD1998D3BF78

    o   (2) should a sale to a third-party cash purchaser (i.e., a Buyer other than Lender) be approved and should Lender receive the Acceptable Cash Amount (as defined below), then Lender carves-out and consents to $200,000 from such sale to be paid to Trustee (the payment of which shall not be deemed to affect Lender's claims for allowance of administrative claims), instead of Lender to be earmarked for and first used to pay the allowed compensation of Trustee and his retained counsel, Marshack Hays LLP. Additionally, should the Acceptable Cash Amount be exceeded (for the avoidance of doubt, reference to the "Acceptable Cash Amount" shall mean $27,200,000 **plus** any real property taxes and penalties paid by Lender during the pendency of this bankruptcy case), the Estate Payment shall be increased from $200,000 as follows:

- Should Lender receive $1,000,000 above the Acceptable Cash Amount through a cash sale to a third-party or if Lender makes a credit bid between $27,200,000 and $28,199,999.99 (**plus** any real property taxes and penalties paid by Lender during the pendency of this bankruptcy case) which becomes the highest and best offer, it will remit to the Trustee an additional $200,000, for a total Estate Payment of $400,000.

- Should the Lender Receive $2,000,000 above the Acceptable Cash Amount through a cash sale to a third-party or if Lender makes a credit bid equal to or exceeding $28,200,000 (**plus** any real property taxes and penalties paid by Lender during the pendency of this bankruptcy case), it will remit to the Trustee an additional $200,000, for a total Estate Payment of $600,000, with similar increases for each additional $1,000,000 in third-party cash or Lender credit bid.

- Buyer's assumption of Debtor's liability for, and agreement to take title to the Property subject to, those certain bonds issued by the [Community Facilities District No. 2018-1 of the City of Coachella (Glenroy)] related to the construction of the Property ("Mello Roos Bonds"), which are approximately [$5,680,000], and those certain bonds issued by the [California Statewide Communities Development Authority]

8

EXHIBIT 1, PAGE 28

DocuSign Envelope ID: 607046EE-037E-479C-AD01-FD1998D3BF78

and related to the construction of the Property ("PACE Bonds"), which are approximately [$7,900,000] (exclusive of accruing interest and costs), such assumptions of liability to be confirmed acceptable to the above-referenced entities that provided such Bonds.

- Should Soucialize, Inc. or its nominee become a "stalking horse" bidder on terms consistent with this Agreement, including without limitation, with a bid sufficient to make the Acceptable Cash Payment to Lender, and should another third-party cash bidder successfully purchase the Property, then Lender will consent to the first $100,000 of funds to be received by Lender above the Acceptable Cash Payment being remitted to Soucialize, Inc. or its nominee as a break-up fee, which shall only be paid if another purchaser successfully closes its sale and remits the proceeds.

- Should Lender be the successful Buyer for less than a full credit bid, its deficiency claim will include continuing accruing fees, costs, and interest at the default rate, as well as funds actually disbursed from the Escrow Fund (and for the sake of clarity, such fees, costs, and interest are continuing to accrue without regard to any credit bids).

- Without regard to whether Lender is the successful Buyer, Lender shall be entitled to an allowed deficiency claim in the amount of its filed proof of claim less amounts actually credit bid or received pursuant to a sale in this bankruptcy estate which claim shall be subordinated to all other allowed unsecured claims, provided that there shall be no subordination of such deficiency claim to any claim of Seller's tenants-in-common (Coachella Resort, LLC, Force Rubin, LLC, and Force Rubin 2, LLC), or any interest holders or principals of Seller, affiliates or tenants-in-common, including Stuart Rubin, Elliot Lander, Joseph Rubin, or Gary Stiffelman, or their respective affiliates or assigns. Nor shall there by any subordination of any allowed deficiency claim to Doug Wall Construction, Inc.    Other than as expressly subordinated, Lender's claims shall otherwise be deemed to be allowed claims (secured and unsecured), not subject to any claim, counterclaim, objection, defense, setoff, recoupment, reduction, surcharge, disgorgement, avoidance, recharacterization, reclassification, subordination, disallowance, impairment, or other challenge pursuant to the Bankruptcy Code or other applicable nonbankruptcy law, by any party including, without limitation, the Trustee, creditors,

EXHIBIT 1, PAGE 29

| | |
|---|---|
| | the Debtor, insiders, the Creditors' Committee, or any other trustees or fiduciaries that may be later appointed in the case.<br><br>• Lender shall have an allowed Chapter 11 administrative claim the amount of $400,000, which reflects that Lender has been incurring more than $130,000 per month in administrative costs since the Petition Date, and will continue to incur such costs throughout the sale process outlined herein, **plus** any real property taxes and penalties paid by Lender during the pendency of this bankruptcy case (except to the extent Lender is reimbursed for such real property taxes and penalties from a cash bidder, which, for the sake of clarity, such amount shall not be inclusive of the $27,200,000 referenced above) ("Allowed Administrative Claim"), which Allowed Administrative Claim is not subject to objection, offset, reduction, or disallowance. No portion of the Allowed Administrative Claim will be paid from the Estate Payment. To the extent the Estate Payment does not pay all allowed Chapter 11 administrative claims of Trustee and his retained professionals, $200,000 of the Allowed Administrative Claim shall be subordinated solely to the remaining unpaid Chapter 11 administrative claims of Trustee, Marshack Hays LLP, and Grobstein Teeple LLP. Thereafter, Lender's Allowed Administrative Claim shall be paid *pari passu* with other allowed Chapter 11 administrative claims.<br><br>• The consented Allowed Administrative Claim shall not bar Lender from filing the necessary pleadings to pursue any additional administrative claims it has actually incurred, which **additional** claims remain subject to investigation and objection, and which claims, if allowed by the Court, shall also be paid *pari passu* with other administrative claims (to the extent they are Chapter 11 allowed administrative expenses, they will be treated as set forth in the previous paragraph, but to the extent they are Chapter 7 allowed administrative expenses, they will be treated in accordance with the Bankruptcy Code). |
| **7. Waivers and Releases** | For the avoidance of doubt, the waivers and releases set forth in this Agreement are intended as binding agreements subject only to the Bankruptcy Court's approval of the Compromise Motion, and the consideration for which includes, among other things, Lender's agreement to accept the Acceptable Cash Payment in lieu of filing a motion for relief from stay or consummating a foreclosure sale after obtaining relief from stay, Lender's agreements to continue deadlines as set forth in this Agreement, and Lender's agreement to present the Minimum Credit Bid should the Bidding Procedures Motion (which |

