JOHN A. MESSINA, JR. (SBN 171148)
EVAN L. SMITH (SBN 101369)
JEFFREY J. VAN WICK (SBN 330915)
MESSINA & HANKIN LLP
24910 Las Brisas Road, Suite 102
Murrieta, CA 92562
jmessina@messinahankinlaw.com
elsmith@messinahankinlaw.com
jvanwick@messinahankinlaw.com
Telephone: (951) 894-7332
Fax: (951) 346-3334

Attorneys for A. STUART RUBIN, ELLIOT LANDER,
FORCE RUBIN LLC, FORCE RUBIN 2 LLC, AND
COACHELLA RESORT, LLC.

## UNITED STATES BANKRUPTCY COURT

### CENTRAL DISTRICT OF CALIFORNIA-LOS ANGELES DIVISION

| | |
|---|---|
| In re: | ) CASE NO.: 2:21-bk-11188-BB |
| | ) CHAPTER 11 |
| GLENROY COACHELLA, LLC, | ) |
| | ) OPPOSITION TO TRUSTEE'S MOTION TO |
| DEBTOR. | ) APPROVE COMPROMISE WITH U.S. REAL |
| | ) ESTATE CREDIT HOLDINGS III-A, L.P. RE |
| | ) LENDER'S CONSENT TO SALE FREE AND |
| | ) CLEAR OF LIEN, AND TO APPROVE |
| | ) CREDIT BID; MEMORANDUM; AND |
| | ) DECLARATIONS OF A. STUART RUBIN, |
| | ) MICHAL ROGSON, AND EVAN L. SMITH. |
| | ) |
| | ) DATE: August 31, 2021 |
| | ) TIME:  2:00 p.m. |
| | CTRM: 1539 [By Zoom] |

///

///

///

///

///

1  **TO THE HONORABLE SHERI BLUEBOND, UNITED STATES BANKRUPTCY**

2  **JUDGE; RICHARD MARSHACK CHAPTER 11 TRUSTEE; OFFICE OF THE UNITED**

3  **STATES TRUSTEE; THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS; AND**

4  **ALL OTHER INTERESTED PERSONS OR ENTITIES:** Creditor A. Stuart Rubin ("Rubin"), both

5
6  individually, and in his capacity as the Manager and owner of Glenroy Coachella Holdings, LLC, which

7  is the sole Member of debtor Glenroy Coachella, LLC ("Glenroy"), Creditor Elliot Lander ("Lander"),

8  Force Rubin LLC, Force Rubin 2 LLC, and Coachella Resort LLC, (jointly "Respondents") hereby

9  oppose the *Trustee's Motion to Approve Compromise With U.S. Real Estate Credit Holdings III-A, L.P.*

10  *Re Lender's Consent to Sale Free and Clear of Lien, and to Approve Credit Bid* ("Motion") by Chapter

11
12  11 Trustee Richard A. Marshack ("Trustee") on grounds including that the compromise for which

13  approval of the Court is being sought is not in the best interests of the estate and is not fair and equitable

14  to creditors, because as is set forth below, the Trustee has entered into the proposed compromise with

15  U.S. Real Estate Credit Holdings III-A, L.P. ("USRECH") in secret on the basis of false assumptions as

16  to the validity of USRECH's claims and its asserted status as a secured creditor (and ability as such to

17
18  credit bid at a 363 sale or foreclose), the ability of the estate to realize the value of its claims against

19  USRECH through litigation, the Trustee's ability to sell the Coachella Hotel Project free and clear

20  without USRECH's assent, and of the strength or lack thereof of USRECH's threat to appeal an order

21  approving a 363 sale if its terms aren't met.

22  ## I. MEMORANDUM

23  ## A. FACTS

24
25  The key factor that underlies the Trustee's decision to capitulate to the demands of USRECH

26  appears to be that the Estate lacks the financial resources necessary to pursue its $ 50 million in

27  scheduled legal claims against USRECH, or even engage in a contested matter with USRECH to hold

28  and complete a 363 sale of the Coachella Hotel Project which makes up the Property, on terms other than

those it demands. [See; Decl. Marshack ¶¶ 16,18,and 21; and Decl. Smith ¶ 2, and Exhibit "001"]. The Trustee's reluctance to fight in these circumstances is understandable, given the lack of current liquidity in the Estate, and USRECH's history of aggressive litigation tactics in this case, and in the civil action pending in the Riverside Superior Court, where he could see that until recently events had mostly been going USRECH's way (case number RIC1905743, the "Riverside Case"). However, surrender to USRECH is not the only feasible option available to the Trustee. A reading of the following facts is necessary to understand how he can obtain a better result for the Estate and the creditor body as a whole.

