Peter J. Kennedy (SBN 166606)
Kathryn M. Bayes (SBN 334864)
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA  90071-1514
Tel: 213.457.8000 / Fax: 213.457.8080

Attorneys for U.S. Real Estate
Credit Holdings III-A, L.P.

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No.       2:21-bk-11188-BB |
| GLENROY COACHELLA, LLC, | Chapter 11 |
| Debtor. | **U.S. REAL ESTATE CREDIT HOLDINGS III-A, L.P'S OPPOSITION TO MOTION TO DISQUALIFY REED SMITH LLP** |
| | Date:  September 1, 2021<br>Time:  10:00 a.m.<br>Courtroom: 1539 (Via Zoom) |

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................. 1

II. FACTUAL AND PROCEDURAL BACKGROUND ............................................... 2

   A.    The Rubins' Civil Lawsuit For Reimbursement For Lost Or Damaged
         Personal Property Simply Did Not Involve Glenroy And Was Dismissed In
         November 2018 ................................................................. 2

   B.    Reed Smith's Representation Of Glenroy Was Limited To Obtaining
         Insurance Coverage For The Loss Of HVAC Equipment And Ended In May
         2019 ................................................................. 2

   C.    Reed Smith's Representation Of USRECH Has Been Extensive, But Does Not
         Involve The Value Of The Rubins' Furniture Or Glenroy's Missing HVAC
         Equipment ................................................................. 3

         1.    The Riverside State Court Action ................................................................. 3

         2.    The Bankruptcy Case ................................................................. 5

   D.    Rubin Raised Alleged Conflicts In November 2020, But Only Filed This
         Retaliatory Motion After Being Found In Contempt ................................................................. 7

III. ARGUMENT ................................................................. 8

   A.    Rubin Does Not Meet The Heavy Burden Required To Justify The Harsh
         Remedy Of Disqualifying USRECH's Chosen Counsel, Eight Months After
         Reed Smith Appeared ................................................................. 8

   B.    Rubin Lacks Standing To Bring This Motion for Glenroy Because Rubin Was
         Not A Client In The HVAC Matter And The Trustee Now Controls Glenroy ....... 9

   C.    Disqualification Is Improper Because Reed Smith Does Not Currently
         Represent Glenroy And The HVAC Matter Is Not Substantially Related To
         The Riverside Action. ................................................................. 10

         1.    No Conflict Exists Under California Rule of Professional Conduct 1.7
               Because Reed Smith Does Not Currently Represent Glenroy In The
               HVAC Matter ................................................................. 10

         2.    No Conflict Of Interest Exists Because The HVAC Matter Is Not
               "Substantially Related" To The Riverside Action ................................................................. 11

OPPOSITION TO MOTION TO DISQUALIFY

3.    The Reed Smith Lawyers Who Worked On The HVAC Matter No
Longer Work At Reed Smith, Permitting Reed Smith To Be Adverse
To Glenroy .......................................................................................... 12

D.    No Conflict Arises From Reed Smith's Representation Of Stuart And Annette
Rubin Because The Civil Action Was Wholly Unrelated To The Riverside
Action ......................................................................................................... 13

E.    The Motion Should Be Denied Because Of Rubin's Tactical Delay ................... 13

1.    Rubin Unreasonably Delayed In Bringing This Disqualification
Motion ................................................................................................... 14

2.    Disqualifying USRECH's Counsel Would Be Extremely Prejudicial ..... 14

3.    The Laches Factors Favor Denying The Motion ..................................... 15

F.    The Motion Should Be Denied Even If There Is A Conflict Because The
Disqualification Factors Favor Denial ................................................................ 16

IV. CONCLUSION ................................................................................................................... 17

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

OPPOSITION TO MOTION TO DISQUALIFY

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Advanced Messaging Techs., Inc. v. EasyLink Servs. Inc.*,
5
    913. F. Supp. 2d 900 (C.D. Cal. 2012) ...............................................................10

6

*Atiya v. Di Bartolo*,
    63 Cal.App.3d 121 (1976) ..............................................................................4
7

*CFTC v. Weintraub*,
8
    471 U.S. 343 (1985).........................................................................................9

9

*In re Cty. of L.A.*,
    223 F.3d 990 (9th Cir. 2000) .........................................................................10
10

11

*People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*
    20 Cal. 4th 1135 (1999) ................................................................................16
12

*Gilbert v. Sykes*,
13
    147 Cal.App.4th 13 (2007) .............................................................................4

14

*Goldberg v. Warner/Chappell Music, Inc.*
15
    125 Cal.App.4th 752 (2005) ....................................................................12, 13

16

*Gregori v. Bank of Am.*,
    207 Cal.App.3d 291 (1989) ......................................................................8, 16

17

*In re Jaeger*,
18
    213 B.R. 578 (Bankr. C.D. Cal. 1997).............................................................9

19

*Koo v. Rubio's Rests., Inc.*,
20
    109 Cal.App.4th 719 (2003) ............................................................................9

21

*Lennar Mare Island, LLC v. Steadfast Ins. Co.*,
    105 F. Supp. 3d 1100 (E.D. Cal. 2015)..........................................................17
22

23

*Morrison Knudsen Corp. v. Hancock, Rother & Bunshoft*,
    69 Cal.App.4th 223 (1999) ...........................................................................12

24

*Nguyen v. Ford*,
    49 Cal.App.5th 1 (2020) ................................................................................10
25

26

*Oaks Mgmt. Corp. v. Super. Ct.*
    145 Cal.App.4th 453 (2006) ..........................................................................16

27

*Ontiveros v. Constable*
28
    245 Cal.App.4th 686 (2016) .....................................................................13, 14

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

- iii -

*River W., Inc. v. Nickel*
    188 Cal.App.3d 1297 (1987) ...............................................................13, 14, 15, 17

*Shaoxing City Maolong Wuzhong Down Prods., Ltd. v. Keehn & Assocs., APC,*
    238 Cal.App.4th 1031 (2015) ......................................................................10

*Sharp v. Next Entertainment, Inc.,*
    163 Cal.App.4th 410 (2008) ..........................................................................8

*White v. Experian Info. Sols.,*
    993 F. Supp. 2d 1154 (C.D. Cal. 2014) ......................................................16

*William H. Raley Co. v. Superior Court,*
    149 Cal.App.3d 1042 (1983) ..................................................................11, 12

**Statutes**

11 U.S.C. § 362 ...............................................................................................5

**Other Authorities**

RPC 1.9(a) ......................................................................................................11

RPC 1.10(b) ...................................................................................................12

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

OPPOSITION TO MOTION TO DISQUALIFY

1    Lender U.S. Real Estate Credit Holdings III-A, L.P. ("USRECH") hereby opposes the

2    motion to disqualify USRECH's counsel, Reed Smith LLP, filed by A. Stuart Rubin ("Rubin").