EXHIBIT 1, PAGE 30

DocuSign Envelope ID: 607046EE-037E-479C-AD01-FD1998D3BF78

obligation to credit bid remains subject to the Minimum Credit Bid Conditions).

In consideration of the foregoing:

- Trustee agrees that the collateral of Lender shall not under any circumstances be subject to surcharge pursuant to Section 506(c) of the Bankruptcy Code.

- Trustee, on behalf of the Debtor, its successors and assigns, and the Debtor's estate (the "Estate Releasing Parties"), does hereby release, acquit, and forever discharge Lender, all of Lender's predecessors in interest, and all of Lender's past and present officers, directors, attorneys, affiliates, employees, and agents, of and from any and all claims, demands, obligations, liabilities, indebtedness, breaches of contract, breaches of duty, or of any relationship, acts, omissions, misfeasance, malfeasance, causes of action, defenses, offsets, debts, sums of money, accounts, compensation, contracts, controversies, promises, damages, costs, losses and expenses, of every type, kind, nature, description, or character, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, each as though fully set forth herein at length (each, an "Estate Released Claim" and collectively, the "Estate Released Claims"), that the Estate Releasing Parties now have or may acquire as of the date this Agreement becomes effective by approval of a final non-appealable order approving the Compromise Motion, at which time Lender will be obligated to submit the Minimum Credit Bid, subject only to the Minimum Credit Bid Conditions, as defined above (hereafter, the "Release Date"), including without limitation, those Estate Released Claims in any way arising out of, connected with, or related to any and all prior credit accommodations provided by the Lender, or any of the Lender's predecessors in interest, to the Debtor, any claims for fraud, rescission, etc., and any agreements, notes or documents of any kind related thereto, or the transactions contemplated thereby or hereby, or any other agreement or document referred to herein or therein.

- Except as set forth in this Agreement, Lender, including all of Lender's predecessors in interest and all of Lender's past and present officers, directors, attorneys, affiliates, employees, and agents (collectively, "Lender Releasing Parties"), does hereby release, acquit, and forever discharge Trustee and the Estate, of and from any and all claims, demands, obligations, liabilities, indebtedness, breaches of contract, breaches of duty, or of any relationship, acts, omissions, misfeasance, malfeasance, causes

EXHIBIT 1, PAGE 31

DocuSign Envelope ID: 607046EE-037E-479C-AD01-FD1998D3BF78

of action, defenses, offsets, debts, sums of money, accounts, compensation, contracts, controversies, promises, damages, costs, losses and expenses, of every type, kind, nature, description, or character, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, each as though fully set forth herein at length (each, a "<u>Lender Released Claim</u>" and collectively, the "<u>Lender Released Claims</u>"), that the Lender Releasing Parties now have or may acquire as of the date this Agreement becomes effective by the Release Date, including without limitation, those Lender Released Claims in any way arising out of, connected with, or related to actions taken by Trustee (in his representative and personal capacities) and his retained professionals and the transactions contemplated hereby. For the avoidance of doubt, such Lender Released Claims shall not release, and shall not be deemed to release, any claims or defenses of any type that Lender may have against Coachella Resort, LLC, Force Rubin, LLC, and Force Rubin 2, LLC, Stuart Rubin, Elliot Lander, Gary Stiffelman, or their respective past and present officers, directors, attorneys, affiliates, employees, and agents. Additionally, the foregoing Lender Released Claims shall not prohibit the Lender from notifying the Estate or naming it as a party-in-interest in any action by Lender to clear title to the Property (e.g., for purposes of removing any encumbrances to title or clearing title), provided that Lender may not assert a monetary claim against the Debtor's estate in connection with such actions.

- Trustee and Lender acknowledge, represent, and warrant to each other that they understand the meaning and effect of Section 1542 of the California Civil Code, which provides:

  > A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

- With regard to Section 1542 of the California Civil Code, the parties agree to assume the risk of any and all unknown, unanticipated, or misunderstood defenses. The parties further intend that with regard to the Estate Released Claims and the Lender Released Claims, they waive and release all rights and benefits which the Releasing Parties might otherwise have under Section 1542 of the California Civil Code with regard to the

12

DocuSign Envelope ID: 607046EE-037E-479C-AD01-FD1998D3BF78

release of such unknown, unanticipated, or misunderstood defenses and Released Claims.

- Additionally, Trustee agrees to the allowance of Lender's claim in the full amount of its filed proofs of claim (subject to the subordination provisions above), and will file the Compromise Motion concurrent with the filing of the Bid Procedures Motion to ensure that Lender's claim is allowed in such amount prior to any auction.  Trustee agrees that should any creditor object to any portion of Lender's claim, Lender's right to credit bid on the terms set forth herein, or challenge the Compromise Motion, that Trustee will not proceed with the Section 363 Motion until such challenge has been fully resolved by the Bankruptcy Court and subject to a final non-appealable order, and that the Trustee will make all reasonable efforts to support Lender's efforts to expeditiously resolve such a challenge, including filing pleadings in furtherance of effectuating this agreement. To provide time for resolution of any such challenge (and as further consideration for the releases and agreements set forth herein), Lender shall forbear from filing a motion for relief from stay and consummating a foreclosure sale after obtaining relief from stay pending resolution of such opposition; but, the dates set forth herein for any sale to close shall not be extended unless expressly agreed to in writing by Lender.  Should it appear to Lender by that a sale may not close by the September 30, 2021 deadline, Lender may file a motion for relief from the automatic stay on or after September 7, 2021, for hearing on September 28, 2021, and may commence with foreclosure promptly after the Trustee has abandoned the Property, but in any event, regardless of whether the Trustee has abandoned at that time, may foreclose by not later than October 8, 2021.