The Riverside Case arose for reasons that are in dispute and led to the interruption of the luxury hotel development project in the Riverside County City of Coachella which makes up the Property which is the subject of the Trustee's proposed compromise with USRECH. The action was commenced by USRECH's filing of a Complaint on 11/19/2019, which Respondents answered, and a Receiver was subsequently appointed pursuant to a stipulation by the parties. [Decl. Smith ¶ 3, and Exhibit "002"]. USRECH applied a two-track foreclosure strategy, and in an effort to secure an early win commenced a private foreclosure effort by filing a Notice of Default under the *Deed of Trust, Security Agreement, Fixture Filing, and Financing Statement* recorded against the Property, which Respondents Force Rubin LLC, Force Rubin 2 LLC, and Coachella Resort LLC co-owned with Debtor as Tenants in Common. In response, Debtor on 02/15/ 2021, filed a voluntary petition for relief under Chapter 11 to commence this Case, but its reorganization efforts were stillborn when the Court granted USRECH's early Motion to Appoint the Trustee on 03/12/2021. [Decl. Smith ¶ 4].

In furtherance of its aggressive tactics, USRECH on 01/27/2021 in the Riverside Case filed a Motion for Summary Adjudication ("MSA") against Rubin and Lander seeking to enforce their guarantees of its construction loan for the Hotel Project. However, by this time it was becoming clear to Respondents that USRECH had acted improperly in connection with that transaction, and when the matter was heard the court denied the MSA, finding there was a triable issue of fact as to whether

USRECH had breached its duties to Rubin and Lander as sureties by concealing material information it was required to disclose. [Decl. Smith ¶ 5, and Exhibit "003"]. USRECH appealed the MSA decision, but its Petition for Writ of Mandamus was denied by the California Court of Appeal on 08/09/2021. Additionally, the TIC entity Respondents have for themselves served Notices of Rescission of the Loan Agreement with USRECH, which includes rescission of the single Deed of Trust that ostensibly secures USRECH's claim, and recorded those notices with the Riverside County Recorder's office, which calls into question whether USRECH has a valid Trust Deed which it can foreclose non-judicially. [Decl. Smith ¶ 6, and Exhibits "004", "005" and "006"].

On the basis of facts developed in defending the Riverside Case, Respondents have authorized their attorneys to seek leave to file a Compulsory Cross-complaint against USRECH and its Manager, Calmwater Capital seeking an award of damages in excess of $ 52 million on the following causes of action; 1.  Rescission of Loan Agreement, Restitution, and Damages; 2.  Rescission of Surety Agreements, Restitution, and Damages; 3. Fraud in the Inducement; 4. False Promise; 5. Negligent Misrepresentations; 6. False Pretenses Theft; and 7. Intentional Interference With Prospective Economic Advantage.  The amount of the damages alleged are not made up, but instead are based on an Appraisal of the Hotel Project that includes the Property.  Respondents in May 2021 requested that the Trustee grant them derivative standing to also prosecute the Estate's claims on the basis of their advancing the up-front attorney's fees and costs of doing so, with reimbursement from the Estate's share of any award if they are successful.  The Trustee has not responded to that offer, which remains open to him.  [See; Decl. Rubin ¶¶ 3-5, and Exhibits "007" and "008"; and Decl. Smith ¶ 7, and Exhibit "009"]. As the Trustee himself has testified, the Estate's ownership share in the Property is approximately 70.5%. [Decl. Marshack  ¶  7].  Therefore, if the Riverside Case is successfully prosecuted to judgment against USRECH the Estate's share of the award could exceed $ 36 million.

1
2
3
4
5
6
7

Finally, it is clear that the Trustee is also concerned that if he holds a Section 363 sale of the Property on terms other than those set forth in the proposed compromise that USRECH will attempt to frustrate the sale by appealing the sale order.  That is likely an empty threat because the annual, recurring cash premium on an appeal bond from a sale where the price is $ 20 million will be approximately $600,000.00 if non-collateralized or $187,500.00 if collateralized, and the appellant would run the risk of having to reimburse the surety for claims paid if the appeal is unsuccessful. [Decl. Rogson ¶¶ 1-8].