3                              **I.    INTRODUCTION**

4        Rubin has known about this so-called "conflict" since November 2020, but only filed this

5    motion now, and tactically, for two purposes:  (1) to retaliate against USRECH because it recently

6    successfully moved the state court to hold Rubin in contempt for violating an injunction; and (2) to

7    derail the efforts of the Chapter 11 Trustee Richard A. Marshack (the "Trustee") to resolve the

8    disputes between Debtor Glenroy Coachella, LLC (the "Debtor") and USRECH  regarding the sale

9    of real estate.  This Court removed Rubin from management of this Debtor based on his gross

10   mismanagement and his bad-faith litigation tactics.   This disqualification motion is a further

11   example of the very same tactics Rubin uses to create a tactical advantage.

12       Rubin's motion primarily focuses on Reed Smith's long-ago concluded representation of the

13   Debtor in an insurance recovery matter involving allegedly missing HVAC equipment from the

14   Glenroy Coachella hotel project (the "HVAC Matter"), which ended in May 2019.  Reed Smith's

15   representation of USRECH commenced a year and a half later, after all of the attorneys who worked

16   on the HVAC matter had left the firm.  There simply is no conflict with respect to the HVAC matter,

17   which was so inconsequential to this estate that it was not even scheduled as an asset, until after

18   Rubin filed this motion.   But even if there were a conflict, which there is not, it would be the

19   Trustee's sole responsibility to prosecute a motion to disqualify any conflicts relating to the Debtor.[1]

20       What remains, then, is Reed Smith's long-ago concluded representation of Rubin and his

21   wife in an insurance recovery matter involving their personal home furnishings.  The representation

22   of Stuart and Annette Rubin (the "Civil Action") was dismissed with prejudice in 2018, is wholly

23   unrelated to this Debtor, its estate, or its creditors, as it involved only an insurance coverage claim

24   for the Rubins' personal property.  This is not the appropriate forum for a displaced equity holder to

25   raise purported "conflicts" in a representation that had nothing to do with the Debtor or with this

26   bankruptcy estate.

27

28

---

[1]     Rubin filed a substantially similar motion to disqualify in the state court.   In doing so, he likely violated the automatic stay, as was noted by the Trustee in his statement filed in the state court.  Decl. of Marsha A. Houston ("Houston Decl.") Ex. G.   USRECH requests that this Court take judicial notice of the state court filings.

OPPOSITION TO MOTION TO DISQUALIFY

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    Lastly, this Motion is a textbook example of a tactical and retaliatory motion that should be

2  denied based on laches, even if there is a conflict.  Rubin first raised the alleged conflict in

3  November 2020, and then waited **eight months** to bring this motion, after a series of stinging

4  litigation losses, including a contempt finding, thereby prejudicing Reed Smith's client.  This is a

5  court of equity, and this Motion seeks inequitable relief.

6                    **II.    FACTUAL AND PROCEDURAL BACKGROUND**

7  **A.    The Rubins' Civil Lawsuit For Reimbursement For Lost Or Damaged Personal**

8          **Property Simply Did Not Involve Glenroy And Was Dismissed In November 2018**

9          Stuart and Annette Rubin were referred to then-Reed Smith Partner Richard Giller in 2017.

10 Decl. of Richard C. Giller ("Giller Decl.") ¶ 4.  On October 17, 2017, Mr. Giller filed a Complaint

11 on behalf of the Rubins in United States District Court, Central District of California, Case No. 2:17-

12 cv-00126, entitled *Abraham Stuart Rubin and Annette Rubin v. Certain Underwriters at Lloyd's*

13 *London*, Subscribing to Certificate Number SRD526993.  *Id.* Ex. A.  The Civil Action involved an

14 insurance coverage dispute between the Rubins and their homeowners' insurance carrier relating to

15 certain personal property of the Rubins lost by a storage facility.  *Id.* Ex. A, at ¶¶ 9-35.

16         The Civil Action was wholly unrelated to the Glenroy Coachella project or Glenroy.  *See Id.*

17 ¶ 4, Ex. A, at ¶¶ 12, 36-45; Decl. of Ashley Rodriguez ("Rodriguez Decl.") ¶ 4.   At no point during

18 the Civil Action did Reed Smith receive information or documents about the Glenroy Coachella

19 project or Glenroy.  Rodriguez Decl. ¶4.  On November 2, 2018, the Civil Action was dismissed

20 with prejudice, concluding the matter.  Giller Decl. ¶ 6, Ex. B.

21 **B.    Reed Smith's Representation Of Glenroy Was Limited To Obtaining Insurance**

22        **Coverage For The Loss Of HVAC Equipment And Ended In May 2019**

23         Reed Smith began representing Glenroy in the HVAC Matter in November 2018.  *Id.* Ex. C.

24 Mr. Giller was the client relationship partner.  *Id.* ¶ 8.  As described in Reed Smith's engagement

25 letter, the HVAC Matter was limited to pursuing "insurance coverage for a theft claim totaling

26 approximately $300,000 to $400,000 in connection with HVAC inventory on-site for the Glenroy

27 Coachella hotel construction project."  *Id.* Ex. C.  Notably, Rubin is not listed as a client in the

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1 engagement letter, which expressly excludes from representation anyone not listed as a client. *Id.*

2 Ex. C at 5.

3      In the course of the representation, Reed Smith obtained information only pertaining to the

4 allegedly missing or stolen HVAC equipment. *Id.* ¶ 10; Rodriguez Decl. ₱ 6. These documents

5 were provided to the insurers and constituted the evidence for the basis of Glenroy's coverage claim.

6 Giller Decl. ₱₱ 9, 10, Ex. D. The information provided by Glenroy did not include information

7 about the project or its loan with USRECH. *Id.* ₱ 10; Rodriguez Decl. ₱ 6.

8      On March 31, 2019, the insurers in the HVAC Matter agreed to a net payment of about

9 $8,400, out of the over $600,000 that Glenroy had claimed. Giller Decl. ₱ 11, Ex. E at 4. The

10 insurers' counsel concluded his letter:

11      The Insurers have determined that the majority of the claimed property was not stolen
     or lost and we have confirmed its current location and availability for pick up. To the

12      extent that any property was not located, the Insurers have determined that Glenroy
     Coachella did sustain a loss of HVAC equipment from the "Hotel & Casitas Project"

13      situated at Van Buren & E. 48th Avenue, Coachella CA as outlined below.

14 *Id.* ₱ 11, Ex. E at 1. Glenroy made a counteroffer, which the insurers rejected. *Id.* ¶ 11.

15      Mr. Giller last spoke with Rubin about the substance of the HVAC Matter in or around May

16 2019. *Id.* ¶ 12; Decl. of Peter Kennedy ("Kennedy Decl.") ¶ 8, Ex. F. Glenroy did not provide Mr.