- For the sake of clarity, Trustee acknowledges that in entering into this Agreement, Lender is not waiving and shall not be deemed to have waived any claims Lender may have against the Glenroy Coachella, LLC's co-borrowers in the loan made by Lender to the Debtor, nor claims Lender may have against the guarantors of the loan, or any third parties.  Any sale by Seller shall have no impact, other than the reduction of Lender's claim in the amount of any cash received or final credit bid made (subject to increase from actual distributions made from the Escrow Fund) on Lender's litigation against such parties, which are currently pending in the Superior Court of State of California in the Counties of Riverside, Los Angeles, and Santa Barbara. Lender acknowledges that Trustee only has the right to compromise claims, if any, held by Debtor and its estate.

13

DocuSign Envelope ID: 607046EE-037E-479C-AD01-FD1998D3BF78

| 8. Closing Conditions | Closing of any sale is conditioned upon: |
|---|---|
| | • Trustee having recorded deeds transferring the ownership interests of all other tenants-in-common to the bankruptcy estate in the Official Records of the County of Riverside and provided copies of same to the Buyer; |
| | • Buyer being capable of obtaining title insurance, upon closing, regardless of any pending or threatened appeals by any third parties; |
| | • Accuracy of representations and performance of pre-closing covenants; |
| | • Obtaining necessary consents, approvals, and authorizations except as otherwise ordered by the Court; |
| | • The Bankruptcy Court shall have issued a "Sale Order" that, among other things, (i) approves any Definitive Agreements and authorizes Seller to enter into and consummate the transactions contemplated by any Definitive Agreements; (ii) authorizes the delivery of the Property to Buyer free and clear of all "interests" within the meaning of Section 363(f) of the Bankruptcy Code and including free and clear of all liens, claims, and encumbrances except for Mello Roos Bonds, PACE Bonds, and as expressly included in any Court Order; (iii) authorizes, pursuant to Section 365 of the Bankruptcy Code, the assumption by Seller and assignment of all contracts related to the Property to the Buyer with Buyer being responsible for any cure payments and establishing any adequate assurance of future performance required by the Court; (iv) determines and finds that Buyer is a "good faith Buyer" within the meaning of Section 363(m) of the Bankruptcy Code; (v) finds that the purchase price for the Property (including any credit bids) is "reasonably equivalent value" for the Property; (vi) relieves Buyer and its affiliates of any potential liabilities for a claim that the transactions contemplated by the Definitive Agreements constitute a fraudulent conveyance, fraudulent transfer, or similar claim; (vii) finds that the Definitive Agreements were negotiated, proposed, and entered into by Trustee and Buyer without collusion, in good faith, and from an arm's-length bargaining position; (viii) provides that Trustee and Buyer have not engaged in any conduct that would cause or permit the Definitive Agreements to be avoided under Section 363(n) of the Bankruptcy Code; (ix) relieves Buyer and its affiliates of any potential responsibility to any Seller, or any other person, for liabilities relating to the Property or transactions contemplated |

EXHIBIT 1, PAGE 34

DocuSign Envelope ID: 607046EE-037E-479C-AD01-FD1998D3BF78

| | by the Definitive Agreements; (x) provides that all liabilities of Seller, except as otherwise set forth herein or pursuant to Court Order, prior to Closing shall be the sole responsibility of the Seller; (xi) that the "Sale Order" is a "Final Order;" and (x) that the order granting the Compromise Motion is a "Final Order."  <br><br> • The Bankruptcy Court shall have issued a "Final Order" approving the Compromise Motion. |
|---|---|
| **9. Definitive Agreements** | The terms and conditions of any Buyer purchasing the Property will be set forth in a definitive agreement among Seller and Buyer and other transaction documents, containing customary terms for a transaction of this nature (collectively, "<u>Definitive Agreements</u>"), including, *inter alia*, that the sale shall be subject to a bankruptcy "Auction" pursuant to a mutually acceptable "Bidding Procedures Order" that (i) schedules the "Sale Hearing;" (ii) establishes the "Objection Deadline;" (iii) approves the "Sale Hearing Notice" and "Bidding Procedures;" and (iv) schedules the "Auction." |
| **10. Qualified Bidders, Overbids, and the Framework of a Sales Process** | The Framework and Anticipated Timeline for the foregoing sale process will be as follows:  <br><br> • **July 12, 2021** – Deadline for the Trustee to file the TIC Motion. The Parties acknowledge that Trustee timely filed the Motion.[1]  <br><br> • **July 28, 2021** – Deadline for Trustee to file motion to abandon the Property in the event the TIC Motion is denied or to seek authority for abandonment to occur upon the filing of a notice should a sale not be timely consummated.  <br><br> • **July 28, 2021** – Deadline for the Trustee to file the Bid Procedures Motion, 363 Motion, and Compromise Motion. The hearings for the Bid Procedures Motion and Compromise motions will set for hearing on August 18, 2021. The hearing for the 363 Motion will be set for hearing on September 15, 2021.  <br><br> • **September 10, 2021** – Final Day for any bidders to be approved as "Qualified Bidders," the identity of each of whom will be immediately disclosed to Lender when qualified.  <br><br> • **September 14, 2021** – Bid Deadline |

---

[1] If the TIC Motion is not approve, Trustee shall immediately seek to abandon the property.