**B. <u>ARGUMENT</u>**

8
9
10
11

**1. <u>The "Best Interest of the Estate" Factors</u>**
**<u>Of  Proper Deference to the Creditors'</u>**
**<u>Interest and Reasonable Views, and that the Compromise</u>**
**<u>Must Have Been Negotiated in Good Faith, Are Not Present  Here</u>**

12
13
14
15
16
17
18
19
20

The Motion at p. 13, lines 10-12 lists four of the factors considered to determine whether a settlement is 'fair and equitable', but omits a fifth, i.e., consideration of the paramount interest of creditors and a proper deference to their reasonable views. *In re A&C Properties*, 784 F2d 1377, 1381 (9th Cir. 1986); *In re Woodson* 839 F2d 610, 620 (9th Cir 1988).  Also, in addition to weighing the probability of success of litigation on the merits and the complexity involved, the court must "…compare the terms of the compromise with the likely rewards of litigation." *Protective Committee for Indep. Stockholders of TMT Trailer Ferry v. Anderson* (1968) 390 U.S. 414 ,88 S.Ct. 1157, 20 L.Ed.2d 1.

21
22
23
24
25
26
27
28

Here, the Trustee engaged in secret, backroom negotiations with USRECH and its attorneys (who are the subject of upcoming hearings on disqualification motions due to conflicts of interest with the Estate and Rubin in both the Riverside Case and this Case) without involving anyone else, including the Official Committee of Unsecured Creditors or their Counsel.  Additionally, in transferring their interests in the Property to facilitate a sale, the TIC entities did so in the belief that it would be a legitimate sale, not a collusive one.  These facts fly in the face of the requirement that the compromise have been negotiated in good faith by the Trustee and the settling party. *In re A&C Properties*, 784 F2d at 1381.  As

1  none of these factors have been satisfied, and the likely rewards of the Estate joining in the litigation

2  against USRECH are not addressed, the Motion should be denied.

3  
## 2. The Trustee Does Not Need USRECH's Assent To a Section 363 Sale, USRECH Cannot Credit Bid, And USRECH is Unlikely to Appeal Due to the Costs And Risks Inherent in Doing So

7  The Motion seems premised on the Trustee's acceptance of USRECH's assertion that it holds a

8  valid and enforceable security interest in the Property, and that he therefore lacks the authority to sell the

9  Property free and clear of its claimed interest unless it assents.  What he has failed to consider is that the

10  validity of USRECH's Deed of Trust, which was signed not only by the Debtor, but also by the TIC

11  entities, is a single, unitary document, which was placed in dispute when the TIC entities rescinded their

12  

13  portions, and recorded the certified copies attached hereto as Exhibits "004", "005" and "006".  This

14  issue will be further amplified if Respondents' motion under C.C.P. § 426.50 for leave to file the

15  Compulsory Cross-complaint attached hereto as Exhibit "007" is granted, which is highly likely given

16  that such motions are to be liberally granted per the statute.  Given these factors, USRECH's claimed

17  security interest in the Property is in *bona fide dispute* within the meaning of Code § 363(f)(4), and

18  

19  therefore the Trustee can sell without USRECH's consent.  These same factors call into question whether

20  USRECH will be able to credit bid its Note pursuant to Code § 363(k), or will instead have to pay cash if

21  it wishes to purchase the Property free and clear from the Estate.  Finally, the Trustee's concerns that

22  USRECH would retaliate by appealing a 363 Sale order if its terms are not met are not likely to arise

23  given both the high cash annual appeal bond premiums it would have to pay, and the risks it would

24  

25  undertake if such an appeal were unsuccessful and it had to reimburse the surety for claims paid against

26  the bond.

27  ///

28  ///

*In re Glenroy Coachella, LLC*                                                    *Case No.: 2:21-bk-11188-BB*

## CONCLUSION

The Motion must be denied because it is based on faulty assumptions as to the strength of USRECH's claims, does not adequately take into consideration the reasonable and legitimate alternatives available to the Trustee to realize the value of the Estate's scheduled claims against USRECH, does not meet the 'negotiated in good faith' requirement due to the backroom nature of the negotiations that excluded even the Unsecured Creditors Committee from having input, and the failure of the Trustee to appreciate that he has the power to sell the Property free and clear under Code § 363 without USRECH's consent.