17 Giller, or any other attorney at Reed Smith, any further direction or instructions regarding the HVAC

18 Matter after that time. Giller Decl. ¶ 12; Rodriquez Decl. ₱ 7, 8.

19      All of the lawyers on Reed Smith's HVAC Matter invoices left the firm well before

20 November 2020 when the firm became adverse to Glenroy. Kennedy Decl. ₱ 10; Giller Decl. ₱ 13;

21 Rodriguez Decl. ₱ 2; Hoffstetter Decl. ₱₱ 9, 10. When he left Reed Smith, Mr. Giller did not transfer

22 the Civil Action or the HVAC Matter (both of which had clearly concluded) to anyone at Reed

23 Smith or to his new firm. Giller Decl. ₱ 13; Halbreich Decl. ₱ 3.

24 **C.**    **Reed Smith's Representation Of USRECH Has Been Extensive, But Does Not Involve**

25        **The Value Of The Rubins' Furniture Or Glenroy's Missing HVAC Equipment**

26        **1.**     **The Riverside State Court Action**

27      The litigation began in the Superior Court for the County of Riverside (the "Riverside

28 Court"), growing to include nearly twenty consolidated actions by subcontractors, none of whom

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

OPPOSITION TO MOTION TO DISQUALIFY

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  supplied the HVAC system in the HVAC Matter (the "Riverside Action"). Before Reed Smith

2  began its representation, USRECH was represented by Raines Feldman LLP. Decl. of Nathan M.

3  Carle ("Carle Decl.") ¶ 3. Raines Feldman merged with another firm, Rosenfeld, Wolff & Klein,

4  which Rubin alleged had a conflict. Raines Feldman withdrew as USRECH's counsel and Reed

5  Smith began representing USRECH in the instant case on November 23, 2020.[2] "Houston Decl." ¶

6  5.

7       Reed Smith's representation over the last nine months has been intense and extensive: not

8  fewer than eleven Reed Smith attorneys have worked on these matters incurring more than 2,200

9  hours of billable time, with at least eight significant motions and more pending. Houston Decl. ¶ 6.

10 In fact, the docket in the Riverside Action is **192 pages long**, and approximately **40 pages** of those

11 docket entries have occurred in just the last nine months. Houston Decl., Ex. E. The amount of

12 time it would take a new attorney to get up to speed on these filings would be a staggering and costly

13 project.

14      The Riverside Action has nothing to do with the Rubins' lost furniture or a small HVAC

15 system previously stored on the project. The project did not fail because of lost furniture or HVAC

16 equipment, but because of Rubin's incompetence and dishonesty, including his diversion of funds

17 from Mello Roos financing to a marijuana dispensary managed by his son. In fact, Rubin's

18 misdeeds resulted in the bankruptcy court removing Rubin from management of Glenroy. Dkt. No.

19 120.

20      Since November 2020, when Reed Smith first appeared in this Riverside Action, it has

21 vigorously litigated the action on behalf of the USRECH, including, without limitation:

22     • Successfully opposing Glenroy and other Defendants' ex parte application to prime

23

24 [2]     Rubin makes the unsupported allegation that the client files Reed Smith received from Raines Feldman also
included files from Rosenfeld, Wolff & Klein, which included confidential information: "[Reed Smith] received client
25 files from Rosenfeld, Wolff & Klein, which Rubin is informed and believes contain extensive information relating to its
longstanding relationships with the Rubins, including confidential and privileged information concerning them
26 personally, their family trusts, Glenroy, and their other business assets." Mot. 3:23-28. Rubin does not reveal the source
of his information and belief. *Id.* Such declaration is insufficient as evidence. *See Atiya v. Di Bartolo*, 63 Cal.App.3d
27 121, 126 (1976) ("declarations setting forth only conclusions, opinions or ultimate facts are to be held insufficient");
*Gilbert v. Sykes*, 147 Cal.App.4th 13, 26 (2007) (conclusory declarations "are to be disregarded"). In reality, Reed Smith
28 did not receive any documents that were kept in the files of Rosenfeld, Wolff & Klein. Carle Decl. ¶ 6 ("None of the
materials [Raines Feldman] transferred to Reed Smith came from the Rosenfeld firm's files.")

– 4 –

USRECH's lien.  Houston Decl. ⁋ 15, Ex. E.

- Successfully moving to have a Receiver appointed by the Riverside Court over the construction project.  Houston Decl. ⁋ 15, Ex. E.

- Filing a motion for summary adjudication against Glenroy to judicially foreclose on the project, which motion was stayed by this bankruptcy case.  Houston Decl. ⁋ 15, Ex. E.

- Pursuing non-judicial foreclosure of the project, which foreclosure was also stayed by this bankruptcy case.  11 U.S.C. § 362.

- Filing a motion for summary adjudication on Rubin and Dr. Lander's personal guaranties, which are now the subject of a petition for writ of mandate that has been procedurally denied by the California Courts of Appeal and which USRECH is appealing to the Supreme Court of California.  Houston Decl. ⁋ 15.

- Working extensively with the Receiver to ensure that the project is properly secured and maintained, particularly in light of Rubin's efforts to use the Debtor's property for the benefit of his son's marijuana dispensary.

- Seeking and obtaining an order finding Rubin in contempt for his violation of the Riverside state court's injunction against his transfer of real property.  Houston Decl. Ex. E.

- Engaging in **two separate** and extensive mediations with Glenroy, Rubin, and others, during which Rubin never complained about Reed Smith's continuing representation. United States Bankruptcy Judge Martin Barash acted as mediator.  Houston Decl. ⁋ 8.

- Additionally, Reed Smith represented USRECH in Los Angeles Superior Court against Stuart Rubin Children's Trust Holdings LLC, based on its pledge of the trust to USRECH to secure the construction loan.  The action remains pending.

- Also, USRECH was the defendant in a lawsuit filed by SRCT in the Santa Barbara Superior Court based upon USRECH's efforts to prevent the trust from selling the Santa Barbara apartment building referenced above.

Critically, every single one of the foregoing actions took place **after** Rubin first complained about Reed Smith's representation of USRECH.