15

DocuSign Envelope ID: 607046EE-037E-479C-AD01-FD1998D3BF78

- **September 15, 2021** – Final Day to Conduct Auction (Exclusively by Zoom/Video-Conference) and hearing on 363 Motion

- **September 17, 2021** – Final Day for Court to approve the Proposed Transactions

- **14 days after entry of an Order approving a sale** – Final Day for Closing; <u>provided that</u> if the Closing of any court-approved sale cannot occur for any reason whatsoever by September 30, 2021, Lender will immediately be deemed to have relief from the automatic stay without further notice or motion and may proceed with its rights and remedies and is under no obligation to consummate any sale of the Property in bankruptcy and, in such event, the releases of Lender herein shall continue to remain in full force and effect.

With the exception of the September 30, 2021, deadline to close, the other foregoing dates are targets only. With respect to the deadline to close, unless expressly extended in writing by Lender, if any court-approved sale does not close by September 30, 2021, Trustee consents to Lender's efforts to immediate seek relief from stay and consummate a foreclosure sale, provided that Lender may file a motion for relief from the automatic stay on or after September 7, 2021, for hearing on September 28, 2021, if it appears that the sale cannot reasonably close by September 30, 2021.  In the event that a sale cannot timely close, the Parties acknowledge that Trustee may elect for abandonment to occur prior to any foreclosure sale. As such, Trustee will seek authority in his motion to abandon to have the Court enter an order authorizing abandonment to take effect immediately upon Trustee's filing and service of a notice that abandonment has occurred. In other words, the hearing on abandonment may occur prior to September 30, 2021, but that no abandonment will be deemed to have taken place until Trustee elects to file and serve such a notice. If a sale does not close by September 30, 2021, Lender agrees not to consummate any foreclosure sale until on or after October 8, 2021, to provide time for Trustee to make a final decision on abandonment and file and serve the requisite notice.  Notwithstanding the foregoing, if the Trustee does not abandon the Property by October 8, 2021, for any reason, the Lender may nevertheless consummate a foreclosure sale after that date.  The dates set forth in this paragraph will continue to apply even if the Court does not approve this Agreement.

Lender will be deemed a "qualified bidder" for all purposes and will be permitted to bid up to the full amount of its asserted claim at the time of the auction as set forth above.

16

DocuSign Envelope ID: 607046EE-037E-479C-AD01-FD1998D3BF78

|  | Before any prospective purchaser may credit bid or otherwise be deemed a Qualified Bidder, it must: (a) provide evidence reasonably satisfactory to the Trustee, in consultation with Lender, that establishes that the bidder has the financial ability to timely close the sale without any financing or other contingency, (b) such evidence be received by Seller not later than 7 days prior to a sale hearing, and (c) be accompanied by a cash deposit in the amount of $1,000,000 which amount shall be non-refundable if their bid is accepted by the Trustee and approved by the Bankruptcy Court. |

## ACCEPTED AND AGREED

**U.S. REAL ESTATE CREDIT
HOLDINGS III-A, LP**

_____

By: Calmwater Asset Management, LLC, a
Delaware limited liability company
   Its: Investment Manager
     By: Dean Chang, Authorized Signer


**RICHARD A. MARSHACK, as Chapter 11
Trustee of the Estate of
GLENROY COACHELLA LLC**

_____

By:  Richard A. Marshack, Chapter 11 Trustee

17

EXHIBIT 1, PAGE 37

Before any prospective purchaser may credit bid or otherwise be deemed a Qualified Bidder, it must: (a) provide evidence reasonably satisfactory to the Trustee, in consultation with Lender, that establishes that the bidder has the financial ability to timely close the sale without any financing or other contingency, (b) such evidence be received by Seller not later than 7 days prior to a sale hearing, and (c) be accompanied by a cash deposit in the amount of $1,000,000 which amount shall be non-refundable if their bid is accepted by the Trustee and approved by the Bankruptcy Court.

**ACCEPTED AND AGREED**

**U.S. REAL ESTATE CREDIT HOLDINGS III-A, LP**

_____

By: Calmwater Asset Management, LLC, a Delaware limited liability company
   Its: Investment Manager
     By: Dean Chang, Authorized Signer

**RICHARD A. MARSHACK, as Chapter 11 Trustee of the Estate of GLENROY COACHELLA LLC**

_____

By: Richard A. Marshack, Chapter 11 Trustee

EXHIBIT 1, PAGE 38

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
870 Roosevelt, Irvine, CA 92620

A true and correct copy of the foregoing document entitled: **TRUSTEE'S MOTION TO APPROVE COMPROMISE WITH U.S. REAL ESTATE CREDIT HOLDINGS III-A, L.P. RE LENDER'S CONSENT TO SALE FREE AND CLEAR OF LIEN AND TO APPROVE CREDIT BID; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF RICHARD A. MARSHACK IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **July 28, 2021**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

⊠  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**: On **July 28, 2021**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

⊠  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **July 28, 2021**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**VIA OVERNIGHT MAIL:**
**PRESIDING JUDGE'S COPY**
HONORABLE SHERI BLUEBOND
UNITED STATES BANKRUPTCY COURT, CENTRAL DISTRICT OF CALIFORNIA
EDWARD R. ROYBAL FEDERAL BUILDING AND COURTHOUSE
255 E. TEMPLE STREET, SUITE 1534 / COURTROOM 1539
LOS ANGELES, CA 90012

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 28, 2021 | Layla Buchanan | /s/ Layla Buchanan |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: CONTINUED:

- **ATTORNEY FOR INTERESTED PARTY EFO FINANCIAL GROUP LLC:** Steven M Berman sberman@slk-law.com, awit@shumaker.com; bgasaway@shumaker.com
- **ATTORNEY FOR CREDITOR SAXON ENGINEERING SERVICES INC AND COMMITTEE OF UNSECURED CREDITORS:** Daren Brinkman office@brinkmanlaw.com, 7764052420@filings.docketbird.com
- **ATTORNEY FOR CREDITOR DOUG WALL CONSTRUCTION:** Caroline Djang caroline.djang@bbklaw.com, laurie.verstegen@bbklaw.com; wilma.escalante@bbklaw.com
- **INTERESTED PARTY COURTESY NEF:** Jenny L Doling JD@jdl.law, dolingjr92080@notify.bestcase.com
- **ATTORNEY FOR CREDITORS LASERSCOPIC MEDICAL CLINIC, LLC; LASERSCOPIC SPINAL CENTERS OF AMERICA, INC.; AND JOE SAMUEL BAILEY:** Jonathan R Doolittle    jonathan.doolittle@pillsburylaw.com
- **ATTORNEY FOR U.S. TRUSTEE (LA):** Eryk R Escobar eryk.r.escobar@usdoj.gov
- **ATTORNEY FOR TRUSTEE RICHARD A MARSHACK (TR):** Chad V Haes chaes@marshackhays.com, chaes@ecf.courtdrive.com; cmendoza@ecf.courtdrive.com; cmendoza@marshackhays.com; kfrederick@ecf.courtdrive.com
- **ATTORNEY FOR CREDITOR BLAIR AIR, INC.:** Brian S Harnik bharnik@rhlawfirm.com, bharnik@rhlawfirm.com
- **ATTORNEY FOR TRUSTEE RICHARD A MARSHACK (TR):** D Edward Hays ehays@marshackhays.com, ehays@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com; cmendoza@marshackhays.com; cmendoza@ecf.courtdrive.com
- **ATTORNEY FOR CREDITOR ORCO BLOCK & HARDSCAPE:** William C Hoggard wch@wchlawgroup.com, admin@wchlawgroup.com
- **INTERESTED PARTY COURTESY NEF:** Mark S Horoupian mhoroupian@sulmeyerlaw.com, mhoroupian@ecf.inforuptcy.com; ccaldwell@sulmeyerlaw.com
- **ATTORNEY FOR CREDITOR U.S. REAL ESTATE CREDITOR HOLDINGS III-A, LP:** Marsha A Houston mhouston@reedsmith.com
- **INTERESTED PARTY COURTESY NEF:** Michael S Kogan mkogan@koganlawfirm.com
- **ATTORNEY FOR INTERESTED PARTY GARY STIFFELMAN:** Timothy R Laquer trl@ddclaw.com, trl@ddclaw.com
- **ATTORNEY FOR DEBTOR GLENROY COACHELLA, LLC:** Crystle Jane Lindsey crystle@wsrlaw.net, crystle@cjllaw.com; gabby@wsrlaw.net; dairi@wsrlaw.net
- **INTERESTED PARTY COURTESY NEF:** Tinho Mang tmang@marshackhays.com, tmang@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com; cmendoza@ecf.courtdrive.com
- **TRUSTEE RICHARD A MARSHACK (TR):** Richard A Marshack (TR) pkraus@marshackhays.com, rmarshack@iq7technology.com; ecf.alert+Marshack@titlexi.com
- **ATTORNEY FOR CREDITOR PORSCHE FINANCIAL SERVICES, INC. dba BENTLEY FINANCIAL SERVICES and CREDITOR PORSCHE LEASING LTD:** Stacey A Miller smiller@tharpe-howell.com
- **ATTORNEY FOR INTERESTED PARTY STUART RUBIN:** Sean A OKeefe sokeefe@okeefelc.com, seanaokeefe@msn.com
- **INTERESTED PARTY COURTESY NEF:** R Gibson Pagter, Jr.: gibson@ppilawyers.com, ecf@ppilawyers.com; pagterrr51779@notify.bestcase.com
- **INTERESTED PARTY COURTESY NEF:** Matthew D Pham mpham@hahnlawyers.com, marias@hahnlawyers.com; mpham@ecf.courtdrive.com
- **ATTORNEY FOR CREDITOR LAW OFFICES OF JEFFREY D SEGAL, A PROFESSIONAL CORPORATION:** Sheila M Pistone sheila@pistonelawoffice.com, sheilapistone@yahoo.com
- **ATTORNEY FOR CREDITOR GF INVESTMENT GROUP, INC. DBA THE INVESTMENT CENTER, A CALIFORNIA CORPORATION:** Maria Plumtree agrow@plumtreelaw.com, mplumtree@plumtreelaw.com
- **ATTORNEY FOR CREDITORS AL MILLER & SONS ROOFING CO INC; APPLE J PLUMBING; DESERT PALM ELECTRIC INC; JACOBSSON ENGINEERING CONSTRUCTION INC; MASCORRO CONCRETE CONSTRUCTION INC; TANDEM WEST GLASS INC; TEMALPAKH INC DBA THE WORKS FLOOR & WALL:** Thomas J Polis tom@polis-law.com, paralegal@polis-law.com; r59042@notify.bestcase.com
- **ATTORNEY FOR CREDITOR CALIFORNIA STATEWIDE COMMUNITIES DEVELOPMENT AUTHORITY:** Debra Riley driley@allenmatkins.com
- **ATTORNEY FOR CREDITOR U.S. REAL ESTATE CREDITOR HOLDINGS III-A, LP:** Christopher O Rivas crivas@reedsmith.com, chris-rivas-8658@ecf.pacerpro.com
- **ATTORNEY FOR DEBTOR GLENROY COACHELLA, LLC:** James R Selth jim@wsrlaw.net, jselth@yahoo.com; dairi@wsrlaw.net; gabby@wsrlaw.net; vinnet@ecf.inforuptcy.com
- **ATTORNEY FOR INTERESTED PARTY LATHAM MANAGEMENT & CONSULTING SERVICES, INC.: Leonard** M Shulman lshulman@shulmanbastian.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                              F 9013-3.1.PROOF.SERVICE