DATED: __08/17/2021__

MESSINA & HANKIN, LLP

By: _____

**EVAN L. SMITH**
**Attorneys for A. STUART RUBIN**

**Declaration of Smith**

1

2

# DECLARATION of EVAN L. SMITH

3

I, Evan L. Smith, declare:

4

    1. I am an attorney at law, duly admitted to practice before this court, and a Member in good

5

standing of the State Bar of California. I am an Of Counsel attorney with the law firm Messina &

6

Hankin, LLP, attorneys of record for the Respondents to the attached motion in both the civil action

7

currently pending before the Riverside Superior Court styled *U.S. Real Estate Credit Holdings III-A,*

8

*L.P. v. Glenroy Coachella, LLC, et al.* (case # RIC 1905743), and the Chapter 11 case currently pending

9

before the U.S. Bankruptcy Court, Central District of California styled *In re Glenroy Coachella, LLC,*

10

case # 2:21-bk-11188-BB, and am making this declaration in support of my clients' OPPOSITION TO

11

TRUSTEE'S MOTION TO APPROVE COMPROMISE WITH U.S. REAL ESTATE CREDIT

12

HOLDINGS III-A, L.P. RE LENDER'S CONSENT TO SALE FREE AND CLEAR OF LIEN, AND TO

13

APPROVE CREDIT BID; MEMORANDUM. I have personal knowledge of the facts set forth below

14

and, if called as a witness, could and would attest thereto. No waiver of the attorney-client privilege, or

15

of any other privilege, is made, intended, or implied hereby.

16

    2. Attached hereto as Exhibit "001" is a true copy of the *SUMMARY OF AMENDED*

17

*SCHEDULES, MASTER MAILING LIST, AND/OR STATEMENTS [LBR 1007-1(c)]* filed by debtor

18

Glenroy Coachella, LLC in Bankruptcy Case 2:21-bk-11188-BB, as Doc 314 on 07/20/2021, to amend its

19

Schedule A/B: Assets-Real and Personal Property, and Schedule G: Executory Contracts and Unexpired

20

Leases.

21

    3. The Riverside Case arose for reasons that are in dispute and led to the interruption of the luxury

22

hotel development project in the Riverside County City of Coachella which makes up the Property which

23

is the subject of the Trustee's proposed compromise with USRECH. The action was commenced by

24

USRECH's filing of a Complaint on 11/19/2019, which Respondents answered, and a Receiver was

25

subsequently appointed pursuant to a stipulation by the parties. A true copy of the complaint by which

26

USRECH commenced the Riverside Case is attached hereto as Exhibit "002".

27

28

4. USRECH applied a two-track foreclosure strategy, and in an effort to secure an early win commenced a private foreclosure effort by filing a Notice of Default under the *Deed of Trust, Security Agreement, Fixture Filing, and Financing Statement* recorded against the Property, which Respondents Force Rubin LLC, Force Rubin 2 LLC, and Coachella Resort LLC co-owned with Debtor as Tenants in Common. In response, Debtor on 02/15/ 2021, filed a voluntary petition for relief under Chapter 11 to commence this Case, but its reorganization efforts were stillborn when the Court granted USRECH's early Motion to Appoint the Trustee on 03/12/2021.

5. USRECH on 01/27/2021 in the Riverside Case filed a Motion for Summary Adjudication ("MSA") against Rubin and Lander seeking to enforce their guarantees of its construction loan for the Hotel Project. However, by this time it was becoming clear to Respondents that USRECH had acted improperly in connection with that transaction, and when the matter was heard the court denied the MSA, finding there was a triable issue of fact as to whether USRECH had breached its duties to Rubin and Lander as sureties by concealing material information it was required to disclose. Attached hereto as Exhibit "003" is a true copy of the Superior Court's Ruling on Matter Submitted denying the MSA filed 05/21/2021.

6. USRECH appealed the MSA decision, but its Petition for Writ of Mandamus was denied by the California Court of Appeal on 08/09/2021. Additionally, the TIC entity Respondents have for themselves served Notices of Rescission of the Loan Agreement with USRECH, which includes rescission of the single Deed of Trust that ostensibly secures USRECH's claim, and recorded those notices with the Riverside County Recorder's office, which calls into question whether USRECH has a valid Trust Deed which it can foreclose non-judicially. Attached hereto are true copies of the aforementioned certified copies of the Notices of Rescission as Exhibits "004, "005" and "006.