## 2.    The Bankruptcy Case

This Bankruptcy Case has also been extensively litigated, with **approximately 350 entries** currently appearing on the docket.  From the earliest days of this case, USRECH has vigorously enforced its rights and remedies, starting on February 17, 2021, just two days after the bankruptcy petition was filed, when USRECH moved for the appointment of a Trustee. Dkt. No. 16.   If there was any doubt regarding Rubin's tactical use of disqualification threats, the very next day—on February 18, 2021—he retaliated through his counsel, Mr. Weintraub, raising the alleged "conflicts of interest" of Reed Smith.  Why it took another half a year for Rubin to actually file a

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  disqualification motion would be a mystery, other than that he did so in response to Reed Smith

2  causing the Riverside Court to find Rubin in contempt.  This was apparently the "last straw" for

3  Rubin.

4          Regardless, there has been substantial activity by USRECH in connection with these

5  bankruptcy proceedings.  On March 12, 2021, this Court granted USRECH's motion and appointed

6  the Trustee over Glenroy and dispossessed Rubin, Holdings, and any other equity holders from

7  acting for Glenroy.   Dkt. No 120.  This Court's tentative ruling, which became a final ruling, was

8  scathing about Debtor's conduct:

9          . . . there are MANY MANY causes for concern as to the manner in which the project was
           handled and the manner in which the principals of the debtor interacted with the receiver
10         and withheld information and records from the receiver and other investors. … Debtor's
           prior conduct demonstrates that debtor's principals cannot be relied upon to administer the
11         debtor's assets in a transparent manner for the benefit of creditors rather than in their own
           interests.

12

13  Houston Decl. Ex. F.

14          USRECH, through Reed Smith, has also appeared at numerous hearings in this case,

15  including hearings regarding the continuing role of the receiver, who remains in possession of the

16  assets.  USRECH successfully opposed the Debtor's efforts to appoint a "chief restructuring officer."

17  USRECH also worked extensively with the Trustee regarding his efforts to extend the single asset

18  real estate ("SARE") deadlines, which have now expired.

19          Most importantly, over the preceding six months, Reed Smith has negotiated extensively on

20  behalf of USRECH with the Trustee and his counsel to negotiate an acceptable sale proposal that

21  would provide substantial benefits to the creditors of this bankruptcy estate.   These efforts

22  culminated in a motion by the Trustee to approve his compromise with USRECH, Dkt. No. 322, a

23  motion by the Trustee to convert this case to Chapter 11, Dkt. No. 325, and a motion to approve

24  bidding procedures, which will be filed in the very near future, and will be followed by a motion for

25  approval of a sale.  As set forth in the compromise motion, the property in this estate is deeply

26  underwater and without USRECH's consent (which was only obtained after extensive negotiations

27  helmed by Reed Smith), the sale simply would not be possible.  Rubin, who has a vendetta against

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1 USRECH and Reed Smith, in particular, and will do anything to derail these efforts and to prevent

2 even the possibility of USRECH acquiring this property.

3     Additionally, as explained in the Trustee's Opposition Statement, the Trustee has exclusive

4 standing to speak for Glenroy.  Without approval from the bankruptcy court, Rubin, Holdings, and

5 any other displaced principals or equity holders are barred from asserting Glenroy's claims or

6 interests.  The Trustee has no qualms about Reed Smith's representation of USRECH.

7 **D.    Rubin Raised Alleged Conflicts In November 2020, But Only Filed This Retaliatory**

8     **Motion After Being Found In Contempt**

9     Rubin sat on his rights for eight months after discovering the alleged conflict, while Reed

10 Smith incurred more than 2,200 hours of billable time for USRECH as described above.

11 Specifically, on November 30, 2020, counsel for Rubin claimed Reed Smith had a conflict and

12 demanded withdrawal.  Houston Decl., Ex. A.  The next day, Reed Smith made its position clear:

13 there is no conflict because Reed Smith's representation of the Rubins and Glenroy ended years ago

14 and neither representation was substantially related to the current engagement.  *Id.* Ex. A.  Rubin's

15 pattern of asserting conflicts whenever challenged in litigation persisted over the next eight months:

16/17     • **November 30, 2020**:  Rubin raises the alleged "conflict" while USRECH's motion seeking to expand the Receiver's powers is pending, but abandoned disqualification threats after the motion is withdrawn.

18/19/20/21     • **February 8, 2021**: Following USRECH's motions for summary adjudication against Glenroy, Rubin, and Lander, and its notice of non-judicial foreclosure sale, Houston Decl. Ex. H, Glenroy's bankruptcy counsel, Dan Weintraub, inadvertently attaches Reed Smith's engagement letter with Glenroy from the HVAC Matter in his introduction email to Reed Smith.  Houston Decl. ¶ 12, Ex. B.  Clearly, Rubin was intending to threaten disqualification if his mediation efforts with USRECH failed.  Rubin filed no motion to disqualify.

22/23/24/25     • **February 18, 2021**: One day after Reed Smith filed USRECH's motion to appoint a bankruptcy trustee, Mr. Weintraub sent an email to Reed Smith claiming that "it has also come to our attention" that Reed Smith previously represented Rubin.  Houston Decl. ¶ 13, Ex. C.  The threat was obviously in retaliation for the trustee motion.  In response, Reed Smith's counsel responded that there was no conflict of interest.  Kennedy Decl. ¶ 11, Ex. G.  Rubin filed no motion to disqualify.

26/27/28     • **May 4, 2021**:  Just days after Reed Smith sent an April 30 email to Evan Smith, counsel for Stuart Rubin, regarding Rubin's contempt of this Court's injunction order, Rubin once again raised the alleged conflict of interest.  Houston Decl. ¶ 14, Ex. D.  Once again, Mr. Kennedy for Reed Smith responded that there were no conflicts of interest.  Kennedy Decl. ¶12, Ex. G.

1    And once again, counsel for Rubin takes no action until another adverse ruling
2    occurs.

3    Only now, after the Riverside Court has held Rubin in contempt, and only in the face of the

4    Trustee's settlement of Glenroy's disputes with USRECH, has Rubin sought to disqualify Reed

5    Smith. Without question, Rubin also hopes to distract this Court from the substantial progress made

6    by the Trustee in his efforts to sell the property of this estate.  In particular, Rubin clearly does not

7    want the Trustee's compromise with USRECH to proceed.   His collateral attack on the compromise

8    by way of a disqualification motion is improper.

9    For all these reasons, Rubin's belated, retaliatory motion should be denied.

10    ### III.    ARGUMENT

11   **A.    Rubin Does Not Meet The Heavy Burden Required To Justify The Harsh Remedy Of**

12   **Disqualifying USRECH's Chosen Counsel, Eight Months After Reed Smith Appeared**

13    Disqualification of a party's chosen counsel is an extreme remedy as it usually imposes

14    "substantial hardship on the . . . innocent client, who must bear the monetary and other costs of

15    finding a replacement."  *Gregori v. Bank of Am.*, 207 Cal.App.3d 291, 300 (1989). Such motions

16    "often pose the very threat to the integrity of the judicial process that they purport to prevent." *Id*. at

17    300-01.  They can be used to "intimidate an adversary into accepting settlement on terms that would

18    not otherwise be acceptable.  *Id.* at 301 (citations omitted).  "[I]t is widely acknowledged by judges

19    that attorneys now commonly use disqualification motions for purely strategic purposes."  *Id*.