- **ATTORNEY FOR INTERESTED PARTIES ELLIOT LANDER AND STUART RUBIN: Evan** L Smith
  els@elsmithlaw.com
- **ATTORNEY FOR INTERESTED PARTY EDWIN W. LESLIE, RECEIVER:** Alan G Tippie
  atippie@sulmeyerlaw.com, atippie@ecf.courtdrive.com; pdillamar@sulmeyerlaw.com
- **U.S. TRUSTEE (LA):** United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov
- **ATTORNEY FOR DEBTOR GLENROY COACHELLA, LLC:** Daniel J Weintraub dan@wsrlaw.net,
  vinnet@ecf.inforuptcy.com; gabby@wsrlaw.net; dairi@wsrlaw.net

2.  **SERVED BY UNITED STATES MAIL**: CONTINUED:

| | | |
|---|---|---|
| **DEBTOR**<br>GLENROY COACHELLA, LLC<br>ATTN: OFFICER, A MANAGING OR<br>GENERAL AGENT, OR TO ANY<br>OTHER AGENT AUTHORIZED BY<br>APPOINTMENT OR LAW TO<br>RECEIVE SERVICE<br>1801 S. LA CIENEGA BLVD., SUITE<br>301<br>LOS ANGELES, CA 90035-4658 | **U.S. TRUSTEE**<br>UNITED STATES TRUSTEE (LA)<br>915 WILSHIRE BLVD, SUITE 1850<br>LOS ANGELES, CA 90017-3560 | **20 LARGEST CREDITOR /<br>SECURED CREDITOR / POC<br>ADDRESS**<br>L & W SUPPLY CORPORATION<br>ATTN: OFFICER, A MANAGING OR<br>GENERAL AGENT, OR TO ANY<br>OTHER AGENT AUTHORIZED BY<br>APPOINTMENT OR LAW TO<br>RECEIVE SERVICE<br>P.O. BOX 838<br>BELOIT, WI 53512-0838 |
| **20 LARGEST CREDITOR /<br>SECURED CREDITOR / POC<br>ADDRESS**<br>MASCORRO CONCRETE<br>CONSTRUCTION INC<br>ATTN: OFFICER, A MANAGING OR<br>GENERAL AGENT, OR TO ANY<br>OTHER AGENT AUTHORIZED BY<br>APPOINTMENT OR LAW TO<br>RECEIVE SERVICE<br>P.O. BOX 910<br>THOUSAND PALMS, CA 92276-<br>0910 | **20 LARGEST CREDITOR / SECURED<br>CREDITOR / POC ADDRESS**<br>ORCO BLOCK & HARDSCAPE<br>ATTN: OFFICER, A MANAGING OR<br>GENERAL AGENT, OR TO ANY OTHER<br>AGENT AUTHORIZED BY<br>APPOINTMENT OR LAW TO RECEIVE<br>SERVICE<br>11100 BEACH BLVD<br>STANTON, CA 90680-3219 | **20 LARGEST CREDITOR /<br>SECURED CREDITOR**<br>ORCO BLOCK & HARDSCAPE<br>C/O WCH LAW GROUP, P.C.<br>625 THE CITY DRIVE SOUTH, SUITE<br>325<br>ORANGE, CA 92868 |
| **SECURED CREDITOR**<br>A. MARIA PLUMTREE<br>11132 WINNERS CIRCLE, #G 207<br>LOS ALAMITOS, CA 90720-2800 | **SECURED CREDITOR**<br>ABDULAZIZ, GROSSBART & RUDMAN<br>6454 COLDWATER CANYON AVE.<br>NORTH HOLLYWOOD, CA 91606-1187 | **SECURED CREDITOR / POC<br>ADDRESS**<br>AL MILLER & SONS ROOFING, INC.<br>ATTN: OFFICER, A MANAGING OR<br>GENERAL AGENT, OR TO ANY<br>OTHER AGENT AUTHORIZED BY<br>APPOINTMENT OR LAW TO<br>RECEIVE SERVICE<br>68760 SUMMIT DR.<br>CATHEDRAL CITY, CA 92234-7344 |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

**SECURED CREDITOR**
ALAN G. TIPPIE
SULMEYER KUPETZ
333 S. GRAND AVE., SUITE 3400
LOS ANGELES, CA 90071-1538

**SECURED CREDITOR**
ALL PHASE DRYWALL &
DEVELOPMENT INC
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY OTHER
AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO RECEIVE
SERVICE
1928 LINCOLN DR., SUITE N.
ANNAPOLIS, MD 21401-4124

**SECURED CREDITOR**
ALL PHASE DRYWALL &
DEVELOPMENT INC
C/O MATT H. MORRIS
47040 WASHINGTON STREET,
SUITE 3201
LA QUINTA, CA 92253-2635

**SECURED CREDITOR**
ALL-PHASE DRYWALL
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE
1187 13TH ST.
IMPERIAL BEACH, CA 91932-3661

**SECURED CREDITOR**
AMERICAN BUILDERS &
CONTRACTORS SUP
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY OTHER
AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO RECEIVE
SERVICE
ONE ABC PKWY.
BELOIT, WI 53511-4466

**SECURED CREDITOR / POC
ADDRESS**
APPLE J PLUMBING, INC.
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE
456 CITRUS AVE.
INDIO, CA 92201

**SECURED CREDITOR**
ARNOLD L. VELDKAMP
1508 W. MISSION RD.
ESCONDIDO, CA 92029-1105

**SECURED CREDITOR / POC ADDRESS**
ART OF THE MUSE, LLC
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY OTHER
AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO RECEIVE
SERVICE
2222 5TH ST.
BERKELEY, CA 94710-2217