7. On May 24, 2021, I emailed Trustee Richard A. Marshack and his attorney of record in this Case, Ed Hays, my clients' proposal to litigate the Estate's claims against USRECH and Calmwater in the Riverside Case if he would grant them derivative standing to do so. That offer has not been responded to. A true copy of that email is attached hereto as Exhibit "009".

**IN WITNESS WHEREOF**, this declaration is executed under penalty of perjury according to

*In re Glenroy Coachella, LLC*                                                                    *Case No.: 2:21-bk-11188-BB*

1  the laws of the State of California this 17th day of August 2021 at Murietta, California.

2

3                                                            _____

4                                                            **EVAN L. SMITH**

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*In re Glenroy Coachella, LLC*                                              *Case No.: 2:21-bk-11188-BB*

# Declaration of Rubin

1  **JOHN A. MESSINA, JR. (SBN 171148)**
2  **EVAN L. SMITH (SBN 101369)**
   **JEFFREY J. VAN WICK (SBN 330915)**
3  **MESSINA & HANKIN LLP**
   **24910 Las Brisas Road, Suite 102**
4  **Murrieta, CA 92562**
   jmessina@messinahankinlaw.com
5  elsmith@messinahankinlaw.com
   jvanwick@messinahankinlaw.com
6  **Telephone: (951) 894-7332**
   **Fax: (951) 346-3334**
7

8  **Attorneys for A. STUART RUBIN, ELLIOT LANDER,**
9  **FORCE RUBIN LLC, FORCE RUBIN 2 LLC, AND**
10 **COACHELLA RESORT, LLC.**

11              **UNITED STATES BANKRUPTCY COURT**

12       **CENTRAL DISTRICT OF CALIFORNIA-LOS ANGELES DIVISION**

13

14 **In re:**                          )   **CASE NO.: 2:21-bk-11188-BB**
                                       )   **CHAPTER 11**
15 **GLENROY COACHELLA, LLC,**         )
                                       )   **DECLARATION OF A. STUART RUBIN IN**
16                                     )   **SUPPORT OF OPPOSITION TO TRUSTEE'S**
              **DEBTOR.**              )   **MOTION TO APPROVE COMPROMISE**
17                                     )   **WITH U.S. REAL ESTATE CREDIT**
                                       )   **HOLDINGS III-A, L.P. RE LENDER'S**
18                                     )   **CONSENT TO SALE FREE AND CLEAR OF**
                                       )   **LIEN, AND TO APPROVE CREDIT BID.**
19                                     )
                                       )
20                                     )   **DATE:  August 31, 2021**
                                       )   **TIME:  2:00 p.m.**
21                                     )   **CTRM: 1539 (By Zoom)**
                                       )
22                                     )
                                       )
23                                     )
                                       )
24                                     )
25 _____

26 ///

27 ///

28

1    I, A. Stuart Rubin, declare:

2    1. I am an individual over the age of 21 years, am an individual creditor of the Glenroy

3    Coachella, LLC Chapter 11 estate, and am the Manager of Glenroy Coachella, LLC's sole and managing

4    Member, Glenroy Coachella Holdings, LLC in which I am also an equity owner. I am making this

5    declaration in support of the attached OPPOSITION TO TRUSTEE'S MOTION TO APPROVE

6    COMPROMISE WITH U.S. REAL ESTATE CREDIT HOLDINGS III-A, L.P. RE LENDER'S

7    CONSENT TO SALE FREE AND CLEAR OF LIEN, AND TO APPROVE CREDIT BID in this

8    Chapter 11. I have personal knowledge of the facts set forth below and, if called as a witness, could and

9    would attest thereto. No waiver of the attorney-client privilege, or of any other privilege, is made,

10    intended, or implied hereby.

11    2. For reasons that are in dispute that led to the interruption of a luxury hotel development project

12    in the Riverside County City of Coachella (the "Project"), USRECH initiated a civil action against

13    Glenroy and others, including myself, in the Riverside County Superior Court (case # RIC 1905743, the

14    "Riverside Case"), which myself and my co-owners other than Glenroy, as to whom the Riverside Case

15    is stayed, are currently litigating at our own expense.