20    (internal quotations omitted).  As the court observed in *Sharp v. Next Entertainment, Inc.*, "[m]otions

21    to disqualify counsel are especially prone to tactical abuse because disqualification imposes heavy

22    burdens on both the clients and courts: clients are deprived of their chosen counsel, litigation costs

23    inevitably increase and delays inevitably occur."  163 Cal.App.4th 410, 424 (2008) (internal

24    citations and quotations omitted).

25    Rubin's Motion should be denied because the past representations have long ago concluded,

26    are not substantially related, and because of Rubin's tactical abuse.

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 8 –

**B.**  **Rubin Lacks Standing To Bring This Motion for Glenroy Because Rubin Was Not A Client In The HVAC Matter And The Trustee Now Controls Glenroy**

Reed Smith represented Glenroy, not Rubin or Holdings, in the HVAC Matter.  Giller Decl. ¶ 7, Ex. C.  An attorney may not be disqualified from representing a party "because his [or her] representation of that party is adverse to the interest of a current or former client" unless it is first "established that the party seeking the attorney's disqualification was or is 'represented' by the attorney in a manner giving rise to an attorney-client relationship."  *Koo v. Rubio's Rests., Inc.*, 109 Cal.App.4th 719, 728 (2003) (citation omitted).  "The burden is on the party seeking disqualification to establish the attorney-client relationship."  *Id.* (citation omitted).

Rubin fails to meet his burden.  Reed Smith represented **Glenroy** in the HVAC Matter—not Rubin or Holdings.  The Trustee alone has standing to bring a disqualification motion for Glenroy. *Cf. CFTC v. Weintraub*, 471 U.S. 343 (1985) (holding that pre-bankruptcy, an entity's management controls the attorney-client privilege, but holding that after the appointment of a bankruptcy trustee, the **trustee** controls the privilege, and not the company's displaced management); *In re Jaeger*, 213 B.R. 578, 591 (Bankr. C.D. Cal. 1997) (extending *Weintraub* and holding that the bankruptcy trustee, and not the displaced principals of a debtor, controls the "right to demand or waive the duty of loyalty of present or former counsel for the corporation").

Rubin tries to circumvent this standing problem by arguing that the purported conflict with Glenroy harms Rubin or Holdings.  Mot. 6:8-13. Yet, Reed Smith's engagement letter specifically stated Reed Smith was representing "Glenroy Coachella, LLC in connection with insurance coverage."  Giller Decl. Ex. C.  The engagement letter specifically encouraged Rubin to examine the "Exclusion of Owners, Subsidiaries, Officers, Directors and Employees" term of the engagement.[3] *Id.*, at 1.  The engagement letter's plain language identifying the client, and excluding all others (such as "equity owners") as clients means Rubin cannot meet his burden of demonstrating that an

---

[3]  This term specified that Reed Smith's "client for purposes of our representation" *excludes* "'Affiliates' of Client," and "equity stakeholders."  Giller Decl. Ex. C, at 5.  The letter included in bold italics that "***Should Client feel it necessary . . . to change the identified client [to include equity stakeholders] . . . within the definition of 'Client' . . . please discuss this matter with us before engaging us.***"  *Id.*

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  attorney-client relationship existed between Rubin and Reed Smith in the HVAC Matter, and hence,

2  he has no standing to seek to disqualify Reed Smith based on the HVAC Matter.

3  **C.    Disqualification Is Improper Because Reed Smith Does Not Currently Represent**

4  **Glenroy And The HVAC Matter Is Not Substantially Related To The Riverside Action.**

5  **1.    No Conflict Exists Under California Rule of Professional Conduct 1.7 Because**

6  **Reed Smith Does Not Currently Represent Glenroy In The HVAC Matter**

7  "The Ninth Circuit . . . has made clear that a federal court in California must apply California

8  law in a disqualification motion." *Advanced Messaging Techs., Inc. v. EasyLink Servs. Inc.*, 913. F.

9  Supp. 2d 900, 906 (C.D. Cal. 2012) (citing *In re Cty. of L.A.*, 223 F.3d 990, 995 (9th Cir. 2000)).

10  California Rule of Professional Conduct ("RPC") 1.7(a) provides in relevant part that "[a] lawyer

11  shall not . . . represent a client if the representation is directly adverse to another client."  Rubin

12  pretends that Reed Smith still somehow represents Glenroy regarding the HVAC Matter.  However,

13  Rubin's subjective musings are insufficient to establish a current attorney-client relationship: "In

14  deciding whether an attorney continues to represent a client, [courts] do not focus 'on the client's

15  subjective beliefs'; instead, [courts] objectively examine evidence of an ongoing *mutual* relationship

16  and of activities in furtherance of the relationship." *Shaoxing City Maolong Wuzhong Down Prods.,*

17  *Ltd. v. Keehn & Assocs., APC* (2015) 238 Cal.App.4th 1031, 1038 (internal quotations omitted).

18  "Representation ends when the client actually has or reasonably should have no expectation that the

19  attorney will provide further legal services." *Nguyen v. Ford*, 49 Cal.App.5th 1, 14 (2020) (internal

20  quotations and citation omitted).

21      Here, Glenroy has not communicated with the Reed Smith lawyers (or vice versa) regarding

22  the HVAC Matter since May 2019.  Kennedy Decl. ¶ 8, Ex. F (last time entry was May 2019); Giller

23  Decl. ¶12 ("no further direction or instructions"); Rodriguez Decl. ¶ 7-8 ("told to stop working by

24  Richard Giller . . . in or around April 2019" and no work or contact since and "no outstanding work

25  on HVAC Matter" when she left Reed Smith).[4]  Substantively, the matter appears to have been at a

26  ───────────────
[4]      Mr. Giller's email saying that he thought the matter was "unresolved" when he left Reed Smith is of no

27  probative value because Rubin is not offering that email for the truth of the matter asserted.  *See* Decl. of Evan L. Smith
¶ 3.  Mr. Giller also clarified that he "did not receive any further direction or instructions," and did not transfer the matter

28  to his new firm, nor was it transferred to anyone else at Reed Smith.  Giller Decl. ¶¶ 12, 13; Halbriech Decl. ¶ 3.  Ms.
Rodriguez had been told to stop working on the matter.  Rodriguez Decl. ¶ 8.

1   logical stopping point in April 2019 when the insurer had offered a pittance, and had rejected

2   Glenroy's counteroffer.  Giller Decl. ¶ 11, Ex. E, at 4.[5]  Furthermore, Glenroy agreed that the last

3   invoice would constitute the end of the engagement:

4       ***Termination and Conclusion of Attorney-Client Relationship.***  Unless previously
        terminated, our representation of the Client will terminate, and the attorney-client

5       relationship shall be deemed concluded, after our completion of all matters for which we
        have represented Client. But no later than the date of the invoice under which the last matter

6       was billed in full.