**NEW ADDR PER DK 243 06/01/21
SECURED CREDITOR / POC
ADDRESS**
ART OF THE MUSE, LLC
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE
2200 CENTRAL ST. UNIT D
RICHMOND, CA 94801

**SECURED CREDITOR / POC
ADDRESS**
BLAIR AIR, INC.
C/O BRIAN S HARNIK, ESQ OF
ROEMER & HARNICK LLP
45-025 MANITOU DR.
INDIAN WELLS, CA 92210-9068

**SECURED CREDITOR / POC ADDRESS**
BLAIR AIR, INC.
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY OTHER
AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO RECEIVE
SERVICE
653 S. OLEANDER RD.
PALM SPRINGS, CA 92264-1502

**SECURED CREDITOR / POC
ADDRESS**
BMC WEST LLC
C/O MILENE APANIAN; ABDULAZIZ,
GROSSBART
6454 COLDWATER CANYON
AVENUE
N HOLLYWOOD, CA 91606

**SECURED CREDITOR**
BMC WEST, LLC
4800 FALLS OF NEUSE RD., SUITE
400
RALEIGH, NC 27609-8142

**SECURED CREDITOR / POC ADDRESS**
CALIFORNIA STATEWIDE
COMMUNITIES DEV. AUTHORITY
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY OTHER
AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO RECEIVE
SERVICE
600 WEST BROADWAY, 27TH FLOOR
SAN DIEGO, CA 92101

**SECURED CREDITOR**
CALMWATER CAPITAL
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE
11755 WILSHIRE BLVD., SUITE 1425
LOS ANGELES, CA 90025-1506

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

**SECURED CREDITOR**
CHRISTOPHER RIVAS
REED SMITH LLP
355 S. GRAND AVE., SUITE 2900
LOS ANGELES, CA 90071-1514

**SECURED CREDITOR**
CHRISTOPHER W. BAYUK
5170 GOLDEN FOOTHILLS PARKWAY
EL DORADO HILLS, CA 95762-9608

**SECURED CREDITOR**
CONSTRUCTURE, INC.
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE
3940 LAUREL CANYON BLVD., #908
STUDIO CITY, CA 91604-3709

**SECURED CREDITOR**
CUMMINS & WHITE, LLP
ATTN: EDWARD J FARRELL
2424 S.E. BRISTOL ST., SUITE 300
NEWPORT BEACH, CA 92660-0764

**SECURED CREDITOR**
DAL TILE DISTRIBUTION
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY OTHER
AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO RECEIVE
SERVICE
P.O. BOX 12069
CALHOUN, GA 30703-7002

**SECURED CREDITOR**
DAL TILE DISTRIBUTION, INC.
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE
7834 C.F. HAWN FREEWAY
DALLAS, TX 75217-6529

**SECURED CREDITOR / POC
ADDRESS**
DAL-TILE DISTRIBUTION, INC.
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE
8583 IRVINE CENTER DRIVE #500
IRVINE, CA 92618

**SECURED CREDITOR**
DESERT ELECTRIC SUPPLY
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY OTHER
AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO RECEIVE
SERVICE
74875 VELIE WAY
PALM DESERT, CA 92260-1965

**SECURED CREDITOR / POC
ADDRESS**
DESERT PALMS ELECTRIC, INC.
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE
40101 MONTEREY AVE.
RANCHO MIRAGE, CA 92270-3261

**SECURED CREDITOR / POC
ADDRESS**
DOUG WALL CONSTRUCTION
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE
78450 AVENUE 41
BERMUDA DUNES, CA 92203-1001

**SECURED CREDITOR / POC ADDRESS**
DOUG WALL CONSTRUCTION, INC.
BEST BEST & KREIGER LLP, ATTN:
CAROLINE R. DJANG
18101 VON KARMAN AVE. SUITE 1000
IRVINE, CA 92612

**SECURED CREDITOR**
EDWIN W LESLIE
LK ASSET ADVISORS
209 10TH AVE SOUTH SUITE 416
NASHVILLE, TN 37203-0772

**SECURED CREDITOR / POC
ADDRESS**
EDWIN W. LESLIE, RECEIVER
ALAN G TIPPIE, MARK S
HOROUPIAN, SULMEYERKUPETZ,
APC
333 SOUTH GRAND AVENUE, STE
3400
C/O ALAN G. TIPPIE
LOS ANGELES, CA 90071-1538

**SECURED CREDITOR**
FERGUSON ENTERPRISES, LLC
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY OTHER
AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO RECEIVE
SERVICE
P.O. BOX 2778
NEWPORT NEWS, VA 23609-0778

**SECURED CREDITOR**
FIDELITY NATIONAL TITLE
COMPANY
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE
1101 INVESTMENT BLVD., SUITE
170
EL DORADO HILLS, CA 95762-5746

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                    **F 9013-3.1.PROOF.SERVICE**

**SECURED CREDITOR**
GAUSTON CORP.
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE
45311 GOLF CENTER PKWY., UNIT
C
INDIO, CA 92201-7319

**SECURED CREDITOR**
GEORGE H. SYKULKSI
3156 ABINGTON DR.
BEVERLY HILLS, CA 90210-1101

**SECURED CREDITOR**
GEORGE H. SYKULKSI
P.O. BOX 10426
BURBANK, CA 91510-0426

**SECURED CREDITOR / POC
ADDRESS**
GF INVESTMENT GROUP, INC.
PLUMTREE & ASSOCIATES
11132 WINNERS CIRCLE, SUITE
G-207
LOS ALAMITOS, CA 90720

**SECURED CREDITOR**
GF INVESTMENT GROUP, INC. DBA
THE INVESTMENT
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY OTHER
AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO RECEIVE
SERVICE
42600 GLASS DR.
BERMUDA DUNES, CA 92203-1468

**SECURED CREDITOR**
GLENDALE PLUMBING & FIRE
SUPPLY
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE
4900 W. WASHINGTON BLVD.
LOS ANGELES, CA 90016-1416