16    3. In the course of the Riverside Case my co-owners and I have learned of actionable, wrongful,

17    conduct by USRECH. Therefore, we have authorized our attorneys at Messina & Hankin LLP to seek

18    leave to file a Compulsory Cross-Complaint against USRECH in the form attached hereto as Exhibit

19    "007" ("Cross-complaint"). I am informed and believe that debtor Glenroy has the same rights of action

20    as we have asserted in the Cross-complaint.

21    4. In May 2021, my co-owners and I authorized Messina & Hankin LLP to contact Richard A.

22    Marshack, Trustee, offer to also prosecute Glenroy's claims against USRECH and, subject to

23    reimbursement if successful, advance the fees and costs of doing so if he would agree to give us

24    derivative standing. To date we have not received a response to that offer. That offer remains open to

25    the Trustee.

26    5. The damage claims set forth in the Cross-complaint exceed $ 52 Million, and are based on an

27    Appraisal Report for the Hotel Project Property obtained by debtor Glenroy's Bankruptcy Counsel for

1  use in this case before the Trustee was appointed.  A true copy of the opinion from that Appraisal Report

2  is attached hereto as Exhibit "008" for the purpose of showing the damage claims alleged in the Cross-

3  complaint have a legitimate basis and are not simply made-up numbers.

4      **IN WITNESS WHEREOF,** this declaration is executed under penalty of perjury this 17th day of

5  August 2021 at Beverly Hills, California.

6

7

8                                                A. STUART RUBIN

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Declaration of Rogson**

1   JOHN A. MESSINA, JR. (SBN 171148)
2   EVAN L. SMITH (SBN 101369)
    JEFFREY J. VAN WICK (SBN 330915)
3   MESSINA & HANKIN LLP
    24910 Las Brisas Road, Suite 102
4   Murrieta, CA 92562
    jmessina@messinahankinlaw.com
5   elsmith@messinahankinlaw.com
    jvanwick@messinahankinlaw.com
6   Telephone: (951) 894-7332
    Fax: (951) 346-3334
7

8   Attorneys for A. STUART RUBIN, ELLIOT LANDER,
9   FORCE RUBIN LLC, FORCE RUBIN 2 LLC, AND
10  COACHELLA RESORT, LLC.

11              UNITED STATES BANKRUPTCY COURT

12      CENTRAL DISTRICT OF CALIFORNIA-LOS ANGELES DIVISION

13

14  In re:                              )  CASE NO.: 2:21-bk-11188-BB
15                                       )  CHAPTER 11
    GLENROY COACHELLA, LLC,              )
16                                       )  DECLARATION OF MICHAL ROGSON IN
                   DEBTOR.               )  SUPPORT OF OPPOSITION TO TRUSTEE'S
17                                       )  MOTION TO APPROVE COMPROMISE
                                         )  WITH U.S. REAL ESTATE CREDIT
18                                       )  HOLDINGS III-A, L.P. RE LENDER'S
19                                       )  CONSENT TO SALE FREE AND CLEAR OF
                                         )  LIEN, AND TO APPROVE CREDIT BID.
20                                       )
21                                       )  DATE:  August 31, 2021
                                         )  TIME: 2:00 p.m.
22                                       )  CTRM: 1539 (By Zoom)
                                         )
23                                       )
                                         )
24                                       )

25  _____

26  ///

27  ///

28

*In re Glenroy Coachella, LLC*                          *Case No.: 2:21-bk-11188-BB*

I, MICAHL ROGSON, declare:

1. I am Vice President of the Court Department at Tokio Marine HCC Surety Group, ("Surety") which is comprised of American Contractors Indemnity Company, U.S. Specialty Insurance Company and United States Surety Company and has a financial strength rating of "A+ (Strong)" from S&P Global Ratings and "A++ (Superior)" from A.M. Best. I have served in this capacity for more than ten years. Tokio Marine HCC Surety Group specializes in litigation bonds, and as part of my duties as Vice President of the Court department I manage the underwriting of complex litigation bonds including appeal bonds. I am also an attorney admitted to practice law in California, and have written and lectured on the subject of court bonds, and appeal bonds in particular. I am providing this declaration in support of the *Opposition to Trustee's Motion to Approve Compromise With U.S. Real Estate Credit Holdings III-A, L.P. Re Creditor's Consent to Sale Free and Clear of Lien, and to Approve Credit Bid* by A. Stuart Rubin, Elliot Lander, Force Rubin LLC, Force Rubin 2 LLC, and Coachella Resort LLC. I have personal knowledge of the facts set forth below and, if called as a witness, could and would attest thereto. No waiver of the attorney-client privilege, or of any other privilege, is made, intended, or implied hereby.