7   *Id.* ¶ 7, Ex. C, at 2.  Hence, it is not reasonable, indeed it is preposterous, for Rubin to argue that

8   Reed Smith is Glenroy's counsel in an ongoing matter.

9       **2.      No Conflict Of Interest Exists Because The HVAC Matter Is Not "Substantially**

10      **Related" To The Riverside Action**

11      Lawyers may be adverse to former clients unless the prior and current matters are "the same

12  or substantially related." RPC 1.9(a).  Here, Reed Smith obtained information only about missing

13  HVAC equipment.  Giller Decl. ¶ 10; Rodriguez Decl. ¶ 6.  These documents were provided to the

14  insurers and constituted the evidence for the basis of Glenroy's coverage claim.  Giller Decl. ¶¶ 9-

15  10, Ex. D.  The information provided by Glenroy did not include information about Glenroy's

16  business or the project more broadly.  *Id.* ¶ 10; Rodriguez Decl. ¶ 6. Hence, there is no nexus

17  between the HVAC Matter and the current disputes.

18      Furthermore, USRECH's litigation against Rubin and Glenroy is based on their well-

19  documented mismanagement of this construction project and their loan and guaranty defaults.  The

20  fact that the HVAC system may have at one time been stored on the property provides only the

21  flimsiest of connections between these matters, as evidenced most clearly by the fact that the HVAC

22  supplier is not one of the 20+ parties involved in the Riverside Action.

23      Rubin's reliance on *William H. Raley Co. v. Superior Court*, is wholly misplaced.  149

24  Cal.App.3d 1042 (1983).  First, *Raley* arose from an attorney's position at a bank, not any successive

25

26  [5]      Annette Rubin's bizarre declaration that she called Reed Smith over 50 times "in 2020 and 2021" is simply not
    credible.  Decl. of Annette Rubin ¶ 2.  First, she makes no effort to provide the particulars as to who or what phone

27  number she called.  Second, if she had called the client relationship partner in the HVAC Matter during the first 30 days
    after his departure, she would have been directed to Mr. Giller's practice group leader, David Halbreich.  Hoffstetter

28  Decl. ¶ 5; Halbreich Decl. ¶ 2.   If she called after that time, she would have been directed to a receptionist for further
    assistance, yet Mr. Halbreich never spoke with either her or Stuart Rubin about the HVAC Matter.  Halbreich Decl. ¶4.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 11 –

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   representations. *Id.* at 1046-48.  In fact, *Morrison Knudsen Corp. v. Hancock, Rother & Bunshoft*,

2   cited by Rubin immediately after relying on *Raley*, (Mot. 11:21-24), states that *Raley* "did not

3   involve simultaneous or successive representation of clients with conflicting interests."  69

4   Cal.App.4th 223, 232 (1999).  Second, the conflict of interest arose when a law firm represented a

5   plaintiff to an action, the defendant company was owned 100% by a bank as trustee, and a senior

6   partner from the plaintiff's law firm was a director of the bank and on the trust committee that

7   directed the defendant company.  *Raley*, 149 Cal.App.3d at 1046-48.  The court found that "[i]n

8   effect" the partner's fiduciary relationships with both the bank and his law firm placed the law firm

9   "on both sides of [the] lawsuit."  *Id.* at 1047.  Rubin's assertion that "there is a stronger nexus

10  between Reed Smith's successive representations than the law firm's successive representations [sic]

11  in *Raley*" both misrepresents the facts of *Raley* and is simply incorrect. Mot. 11:4-5.  Reed Smith

12  cannot be deemed to be "on both sides" of this lawsuit, and any attempt by Rubin to analogize Reed

13  Smith's previous representation of Glenroy or the Rubins as analogous to the conflict in *Raley*

14  should be disregarded.

15      **3.      The Reed Smith Lawyers Who Worked On The HVAC Matter No Longer Work**

16      **At Reed Smith, Permitting Reed Smith To Be Adverse To Glenroy**

17      Even if the Court determines the HVAC Matter and the Riverside Action are substantially

18  related, RPC 1.10(b) permits Reed Smith to represent USRECH.  RPC 1.10(b) allows a firm to be

19  adverse to a former client, even if the matters are substantially similar, if the lawyers who worked on

20  the prior matters have left the firm.[6]  Indeed, the Commission for the Revision of the RPC clarified

21  in its "Executive Summary" accompanying the announcement of Rule 1.10(b) that it was essentially

22  codifying existing case law that allowed a firm to act adversely to a former client when no remaining

23  lawyers had knowledge of confidential information:

24      Paragraph (b) incorporates Model Rule 1.10(b), which was adopted as the law of California
        by the court in *Goldberg v. Warner/Chappell Music, Inc.* (2005) 125 Cal.App.4th 752 . . .

25

26  [6]    "When a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter
    representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer
27  and not currently represented by the firm, unless: (1) the matter is the same or substantially related to that in which the
    formerly associated lawyer represented the client; and (2) any lawyer remaining in the firm has information protected by
    Business and Professions Code section 6068, subdivision (e) and rules 1.6 and 1.9(c) that is material to the matter."  RPC
28  1.10(b)

OPPOSITION TO MOTION TO DISQUALIFY

> The concept recognized in *Goldberg* is that if a lawyer who has represented a client and acquired confidential information has left the firm, and no other lawyer who has acquired confidential information remains, then there is no one left in the firm with knowledge that can be imputed to other lawyers in the firm.

Kennedy Decl. Ex. A.

Here, Reed Smith's five invoices in the HVAC matter reflect that four Reed Smith lawyers billed time to the HVAC Matter.  Kennedy Decl. ¶ 10, Exs. B-F.  All four of these lawyers left Reed Smith well before November 2020, i.e., before Reed Smith took on an adverse representation to Glenroy.  Giller Decl. ¶¶ 8, 13 (client relationship partner left September 2019); Hoffstetter Decl. ¶¶ 5, 9-10; Rodriguez Decl. ¶ 2 (departed 2019).  Hence, even if the Court is concerned that there was a substantive overlap, which there is not, no lawyer with supposedly material confidential knowledge remains at the firm.

**D.    No Conflict Arises From Reed Smith's Representation Of Stuart And Annette Rubin Because The Civil Action Was Wholly Unrelated To The Riverside Action**

Rubin does not assert that Reed Smith currently represents Stuart and Annette Rubin in the Civil Action, which was dismissed with prejudice, but makes scattered assertions that a conflict nevertheless exists, presumably through some substantive overlap.  Mot. 2:25-4:2; 9:7-11; 11:13-17.  These unsupported assertions are belied by both the substance of the Civil Action's Complaint and the testimony of the lawyers involved.  The Civil Action was a claim by the Rubins to their homeowners' insurance carriers for furniture and other items that were allegedly missing or damaged from a storage facility.  *See* Giller Decl. Ex. A.  As confirmed by Mr. Giller, the Civil Action "was unrelated to Glenroy Coachella project or Glenroy Coachella LLC".  *Id.* ¶ 4.  No information about Glenroy was conveyed during the representation.  Rodriguez Decl. ¶ 4.