**SECURED CREDITOR**
GURALNICK & GILLILAND, LLP
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE
40004 COOK ST., SUITE 3
PALM DESERT, CA 92211-5802

**SECURED CREDITOR**
HAJOCA CORPORATION
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY OTHER
AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO RECEIVE
SERVICE
2001 JOSHUA RD.
LAFAYETTE HILL, PA 19444-2431

**SECURED CREDITOR**
HI-GRADE MATERIALS CO.
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE
17671 BEAR VALLEY RD.
HESPERIA, CA 92345-4965

**SECURED CREDITOR / POC
ADDRESS**
JACOBSSON ENGINEERING
CONST., INC.
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE
P.O. BOX 14430
PALM DESERT, CA 92255-4430

**SECURED CREDITOR**
KOZBERG & BODELL, LLP
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY OTHER
AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO RECEIVE
SERVICE
1801 CENTURY PARK EAST, 16TH FL.
LOS ANGELES, CA 90067-2318

**SECURED CREDITOR / POC
ADDRESS**
LA HACIENDA NURSERY &
LANDSCAPE INC
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE
80-900 MILES AVE.
INDIO, CA 92201-2822

**SECURED CREDITOR**
LANAK & HANNA, P.C.
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE
625 THE CITY DRIVE SOUTH,
SUITE 190
ORANGE, CA 92868-4983

**SECURED CREDITOR**
MARC S. HOMME, APLC
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY OTHER
AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO RECEIVE
SERVICE
P.O. BOX 4250
PALM DESERT, CA 92261-4250

**SECURED CREDITOR**
NATHAN M. CARLE
RAINES FELDMAN LLP
8401 VON KARMAN AVE., SUITE 360
IRVINE, CA 92612-8541

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

**SECURED CREDITOR**
RESOURCE BUILDING
MATERIALS
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE
1050 W. AVE. M
LANCASTER, CA 93534-8145

**SECURED CREDITOR**
RESOURCE BUILDING MATERIALS
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY OTHER
AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO RECEIVE
SERVICE
10961 DALE AVE.
STANTON, CA 90680-2723

**SECURED CREDITOR / POC
ADDRESS**
RIVERSIDE COUNTY TAX
COLLECTOR
ADELINA ABRIL
4080 LEMON ST, 4TH FLOOR
RIVERSIDE CA 92501-3609

**SECURED CREDITOR**
RIVERSIDE COUNTY TREASURER
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE
P.O. BOX 12005
RIVERSIDE, CA 92502-2205

**SECURED CREDITOR**
ROBERTSON'S
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY OTHER
AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO RECEIVE
SERVICE
200 S. MAIN ST., SUITE 200
CORONA, CA 92882-2212

**SECURED CREDITOR**
SOLID ROCK PAINTING
CORPORATION
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE
82545 SHOWCASE PARKWAY,
SUITE 109
INDIO, CA 92203-9653

**SECURED CREDITOR**
SOUTHWEST PLUMBING, INC.
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE
31410 RESERVE DR., SUITE 5
THOUSAND PALMS, CA 92276-
6646

**SECURED CREDITOR**
STEPHEN J. ARMSTRONG
44200 MONTEREY AVE., SUITE B
PALM DESERT, CA 92260-2708

**SECURED CREDITOR**
SUPERIOR POOL PRODUCTS, LLC
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE
109 NORTHPARK BLVD.
COVINGTON, LA 70433-5005

**SECURED CREDITOR / POC
ADDRESS**
SUPERIOR POOL PRODUCTS, LLC
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE
4900 E. LANDON DR.
ANAHEIM, CA 92807-1980

**SECURED CREDITOR**
SUPERIOR READY MIX CONCRETE,
L.P.
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY OTHER
AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO RECEIVE
SERVICE
86160 AVENUE 54
COACHELLA, CA 92236-3813

**SECURED CREDITOR / POC
ADDRESS**
TANDEM WEST GLASS INC.
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE
1177 W. LINCOLN ST., SUITE 100
BANNING, CA 92220-4524

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

**SECURED CREDITOR / POC ADDRESS**
TEMALPAKH, INC.
ATTN: OFFICER, A MANAGING OR GENERAL AGENT, OR TO ANY OTHER AGENT AUTHORIZED BY APPOINTMENT OR LAW TO RECEIVE SERVICE
73750 SPYDER CIR.
PALM DESERT, CA 92211-6023

**SECURED CREDITOR**
THE SHERWIN WILLIAMS COMPANY
ATTN ATTN BANKRUPTCY LEGAL DEPARTMENT
1100 MIDLAND
101 WEST PROSPECT AVENUE
CLEVELAND OH 44115-1093

**SECURED CREDITOR / POC ADDRESS**
THE SHERWIN-WILLIAMS COMPANY
ATTN: OFFICER, A MANAGING OR GENERAL AGENT, OR TO ANY OTHER AGENT AUTHORIZED BY APPOINTMENT OR LAW TO RECEIVE SERVICE
101 W PROSPECT AVE, SUITE 1020
CLEVELAND, OH 44115-1027

**SECURED CREDITOR / POC ADDRESS**
U.S. REAL ESTATE CREDIT HOLDINGS
ATTN: OFFICER, A MANAGING OR GENERAL AGENT, OR TO ANY OTHER AGENT AUTHORIZED BY APPOINTMENT OR LAW TO RECEIVE SERVICE
11755 WILSHIRE BLVD., SUITE 1425
LOS ANGELES, CA 90025-1506

**SECURED CREDITOR / POC ADDRESS**
U.S. REAL ESTATE CREDIT HOLDINGS III-A, LP
MARSHA A HOUSTON, CHRISTOPHER O RIVAS
REED SMITH
355 S GRAND AVE, SUITE 2900
LOS ANGELES, CA 90071

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**