2. A surety company is effectively a corporate third-party guarantor, ensuring that the primary responsible party ("Principal") fulfills its obligations. If it does not, the surety company will fulfill those obligations and then seek recovery from the Principal.

3. In the context of an appeal bond, the primary obligation is the judgment. The Principal is seeking to stay execution of the judgment pending appeal. The purpose of the bond is to facilitate such a stay of execution while protecting both parties to the appeal. If the appeal fails, the bond can make the judgment creditor whole, placing it in the same position it would have been in had the appeal not occurred. If the appeal is successful, posting a bond in lieu of up-front payment to the judgment creditor obviates the need to attempt to recover funds already paid out to the judgment creditor. The bond requirement further discourages judgment debtors from filing frivolous appeals in hopes of using the

---

***
**Page 2 of 4**

delay to render themselves judgment proof, as they will have to guarantee coverage of the bond

obligation. The appeal bond is therefore an excellent tool for maintaining the status quo for the duration

of the appeal while allowing a stay of execution.

3.  California Code of Civil Procedure section 917 controls the requirements for appeal bonds in

California.  CCP 917 .1 mandates that in order to stay execution of a money judgment, a bond for 150%

of the judgment in question must be provided.  The additional 50% covers interest, costs and fees on

appeal, which allows the prevailing party to be placed in the same position it would have been in had no

stay occurred and the judgment had been executed or paid immediately.  Not all states have a specific

multiplier as California does, but almost all state codes require some additional amount to cover interest,

costs and fees on appeal, as the purpose of the bond is to maintain the status quo for the duration of the

appeal through which execution of the judgment is stayed.  Federal courts have discretion regarding bond

amounts and can order bonds in less than the judgment amount when justified by the circumstances, but

generally follow these same principles and require a bond in the full judgment amount plus an additional

amount to cover interest, costs and fees on appeal.

4.  Appeal bonds generally require full collateralization.  The overwhelming majority of appeals

are unsuccessful, and therefore the likelihood of a claim is high.  The Surety will want to be certain that

the applicant/appellant is capable of paying the judgment in full if affirmed, plus interest, costs and fees,

in order to avoid a claim.  If the applicant is unable to demonstrate the ability to do so, an ability that

must remain unchanged for several years while the appeal is pending, then a surety is almost certain to

require collateral, essentially prompting the applicant to figure it out up front.  Most applicants are unable

to establish sufficient liquidity and stability and therefore 85-90% of appeal bonds are fully

collateralized.

5.  So, for example, if a $20,000,000.00 judgment is being appealed (loosely based on the size of

the dispute in question) CCP 917.1 would require that the appellant/Principal put up a $30,000,000.00

bond.  The Principal will either (a) have to provide $30,000,000.00 in collateral to the Surety, or (b) obtain a waiver of the collateral requirement by proving to the Surety that it is financially liquid, strong, and stable enough to pay any affirmed judgment or order up to the bond amount within 30 days of issuance by the Court at any point in time over the following three to four years in which such a Judgment/Order may issue.

6.  Due to the bond size in question, only the largest and most established surety companies will have the capacity to write it, and most would require approval of their reinsurers unless the bond is fully collateralized.  The Principal's financials are therefore likely to go through two levels of underwriting – the surety level, and the reinsurer level – before a waiver of collateral could be approved.

7.  Whether collateral is required is also likely to impact the annual premium for the bond. Because the risk on non-collateralized bonds is higher, the premium rate for a non-collateralized bond is also generally higher than it is for bonds written with full collateral.  Market rates for premium on non-collateralized bonds generally hover between 1- 3% of the bond amount while premium for collateralized bonds run between .25%-1%.  Much of the calculus depends on underwriting factors I do not have before me, so these are generalizations based on my past experience with bonds of this size.

8.  Assuming mid-range pricing, a non-collateralized $30,000,000.00 bond would therefore incur an annual premium of $600,000 (at 2%), and a collateralized bond would incur an annual premium of $187,500 (at .625%), which would be billed annually until the appeal is concluded and the bond is exonerated.

**IN WITNESS WHEREOF**, this Declaration is executed under penalty of perjury this 17th day of August 2021 at Los Angeles, California.



**MICHAL ROGSON**