Therefore, Reed Smith's prior representation of Stuart and Annette Rubin in the Civil Action does not create any conflict with Reed Smith's current representation of USRECH.

**E.    The Motion Should Be Denied Because Of Rubin's Tactical Delay**

Disqualification motions should be denied when the former client unreasonably delays, resulting in prejudice to the attorneys' current client.  *See River W., Inc. v. Nickel* 188 Cal.App.3d 1297, 1309 (1987); *see also Ontiveros v. Constable* 245 Cal.App.4th 686, 701 (2016) ("[A]ttorney

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 13 –

disqualification can be impliedly waived by failing to bring the motion in a timely manner.")

(citation omitted).   If the opposing party makes a *prima facie* showing of unreasonable delay and

prejudice, "[t]he burden then shifts back to the party seeking disqualification to justify the delay."

*River W.*, 188 Cal.App.3d at 1309. Once the burden shifts back to the moving party, that
> party should address: (1) how long it has known of the potential conflict; (2) whether it has
> been represented by counsel since it has known of the potential conflict; (3) whether anyone
> prevented the moving party from making the motion earlier, and if so, under what
> circumstances; and (4) whether an earlier motion to disqualify would have been inappropriate
> or futile and why."

*Id.* at 1309.

**1.    Rubin Unreasonably Delayed In Bringing This Disqualification Motion**

Rubin alleged conflicts in November 2020, but did not file his motion until July 2021, during

which the litigation grew to include a bankruptcy proceeding and multiple mediations.  In addition to

the passage of time and intensity of the litigation established above, "[f]actors relevant to the

reasonableness of a delay include the 'stage of litigation at which the disqualification motion is

made' and the complexity of the case."  *Ontiveros*, 245 Cal.App.4th at 701.  Here, this complex

action has been pending for **two years**, with extensive discovery and motions practice, three motions

for summary adjudication, multiple mediations, and approximately 350 entries in the bankruptcy

case.   And now a settlement has been reached with the bankruptcy Trustee with a motion for

approval pending for later this month.  Hence, Rubin's delay, and pattern of disqualification threats

surrounding key litigation moments, should not be rewarded.  *See River W.*, 188 Cal.App.3d at 1309

("It is not in the interests of justice to make the 'substantial relationship' rule *so unyielding* as to

permit the former client to inexcusably postpone objections without penalty.") (italics in original).

**2.    Disqualifying USRECH's Counsel Would Be Extremely Prejudicial**

This matter was already complicated when Reed Smith took over in in November 2020.  Ms.

Houston and Mr. Rivas spent months familiarizing themselves with the complex facts and issues,

which at the time spanned **three different** state courts and has now grown to include the Bankruptcy

Case.  Houston Decl. ¶¶ 5-6.  The complexity of the matter has increased exponentially since that

time, as reflected in Section III.E.1, *supra*.  Not fewer than eleven Reed Smith attorneys have

worked on these matters for USRECH, and collectively they have incurred more than 2,200 hours of

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 14 –

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   billable time.  *Id.* at ⁋ 6.  It took months for Reed Smith to bring itself fully up to speed when it

2   substituted in for Raines Feldman, and it would take even longer now for a new attorney to attain

3   this familiarity.  Houston Decl. ⁋ 6.

4        **3.      The Laches Factors Favor Denying The Motion**

5        Because disqualification would be unduly prejudicial and came after unreasonable delay, the

6   burden falls to Rubin to demonstrate that disqualification would still be proper.  Rubin cannot meet

7   this burden.

8        As to the first factor—how long Rubin has known of the potential conflict—Rubin has

9   known since at least November 30, 2020, when his counsel first demanded Reed Smith withdraw.

10  Decl. of Patrick C. McGarrigle (Attached to Moving Papers) ⁋ 3.   Reed Smith rejected this

11  contention the next day.  *Id.*  Hence, Rubin has been on notice of both the alleged conflict and Reed

12  Smith's position since November 2020, eight months before the instant motion was filed.

13       The second factor—whether Rubin has been represented by counsel since he knew of the

14  potential conflict—also favors denial of this motion because Rubin has been represented by

15  numerous counsel continuously since November 2020.  *See* Houston Decl. ⁋ 7.

16       The third factor—whether anyone or anything prevented Rubin from filing his

17  disqualification motion—disfavors disqualification.  Rubin has not, and cannot, demonstrate any

18  legitimate reason why he could not file the instant disqualification motion (nor the disqualification

19  motion in the Riverside Action) before this time.

20       The final factor—whether an earlier disqualification motion would have been futile—in no

21  way supports disqualification.  No material facts have changed since Reed Smith began representing

22  USRECH in November 2020 that would have brought the current representation into conflict with

23  Reed Smith's prior representation of the Rubins or Glenroy.

24       As such, Rubin should be barred by the doctrine of laches from bringing the current

25  disqualification motion.

26

27

28

**F.      The Motion Should Be Denied Even If There Is A Conflict Because The Disqualification
Factors Favor Denial**

Even where a conflict of interest is found to exist, California courts apply a balancing test
when deciding whether a motion to disqualify should be denied. *See People ex rel. Dep't of Corps.
v. SpeeDee Oil Change Sys., Inc.* 20 Cal. 4th 1135, 1145 (1999). These factors include: "a client's
right to chosen counsel, an attorney's interest in representing a client, the financial burden
on a client to replace disqualified counsel, and the possibility that tactical abuse underlies the
disqualification motion." *Id.* at 1145. "A client deprived of the attorney of his choice suffers a
particularly heavy penalty where . . . his attorney is highly skilled in the relevant area of the
law." *Gregori*, 207 Cal.App.3d at 300; *see also Oaks Mgmt. Corp. v. Super. Ct.* 145 Cal.App.4th
453, 463 (2006) ("[I]t must be kept in mind that disqualification usually imposes a substantial
hardship on the disqualified attorney's innocent client, who must bear the monetary and other costs
of finding a replacement.").

Here, USRECH has already had to replace its counsel once in this litigation. Houston Decl.
¶ 5. When Reed Smith took on the representation of USRECH, Christopher Rivas and Marsha
Houston, the partners on the matter, spent months getting up to speed on the matter. *Id.* ¶ 6.
Importantly, since Reed Smith began representing USRECH in November 2020, the litigation has
become immensely more complicated, see Section III.E.1 *supra*. Furthermore, Mr. Rivas and Ms.
Houston are "highly skilled in the relevant area of law," collectively having nearly 50 years of
experience in bankruptcy litigation and creditors' rights enforcement between them. *Id.* ¶ 3.
Therefore, USRECH's choice of counsel is of great importance.

Reed Smith has a high interest in continuing to represent USRECH in the current action. No
fewer than eleven attorneys from Reed Smith have worked on matters for USRECH, spending in
excess of 2,200 hours on the matters to date. *Id.* ¶ 6.

In weighing the financial burden on replacing counsel, courts consider the history and
complexity of the case. *See White v. Experian Info. Sols.*, 993 F. Supp. 2d 1154, 1167 (C.D. Cal.
2014). Where a case has a long history or is of complex nature, this factor weighs against
disqualification. *See id.* This case is incredibly complicated. *See* Section III.E.1 *supra*.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 16 –

The final factor, any possible tactical abuse, also clearly favors denial of the disqualification motion. "[I]n the context of a successive representation, a client who wishes to disqualify opposing counsel may not wait for just the right moment." *Lennar Mare Island, LLC v. Steadfast Ins. Co.*, 105 F. Supp. 3d 1100, 1119 (E.D. Cal. 2015); *see also River W.*, 188 Cal.App.3d at 1307 ("[T]he judge may properly consider the possibility that the party brought the disqualification motion as a tactical device to delay litigation."). Here, Rubin clearly "wait[ed] for just the right moment" to bring the instant disqualification motion because he had just been found in contempt and now faces a hearing date on a settlement between the Trustee and Glenroy that he would love to disrupt.

Thus, the Court should deny this motion even if a conflict is somehow identified.

## IV.    CONCLUSION

If Rubin really thought Reed Smith had a conflict, he and his lawyers should have brought a motion in December 2020, and not waited until July 2021, after participating in days of mediation and months of intensive litigation and rulings unfavorable to Rubin.  In any case, Reed Smith does not represent Glenroy or the Rubins now, there is no substantive overlap with either prior case, and all the Reed Smith lawyers with knowledge of the prior cases have left the firm.  Further, Rubin cannot act on behalf of Glenroy, which is currently controlled by the Trustee.

DATED:  August 18, 2021                                        REED SMITH LLP


By: _____
Peter J. Kennedy
Kathryn M. Bayes
Attorneys for U.S. Real Estate
Credit Holdings III-A, L.P.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 17 –

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
355 South Grand Avenue, Suite 2900, Los Angeles, CA  90071

A true and correct copy of the foregoing document entitled (*specify*): **U.S. REAL ESTATE CREDIT HOLDINGS III-A, L.P'S OPPOSITION TO MOTION TO DISQUALIFY REED SMITH LLP**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) August 18, 2021    , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Steven M Berman    sberman@slk-law.com, awit@shumaker.com;bgasaway@shumaker.com
- Daren Brinkman    office@brinkmanlaw.com, 7764052420@filings.docketbird.com
- Caroline Djang    caroline.djang@bbklaw.com, laurie.verstegen@bbklaw.com;wilma.escalante@bbklaw.com
- Jenny L Doling    JD@jdl.law, dolingjr92080@notify.bestcase.com
- Jonathan R Doolittle    jonathan.doolittle@pillsburylaw.com, courtalertecf@pillsburylaw.com
- Eryk R Escobar    eryk.r.escobar@usdoj.gov
- Chad V Haes    chaes@marshackhays.com, chaes@ecf.courtdrive.com;cmendoza@ecf.courtdrive.com;cmendoza@marshackhays.com;kfrederick@ecf.courtdrive.com
- Brian S Harnik    bharnik@rhlawfirm.com, bharnik@rhlawfirm.com
- Douglas Harris    Douglas.harris@alston.com
- William C Hoggard    wch@wchlawgroup.com, admin@wchlawgroup.com
- Mark S Horoupian    mhoroupian@sulmeyerlaw.com, mhoroupian@ecf.inforuptcy.com;ccaldwell@sulmeyerlaw.com
- Marsha A Houston    mhouston@reedsmith.com
- Michael S Kogan    mkogan@koganlawfirm.com
- Timothy R Laquer    trl@ddclaw.com, trl@ddclaw.com
- Leib M Lerner    leib.lerner@alston.com, autodockettest-lax@alston.com
- Crystle Jane Lindsey    crystle@wsrlaw.net, crystle@cjllaw.com;gabby@wsrlaw.net;dairi@wsrlaw.net
- Tinho Mang    tmang@marshackhays.com, tmang@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@ecf.courtdrive.com
- Richard A Marshack (TR)    pkraus@marshackhays.com, rmarshack@iq7technology.com;ecf.alert+Marshack@titlexi.com
- Stacey A Miller    smiller@tharpe-howell.com
- Sean A OKeefe    sokeefe@okeefelc.com, seanaokeefe@msn.com
- Matthew D Pham    mpham@hahnlawyers.com, marias@hahnlawyers.com;mpham@ecf.courtdrive.com
- Maria Plumtree    agrow@plumtreelaw.com, mplumtree@plumtreelaw.com
- Thomas J Polis    tom@polis-law.com, paralegal@polis-law.com;r59042@notify.bestcase.com
- Dean G Rallis    drallis@hahnlawyers.com,

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

marias@hahnlawyers.com;mpham@hahnlawyers.com;drallis@ecf.courtdrive.com
- Debra Riley    driley@allenmatkins.com
- Christopher O Rivas    crivas@reedsmith.com, chris-rivas-8658@ecf.pacerpro.com
- James R Selth    jim@wsrlaw.net, jselth@yahoo.com;dairi@wsrlaw.net;vinnet@ecf.inforuptcy.com
- Leonard M Shulman    lshulman@shulmanbastian.com
- Evan L Smith    els@elsmithlaw.com
- Alan G Tippie    atippie@sulmeyerlaw.com,
  atippie@ecf.courtdrive.com;pdillamar@sulmeyerlaw.com,kfiles@sulmeyerlaw.com;kfiles@sulmeyerla
  w.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Daniel J Weintraub    dan@wsrlaw.net,
  vinnet@ecf.inforuptcy.com;gabby@wsrlaw.net;dairi@wsrlaw.net

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) <u>August 18, 2021</u>, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**VIA UPS**
**Hon. Sheri Bluebond**
**USBC-Central District of California**
**255 E. Temple Street**
**Suite 1534 / Courtroom 1539**
**Los Angeles, CA 90012**

**VIA UPS**
**Eryk R. Escobar**
**Trial Attorney**
**Office of the U.S. Trustee**
**U.S. Department of Justice**
**915 Wilshire Blvd., Suite 1850**
**Los Angeles, CA 90017**

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| August 18, 2021 | Gilda S. Anderson | /s/ Gilda S. Anderson |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                    **F 9013-3.1.PROOF.SERVICE**