SEAN A. O'KEEFE – State Bar No. 122417
**OKEEFE & ASSOCIATES**
**LAW CORPORATION, P.C.**
26 Executive Park, Suite 250
Irvine, CA 92614
Telephone: (949) 334-4135
Fax: (949) 209-2625
Email: sokeefe@okeefelawcorporation.com
Counsel to Elliot B. Lander, Respondent

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
### LOS ANGELES DIVISION

| | |
|---|---|
| GLENROY COACHELLA, LLC | Case No. 2:21-bk-11188-BB |
| Debtor. | Chapter 7 |
| | **DEFENDANT ELLIOT B. LANDER'S OPPOSITION TO CHAPTER 7 TRUSTEE'S MOTION FOR ENTRY OF ORDER (1) DETERMINING THAT TRUSTEE DOES NOT HAVE TO RESPOND TO NON-BANKRUPTCY COURT SUBPOENA FOR FAILURE TO COMPLY WITH BARTON DOCTRINE; OR, IN THE ALTERNATIVE, (2) AUTHORIZING TRUSTEE TO INCUR ADMINISTRATIVE EXPENSES AND TO USE ESTATE PROPERTY TO RESPOND TO NON-BANKRUPTCY COURT SUBPOENA; DECLARATION OF SEAN A. O'KEEFE IN SUPPORT THEREOF** |
| | **DATE**:  September 6, 2023<br>**TIME**:  10:00 a.m.<br>**PLACE**:  Courtroom 1539 of the Edward R. Roybal Federal Building and Courthouse at 255 E. Temple Street, Los Angeles, California |

1       Dr. Elliot B. Lander ("Dr. Lander") hereby submits the within *Opposition* to the *Chapter 7*

2   *Trustee's Motion For Entry Of Order (1) Determining That Trustee Does Not Have To Respond*

3   *To Non-Bankruptcy Court Subpoena For Failure To Comply With Barton Doctrine; Or, In The*

4   *Alternative, (2) Authorizing Trustee To Incur Administrative Expenses And To Use Estate Property*

5   *To Respond To Non-Bankruptcy Court Subpoena* (the "Motion") filed by Richard Marshack, the

6   Chapter 7 trustee (the "Trustee"). This Opposition is supported by the attached Declaration of Sean

7   A. O'Keefe (the "OKeefe Decl.").

8              **I**      **SUMMARY OF OPPOSITION**

9       On July 21, 2023, counsel for Dr. Lander issued a subpoena duces tecum to the Trustee

10  seeking documents relevant to the claims and defenses asserted in <u>U.S. Real Estate Credit Holdings</u>

11  <u>III-A, LP. V. Glenroy Coachella, LLC, et. al.</u>, a case pending before the California Superior Court

12  for the County of Riverside as   Case No. RIC1905743 (the "State Court Case"). (Ex. 1, OKeefe

13  Decl.). This discovery request seeks a very narrow category of documents: The *communications* the

14  Trustee exchanged with U.S. Real Estate Credit Holdings III-A, LP/Calmwater Capital, Gary

15  Stiffelman, and Edwin Leslie (the receiver appointed in the State Court Case) during in the 2021

16  through 2023 time frame. <u>Id</u>.

17      The requested documents could be assembled *within an hour* by a paralegal, via an outlook

18  search, since no privilege exists. *If this single hour of time is too great a burden for the bankruptcy*

19  *estate, Dr. Lander's counsel is more than willing supply a paralegal at his expense to conduct this*

20  *search.* Instead of simply complying with Dr. Lander's <u>de minimis</u> discovery request, the Trustee

21  filed a five hundred page motion that seeks to preclude access. This motion should be denied for the

22  following reasons:

23          A.    The Trustee's attempt to exempt the estate from complying with third party

24  discovery requests is directly contrary to the mandate in 28 U.S.C. § 959(b):

25      … a trustee, receiver or manager appointed in any cause pending in any court of the
    United States, including a debtor in possession, shall manage and operate the property

26  in his possession as such trustee, receiver or manager according to the requirements
    of the valid laws of the State in which such property is situated, in the same manner

27  that the owner or possessor thereof would be bound to do if in possession thereof.

28

1    Id. This import of this statute is clear: A trustee or receiver must comply with the laws of the State

2    "in the same manner that the owner". Since Glenroy would have been required to comply with the

3    subpoena, the Trustee is required to comply.

4            B.    The relief prayed for in the Motion is directly contrary to controlling

5    precedent in this district.  See In re Media Group, Inc., 2006 WL 6810963 (9th Cir. B.A.P. 2006)

6    (Declining to expand the Barton Doctrine to bar compliance with a subpoena).

7            C.    The relief prayed for misconstrues the Barton Doctrine. As the Court

8    explained in In re Christensen, 598 B.R. 658, 664–65 (Bankr. D. Utah 2019):"

> Stated another way, *Barton* "does not shield trustees from lawsuits. Rather, the
> doctrine requires the bankruptcy court to determine *where* the suit may be brought,
> not *whether* the trustee may be sued."[14] In sum, *Barton* is strictly a "jurisdictional
> gatekeeping doctrine,"[15] and it strips all courts—except the bankruptcy court that
> appointed the trustee—of subject-matter jurisdiction to hear a lawsuit against the
> trustee unless the appointing court gives its permission to sue the trustee elsewhere.[16]
> Only if the Debtors' proposed complaints pass through *Barton*'s jurisdictional gate
> will the Debtors be able to file suit against the Trustee outside of this Court.

14   Id. Dr. Lander is not asserting *any* claims against the Trustee through the subpoena. He is not

15   seeking to file a "lawsuit" in this Court or in any other. Accordingly, he is under no duty to seek

16   permission to do what he does not intend to do.

17           D.    The relief prayed for would be contrary to the plethora of authorities that hold

18   the automatic stay does not bar the issuance of third party to discovery to debtors-in-possession and

19   trustees. See In re Miller, 262 B.R. 499, 505 (B.A.P. 9th Cir. 2001);  In re Kenoyer, 489 B.R. 103,

20   121–22 (Bankr. N.D. Cal. 2013); Couture Textile, Inc. v. Rue 21, Inc., No. CV 16-05544-BRO

21   (AGR), 2017 U.S. Dist. LEXIS 222962, at *14 (C.D. Cal. July 21, 2017) (quoting In re Miller, 262

22   B.R. at 507); Blue Cross of Cal. v. Sonoma W. Med. Ctr., Inc., No. CV 2:18-4912-SJO (GJSx), 2019

23   U.S. Dist. LEXIS 44004, at *26 (C.D. Cal. Feb. 7, 2019) ("The operation of the automatic

24   bankruptcy stay merely prevents the case from continuing against [debtors] as Defendants, it does

25   nothing to shield them from providing information necessary to the continued litigation against the

26   non-debtor Defendants."); Alcantara v. United Furniture Indus., Inc., No. 522CV02110MCSAFM,

27   2023 WL 3407154, at *2 (C.D. Cal. Apr. 21, 2023). If the broad and all-encompassing protection

28

1    afforded by the automatic stay does not bar discovery requests, the narrow Judge-made protection

2    provided by the Barton Doctrine surely does not as well.

3         E.    The Trustee is a fiduciary for creditors. See In re Cochise Coll. Park, Inc.,

4    703 F.2d 1339, 1357 (9th Cir. 1983) ("A bankruptcy or reorganization trustee is a fiduciary of each

5    creditor of the estate….). Full disclosure of the documents sought to ALL creditors is his duty.

6    USRECH aka Calmwater purchased the estate's primary asset. Any effort by the Trustee to inhibit

7    access to communications between the Trustee and this creditor is untenable. Every creditor should

8    have the right to review the same for any reason or no reason. In the case of Stiffelman, he made a

9    secret $3.1 million payment to USRECH/Calmwater, pursuant to an agreement wherein both parties

10   agreed this payment would not be disclosed. Given this subterfuge all communications between

11   Stiffelman and his agents, and the Trustee must be disclosed. In the case of the communications

12   between Edwin Leslie, the receiver appointed by USRECH, the disclosure of his communications is

13   also mandatory. He operated the estates primary asset and USRECH incorporated his expenditures

14   into its claim against the estate. What he did, why and for how much is every creditor's business.

15        F.    This bankruptcy case is a legal proceeding and every document generated by

16   the Trustee as the estate's representative, whether filed with the Court or not, is in some measure a

17   court record, or at least a public record. The federal courts have long recognized the merits of

18   allowing public access to such records if only to vindicate the integrity of the system generally. See

19   Nixon v. Warner Communications, Inc., 435 U.S. 589, 597, 98 S.Ct. 1306 (1978) (it "is clear that

20   the courts of this country recognize a general right to inspect and copy public records and

21   documents"); IDT Corp. v. eBay, Inc., 709 F.3d 1220, 1222 (8th Cir.2013) (noting most federal

22   circuits have embraced a common law right of access to court records). Preventing not just Dr.

23   Lander, but all other creditors from seeing this narrow slice of estate documents would not only be

24   contrary to this policy, it would cast a pall over integrity of the administration of this estate. The

25   better course is to put every one of these communications on a site that is readily accessible to all

26   creditors in every case.

27        In summary, the relief prayed for in the Motion is contrary to the law and sound policy. The

28   Motion also raises troubling questions. Why is the Trustee, a fiduciary, spending thousands of estate

1  dollars to avoid disclosing documents that could have produced for less than $500? Why not just

2  produce the documents? This over-the-top reaction suggests the communications include exchanges

3  that are problematic for one reason or another. If that is the case, all the more reason for their

4  disclosure to creditors. Whatever the content of these communications, they are critically important

5  to the issues in contest in the State Court Case and therefore they should be produced.

6  **II    SUMMARY OF RELEVANT FACTS**

7      In April of 2018, USRECH, as proposed lender, transmitted that certain *Loan Agreement*

8  *dated April 26, 2018* (the "Loan") to Glenroy Coachella, LLC ("Glenroy"), Force Rubin, LLC

9  ("Force Rubin"), Force Rubin 2, LLC ("Force Rubin 2") and Coachella Resort, LLC ("Resort"), as

10  proposed borrowers (collectively the "Borrowers"), for signature. The Loan was obtained to finance

11  the construction of a hotel in Coachella, California (the "Project").

12      A trust affiliated with Dr. Lander owned Resort, a passive investor with only a 4.5% stake in

13  the Project. Concurrently with the transmission of the Loan Agreement, USRECH demanded Dr.

14  Lander sign a personal guarantee. The Project later failed. In the State Court Case, Dr. Lander

15  contends his guarantee was procured through fraud and a series of misrepresentations regarding the

16  Loan. In addition, Dr. Lander and the Borrowers in the State Court Case have filed a cross complaint

17  against USRECH wherein they contend the Loan was procured by fraud, USRECH never intended

18  to fund the amount provided for in the construction budget attached to the Loan, and it essentially

19  engineered the failure of the Project from day-one of the USRECH loan transaction.

20      A true and correct copy of the answer and the cross complaint (the "Cross-complaint") filed

21  in the State Court Case are attached to the OKeefe Declaration as Exhibits "3" and "4" respectively.

22      The communications requested in the subpoena are relevant to the defenses alleged in the

23  answer and the claims alleged in the Cross-complaint for the following reasons:

24      A.    Dr. Lander and the other Borrowers are asserting a usury defense against U.S.

25      Real Estate Credit Holdings III-A, LP ("USRECH"). They contend USRECH serially

26      violated the California Financing Law  (Cal. Fin. Code. 22000 et. seq.) (the "CFL")

27      through inter alia, conducting business solely through and by Calmwater Capital, LLC,

28      an unlicensed entity. Every communication sent to the Trustee by Calmwater directly

1    supports this contention, since every action by Calmwater on behalf of USRECH

2    violates the CFL. These communications will be attached to a complaint the Borrowers

3    are filing with the California Department of Financial Protection and Innovation

4    ("DFPI"). This complaint will ask the DFPI to revoke USRECH's purported license as

5    a CFL lender ab initio. If this relief if granted, USRECH's claim against this estate will

6    not only be eliminated, USRECH will owe the estate millions.

7    B.    Dr. Lander recently discovered a secret agreement entered into by and between

8    USRECH and Gary Stiffelman pursuant to which Stiffelman paid $3.0 million to

9    USRECH in return for a complete release. A true and correct copy of this secret

10    agreement is attached to the O'Keefe Declaration as Exhibit "5". In this writing,

11    USRECH and Stiffelman jointly agree to hide this payment from the Superior Court,

12    and from the other defendants in the State Court Case. Consistent with this scheme,

13    USRECH failed to disclose to the Superior Court this $3.0 million reduction in a

14    January 2022 attachment hearing. This fraud, which Stiffelman participated in, gives

15    rise to claims against Stiffelman and USRECH. Dr. Lander believes these claims will

16    be buttressed by the production of all communications with Stiffelman.

17    C.    Stiffelman and USRECH have been secretly working together in the

18    bankruptcy case and in the State Court Case.  The documents requested may disclose

19    and explicate this relationship, and provide support for tortious interference claims

20    against both Stiffelman and USRECH.

21    D.    One of the critical issues in the State Court Case is the balance owed to

22    USRECH on its loan. We believe USRECH has overstated this sum by millions. This

23    balance would have been discussed in the Trustee's communications with

24    Calmwater/USRECH. It may still be the subject of discussions. This is a critical issue.

25    USRECH only advanced $19.0 million under the Loan. Yet it credit bid $22.0 million

26    for the property sold in this case, it was holding a multi-million dollar interest reserve,

27    and it received the undisclosed $3.1 million payment from Stiffelman. USRECH's debt

28    could well be zero. The documents requested will be critically relevant to these issues.

E.      USRECH is seeking a deficiency in the State Court Case against the borrowers, and the guarantors. It is Dr. Lander's position that the sale in the bankruptcy court was not made in compliance with California's anti-deficiency statutes. The order of sale may protect the estate from the impact of a California anti-deficiency law violation. It does not protect USRECH. The documents sought will be critically relevant to these issues.

F.      Dr. Lander believes USRECH engaged in a violation of 11 U.S.C. § 363(n) in connection with the sale of the Glenroy property by dissuading other potential buyers from bidding for this asset, by inter alia, falsely inflating its debt total. The discovery requested, coupled with the information in Dr. Lander's possession, may buttress this belief. If in fact USRECH did violated Section 363(n), or otherwise interfered with the sale effort, this would give Dr. Lander the right to seek an offset against USRECH's claim in the Superior Court, or to seek to subordinate that same in that venue.

G.      The Trustee and USRECH have no interest in the "Lighthouse" property. Dr. Lander is concerned that USRECH may have persuaded the Trustee to file a lawsuit seeking title to this property in the bankruptcy court. If this in fact occurred, Dr. Lander again has grounds to assert a claim against USRECH for tortious interference, and for slander of title.

The Trustee is a fiduciary. He cannot hide from the creditors information that bears upon the disposition of the estate's most valuable asset. To the contrary, he has a duty to disclose this information to all creditors. His decision to resist this disclosure is untenable,

### III    <u>LEGAL AUTHORITIES AND ANALYSIS</u>

In the Motion, the Trustee contends that the issuance of a subpoena seeking documents from the estate violates the "Barton doctrine". This argument misconstrues and misapplies the doctrine. The Barton doctrine was established in <u>Barton v. Barbour</u>, 104 U.S. 126 (1881). In <u>Barton</u>, the Supreme Court held that leave from the court appointing a receiver must be obtained before *a lawsuit* can be brought against the receiver in another forum. 104 U.S. at 127. In <u>In re</u>

1    Crown Vantage, 322 F.3d 1178, 1196 (9th Cir.2003), the Ninth Circuit ruled this same procedural

2    protection also applies to trustees in bankruptcy.

3           The nature and limitations of the Barton doctrine were cogently explicated in In re

4    Christensen, 598 B.R. 658, 664–65 (Bankr. D. Utah 2019):

5           But it is critical to untangle *Barton* from the various immunity doctrines with which
            it can become conflated. The confusion is understandable; since the *Barton* doctrine
6           "operates as an obstacle for parties wishing to sue a bankruptcy trustee, it may be
            mistaken for a kind of trustee immunity."[11] In addition, some courts have
7           considered—either as a part of, or in addition to, the *Barton* analysis—whether a
            trustee is entitled to some form of immunity against suits for actions taken during
8           his administration of the case.[12] But neither *Barton*'s role-as-obstacle nor the
            examination of immunity in the *Barton* context should lead one to conflate the
9           doctrine with the substantive immunities conferred on trustees. Instead, the
            protections it offers are entirely procedural.[13] Stated another way, *Barton* "does not
10          shield trustees from lawsuits. Rather, the doctrine requires the bankruptcy court to
            determine *where* the suit may be brought, not *whether* the trustee may be sued."[14]
11          In sum, *Barton* is strictly a "jurisdictional gatekeeping doctrine,"[15] and it strips all
            courts—except the bankruptcy court that appointed the trustee—of subject-matter
12          jurisdiction to hear a lawsuit against the trustee unless the appointing court gives
            its permission to sue the trustee elsewhere.[16] Only if the Debtors' proposed
13          complaints pass through *Barton*'s jurisdictional gate will the Debtors be able to file
            suit          against          the          Trustee          outside          of          this          Court.
14

15
     Id.
16
            The question presented by the Motion is whether the procedural protection in Barton
17
     should be deemed to encompass not just lawsuits, but third party discovery propounded to the
18
     Trustee. The Bankruptcy Appellate Panel for this Circuit clearly rejected this dramatic expansion
19
     of what is a narrow judge-made doctrine in In re Media Grp., Inc., No. BAP NC-05-1432-SA1MA,
20
     2006 WL 6810963, at *5 (B.A.P. 9th Cir. Nov. 14, 2006). In Media Group, the Chapter trustee
21
     made the exact same argument that the Trustee is making in the Motion: the Barton doctrine bars
22
     the issuance of a subpoena. The Bankruptcy Appellate Panel in Media Group rejected this
23
     contention. To quote the ruling:
24

25          Even more importantly, neither *Barton* nor *Crown Vantage* supports the
            proposition that leave from the appointing court must be obtained before pursuing
26          *discovery* in a case in which the court appointee is not a named party. We
27

28

                                                        7

1

therefore conclude that the bankruptcy court erred in imposing sanctions against
Shao on the ground that she violated the Barton Doctrine.

2

3

In re Media Grp., Inc., No. BAP NC-05-1432-SA1MA, 2006 WL 6810963, at *7 (B.A.P. 9th Cir.

Nov. 14, 2006).

4

5

Although there is some disagreement regarding the issue, the BAP is of the opinion that its

decisions are binding in all bankruptcy courts in the Ninth Circuit. In re Windmill Farms, Inc., 70

6

Bankr. 618, 621 (9th Cir. 1987), rev'd on other grounds, 841 F.2d 1467 (9th Cir. 1988); Phila. Life

7

Ins. Co. v. Proudfoot (In re Proudfoot), 144 B.R. 876 (B.A.P. 9th Cir. 1992) ("It is the position of

8

this panel that BAP decisions originating in any district in the Ninth Circuit are binding precedent

9

on all bankruptcy courts within the Ninth Circuit in the absence of contrary authority from the

10

district court for the district in which the bankruptcy court sits.").

11

In the Motion, the Trustee urges the Court to reject the ruling in Media Group and to

12

instead follow the ruling in In re Eagan Avenatti, LLP, 637 B.R. 502 (Bankr. C.D. Cal. 2022). In

13

Avenatti, the court ruled that a subpoena issued by the U.S. District Court in New York was

14

ineffective because permission to issue had not been obtained from the bankruptcy court

15

beforehand. Avenatti is clearly factually distinguishable. In Avenatti, the Chapter 7 trustee was

16

ordered to produce a substantial number of documents in New York thereby potentially imposing

17

an undue cost burden on the bankruptcy estate. In this case, the documents requested are

18

communications exchanged between six people during a two year period. This production would

19

take an hour at most to assemble, and the documents can be transmitted by email.

20

Avenatti is also not persuasive authority since it is contrary to Media Group. It is also

21

misconstrues the reach of the Barton doctrine. A subpoena duces tecum is a discovery tool that

22

seeks documents. It is not a lawsuit. Moreover, a subpoena duces tecum is all but indistinguishable

23

from a request for production of documents, which is allowed under the Barton doctrine. The

24

nominal distinction between a subpoena and a document request is the power of contempt can be

25

levied in the case of the former absent compliance. However, an order compelling compliance with

26

a document request does exactly the same thing, and in both cases sanctions can be awarded.

27

28

1    The threat of contempt is also irrelevant in this context. *If* the Trustee had failed to comply

2    with the subpoena, and *if* Dr. Lander had sought to compel compliance by seeking a contempt

3    order in another court, *then* a possible Barton doctrine issue could have arisen. However, that has

4    not occurred. The parties consensually agreed to present the discrete legal issue raised in the

5    Motion to this Court for resolution. Once it is resolved, the Trustee can either produce the

6    documents or prolong this entirely unnecessary dispute, by seeking relief in this Court.

7    The Avenatti ruling is also contrary to the legislative intent embodied in 28 U.S.C. §

8    959(b). This statute requires receivers/trustees to comply with the local law to the same extent as

9    any other party. It stands for "the uncontroversial proposition that a trustee must carry out his

10    duties in conformity with state law." Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n, 997 F.2d

11    581, 593 (9th Cir. 1993); see also Robinson v. Michigan Consol. Gas Co., 918 F.2d 579 (6th

12    Cir.1990) (state law landlord duties not preempted by Bankruptcy Code); Saravia v. 1736 18th

13    Street, N.W., Ltd. Partnership, 844 F.2d 823, 826–27 (D.C.Cir.1988) (local housing code applies

14    to debtor in possession). The mandate in Section 959(b) is simple and fair: the Trustee, like the rest

15    of us, must comply with the law, including discovery requests, whether in the form of a document

16    request or its third party cousin, a subpoena duces tecum. The Barton doctrine does not and cannot

17    override the mandate in this statute.

18    The Avenatti ruling is also inconsistent with a related line of cases that hold the issuance of

19    third party to discovery to debtors-in-possession and trustees is not a violation of the automatic

20    stay. See In re Miller, 262 B.R. 499, 505 (B.A.P. 9th Cir. 2001); In re Kenoyer, 489 B.R. 103,

21    121–22 (Bankr. N.D. Cal. 2013); Couture Textile, Inc. v. Rue 21, Inc., No. CV 16-05544-BRO

22    (AGR), 2017 U.S. Dist. LEXIS 222962, at *14 (C.D. Cal. July 21, 2017) (quoting In re Miller, 262

23    B.R. at 507); Blue Cross of Cal. v. Sonoma W. Med. Ctr., Inc., No. CV 2:18-4912-SJO (GJSx),

24    2019 U.S. Dist. LEXIS 44004, at *26 (C.D. Cal. Feb. 7, 2019) ("The operation of the automatic

25    bankruptcy stay merely prevents the case from continuing against [debtors] as Defendants, it does

26    nothing to shield them from providing information necessary to the continued litigation against the

27    non-debtor Defendants."); Alcantara v. United Furniture Indus., Inc., No. 522CV02110MCSAFM,

28    2023 WL 3407154, at *2 (C.D. Cal. Apr. 21, 2023). It would be counter intuitive to render

9

1    discovery requests exempt from the automatic stay, while at the same time holding they violate the

2    more narrow Judge-made protection provided by the Barton Doctrine.

3         Finally, this case is a legal proceeding. Every document generated by the estate's

4    representative, the Trustee, in some measure, a court record. Such records should be open to the

5    public. See generally Nixon v. Warner Communications, Inc., 435 U.S. 589, 597, [98 S.Ct. 1306

6    (1978) (it "is clear that the courts of this country recognize a general right to inspect and copy public

7    records and documents"); IDT Corp. v. eBay, Inc., 709 F.3d 1220, 1222 (8th Cir.2013) (noting most

8    federal circuits have embraced a common law right of access to court records); Craemer v. Superior

9    Court, 265 Cal.App.2d 216, 220, fn. 3, ("right of a citizen to inspect public writings has its origin in

10   the common law".) (1968); Overstock.com, Inc. v. Goldman Sachs Grp., Inc., 231 Cal. App. 4th

11   471, 483, 180 Cal. Rptr. 3d 234, 245 (2014) ("As articulated by California's courts, this presumption

12   means court records are "open to the public unless they are specifically exempted from disclosure

13   by statute or are protected by the court itself due to the necessity of confidentiality.")

14                          IV    **CONCLUSION**

15        The Trustee is making a mountain out of a molehill. Dr. Lander is only seeking the

16   communications exchanged by and among the Trustee and three other parties (and their agents) –

17   USRECH/Calmwater, Stiffelman, and Edwin Leslie over a period of approximately two years.

18   This request is not in any respect burdensome and every creditor in this case would have an

19   absolute right to obtain these communications through a Rule 2004 examination. The Trustee's

20   attempt to immunize these documents from disclosure is untenable. Respectfully, the Motion

21   should be denied.

22   DATED: August 23, 2023              OKEEFE & ASSOCIATES
                                         LAW CORPORATION, P.C.
23

24                                            /s/ Sean A. O'Keefe

25                                       By: _____
                                             Sean A. O'Keefe, counsel
26                                           to Dr. Elliot B. Lander, defendant

27

28

                                         10

**DECLARATION OF SEAN A. OKEEFE**

I, Sean A. O'Keefe, hereby declare and state as follows:

1.      I am over the age of eighteen years.

2.      The facts stated herein are within my personal knowledge.

3.      Attached hereto as Exhibit "1" is a true and correct copy of the subpoena issued to Richard Marshack, as Chapter 7 trustee in this case. This subpoena seeks documents relevant to the claims and defenses alleged in <u>U.S. Real Estate Credit Holdings III-A, LP. V. Glenroy Coachella, LLC, et. al.</u>, a case pending before the California Superior Court for the County of Riverside as Case No. RIC1905743 (the "State Court Case"), without exhibits (the "Complaint").

4.      Attached hereto as Exhibit "2" is a true and correct copy of the complaint filed by U.S. Real Estate Credit Holdings III-A, LP ("USRECH") in the State Court Case, without exhibits (the "Complaint").

5.      Attached hereto as Exhibit "3' is a true and correct copy of the Second Amended Answer filed by Dr. Elliot Lander to the Complaint.

6.      Attached hereto as Exhibit "4" is a true and correct copy of the most current cross complaint filed against USRECH in the State Court Case.

7.      Attached hereto as Exhibit "5" is the Settlement Agreement entered into by and between Stiffelman and USRECH.

I declare that the foregoing is true and correct under the penalty of perjury.

Executed this 23rd day of August 2023 in Orange County, California.


*Sean A. O'Keefe*
Sean A. O'Keefe

1

**EXHIBIT 1**

1 | RAINES FELDMAN LLP
John S. Cha (State Bar No. 129115)
2 | jcha@raineslaw.com
Nathan M. Carle (State Bar No. 304846)
3 | ncarle@raineslaw.com
18401 Von Karman Avenue, Suite 360
4 | Irvine, California 926120067
Telephone: (310) 440-4100
5 | Facsimile: (424) 239-1613

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

NOV 19 2019

M. Criel

6 | Attorneys for Plaintiff
U.S. REAL ESTATE CREDIT HOLDINGS
7 | III-A, LP, an Irish limited partnership

8 |          SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 |        COUNTY OF RIVERSIDE – RIVERSIDE HISTORIC COURTHOUSE

10 |

11 | U.S. REAL ESTATE CREDIT HOLDINGS       Case No.: RIC 1905743
III-A, L.P., an Irish limited partnership,
12 |
Plaintiff,
13 |
v.                                    VERIFIED COMPLAINT FOR:
14 |
GLENROY COACHELLA, LLC, a Delaware     1. JUDICIAL FORECLOSURE OF
15 | limited liability company; FORCE RUBIN,  DEED OF TRUST;
LLC, a Delaware limited liability company; 2. SPECIFIC PERFORMANCE OF
16 | FORCE RUBIN 2, LLC, a Delaware limited  DEED OF TRUST;
liability company; COACHELLA RESORT,    3. INJUNCTIVE RELIEF;
17 | LLC, a California limited liability company; 4. BREACH OF CONTRACT;
A. STUART RUBIN, in his individual       5. BREACH OF INDEMNITY AND
18 | capacity, and in his capacity as trustee of the  GUARANTY AGREEMENT;
STUART & ANNETTE RUBIN FAMILY          6. BREACH OF COMPLETION
19 | TRUST; ELLIOT LANDER, an individual;   GUARANTY AGREEMENT;
GARY STIFFELMAN, in his individual      7. FRAUD IN INDUCEMENT; AND
20 | capacity, and in his capacity as trustee of the  8. NEGLIGENT
STIFFELMAN TRUST;                      MISREPRESENTATION
21 | FERGUSON ENTERPRISES, LLC, a
California limited liability company; DOUG
22 | WALL CONSTRUCTION, INC., a California
corporation; QUONSET PARTNERS, LLC;
23 | JOSEPH RUBIN, an individual; AL MILLER
& SONS ROOFING CO., INC., a California
24 | Corporation; APPLE J PLUMBING, INC., a
California Corporation; BLAIR AIR, INC.,
25 | dba BLAIR HEATING & AIR, a California
Corporation; BMC WEST, LLC, a Delaware
26 | limited liability company; DESERT PALMS
ELECTRIC, INC., a California corporation;
27 | GF INVESTMENT GROUP, INC., a
California corporation; MASCORRO
28 | CONCRETE CONSTRUCTION, INC., a

VERIFIED COMPLAINT FOR JUDICIAL FORECLOSURE OF DEED OF TRUST       002

1    California corporation; SYSTEMS
WATERPROOFING, INC., a California
2    corporation; TANDEM WEST GLASS, INC.,
a California corporation; TEMALPAKH,
3    INC., a California corporation, dba THE
WORKS FLOOR & WALL; and DOES 1
4    through 100, inclusive,

5                    Defendants.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**VERIFIED COMPLAINT FOR JUDICIAL FORECLOSURE OF DEED OF TRUST**

003

Plaintiff U.S. Real Estate Credit Holdings III-A, LP, an Irish limited partnership ("Plaintiff" or "Lender"), complains and alleges:

## INTRODUCTION[1]

This Action involves a $24.4 million loan agreement for a hotel development project in Coachella, California. The Property owners are the TIC-Defendants who are in default under the Loan Documents. The other defendants include the Guarantors (defendants A. Stuart Rubin, Elliot Lander, and Gary Stiffelman) under the Loan Documents and the Project manager(s) and contractors involved with the Project. To secure the loan agreement, the Borrower knowingly submitted a budget that materially misstated the cost to complete the Project, and subsequently submitted draw requests for funding that omitted material information regarding the completion cost of the project and the use of the funds drawn. Upon Plaintiff's discovery of Borrower's concealment of material information, Plaintiff halted subsequent disbursements. Borrower is now in default, and the Project is now halted mid-construction.

Plaintiff seeks to enforce its rights under the Loan Documents to, among other things, foreclose on the Property and have a receiver appointed to protect, preserve, manage, and to sell and/or complete Property's development.

## JURISDICTION AND VENUE

1.    The real property, which is the subject matter of this action, is located within the city of Coachella, County of Riverside, California. Under California *Code of Civil Procedure* § 392(a)(2) *et seq.*, this Court is the proper court for the trial of this action.

2.    This action is not subject to the provisions of §§ 2981, *et seq.*, (Rees-Levering Act), or §§ 1801, *et seq.* (Unruh Act) of the California *Civil Code*.

3.    At all times mentioned herein, Plaintiff was and now is a limited partnership organized and existing under the laws of Ireland and duly authorized to conduct business in the State of California. Plaintiff's principal place of business is located in Los Angeles, California.

---

[1]    Capitalized terms used but not defined have the meanings subsequently ascribed herein to such terms.

-1-

**VERIFIED COMPLAINT FOR JUDICIAL FORECLOSURE OF DEED OF TRUST**

4.     At all times herein mentioned, Plaintiff was, and is, exempt from the usury provisions of Article XV, Section 1 of the California Constitution.

### THE PARTIES

5.     Plaintiff is informed and believes, and based thereon alleges, that at all times herein mentioned, defendant Glenroy Coachella, LLC ("Glenroy Coachella"), was and is a limited liability company organized and existing under Delaware law, with its principal place of business located within the county of Los Angeles, State of California, and managed by Defendants A. Stuart Rubin and Joseph Rubin.

6.     Plaintiff is informed and believes, and based thereon alleges, that at all times herein mentioned, defendant Force Rubin, LLC ("Force Rubin"), was and is a limited liability company organized and existing under Delaware law, with its principal place of business located within the county of Los Angeles, State of California.

7.     Plaintiff is informed and believes, and based thereon alleges, that at all times herein mentioned, defendant Force Rubin 2, LLC ("Force Rubin 2"), was and is a limited liability company organized and existing under Delaware law, with its principal place of business located within the county of Los Angeles, State of California.

8.     Plaintiff is informed and believes, and based thereon alleges, that at all times herein mentioned, defendant Coachella Resort, LLC ("Coachella Resort"), was and is a limited liability company organized and existing under California law, with its principal place of business located within the county of Riverside, State of California.

9.     Glenroy Coachella, Force Rubin, Force Rubin 2, and Coachella Resort (collectively, the "TIC Defendants" or "Borrower") entered into a Loan Agreement with Plaintiff dated as of April 26, 2018 ("Loan Agreement").  A true and correct copy of the Loan Agreement is attached hereto as **Exhibit "1."**

10.     The TIC Defendants are the owners as Tenants-in-Common of the real property at issue located at the southeast corner of Avenue 48 and Van Buren Street, in Coachella, California, and more specifically described herein and the documents attached hereto (the "Property"), where a hotel project is under construction (the "Project").

-2-

**VERIFIED COMPLAINT FOR JUDICIAL FORECLOSURE OF DEED OF TRUST**

11.   The TIC Defendants are parties to a Tenancy in Common Agreement, dated effective as of April 23, 2018 (the "TIC Agreement").

12.   Plaintiff is informed and believes, and based thereon alleges, that at all times mentioned herein, defendant A. Stuart Rubin ("Stuart Rubin") is a competent individual who resides in Los Angeles County, State of California. Stuart Rubin has a direct or indirect ownership interest in three of the TIC Defendants, is a personal guarantor under the Loan Documents, and is the TIC Manager under the TIC Agreement, with authority to manage the Property and the Project.

13.   At all times mentioned herein, defendant Elliot Lander ("Lander") is a competent individual who resides in Riverside County, State of California. Lander is a personal guarantor under the Loan Documents. Lander also is the Trustee of The Elliot Lander Separate Property Trust Dated December 2, 2009, which has 100% ownership interest in TIC Defendant Coachella Resort.

14.   At all times mentioned herein, defendant Gary Stiffelman ("Stiffelman") is a competent individual who resides in Los Angeles County, State of California. Stiffelman is a personal guarantor under the Loan Documents and has an indirect ownership interest in one or more of the TIC Defendants.

15.   At all times mentioned herein, defendant Joseph Rubin ("Joseph Rubin") is a competent individual who resides in Los Angeles County, State of California, and is the son of Stuart Rubin.  Joseph Rubin was materially involved with managing the Project.

16.   At all times mentioned herein, defendant Stuart & Annette Rubin Family Trust ("Rubin Family Trust") is a trust with its principal place of administration located in Los Angeles County, State of California.

17.   At all times mentioned herein, defendant Stiffelman Trust ("Stiffelman Family Trust") is a trust with its principal place of administration located in Los Angeles County, State of California.

18.   At all times mentioned herein, defendant Ferguson Enterprises, LLC, is a limited liability company authorized to conduct business in California, which has asserted a

-3-

**VERIFIED COMPLAINT FOR JUDICIAL FORECLOSURE OF DEED OF TRUST**

006

1    mechanics' lien against the Property.

2        19.    Plaintiff is informed and believes, and based thereon alleges, that at all times

3    mentioned herein, Doug Wall Construction, Inc. ("Doug Wall"), is a corporation organized

4    and existing under California law and is authorized to conduct business in the State of

5    California. Doug Wall has filed an action to foreclose on a mechanics' lien against the

6    Property.

7        20.    Plaintiff is informed and believes, and based thereon alleges, that defendants (a)

8    Al Miller & Sons Roofing Co., Inc., a California Corporation; (b) Apple J Plumbing, Inc., a

9    California Corporation; (c) Blair Air, Inc, dba Blair Heating & Air, a California Corporation;

10    (d) BMC West, LLC, a Delaware Limited Liability Corporation; (e) Desert Palms Electric,

11    Inc., a California Corporation; (f) GF Investment Group, Inc., a California Corporation; (g)

12    Mascorro Concrete Construction, Inc., a California Corporation; (h) Systems Waterproofing,

13    Inc., a California Corporation; (i) Tandem West Glass, Inc., a California Corporation; and (j)

14    Temalpakh, Inc. dba The Works Floor & Wall, a California Corporation, each asserts

15    mechanics' liens, liens, and other encumbrances on the Property. These defendants may claim

16    that their mechanics' liens, claims, and/or other encumbrances on the Property are superior to

17    one another and are superior to Plaintiff's lien alleged below. Plaintiff contends that its lien is

18    superior to all mechanics' liens, liens and/or other encumbrances asserted against the Property

19    by the defendants identified above from (a) through (j).

20        21.    Plaintiff is informed and believes, and based thereon alleges, that defendant

21    Quonset Partners LLC is a California limited liability company that may assert an interest in

22    the Property and/or worked in concert with one or more of the defendants in connection with

23    the Property and misused the Loan proceeds to the Lender's detriment.

24        22.    The true names and capacities, whether individual, corporate, associate or

25    otherwise, of defendants Does 1 through 100, inclusive, are unknown to Plaintiff which

26    therefore sues said defendants by such fictitious names. Plaintiff is informed and believes, and

27    based thereon alleges, that each of the defendants designated herein as a fictitiously named

28    defendant is in some manner responsible for the events and happenings herein referred to,

-4-

**VERIFIED COMPLAINT FOR JUDICIAL FORECLOSURE OF DEED OF TRUST**

1   either contractually or otherwise, and caused the damage to Plaintiff as herein alleged.  When

2   Plaintiff ascertains the true names and capacities of Does 1 through 100, inclusive, it will ask

3   leave of Court to amend its complaint.

4       23.     Plaintiff is informed and believes, and based thereon alleges, that at all times

5   mentioned herein, each of the defendants was, and is now, the agent, servant, and/or employee

6   of his/her/its co-defendants, and each of them, and in doing or omitting to do the acts and

7   things herein complained of, was acting within the course and scope of said agency, service

8   and/or employment, and/or that all of said acts and/or omissions were authorized and/or

9   ratified by said co-defendants, and/or were done with their knowledge and/or consent and

10  ratification. Plaintiff will amend this complaint to show each such relationship to conform to

11  proof, or upon order of this Court.

12                          **THE LOAN DOCUMENTS**

13      24.     On or about April 26, 2018 ("Loan Closing"), Plaintiff, as Lender, entered into

14  a Loan Agreement to loan up to $24,400,000 to Borrower.  The purpose of the Loan

15  Agreement was to facilitate the Project, the construction of a hotel and other improvements on

16  the Property. On or about April 26, 2018, to evidence the potential $24,400,000 loan, the

17  Borrower made, executed, and delivered to Lender a Promissory Note in the original principal

18  amount of up to $24,400,000, for value received (the "Note"), secured by that certain Deed of

19  Trust, Security Agreement, Financing Statement and Fixture Filing executed and delivered by

20  Borrower in favor of Lender (the "Deed of Trust"). A true and correct copy of the Note is

21  attached as **Exhibit "2."** A true and correct copy of the Deed of Trust is attached as **Exhibit**

22  **"3."**

23      25.     The Note provides that the Borrower promised and agreed to pay to Lender the

24  principal sum of $24,400,000, or so much thereof as may be advanced, together with interest

25  on the outstanding principal balance from the date of disbursement at the initial rate of LIBOR

26  plus 8.75% per annum. The Note further provides for initial interest-only payment for the

27  period from and including the Initial Funding Date through and including April 30, 2018, and

28  then monthly payments of principal, if any due, and interest due on the first day of each month

-5-

**VERIFIED COMPLAINT FOR JUDICIAL FORECLOSURE OF DEED OF TRUST**

1    beginning June 1, 2018. Monthly payments continue until the remaining indebtedness

2    evidenced by said Note, if not sooner paid, is all due and payable on May 1, 2020. The Note

3    provides for payment of late charges if any payment is late, which then triggers an increase in

4    the interest rate if any default occurs.

5        26.    The Deed of Trust encumbers the Property, which consist of assessor's parcel

6    numbers 1, 2, 4, 5 and 6 of Parcel Map No. 37310, and as legally described in Exhibit A of the

7    Deed of Trust, together with all of the estate, right, title and interests the Borrower has or may

8    acquire in or to the Property, including all improvements, as defined therein, all accounts,

9    deposit accounts, instruments, chattel paper and all other contracts and agreements the

10   Borrower has or may have an interest arising out of or relating to the acquisition, development,

11   ownership, management or use of the Property, all additions, substitutions and proceeds of the

12   foregoing. The Deed of Trust was recorded on April 26, 2018, as Document Number 2018-

13   0162476 in the Official Records of the County of Riverside, State of California.

14       27.    In addition, on April 26, 2018, Borrower executed and delivered to Lender an

15   Assignment of Leases and Rents ("ALR"). The ALR was recorded on April 26, 2018, as

16   Document Number 2018-0162477 in the Official Records of the County of Riverside, State of

17   California.

18       28.    On April 26, 2018, a UCC-1 Financing Statement was filed with the California

19   Secretary of State as Filing No. 18-7646021954. A true and correct copy of the California

20   UCC-1 Financing Statement is attached as **Exhibit "4."**

21       29.    On April 27, 2018, a UCC-1 Financing Statement was filed with the Delaware

22   Department of State as Filing No. 2018-2864805. A true and correct copy of the Delaware

23   UCC-1 Financing Statement is attached as **Exhibit "5."**

24       30.    On April 30, 2018, a second UCC-1 Financing Statement was filed with the

25   California Secretary of State as Filing No. 18-7646325921. A true and correct copy of this

26   filing is attached as **Exhibit "6."**

27       31.    On April 26, 2018, a UCC-1 Financing Statement was filed with the County of

28   Riverside, State of California, as Filing No. 2018-0162478. A true and correct copy of this

-6-

**VERIFIED COMPLAINT FOR JUDICIAL FORECLOSURE OF DEED OF TRUST**

filing is attached as **Exhibit "7." Exhibits 1 through 7** and all other documents concerning the Loan are collectively referred to herein as the "Loan Documents."

32.    Under the Loan Documents, Borrower is obligated to pay all of Plaintiff's costs and expenses incurred or paid by Lender in connection with the enforcement of the Loan Documents, including, without limitation, attorneys' fees, expenses and court costs, which obligation is part of the secured indebtedness evidenced by the Note.

33.    Plaintiff has performed all conditions, covenants and promises on its part to be performed under the Loan Documents except as to those matters that have been excused by defendants' breaches and defaults.

34.    In addition, on April 26, 2018, as further security and inducement for Plaintiff to enter into the Loan Agreement and as set forth in the Loan Documents, individual defendants A. Stuart Rubin, Elliot Lander, and Gary Stiffelman (collectively, "Guarantors") executed the Indemnity and Guaranty Agreement, a true and correct copy of which is attached as **Exhibit "8."** As set forth in the Indemnity and Guaranty Agreement, the Guarantors assumed liability for and guaranteed payment of the Guaranteed Obligations of Borrower, which includes, but is not limited to, all obligations and liabilities under the Loan Documents.

35.    In addition, on April 26, 2018, as further security and inducement for Plaintiff to provide the Loan as set forth in the Loan Documents, the Guarantors signed the Completion Guaranty Agreement, a true and correct copy of which is attached as **Exhibit "9."** As set forth in the Completion Guaranty Agreement, the Guarantors irrevocably and unconditionally guaranteed performance of the Guaranteed Recourse Obligations as that term is defined in the Completion Guaranty Agreement.

36.    In connection with the Loan, defendant Doug Wall executed a Construction Contractors Estoppel Certificate dated April 15, 2018 ("Wall Estoppel Certificate"), and certified to Lender, through its President Doug Wall, that the sum certain being submitted for payment at the Loan Closing "are all the amounts outstanding and due Contractor as of the date of Closing" (the "Wall Closing Payment Amount"). Doug Wall also represented to Lender that the estimated cost to complete the work on the Project was $13,524,322.49. In the

-7-

1 Wall Estoppel Certificate, Doug Wall also acknowledged that Lender would be acting in

2 reliance on Doug Wall's representations.  A true and correct copy of the Wall Estoppel

3 Certificate is attached as Exhibit "10."

4      37.     By that certain General Contractor's Consent to Assignment of Contractor's

5 Agreement dated July 25, 2018, by and between Doug Wall and Lender, defendant Doug Wall

6 expressly agreed to "subordinate[] all contractual, constitutional and statutory mechanics' and

7 materialmen's liens to which Contractor [Doug Wall] may be or become entitled, to all liens

8 and security interests securing the Loan contemplated by the Loan Agreement and expressly

9 waive[d] any right to remove any removable improvements from the real property upon which

10 the improvements are to be located." A true and correct copy of the General Contractor's

11 Consent to Assignment of Contractor's Agreement is attached as **Exhibit "11."**

12      38.     Plaintiff has performed all conditions, covenants and promises on its part to be

13 performed under the terms of the Indemnity and Guaranty Agreement and the Completion

14 Guaranty Agreement except as to those matters that have been excused by Guarantors'

15 breaches and defaults (together, and with all other documents concerning the guaranties, the

16 "Guaranty Documents").

17               **DEFENDANTS' OMISSIONS, CONCEALMENT AND DEFAULTS**

18      39.     Plaintiff is informed and believes, and thereon alleges that the budget and other

19 information and documents provided to Lender in connection with, and as an inducement for

20 Lender to enter into the Loan Agreement and fund draws pursuant thereto, contained

21 inaccurate information or omitted material information, which were perpetrated intentionally,

22 upon which Lender detrimentally relied in entering into the Loan Agreement and funding

23 draws pursuant to the Loan Agreement.

24      40.     In order to enter into the Loan Agreement, the Borrower, through their Loan

25 Broker, Steve Bram at George Smith Partners ("Broker"), submitted to Lender via email on

26 March 28, 2019 Borrower's final budget itemizing its costs to complete the Project,

27 representing that total costs to complete the Project, excluding land costs, were $37,590,136

28 ("Borrower's Budget").

-8-

**VERIFIED COMPLAINT FOR JUDICIAL FORECLOSURE OF DEED OF TRUST**

41.    Borrower's Budget also represented to Lender that Borrower would have sufficient funds to complete the Project upon receiving $24,400,000 in loan funding from Lender.

42.    Borrower, Stuart Rubin, and Doug Wall knew that Borrower's Budget concealed material information regarding the actual costs to complete the Project, and that Borrower would need substantially more than $24,400,000 from Lender to complete the Project.

43.    Additionally, Borrower's Budget expressly incorporated construction costs to complete the Project that Doug Wall provided to Borrower, which omitted material subcontractor costs to complete the Project.

44.    Plaintiff is informed and believes, and thereon alleges that Borrower, Stuart Rubin, and Doug Wall knew that Lender would not enter into the Loan Agreement if the Broker submitted the actual cost to complete the Project to Lender because it based its underwriting of the Loan Agreement and the amount available to Borrower thereunder upon the projected value of the Project after completion.

45.    Plaintiff is informed and believes, and thereon alleges that Borrower, Stuart Rubin, and Doug Wall prepared a materially misleading Borrower's Budget that aligned with a loan to value ratio they knew Lender's underwriters would accept, and authorized Broker to provide it to Lender.

46.    Borrower, Stuart Rubin, and Doug Wall also knew that Lender would rely on the representations contained in Borrower's Budget and the material information omitted therefrom in deciding to enter into the Loan Agreement.  Lender reasonably relied on Borrower's representations contained in Borrower's Budget and incorporated it into Exhibit C to the Loan Agreement, which contains the approved budget for the Project.

47.    After Loan Closing, Borrower and Doug Wall undertook work to complete the project that they did not disclose to Lender they would have to perform to complete the Project to conceal the true cost of the Project.  Borrower and Doug Wall also concealed from Lender the full scope of the work that Borrower and Doug Wall performed post-closing and the

-9-

**VERIFIED COMPLAINT FOR JUDICIAL FORECLOSURE OF DEED OF TRUST**

1  increasing costs required to complete the project so that Lender would continue permitting

2  Borrower to make draws pursuant to the Loan Agreement. To date, Lender has discovered

3  payments for work on the Project that Borrower concealed from Lender totaling more than

4  $4.4 million.

5      48.    When Lender discovered on or around March 2019 that Borrower and Doug

6  Wall had concealed work on the Project that they had not incorporated into Borrower's

7  Budget, Lender requested an updated budget. Ultimately, in April 2019, Borrower and Doug

8  Wall provided to Lender a budget for completion of the Project excluding land costs, of

9  $60,010,845.72, an increase of more than 62 percent from the original budget Borrower and

10  Doug Wall submitted.

11      49.    Additionally, Borrower does not have sufficient funds to complete the Project,

12  given the actual completion cost of at least $60 million.

13      50.    Borrower's post-closing draw requests pursuant to the Loan Agreement

14  contained unexplained discrepancies in amounts allegedly paid by Borrower to various

15  contractors. Plaintiff alleges upon information and belief that the Loan proceeds and other

16  funds for the Project were improperly diverted by one or more defendants for personal use

17  and/or to develop property separate and unrelated to the Project, each in violation of the Loan

18  Documents, which Borrower concealed from Lender and omitted from its draw requests.

19      51.    Plaintiff alleges on information and belief that Stuart Rubin and/or one or more

20  of the Guarantors, acting on behalf of Borrower, put Joseph Rubin, son of Stuart Rubin, in

21  charge of overseeing construction on the Project. At that time, Joseph Rubin had no

22  significant professional or business experience and, specifically, had no experience with

23  construction management. Borrower did not disclose to Lender that Joseph Rubin would

24  oversee construction on the Project when negotiating with Lender for financing.

25      52.    Plaintiff alleges on information and belief that Joseph Rubin provided little, if

26  any, value to the Project, yet took a salary from the Project funds and diverted and used Project

27  funds for various personal expenses and/or to fund expenses related to other properties in

28  violation of the Loan Documents. Borrower, Stuart Rubin, and Joseph Rubin concealed from

-10-

**VERIFIED COMPLAINT FOR JUDICIAL FORECLOSURE OF DEED OF TRUST**

1  Lender that Joseph Rubin improperly used funds drawn from Lender pursuant to the Loan

2  Agreement and omitted such information from draw requests.

3      53.    The development on the Property has ceased and Borrower has breached

4  multiple representations, warranties and covenants contained in the Loan Documents and has

5  defaulted under the Loan Documents by, among other things:

6          A.  Failure of Borrower and Guarantor to post the deficiency previously calculated

7              to be approximately $19,252,951.98 pursuant to Section 9.13 of the Loan

8              Agreement to place the Loan "In-Balance";

9          B.  Failure to pay monthly Debt Service due on May 1, 2019, or any subsequent

10             payments due thereafter;

11         C.  Misappropriation by Borrower of bond proceeds from the Mello Roos financing

12             (or the failure to explain how such funds were applied to the Project);

13         D.  Failure of Borrower to deposit approximately $2,518,486.67 calculated by

14             Lender in the Interest Reserve to cure the Interest Reserve Deficiency pursuant

15             to the Loan Documents;

16         E.  Breaches by Borrower of the terms of the Hotel License Agreement and Hotel

17             Management Agreement;

18         F.  Continuing exposure to the elements and wasting of construction materials and

19             finishes located at the site as construction has ceased;

20         G.  Failing to pay certain Property taxes; and

21         H.  Allowing certain material permits to lapse.

22  These defaults have not been cured.

23      54.    By letter dated May 7, 2019, Lender notified Borrower and Guarantors of

24  various defaults under the Loan Documents. A true and correct copy of this letter is attached as

25  **Exhibit "12."**

26      55.    By letter dated May 28, 2019, Lender notified Borrower and Guarantors of an

27  additional default under the Loan Documents due to Borrower's failure to deposit additional

28  funds ($61,246.05) in the Tax and Insurance Reserve as required under the Loan Documents.

-11-

**VERIFIED COMPLAINT FOR JUDICIAL FORECLOSURE OF DEED OF TRUST**

1    A true and correct copy of this letter is attached as **Exhibit "13."**

2        56.     On September 5, 2019, Lender sent a Declaration of Default to Borrower and

3   Guarantors identifying various defaults, accelerating the Note's Maturity Date, and declaring

4   all sums secured by the Deed of Trust immediately due and payable under the Loan

5   Documents. A true and correct copy of this letter is attached as **Exhibit "14."**

6        57.     On September 9, 2019, Lender filed a Notice of Default and Election to Sell

7   Under Deed of Trust as Document Number 2019-0350104, in the Official Records of the

8   County of Riverside, State of California. A true and correct copy of the Notice of Default is

9   attached as **Exhibit "15."**

10       58.     As of November 1, 2019, there was and still is due, owing and payable on the

11   Note in accordance with the Loan Documents a principal sum of **$19,619,969.79** in addition to

12   accrued unpaid interest, accrued unpaid default interest, late charges, advances, foreclosure

13   fees, receiver fees, legal fees and costs of suit in amounts not yet determined. As of November

14   1, 2019, the amount due and payable to cure the default was **$21,413,976.14**, not including

15   attorneys' fees and costs which Plaintiff has incurred and continues to incur.

16       59.     Guarantors have defaulted under the Indemnity and Guaranty Agreement and

17   the Completion Guaranty Agreement by, *inter alia,* failing to pay the sums due owning and

18   payable pursuant to the Loan Documents, failing to cure the above-mentioned defaults under

19   the Loan Documents, failing to pay for and ensure the full, complete and punctual completion

20   of all improvements on the Property as required under the Loan Documents, and failing to

21   ensure performance of the Guaranteed Recourse Obligations set forth in the Completion

22   Guaranty Agreement.

23                                     **NEED FOR RECEIVER**

24       60.     The Property is in a partial stage of development. Plaintiffs alleges on

25   information and belief that the Property is in need of substantial funding to complete the

26   Project, and the TIC-Defendants lack the resources to fund the Project's completion. Plaintiff

27   further believes and alleges that Borrower is not paying its debts and is not adequately

28   maintaining, securing and preserving the Property and, therefore, there is an immediate risk of

-12-

**VERIFIED COMPLAINT FOR JUDICIAL FORECLOSURE OF DEED OF TRUST**

1    loss, theft, or damage to the Property and other assets of the Borrower located at the Property,

2    which significantly and irreparably impairs or damages the value of the Lender's security

3    interests.

4        61.    The Property's value in its current condition is far less than the indebtedness,

5    which is comprised of the principal of $19,619,969.79, accrued unpaid interest, accrued unpaid

6    default interest, late charges, advances, foreclosure fees, receiver fees, legal fees and costs of

7    suit in amounts not yet determined.

8        62.    Borrower cannot pay property taxes and has allowed material permits to lapse.

9    Borrower also has failed to pay certain contractors resulting in some contractors commencing

10   legal actions to foreclose Mechanic's Liens against Borrower, Lender, and others.

11   Specifically, Doug Wall filed an action in Riverside County Superior Court bearing Case

12   Number PSC 1907309 to foreclose on a Mechanic's Lien on the Property.  Contractor

13   Ferguson Enterprises, LLC also filed an action in the same court bearing Case Number PSC

14   1906136 to foreclose on a Mechanic's Lien on the Property. Borrower lacks the resources or

15   ability to defend itself or the Property against such actions.

16       63.    In addition, equipment, furniture and other miscellaneous personal property and

17   materials related to the Property and the construction of the Project remain on the Property and

18   unprotected from the elements, vandalism and theft. The site is not sufficiently secured, and

19   unauthorized persons have been on the Property, which is a risk to the well-being of such

20   persons as well as to Lender's security interests.

21       64.    On October 29, 2019, Stiffelman, one of the Guarantors, commenced an action

22   against, among others, Stuart Rubin (who is a co-guarantor and TIC Manager) asserting fraud,

23   negligence and other causes of action in connection with the Project, which supports Plaintiff's

24   allegations and concerns. Stiffelman's action bears Case Number 19SMCV01908 filed in the

25   Los Angeles Superior Court, West District.

26       65.    Based on the foregoing, the appointment of a receiver is immediately necessary

27   to protect and preserve the Property, and Plaintiff will bring forth for hearing its application

28   for the appointment of a receiver on an expedited basis.

-13-

**VERIFIED COMPLAINT FOR JUDICIAL FORECLOSURE OF DEED OF TRUST**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FIRST CAUSE OF ACTION**

**(Judicial Foreclosure of Deed of Trust**

**Against all Defendants and Does 1 through 100)**

66.     Plaintiff incorporates by this reference all allegations contained in paragraphs 1 through 65.

67.     Plaintiff seeks an order adjudging that:  (A) the Deed of Trust be foreclosed; (B) judgment issue ordering the sale of the Property according to law by an appropriate person appointed by the Court; (C) the proceeds of the sale be applied in payment of the amounts due Plaintiff; (D) any rents, income and profits (if any) be applied in payment of the amounts due Plaintiff; and (E) defendants and all persons claiming under any of them subsequent to the execution of the Deed of Trust, whether as lien claimants, judgment creditors, persons claiming under junior deeds of trust, purchasers, encumbrancers, or otherwise, be barred and foreclosed from all rights, claims, or equity redemption in the Property and every part of said Property when the time for redemption has elapsed.

68.     The Loan Documents provide that the Borrower agrees to pay all of Plaintiff's costs and expenses, including Plaintiff's attorneys' fees and legal expenses, incurred in connection with the enforcement of the Loan Documents.  Because of the Borrower's defaults, Plaintiff has been required to retain the law firms of Brownstein Hyatt Farber Schreck and Raines Feldman LLP and is entitled to an award of attorneys' fees and litigation expenses incurred herein.

**SECOND CAUSE OF ACTION**

**(Specific Performance of Deed of Trust**

**Against all Defendants and Does 1 through 100)**

69.     Plaintiff incorporates by this reference all allegations contained in paragraphs 1 through 68.

70.     Plaintiff is entitled to specific performance of the terms, conditions and provisions of the Loan Documents, and is entitled to the appointment of a receiver who has the power and authority: (A) to take possession of the Property; (B) to protect, preserve, secure,

-14-

**VERIFIED COMPLAINT FOR JUDICIAL FORECLOSURE OF DEED OF TRUST**

1   manage and operate the Property; (C) oversee the construction on the Property, including

2   raising and securing any necessary funds to complete the Project; and (D) collect the rents,

3   issues and profits of the Property (if applicable).

4       71.    Plaintiff has no plain, speedy and adequate remedy at law, and will suffer

5   irreparable damage, injury and harm unless equitable relief is granted.

6       72.    The Loan Documents provide that the Borrower agrees to pay all of Plaintiff's

7   costs and expenses, including Plaintiff's attorneys' fees and legal expenses, incurred in

8   connection with the enforcement of said Loan Documents.

9                           **THIRD CAUSE OF ACTION**

10          **(Injunctive Relief Against all Defendants and Does 1 through 100)**

11      73.    Plaintiff incorporates by this reference all allegations contained in paragraphs 1

12   through 72.

13      74.    In aid of the receiver to be appointed, Plaintiff seeks temporary restraining

14   orders and/or preliminary and permanent injunctions restraining and enjoining Borrower and

15   its partners, members, agents, managers, employees, representatives, and guarantors (and all

16   others acting in concert with or under them) from interfering with Plaintiff or the receiver in:

17   (A) taking possession of the Property; (B) protecting, preserving, securing, managing and

18   operating the Property; (C) overseeing the construction on the Property, including raising and

19   securing any necessary funds to complete the Project; (D) collecting the rents, issues and

20   profits of the Property (if applicable); and (E) disposing of or encumbering any property that

21   serves as collateral under the Loan Documents or Guaranty Documents.

22      75.    Plaintiff has no plain, speedy and adequate remedy at law, and will suffer

23   irreparable damage, injury and harm unless equitable relief is granted.

24      76.    The Loan Documents provide that the Borrower agrees to pay all of Plaintiff's

25   costs and expenses, including Plaintiff's attorneys' fees and legal expenses, incurred in

26   connection with the enforcement of said Loan Documents.

27

28   ///

-15-

**VERIFIED COMPLAINT FOR JUDICIAL FORECLOSURE OF DEED OF TRUST**

1
## FOURTH CAUSE OF ACTION

2
### (Breach of Contract Against TIC Defendants, Guarantors and Does 1 through 100)

3       77.     Plaintiff incorporates by this reference all allegations contained in paragraph 1
4  through 76.

5       78.     Plaintiff has performed all conditions, covenants and promises required on its
6  part to be performed under the Loan Documents except as to those matters excused by
7  defendants', and each of their, breaches and defaults under the Loan Documents.

8       79.     The Project has been halted because Borrower has breached representations,
9  warranties and covenants contained in the Loan Documents and has defaulted under the Loan
10  Documents by, among other things:

11          A.  Failure of Borrower and Guarantor to post the deficiency previously calculated
12              to be approximately $19,252,951.98 pursuant to Section 9.13 of the Loan
13              Agreement to place the Loan "In-Balance";

14          B.  Failure to pay monthly Debt Service due on May 1, 2019, or any subsequent
15              payments due thereafter;

16          C.  Misappropriation by Borrower of bond proceeds from the Mello Roos financing
17              (or the failure to explain how such funds were applied to the Project);

18          D.  Failure of Borrower to deposit approximately $2,518,486.67 calculated by
19              Lender in the Interest Reserve to cure the Interest Reserve Deficiency pursuant
20              to the Loan Documents;

21          E.  Breaches by Borrower of the terms of the Hotel License Agreement and Hotel
22              Management Agreement;

23          F.  Continuing exposure to the elements and wasting of construction materials and
24              finishes located at the site as construction has ceased;

25          G.  Failing to pay certain Property taxes; and

26          H.  Allowing certain material permits to lapse.

27       80.     These defaults have not been cured. As a result thereof, Plaintiff has declared
28  that all sums secured by the Deed of Trust are immediately due and payable under the Loan

-16-

**VERIFIED COMPLAINT FOR JUDICIAL FORECLOSURE OF DEED OF TRUST**

1    Documents.

2        81.    Proper demands have been made upon the Borrower to cure the defaults and,

3    among other things, pay Plaintiff the full amount in default and interest due, but the Borrower

4    refused and continues to refuse to comply with Plaintiff's demands.

5        82.    As of November 1, 2019, there was and still is due, owing and payable on the

6    Note in accordance with the Loan Documents a principal of $19,619,969.79, accrued unpaid

7    interest, accrued unpaid default interest, late charges, advances, foreclosure fees, receiver fees,

8    legal fees and costs of suit in amounts not yet determined. As of November 1, 2019, the

9    amount due and payable to cure the default was **$21,413,976.14**, not including attorneys' fees

10   and costs which Plaintiff has incurred and continues to incur.

11       83.    The Loan Documents entitle Plaintiff to all attorneys' fees and expenses

12   incurred in connection with any dispute in connection with the Loan Documents.

13                                **FIFTH CAUSE OF ACTION**

14          **(For Breach of Indemnity and Guaranty Agreement Against Guarantors A.**

15          **Stuart Rubin, Elliot Lander, and Gary Stiffelman and Does 1 through 100)**

16       84.    Plaintiff incorporates by this reference all allegations contained in paragraphs 1

17   through 83.

18       85.    Plaintiff has performed all conditions, covenants and promises on its part to be

19   performed under the Loan Documents except for those matters that have been excused by

20   defendants', and each of their, breaches and defaults.

21       86.    The Project has been halted because Borrower and Guarantors have breached

22   representations, warranties and covenants contained in the Loan Documents and defaulted

23   under the Loan Documents by, among other things:

24          A. Failure of Borrower and Guarantor to post the deficiency previously calculated

25             to be approximately $19,252,951.98 pursuant to Section 9.13 of the Loan

26             Agreement to place the Loan "In-Balance";

27          B. Failure to pay monthly Debt Service due on May 1, 2019, or any subsequent

28             payments due thereafter;

-17-

**VERIFIED COMPLAINT FOR JUDICIAL FORECLOSURE OF DEED OF TRUST**

C. Misappropriation by Borrower of bond proceeds from the Mello Roos financing (or the failure to explain how such funds were applied to the Project at all or in accordance with the Project budget and scope of work that Lender approved);

D. Failure of Borrower to deposit approximately $2,518,486.67 calculated by Lender in the Interest Reserve to cure the Interest Reserve Deficiency pursuant to the Loan Documents;

E. Breaches by Borrower of the terms of the Hotel License Agreement and Hotel Management Agreement;

F. Continuing exposure to the elements and wasting of construction materials and finishes located at the site as construction has ceased;

G. Failing to pay certain Property taxes; and

H. Allowing certain material permits to lapse.

87.    These defaults have not been cured. As a result thereof, Plaintiff has declared that all sums secured by the Deed of Trust are immediately due and payable under the Loan Documents.

88.    In addition, on April 26, 2018, as further security and to induce Plaintiff to provide the loan as set forth in the Loan Documents, the Guarantors signed the Indemnity and Guaranty Agreement (**Exhibit "8"**). As set forth in the Indemnity and Guaranty Agreement, Guarantors assumed liability for and guaranteed payment of the Guaranteed Obligations of Borrower, which includes (but is not limited to) all obligations and liabilities under the Loan Documents.

89.    Plaintiff has performed all conditions, covenants and promises on its part to be performed under the Indemnity and Guaranty Agreement, as well as all of the provisions of the Loan Documents except for those matters excused by defendants', and each of their, breaches and defaults.

90.    By reason of Borrower's defaults under the Loan Documents, the Guarantors, as guarantors of the Loan Documents as set forth specifically in the Indemnity and Guaranty Agreement, are indebted to Plaintiff in the sum of not less than **$21,413,976.14**, together with

-18-

**VERIFIED COMPLAINT FOR JUDICIAL FORECLOSURE OF DEED OF TRUST**

1 | accrued interest, late fees, other charges, attorneys' fees and costs, all according to proof.

2 |       91.    Guarantors have failed and refused to pay the amounts due and owning under

3 | the Loan Documents in accordance with and as required by the Indemnity and Guaranty

4 | Agreement despite due demands, and have, therefore, breached the Indemnity and Guaranty

5 | Agreement.

6 |       92.    Plaintiff is informed and believes, and based thereon alleges, that as a direct and

7 | legal result of the Guarantors' breach of the Indemnity and Guaranty Agreement, Plaintiff has

8 | been damaged in an amount in excess of this Court's jurisdictional limit.  Plaintiff shall prove

9 | at trial the exact amount of its damages, which it reasonably believes to be not less than

10 | **$21,413,976.14**, plus additional accrued and unpaid interest, late fees, other charges, attorneys'

11 | fees, and costs, all according to proof.

12 |       93.    The Loan Documents and the Indemnity and Guaranty Agreement entitle

13 | Plaintiff to all attorneys' fees and expenses incurred in connection with any dispute in

14 | connection with the Loan.

15 | **SIXTH CAUSE OF ACTION**

16 | **(For Breach of Completion Guaranty Agreement Guarantors A. Stuart Rubin, Elliot**

17 | **Lander, and Gary Stiffelman and Does 1 through 100)**

18 |       94.    Plaintiff incorporates by this reference all allegations contained in paragraphs 1

19 | through 93.

20 |       95.    Plaintiff has performed all conditions, covenants and promises on its part to be

21 | performed pursuant to the Loan Documents except for those matters that have been excused by

22 | defendants', and each of their, breaches and defaults.

23 |       96.    The Project has been halted because Borrower and Guarantors have breached

24 | representations, warranties and covenants in the Loan Documents and defaulted under the

25 | Loan Documents by, among other things:

26 |       A. Failure of Borrower and Guarantor to post the deficiency previously calculated

27 |           to be approximately $19,252,951.98 pursuant to Section 9.13 of the Loan

28 |           Agreement to place the Loan "In-Balance";

-19-

**VERIFIED COMPLAINT FOR JUDICIAL FORECLOSURE OF DEED OF TRUST**

B. Failure to pay monthly Debt Service due on May 1, 2019, or any subsequent payments due thereafter;

C. Misappropriation by Borrower of bond proceeds from the Mello Roos financing (or the failure to explain how such funds were applied to the Project);

D. Failure of Borrower to deposit approximately $2,518,486.67 calculated by Lender in the Interest Reserve to cure the Interest Reserve Deficiency pursuant to the Loan Documents;

E. Breaches by Borrower of the terms of the Hotel License Agreement and Hotel Management Agreement;

F. Continuing exposure to the elements and wasting of construction materials and finishes located at the site as construction has ceased;

G. Failing to pay certain Property taxes; and

H. Allowing certain material permits to lapse.

97. These defaults have not been cured. As a result thereof, Plaintiff has declared that all sums secured by the Deed of Trust are immediately due and payable under the Loan Documents.

98. In addition, on April 26, 2018, as further security and to induce Plaintiff to provide the loan to Borrower as set forth in the Loan Documents, the Guarantors signed the Completion Guaranty Agreement (**Exhibit 9**). As set forth in the Completion Guaranty Agreement, the Guarantors irrevocably and unconditionally guaranteed performance of the Guaranteed Recourse Obligations as that term is defined in the document and the Loan Documents.

99. Plaintiff has performed all conditions, covenants and promises on its part to be performed under the Completion Guaranty Agreement, as well as all of the provisions of the Loan Documents, except those matters that have been excused by defendants', and each of their, breaches and defaults.

100. By reason of Borrower's defaults under the Loan Documents, Guarantors, as personal guarantors of the Loan Documents as set forth specifically in the Completion

-20-

**VERIFIED COMPLAINT FOR JUDICIAL FORECLOSURE OF DEED OF TRUST**

1    Guaranty Agreement, are indebted to Plaintiff in the sum of not less than $31,500,000 together

2    with accrued interest, late fees, other charges, attorneys' fees and costs, all according to proof.

3        101.    Guarantors have failed and refused to pay the amounts due and owing under

4    the Loan Documents in accordance with and as required by the Completion Guaranty

5    Agreement despite due demands, and have, therefore, breached the Completion Guaranty

6    Agreement.

7        102.    Plaintiff is informed and believes, and based thereon alleges, that as a direct and

8    legal result of Guarantors' breach of the Completion Guaranty Agreement, Plaintiff has been

9    damaged in an amount in excess of this Court's jurisdictional limit. Plaintiff shall prove at trial

10   the exact amount of its damages, which it reasonably believes to be not less than $31,500,000,

11   plus additional accrued and unpaid interest, late fees, other charges, attorneys' fees, and costs,

12   all according to proof.

13       103.    The Loan Documents and the Completion Guaranty Agreement entitle Plaintiff

14   to all attorneys' fees and expenses incurred in connection with any dispute in connection with

15   the Loan.

16               **SEVENTH CAUSE OF ACTION**

17   **(Fraud in the Inducement Against TIC Defendants, Guarantors (A. Stuart Rubin, Elliot**

18       **Lander, and Gary Stiffelman), Joseph Rubin, Doug Wall and Does 1 through 100)**

19       104.    Plaintiff incorporates by this reference all allegations contained in paragraphs 1

20   through 103.

21       105.    The TIC Defendants, Guarantors, Joseph Rubin, Doug Wall and each of them,

22   provided, or caused to be provided, budget information and documents to the Lender in

23   connection with the Loan Agreement that they knew contained inaccurate information,

24   material misrepresentations or omissions.  Each of these defendants knew, and in fact intended

25   that, Lender would rely upon their misrepresentations, upon which Lender did in fact

26   detrimentally rely.

27       106.    The TIC Defendants, Guarantors, Joseph Rubin, Doug Wall and each of them,

28   intentionally misrepresented to Lender, in order to induce Lender to enter into the Loan

-21-

**VERIFIED COMPLAINT FOR JUDICIAL FORECLOSURE OF DEED OF TRUST**

1    Agreement, a budget for completion of the Project, excluding land costs, of $37,590,136, and

2    that TIC Defendants and Guarantors could complete the Project with $24.4 million in loan

3    funding from Lender. The Broker, acting for TIC Defendants and Guarantors, submitted to

4    Lender via email on March 28, 2019 the final pre-closing budget for the Project.  TIC

5    Defendants, Guarantors, Joseph Rubin, Doug Wall and each of them knew that Lender would

6    not enter into the Loan Agreement if they presented the true budget.  The true facts were that

7    the actual budget to complete the Project was over $60,000,000, and Borrower and Guarantors

8    would require more financing than they had available. To date, the Project remains incomplete

9    and construction has stopped.

10       107.    When the Loan Agreement closed in April 2018, the TIC Defendants,

11    Guarantors, Joseph Rubin, Doug Wall, and each of them, intentionally omitted from their

12    budget submitted to Lender material subcontracts for completion of the Project to induce

13    Lender to enter into the Loan Agreement.

14       108.    The TIC Defendants, Guarantors, Joseph Rubin, Doug Wall, and each of them

15    submitted or caused to be submitted draw requests for funding pursuant to the Loan

16    Agreement that contain material omissions and misrepresentations regarding the budget to

17    complete the Project, the use of the funds drawn and other sources of Project financing, and

18    the funds available for the Project.

19       109.    Upon information and belief, Doug Wall and other contractor defendants

20    intentionally submitted invoices to the Lender with draw requests that misrepresented the total

21    amount of work that Doug Wall and other contractors had performed on the Project and the

22    amount Borrower owed to them to provide false and inaccurate information to Lender about

23    the budget of the Project so that Lender would continue funding the Loan. The TIC

24    Defendants, Guarantors, Joseph Rubin and each of them, were aware of, and participated in,

25    such misrepresentations to the Lender. These defendants knew Lender would rely upon these

26    representations in connection with funding draw requests under the Loan Agreement.

27       110.    The TIC Defendants and Guarantors,  Joseph Rubin, and each of them,

28    intentionally misrepresented that they had the requisite knowledge, experience, and

-22-

**VERIFIED COMPLAINT FOR JUDICIAL FORECLOSURE OF DEED OF TRUST**

qualifications regarding hotel development, which representations were patently false, and concealed from the Lender that Joseph Rubin would oversee construction on the Project, despite having no prior relevant experience, so that Lender would continue funding draw requests from Borrower and Doug Wall under the Loan Agreement.

111.    The TIC Defendants, Guarantors, Joseph Rubin and each of them, further intentionally misrepresented that funds drawn pursuant to the Loan Agreement would be used solely for purposes allowed under the Loan Documents but then fraudulently and improperly used, or allowed to be used, such funds for personal use and/or to pay for costs concerning property unrelated to the Project,not involving the Property, or within the approved Project budget and scope of work, all in violation of the Loan Documents.

112.    The TIC Defendants and Guarantors agreed pursuant to the Loan Agreement that they would send any Mello Roos funds received for the Project to Lender for Lender to hold and be disbursed only in Lender's discretion, as such funds were necessary to complete the Project and ensure it had proper reserves for the seasonal nature of the business once complete.

113.    The TIC Defendants and Guarantors, however,  misrepresented to Lender the funding that they had available for the Project, and failed to comply with the requirements of the Loan Agreement to deposit Mello Roos funds with Lender.  On August 2, 2018, Stuart Rubin emailed to Huell Kim at Lender that the TIC Defendants had received approval for Mello Roos funding for the Project.  After the TIC Defendants received the Mello Roos funds, Stuart Rubin expressly denied in emails on January 24, 2019 and February 6, 2019 with Huell Him that he had received such funds, when in fact TIC Defendants, Stuart Rubin or Joseph Rubin had received them.  Lender relied on representations from Stuart Rubin that the TIC Defendants had not received the Mello Roos funds in continuing to fund subsequent draw requests.

114.    When these defendants made the foregoing misrepresentations, they knew that these representations were false.

115.    These defendants intended that Lender rely upon the foregoing

-23-

1  misrepresentations, and Lender reasonably relied on such representations in making and

2  funding the Loan.

3       116.    Borrower is in default and, without additional funding, the Project cannot be

4  completed.  Lender has been damaged by these defendants' misrepresentations and

5  concealments in an amount to be proven at trial.

6       117.    Lender's reasonable reliance on these defendants' misrepresentations was a

7  substantial factor in causing harm to Lender.

8       118.    These defendants' intentional misrepresentations were made willfully and with

9  malice, fraud, and oppression.

10       119.    As a result of such willful, intentional, oppressive, and fraudulent conduct,

11  punitive damages should be imposed against these defendants to punish their fraudulent

12  conduct and to deter future similar conduct in an amount according to proof at trial.

13  <u>**EIGHTH CAUSE OF ACTION**</u>

14  **(Negligent Misrepresentation Against TIC Defendants, Guarantors, Joseph Rubin, Doug**

15  **Wall and Does 1 through 100)**

16       120.    Plaintiff incorporates by this reference all allegations contained in paragraphs 1

17  through 119.

18       121.    The TIC Defendants, Guarantors, Joseph Rubin, Doug Wall, and each of them,

19  provided, or caused to be provided, budget information and documents to the Lender in

20  connection with the Loan Agreement that they knew or should have known contained

21  inaccurate information, upon which TIC Defendants, Guarantors, Doug Wall, and Joseph

22  Rubin knew or should have known Lender would rely, and Lender did in fact detrimentally

23  rely upon such representations.

24       122.    As set forth herein, the TIC Defendants, Guarantors, Joseph Rubin, Doug Wall

25  and each of them represented to Lender a budget for completion of the Project that they knew

26  or should have known did not contain the actual budget for completion of the Project, and

27  represented to Lender that they could complete the Project with $24.4 million in financing.

28  The TIC Defendants, Guarantors, Joseph Rubin, Doug Wall and each of them knew or should

-24-

**VERIFIED COMPLAINT FOR JUDICIAL FORECLOSURE OF DEED OF TRUST**

1    have known the true facts that the actual budget to complete the Project far exceeded the

2    budget submitted, and that they could not in fact complete the project with the financing they

3    had available. To date, the Project remains incomplete, and construction has stopped.

4        123.    The TIC Defendants, Guarantors, and Joseph Rubin, misrepresented to Lender

5    that they had the requisite knowledge, experience, and qualifications regarding hotel

6    development. It has become clear, however, that they do not hold such knowledge, experience,

7    and qualifications.

8        124.    The TIC Defendants, Guarantors, Joseph Rubin, and each of them,

9    misrepresented that the Loan proceeds would be used solely for purposes allowed under the

10   Loan Documents but then improperly used, or allowed to be used, Loan proceeds for personal

11   use and/or to pay for costs concerning property unrelated to the Project or not involving the

12   Property, in violation of the Loan Documents.

13       125.    The TIC Defendants and Guarantors also misrepresented to Lender the funding

14   that they had available for the Project. On August 2, 2018, Stuart Rubin emailed to Huell Kim

15   at Lender that the TIC Defendants had received approval for Mello Roos funding for the

16   Project.  Plaintiff is informed and believes, and thereon alleges that Mello Roos funds were

17   disbursed to the TIC Defendants and Guarantors or otherwise made available to them as early

18   as September 2018.Stuart Rubin, however, when asked about the status of the Mellow Roos

19   funds,  in emails on January 24, 2019 and February 6, 2019 with Huell Kim from Lender, did

20   not inform Lender that Mello Roos funds were available for disbursement to TIC Defendants

21   or Guarantors or that they had been disbursed to TIC Defendants or Guarantors. Instead, Stuart

22   Rubin stated falsely that the process for disbursement of the Mello Roos funds was still

23   ongoing. Lender relied on such misrepresentations from Stuart Rubin that the TIC Defendants

24   had not received the Mello Roos funds and that Mello Roos funds were not yet available for

25   disbursement in continuing to fund subsequent draw requests.

26       126.    When these defendants made the foregoing misrepresentations, they knew or

27   should have known that these representations were false.

28       127.    These defendants intended that Lender rely upon the foregoing

-25-

**VERIFIED COMPLAINT FOR JUDICIAL FORECLOSURE OF DEED OF TRUST**

1   misrepresentations, and Lender reasonably relied on such representations.

2        128.    Borrower is in default and, without additional funding, the Project cannot be

3   completed. Lender has been damaged in an amount to be proven at trial.

4        129.    Lender's reliance on these defendants' misrepresentations was a substantial

5   factor in causing harm to Lender.

6       **WHEREFORE**, Plaintiff prays judgment as follows:

7   <u>AS TO THE FIRST CAUSE OF ACTION:</u>

8       1.    For damages according to proof at the time of trial or entry of judgment;

9       2.    For an order adjudging that:

10       A. The Deed of Trust be foreclosed;

11       B. That judgment issue ordering the sale of the Property according to law by an

12          appropriate person appointed by the Court;

13       C. The proceeds of the sale be applied in payment of the amounts due Plaintiff;

14       D. Any rents, income and profits be applied in payment of the amounts due

15          Plaintiff; and

16       E. Defendants, and each of them, and all persons claiming under any of the

17          subsequent to the execution of the Deed of Trust, whether as lien claimants,

18          judgment creditors, persons claiming under junior deeds of trust, purchasers,

19          encumbrancers, or otherwise, be barred and foreclosed from all rights, claims,

20          or equity redemption in the Property and every part of the Property when the

21          time for redemption has elapsed;

22       3.    For a judgment that the rights, claims, ownership, lien, titles and demands of

23   Defendants and Does 1 through 100, inclusive, are subsequent to and subject to the lien of the

24   Plaintiff's Deed of Trust;

25       4.    For a determination that Defendants are liable for payment of the sums secured

26   by the Deed of Trust and that said Defendants are the Defendants against whom a deficiency

27   judgment may be ordered following procedures prescribed by law;

28       5.    For an order permitting Plaintiff, or any parties to this action, to become

-26-

**VERIFIED COMPLAINT FOR JUDICIAL FORECLOSURE OF DEED OF TRUST**

1  purchasers at the sale of the Property;

2        6.     For a declaration that, when time for redemption has elapsed, the levying

3  officer shall execute a deed to the purchaser or purchasers of the Property at the sale, and the

4  purchaser or purchasers shall be let into possession of the Property upon production of the

5  levying officer's deed;

6  **AS TO THE SECOND CAUSE OF ACTION:**

7        7.     For an order decreeing that the Loan Documents be specifically performed by

8  Defendants, and each of them;

9  **AS TO THE THIRD CAUSE OF ACTION:**

10        9.     For a temporary restraining order and/or preliminary and permanent injunctions

11  restraining and enjoining:

12       A.  Defendants and their partners, members, agents, managers, employees,

13           representatives, and guarantors from interfering with Plaintiff or the Receiver

14           in:  (A) taking possession of the Property; (B) protecting, preserving, securing,

15           managing and operating the Property, (C) overseeing the construction on the

16           Property,  (D) collecting the rents, issues and profits of the Property (if

17           applicable), and (E) disposing of or encumbering any property that serves as

18           collateral under the Loan Documents or Guaranty Documents.

19       B.  Defendants and their partners, members, agents, managers, employees,

20           representatives, and guarantors from interfering with Plaintiff or the Receiver

21           by committing or permitting any waste of the Property or any part thereof, or

22           suffering or committing or permitting any act on the Property or any part

23           thereof in violation of law, or removing, transferring, encumbering or otherwise

24           disposing of any of the Receivership Property or any part thereof;

25       C.  Defendants and their partners, members, agents, managers, employees,

26           representatives, and guarantors from directly or indirectly interfering in any

27           manner with the discharge of the Receiver's duties under his/her/its Order or

28           the Receiver's possession of and operation or management of the Property;

-27-

**VERIFIED COMPLAINT FOR JUDICIAL FORECLOSURE OF DEED OF TRUST**

1    D.  Defendants and their partners, members, agents, managers, employees,

2        representatives, and guarantors from expending, disbursing, transferring,

3        assigning, selling, conveying, devising, pledging, mortgaging, creating a

4        security interest in, encumbering, concealing or in any manner whatsoever

5        dealing in or disposing of the whole or any part of the Property without prior

6        specific Court Order;

7    E.  Defendants and their partners, members, agents, managers, employees,

8        representatives, and guarantors from withholding any Property assets, books,

9        records, or funds from the Receiver; and,

10   F.  Defendants and their partners, members, agents, managers, employees,

11       representatives, and guarantors from doing any act which will, or which will

12       tend to, impair, defeat, divert, prevent or prejudice the preservation of the

13       Property;

14   <u>**AS TO THE FOURTH AND FIFTH CAUSES OF ACTION:**</u>

15   10.    The sum of **$21,413,976.14**, plus unpaid accrued interest, unpaid accruing

16   interest, late charges, attorneys' fees and costs, according to proof at time of trial or entry of

17   judgment;

18   <u>**AS TO THE SIXTH CAUSE OF ACTION:**</u>

19   11.    The sum of **$31,500,000**, plus additional accrued and unpaid interest, late fees,

20   other charges, attorneys' fees, and costs, all according to proof at time of trial or entry of

21   judgment;

22   <u>**AS TO THE SEVENTH CAUSE OF ACTION:**</u>

23   12.    For damages according to proof at the time of trial or entry of judgment;

24   13.    Punitive damages according to proof at trial;

25   <u>**AS TO THE EIGHTH CAUSE OF ACTION:**</u>

26   14.    For damages according to proof at the time of trial or entry of judgment;

27   <u>**AS TO ALL CAUSES OF ACTION:**</u>

28   15.    For attorneys' fees and costs of suit incurred herein; and

-28-

**VERIFIED COMPLAINT FOR JUDICIAL FORECLOSURE OF DEED OF TRUST**

1        16.     For such other and further relief as this Court may deem just and proper.

2

3   Dated: November 19, 2019           **RAINES FELDMAN LLP**

4

5                             By:

6                                  John S. Cha

7                                Nathaniel M. Carle

8                                Attorneys for Plaintiff U.S. Real Estate
                               Credit Holdings III-A, LP

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**VERIFIED COMPLAINT FOR JUDICIAL FORECLOSURE OF DEED OF TRUST**

## VERIFICATION

I, Simond Lavian, declare:

I am a Director, Asset Management, of Calmwater Asset Management, LLC, the investment manager of Plaintiff U.S. Real Estate Credit Holdings III-A, LP ("Plaintiff" or "Lender"). I have been authorized to make this verification on Plaintiff's behalf.

I have read the foregoing **VERIFIED COMPLAINT** and the appended exhibits and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein stated on information and belief, and, as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at Los Angeles, California, on November 19, 2019.

Simond Lavian

**VERIFICATION**

033

**EXHIBIT 2**

SUBP-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | *FOR COURT USE ONLY* |
|---|---|
| Sean A. O'Keefe, SBA 122417<br>OKEEFE & ASSOCIATES LAW CORPORATION, P.C.<br>26 Executive Park, Suite 250, Irvine, CA 92614<br>TELEPHONE NO.: 949.334.4135    FAX NO.: 949.209.2625<br>E-MAIL ADDRESS: sokeefe@okeefelawcorporation.com<br>ATTORNEY FOR *(Name):* Elliot B. Lander, defendant | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF   Riverside
STREET ADDRESS:  30755-D Auld Drive
MAILING ADDRESS:
CITY AND ZIP CODE:  Murietta, CA 92563
BRANCH NAME:  Southwest Justice Center

PLAINTIFF/ PETITIONER: U.S. Real Estate Credit Holdings III-A, LP
DEFENDANT/ RESPONDENT: Glenroy Coachella, LLC et. al.

| DEPOSITION SUBPOENA<br>FOR PRODUCTION OF BUSINESS RECORDS | CASE NUMBER:<br>RIC1905743 |
|---|---|

THE PEOPLE OF THE STATE OF CALIFORNIA, TO *(name, address, and telephone number of deponent, if known):*
CUSTODIAN OF RECORDS OF MARSHACK HAYS, LLP

1. **YOU ARE ORDERED TO PRODUCE THE BUSINESS RECORDS described in item 3, as follows:**

   To *(name of deposition officer):* ASAP Legal, LLC
   On *(date):* August 15, 2023    At *(time):* 10:00 a.m.
   Location *(address):* 1607 James M. Wood Blvd., Los Angeles, California 90015

   **Do not release the requested records to the deposition officer prior to the date and time stated above.**

   a. [X] by delivering a true, legible, and durable **copy** of the business records described in item 3, enclosed in a sealed inner wrapper with the title and number of the action, name of witness, and date of subpoena clearly written on it. The inner wrapper shall then be enclosed in an outer envelope or wrapper, sealed, and mailed to the deposition officer at the address in item 1.

   b. [ ] by delivering a true, legible, and durable **copy** of the business records described in item 3 to the deposition officer at the witness's address, on receipt of payment in cash or by check of the reasonable costs of preparing the copy, as determined under Evidence Code section 1563(b).

   c. [ ] by making the **original** business records described in item 3 available for inspection at your business address by the attorney's representative and permitting **copying** at your business address under reasonable conditions during normal business hours.

2. *The records are to be produced by the date and time shown in item 1 (but not sooner than 20 days after the issuance of the deposition subpoena, or 15 days after service, whichever date is later). Reasonable costs of locating records, making them available or copying them, and postage, if any, are recoverable as set forth in Evidence Code section 1563(b). The records shall be accompanied by an affidavit of the custodian or other qualified witness pursuant to Evidence Code section 1561.*

3. The records to be produced are described as follows *(if electronically stored information is demanded, the form or forms in which each type of information is to be produced may be specified):*

   [X] Continued on Attachment 3.

4. **IF YOU HAVE BEEN SERVED WITH THIS SUBPOENA AS A CUSTODIAN OF CONSUMER OR EMPLOYEE RECORDS UNDER CODE OF CIVIL PROCEDURE SECTION 1985.3 OR 1985.6 AND A MOTION TO QUASH OR AN OBJECTION HAS BEEN SERVED ON YOU, A COURT ORDER OR AGREEMENT OF THE PARTIES, WITNESSES, *AND* CONSUMER OR EMPLOYEE AFFECTED MUST BE OBTAINED BEFORE YOU ARE REQUIRED TO PRODUCE CONSUMER OR EMPLOYEE RECORDS.**

   **DISOBEDIENCE OF THIS SUBPOENA MAY BE PUNISHED AS CONTEMPT BY THIS COURT. YOU WILL ALSO BE LIABLE FOR THE SUM OF FIVE HUNDRED DOLLARS AND ALL DAMAGES RESULTING FROM YOUR FAILURE TO OBEY.**

Date issued:  July 21, 2023

Sean A. O'Keefe
_____
(TYPE OR PRINT NAME)

*Sean A. O'Keefe*
_____
(SIGNATURE OF PERSON ISSUING SUBPOENA)

Attorney for Elliot B. Lander
_____
(TITLE)

(Proof of service on reverse)    Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
SUBP-010 [Rev. January 1, 2012]

**DEPOSITION SUBPOENA FOR PRODUCTION
OF BUSINESS RECORDS**

Code of Civil Procedure, §§ 2020.410–2020.440;
Government Code, § 68097.1
www.courts.ca.gov

035

# ATTACHMENT 3

# DEFINITIONS

1.       The term "COMMUNICATIONS" as used herein shall mean any document, oral statement, meeting or conference, electronic format (email, text, instant messaging, social/networking websites, etc.), formal or informal, at any time or place and under any circumstances whatsoever, whereby information of any nature was stated, written, recorded, or in any manner transmitted or transferred, including ELECTRONICALLY STORED INFORMATION (ESI).

2.       The term "DOCUMENT" or "DOCUMENTS" refers to any and all written, typed, printed, recorded, graphic and/or photographic matters of reproductions, however produced or reproduced, including copies or computer or data processing input or output of whatever form. This definition of "DOCUMENT" or "DOCUMENTS" includes, but is not limited to, emails, notes, contracts, agreements, diaries, letters, correspondence, ledgers, plans, papers, reports, charts, telegrams, cables, wires, memoranda, receipts, invoices, bills, files, records, statements, canceled checks, payroll checks, check stubs, notebooks, logs, printouts, data sheets, drawings, photographs, film, videotape, analyses, surveys, transcripts, recordings, minutes, calendars, interoffice communications, reports and/or summaries of interviews, bulletins, licenses, memoranda of telephonic communications, visual recordings and any other material which would come within the definition of "Writing" or "Writings" as defined in California Evidence Code section 250. The definition of "DOCUMENT" or "DOCUMENTS" also includes all copies of DOCUMENTS by whatever means made, all drafts, whether used or not used, all revisions, all prior versions, all annotated copies, all working papers, all handwritten notes, all notes pertaining to telephonic conversations, and all other tangible things. This definition of "DOCUMENT" or "DOCUMENTS" shall include each copy of the document which is not identical in all respects with, or which contains any notation not appearing on, any other copy or version of DOCUMENTS. This definition also includes all Electronically Stored Information.

3. "ELECTRONICALLY STORED INFORMATION" or "ESI" shall mean any documents, information, concepts, or data ever placed into or stored on any computers or electronic devices, including but not limited to any hard disk drive, solid state drive, desktop computer, laptop computer, optical storage disk, USB drive, third-party data storage systems, retrieval system and similar systems, cellular telephonic devices, memory cards (commonly known as "SD cards"), random access memory (RAM), email and email attachments, internet transmissions, electronic bulletin board posting, diary system, calendar system, tickler system, and all other similar programs, or any repositories of information used with electronically controlled equipment. ESI includes all metadata embedded in any ESI, including the Load Files (electronic files used to import all required production information into a Document database).

## <u>DOCUMENTS REQUESTED</u>

All COMMUNICATIONS referring or relating to Glenroy Coachella, LLC, U.S. Real Estate Credit Holdings III-A, LP, the real property located at the southeast corner of Avenue 48 and Van Buren Street, Coachella, California, and the real property located at 84-160 Avenue 8, Building B, Coachella, California, that were sent to or received from any of the following individuals or entities in the 2/1/2021 through June 30, 2023 time frame:

1. Christopher Rivas;

2. Marsha Houston;

3. Reed Smith, LLP, or any agent or employee thereof;

4. Calmwater Capital, LLC or any employee or agent of Calmwater Capital, LLC, including but not limited to Simond Lavian;

5. U.S. Real Estate Credit Holdings III-A, LP or any employee or agent of Calmwater Capital, LLC, including but not limited to Simond Lavian;

6. Edwin Leslie; and

7. Gary S. Stiffelman.

**EXHIBIT 2**

John A. Messina, Jr. (SBN 171148)
Evan L. Smith (SBN 101369)
Jeffrey J. Van Wick (SBN 330915)
MESSINA & HANKIN LLP
24910 Las Brisas Road, Suite 102
Murrieta, CA 92562
jmessina@messinahankinlaw.com
elsmith@messinahankinlaw.com
jvanwick@messinahankinlaw.com
Telephone: (951) 894-7332
Fax: (951) 346-3334

Sean A. O'Keefe (SBN 122417)
OKEEFE & ASSOCIATES LAW CORP., P.C.
26 Executive Park, Suite 250
Irvine, CA 92614
sokeefe@okeefelawcorporation.com
Telephone: (949) 334-4135
Fax: (949) 209-2625

Co-counsel to defendants Elliot B. Lander
and Coachella Resort, LLC, a California
limited liability company.

**SUPERIOR COURT OF THE STATE OF CALIFORNIA,**

**COUNTY OF RIVERSIDE - SOUTHWEST JUSTICE CENTER**

| | |
|---|---|
| U.S. REAL ESTATE CREDIT HOLDINGS III-A, LP, an Irish limited partnership,<br><br>Plaintiff,<br><br>v.<br><br>GLENROY COACHELLA, LLC, a Delaware limited liability company, et al.,<br><br>Defendants. | Case No: RIC1905743<br><br>**SECOND AMENDED VERIFIED ANSWER TO COMPLAINT FOR:**<br><br>**1. JUDICIAL FORECLOSURE OF DEED OF TRUST;**<br><br>**2. SPECIFIC PERFORMANCE OF DEED OF TRUST;**<br><br>**3. INJUNCTIVE RELIEF;**<br><br>**4. BREACH OF CONTRACT;**<br><br>**5. BREACH OF INDEMNITY AND GUARANTY AGREEMENT;**<br><br>**6. BREACH OF COMPLETION GUARANTY AGREEMENT;**<br><br>**7. FRAUD IN INDUCEMENT; AND**<br><br>**8. NEGLIGENT MISREPRESENTATION.** |

Page **1** of **24**

SECOND AMENDED VERIFIED ANSWER TO COMPLAINT

Defendants ELLIOT LANDER **("Lander")** AND COACHELLA RESORT, LLC, a California limited liability company **("Resort") (Jointly "Defendants Lander")** in answer to the Complaint on file, admit, deny and allege as follows:

## PARTIES ALLEGATIONS

1.      In answer to paragraphs 1, 2, 3, 4, 8, 9, 10, 12, 13, 14, 18, and 19, of the Parties Allegations of the Complaint, Defendants Lander admit said paragraphs.

2.      In answer to paragraphs 5, 6, 7, 11, 15, 16 and 17 of Parties' Allegations, Defendants Lander lack information sufficient to form a belief upon which to admit or deny the allegations of said paragraphs and based on such lack of information and belief, deny generally and specifically each and every allegation contained in said paragraphs and the whole thereof.

3.      In answer to paragraph 20 of Parties Allegations, Defendants Lander admit that named contractors and material men have filed Mechanics liens against the subject project. Except as expressly admitted, Defendants Lander lack information sufficient to form a belief upon which to admit or deny the remaining allegations of said paragraph and based on such lack of information and belief, deny generally and specifically each and every remaining allegation contained in said paragraph and the whole thereof.

4.      In answer to paragraph 21 of Parties Allegations, Defendants Lander lack information sufficient to form a belief upon which to admit or deny the allegations of said paragraph and based on such lack of information and belief, deny generally and specifically each and every allegation contained in said paragraph and the whole thereof.

5.      In answer to paragraph 22 of Parties Allegations, Defendants Lander lack information sufficient to form a belief upon which to admit or deny the allegations of said paragraph and based on such lack of information and belief, deny generally and specifically each and every allegation contained in said paragraph and the whole thereof.

6.      In answer to paragraph 23 of Parties Allegations, Defendants Lander deny the allegations in said paragraph.

///

SECOND AMENDED VERIFIED ANSWER TO COMPLAINT

040

///

**THE LOAN DOCUMENTS**

7.     In answer to paragraphs 24, 25, 26, 27, 28, 29, 30, 31, 32, 34, 35, 36, and 37 of the Loan Document allegations of the Complaint, Defendants Lander admit said paragraphs.

8.     In answer to paragraphs 33 and 38 of the Loan Document allegations, Defendants Lander deny generally and specifically each and every allegation contained in said paragraphs and the whole thereof.

**DEFENDANTS' OMISSIONS, CONCEALMENT AND DEFAULTS**

9.     In answer to paragraphs 39, 40 and 42 of Defendants' Omissions, Concealment and Defaults allegations, Defendants Lander, deny generally and specifically each and every allegation contained in said paragraphs and the whole thereof.

10.     In answer to paragraphs 41 of the Defendants' Omissions, Concealment and Defaults allegations of the Complaint, Defendants Lander deny generally and specifically each and every allegation contained in said paragraph and the whole thereof  based upon a lack of information and belief.

11.     In answer to paragraphs 43, 44, 45, 47, 48, 49, 50, 51 and 52, of Defendants' Omissions, Concealment and Defaults allegations of the Complaint, Defendants Lander lack information sufficient to form a belief upon which to admit or deny the allegations of said paragraphs and based on such lack of information and belief, deny generally and specifically each and every allegation contained in said paragraphs and the whole thereof.

12.     In answer to paragraph 46 of Defendants' Omissions, Concealment and Defaults allegations, Defendants Lander deny generally and specifically each and every allegation contained in said paragraph and the whole thereof, that Lender reasonably relied on Borrower's representations contained in Borrower's Budget which was incorporated into Exhibit C to the Loan Agreement, which contains the approved budget for the Project.  In this regard, Defendants Lander are informed and believe and based thereon allege, that Plaintiff had the experience and expertise and made its own evaluation as to the viability of the Project before making the subject

loan. If there were insufficient funds to complete the Project Plaintiff knew, or should have known such to exist.  Except as expressly admitted or alleged, Defendants Lander lack information sufficient to form a belief upon which to admit or deny the remaining allegations of said paragraph and based on such lack of information and belief, deny generally and specifically each and every remaining allegation contained in said paragraph and the whole thereof.

13.    In answer to paragraph 53 of Defendants' Omissions, Concealment and Defaults allegations, Defendants Lander deny each and every allegation based upon a lack of information or belief.

14.    In answer to paragraphs 54, 55, 56, 57, 58, and 59 of the Defendants' Omissions, Concealment and Defaults allegations, of the Complaint, Defendants Lander deny the allegations made in said paragraphs, subject to the following caveat: Defendants Lander do not dispute that Exhibits 13 through 15 are true and correct copies of the original.

**NEED FOR A RECEIVER**

15.    In answer to paragraph 60 of Need For A Receiver allegations, Defendants Lander deny generally and specifically allegations that Borrower is not adequately maintaining and preserving the Property and deny there is an immediate risk of loss, theft, or damage to the Property and other assets of the Borrower located at the Property and deny the Property is irreparably impaired or that the value of the Property is damaged in any way. Defendants Lander lack information sufficient to form a belief upon which to admit or deny the remaining allegations of said paragraph and based on such lack of information and belief, deny generally and specifically each and every remaining allegation contained in said paragraph and the whole thereof, that Borrower is not paying its debts.  Except as expressly denied, Defendants Lander admit the remaining allegations of said paragraph.

16.    In answer to paragraph 61 of Need for a Receiver allegations, Defendants Lander, deny generally and specifically each and every allegation contained in said paragraph and the whole thereof.

SECOND AMENDED VERIFIED ANSWER TO COMPLAINT

17.    In answer to paragraph 62 of Need for a Receiver allegations, Defendants Lander, allege on information and belief that the property taxes are now paid, but deny information sufficient to form a belief upon which to admit or deny that material permits have been permitted to lapse. On information and belief Defendants Lander admit the remaining allegations of said Paragraph.

18.    In answer to paragraph 63 of Need for a Receiver allegations, Defendants Lander, Deny generally and specifically each and every allegation contained in said paragraph and the whole thereof.

19.    In answer to paragraph 64 of Need for A Receiver allegations, Defendants Lander admit said paragraph.

20.    In answer to paragraph 65 of Need for a Receiver allegations, Defendants Lander, Deny generally and specifically each and every allegation contained in said paragraph and the whole thereof.

## FIRST CAUSE OF ACTION

21.    In answer to paragraph 66 of the First Cause of Action of the Complaint, Defendants Lander repeat and re-allege each and every admission, denial and allegation to paragraphs 1 through 65 of the Complaint and incorporate the same by this reference as though more fully set forth at length herein.

22.    In answer to paragraphs 67 and 68, of the First Cause of Action of the Complaint Defendants Lander admit said paragraphs.

## SECOND CAUSE OF ACTION

23.    In answer to paragraph 69 of the Second Cause of Action of the Complaint, Defendants Lander repeat and re-allege each and every admission, denial and allegation to paragraphs 1 through 68 of the Complaint and incorporate the same by this reference as though more fully set forth at length herein.

SECOND AMENDED VERIFIED ANSWER TO COMPLAINT

24.     In answer to paragraphs 70 and 71 of the Second cause of Action of the Complaint, Defendants Lander deny generally and specifically each and every allegation contained in said paragraphs and the whole thereof

25.     In answer to paragraph 72 of the Second Cause of Action of the Complaint Defendants Lander admit the Loan Agreement contains a paragraph to this effect.

### THIRD CAUSE OF ACTION

26.     In answer to paragraph 73 of the Third Cause of Action of the Complaint, Defendants Lander repeat and re-allege each and every admission, denial and allegation to paragraphs 1 through 72 of the Complaint and incorporate the same by this reference as though more fully set forth at length herein.

27.     In answer paragraphs 74 and 76 of the Third Cause of Action of the Complaint Defendants Lander admit said paragraphs.

28.     In answer paragraph 75 of the Third Cause of Action of the Complaint Defendants Lander deny generally and specifically each and every allegation contained in said paragraph and the whole thereof and expressly allege that the value of the subject project far exceeds any damages that Plaintiff has or may incur until any judgment is entered.

### FOURTH CAUSE OF ACTION

29.     In answer to paragraphs 77 of the Fourth Cause of Action of the Complaint Defendants Lander repeat and re-allege each and every admission, denial and allegation to paragraphs 1 through 76 of the Complaint and incorporate the same by this reference as though more fully set forth at length herein.

30.     In answer paragraph 78 of the Fourth Cause of Action of the Complaint Defendants Lander deny generally and specifically each and every allegation contained in said paragraph and the whole thereof.

31.     In answer to paragraph 79 of the Fourth Cause of Action, Defendants Lander deny each and every allegation in paragraph 79.

SECOND AMENDED VERIFIED ANSWER TO COMPLAINT

32.     In answer to paragraph 80 of the Fourth Cause of Action, Defendants Lander admit that Plaintiff has declared that all sums secured by Deed of Trust are immediately payable under the Loan Documents. Except as expressly admitted, Defendants Lander lack information sufficient to form a belief upon which to admit or deny the remaining allegations of said paragraph and based on such lack of information and belief, deny generally and specifically each and every remaining allegation contained in said paragraph and the whole thereof.

33.     In answer to paragraph 81 of the Fourth Cause of Action, Defendants Lander deny generally and specifically each and every allegation contained in said paragraph.

34.     In answer paragraphs 82 of the Fourth Cause of Action of the Complaint Defendants Lander Defendants Lander deny generally and specifically each and every allegation contained in said paragraph. The Defendants Lander admit the allegations in paragraph 83 of the Complaint.

## FIFTH CAUSE OF ACTION

35.     In answer to paragraphs 84 of the Fifth Cause of Action of the Complaint Defendants Lander repeat and re-allege each and every admission, denial and allegation to paragraphs 1 through 83 of the Complaint and incorporate the same by this reference as though more fully set forth at length herein.

36.     In answer paragraph 85 of the Fifth Cause of Action of the Complaint Defendants Lander deny generally and specifically each and every allegation contained in said paragraph and the whole thereof.

37.     In answer to paragraph 86 of the Fifth Cause of Action of the Complaint, Defendants Lander deny each and every allegation in this paragraph.

38.     In answer to paragraph 87 of the Fifth Cause of Action of the Complaint, Defendants Lander deny each and every allegation in this paragraph.

39.     In answer to paragraph 88 of the Fifth Cause of Action of the Complaint, Defendants Lander admit Guarantors signed the indemnity and Loan Agreement (Exhibit "8").

SECOND AMENDED VERIFIED ANSWER TO COMPLAINT

Said Agreement is the best evidence of what it means and they deny the meaning attributed to it in paragraph 88.

40.    In answer paragraphs 89 and 90 of the Fifth Cause of Action of the Complaint, Defendants Lander deny generally and specifically each and every allegation contained in said paragraph and the whole thereof.

41.    In answer to paragraph 91 of the Fifth Cause of Action of the Complaint, Defendants Lander deny generally and specifically each and every allegation contained in said paragraph.

42.    In answer to paragraph 92 of the Fifth Cause of Action of the Complaint, Defendants Lander deny generally and specifically each and every allegation contained in said paragraph.

43.    In answer paragraph 93 of the Fifth Cause of Action of the Complaint Defendants Lander admit the Loan Agreement contains a paragraph to this effect.

## SIXTH CAUSE OF ACTION

44.    In answer to paragraphs 94 of the Sixth Cause of Action of the Complaint Defendants Lander repeat and re-allege each and every admission, denial and allegation to paragraphs 1 through 93 of the Complaint and incorporate the same by this reference as though more fully set forth at length herein.

45.    In answer paragraph 95 of the Fifth Cause of Action of the Complaint, Defendants Lander deny generally and specifically each and every allegation contained in said paragraph and the whole thereof.

46.    In answer to paragraph 96 of the Fifth Cause of Action of the Complaint, Defendants Lander a deny each and every allegation in this paragraph.

47.    In answer to paragraph 97 of the Sixth Cause of Action of the Complaint, Defendants Lander deny each and every allegation in this paragraph.

48.    In answer to paragraph 98 of the Sixth Cause of Action of the Complaint, Defendants Lander admit Guarantors signed the Completion Guarantee Agreement (Exhibit "9").

SECOND AMENDED VERIFIED ANSWER TO COMPLAINT

Said Agreement is the best evidence of what it means and they deny the meaning attributed to it in paragraph 98.

49. In answer paragraphs 99 and 100 of the Sixth Cause of Action of the Complaint, Defendants Lander deny generally and specifically each and every allegation contained in said paragraph and the whole thereof.

50. In answer to paragraph 101 of the Sixth Cause of Action of the Complaint, Defendants Lander deny generally and specifically each and every remaining allegation contained in said paragraph and the whole thereof.

51. In answer to paragraph 102 of the Sixth Cause of Action of the Complaint, Defendants Lander deny the allegations of said paragraph.

52. In answer paragraph 103 of the Sixth Cause of Action of the Complaint Defendants Lander admit the Loan Agreement contains a paragraph to this effect.

## SEVENTH CAUSE OF ACTION

53. In answer to paragraph 104 of the Seventh Cause of Action of the Complaint Defendants Lander repeat and re-allege each and every admission, denial and allegation to paragraphs 1 through 103 of the Complaint and incorporate the same by this reference as though more fully set forth at length herein.

54. In answer paragraphs 105, 106, 107, 108, 109, 110, and 111 of the Seventh Cause of Action of the Complaint, Defendants Lander deny generally and specifically each and every allegation contained in said paragraphs and the whole thereof.

55. In answer paragraph 112 of the Seventh Cause of Action of the Complaint, Defendants Lander lack information sufficient to form a belief upon which to admit or deny the allegations of said paragraph and based on such lack of information and belief, deny generally and specifically each and every allegation contained in said paragraph and the whole thereof. Further Defendants Lander allege that the Loan Agreement is the best evidence as to what Defendants or either of them agreed to, and not as is alleged by Plaintiff.

SECOND AMENDED VERIFIED ANSWER TO COMPLAINT

047

56.     In answer to paragraph 113 of the Seventh Cause of Action, Defendants Lander deny that they misrepresented anything to anyone.  Except as expressly denied, Defendants Lander lack information sufficient to form a belief upon which to admit or deny the remaining allegations of said paragraph and based on such lack of information and belief, deny generally and specifically each and every remaining allegation contained in said paragraph and the whole thereof.

57.     In answer to paragraph 114 of the Seventh Cause of Action, Defendants Lander deny that they misrepresented anything to anyone.  Except as expressly denied, Defendants Lander lack information sufficient to form a belief upon which to admit or deny the remaining allegations of said paragraph and based on such lack of information and belief, deny generally and specifically each and every remaining allegation contained in said paragraph and the whole thereof.

58.     In answer to paragraph 115 of the Seventh Cause of Action, Defendants Lander deny that they misrepresented anything to anyone.  Except as expressly denied, Defendants Lander lack information sufficient to form a belief upon which to admit or deny the remaining allegations of said paragraph and based on such lack of information and belief, deny generally and specifically each and every remaining allegation contained in said paragraph and the whole thereof.

59.     In answer to paragraph 116 of the Seventh Cause of Action, Defendants Lander deny that they misrepresented anything to anyone and admit that without additional funding the Project cannot be completed.  Except as expressly admitted and denied, Defendants Lander lack information sufficient to form a belief upon which to admit or deny the remaining allegations of said paragraph and based on such lack of information and belief, deny generally and specifically each and every remaining allegation contained in said paragraph and the whole thereof.

60.     In answer to paragraphs 117, 118, and 119 of the Seventh Cause of Action of the Complaint, Defendants Lander deny generally and specifically each and every allegation contained in said paragraphs and the whole thereof. Defendants Lander are informed and believe

SECOND AMENDED VERIFIED ANSWER TO COMPLAINT

048

and based thereon allege, that Plaintiff basically relied on its own expertise and experience in
making the subject loan and in advancing progressive monies pursuant to its own evaluations.

### EIGHTH CAUSE OF ACTION

61.    In answer to paragraphs 120 of the Eighth Cause of Action of the Complaint,
Defendants Lander repeat and re-allege each and every admission, denial and allegation to
paragraphs 1 through 119 of the Complaint and incorporate the same by this reference as though
more fully set forth at length herein.

62.    In answer to paragraph 121 of the Eighth Cause of Action, Defendants Lander
deny that they provided or caused to be provided any inaccurate information to anyone.  Except
as expressly denied, Defendants Lander lack information sufficient to form a belief upon which
to admit or deny the remaining allegations of said paragraph and based on such lack of
information and belief, deny generally and specifically each and every remaining allegation
contained in said paragraph and the whole thereof.

63.    In answer to paragraph 122 of the Eighth Cause of Action, Defendants Lander
deny that they provided or caused to be provided any inaccurate information to anyone.  Except as
expressly denied, Defendants Lander lack information sufficient to form a belief upon which to
admit or deny the remaining allegations of said paragraph and based on such lack of information
and belief, deny generally and specifically each and every remaining allegation contained in said
paragraph and the whole thereof.

64.    In answer to paragraph 123, 124, 125, and 126 of the Eighth Cause of Action,
Defendants Lander deny that they misrepresented anything to anyone.  Except as expressly
denied, Defendants Lander lack information sufficient to form a belief upon which to admit or
deny the remaining allegations of said paragraphs and based on such lack of information and
belief, deny generally and specifically each and every remaining allegation contained in said
paragraphs and the whole thereof.

65.    In answer to paragraphs 126, 127, and 129 of the Eighth Cause of Action,
Defendants Lander deny generally and specifically each and every allegation contained in said

SECOND AMENDED VERIFIED ANSWER TO COMPLAINT

049

paragraphs and the whole thereof.  Defendants Lander are informed and believe and based thereon allege, that Plaintiff basically relied on its own expertise and experience in making the subject loan and in advancing progressive monies pursuant to its own evaluations.

66.    In answer to paragraphs 128 of the Eighth Cause of Action, Defendants Lander deny Lender has been, or will be damaged in any sum or amount, or has been damaged at all, inasmuch as the security in place will more than cover any alleged damages.  Except as expressly denied the remaining allegations are admitted.

## AFFIRMATIVE DEFENSES AS TO ALL CAUSES OF ACTION

**FIRST AFFIRMATIVE DEFENSE (Failure to State a Cause of Action)**

The Verified Complaint and each purported cause of action contained therein, fails to state facts sufficient to state a cause of action against Defendants Lander.

**SECOND AFFIRMATIVE DEFENSE (Uncertain Complaint and Causes of Action)**

The Verified Complaint and each and every cause of action contained therein, is uncertain in that it cannot be ascertained from the allegations of the Verified Complaint whether there are any facts constituting an actionable claim against Defendants Lander.

**THIRD AFFIRMATIVE DEFENSE (Laches)**

Any actions for equitable relief, including injunctive relief in this action are barred from any recovery against Defendants Lander by reason of the doctrine of laches and undue delay in giving notice to Defendants Lander of the matters alleged in the Verified Complaint and in commencing this litigation.

**FOURTH AFFIRMATIVE DEFENSE (Adequacy of remedy at law)**

The injury or damage suffered by Plaintiff, if any there be, would be adequately compensated in an action at law for damages as more than adequate security exists for the payment of any conceivable damages as pled in the Verified Complaint  Accordingly, Plaintiff has a complete and adequate remedy at law and is not entitled to seek equitable, including injunctive, relief and for the appointment of a Receiver as is applicable to the Verified Complaint and each of the causes of action contained therein.

SECOND AMENDED VERIFIED ANSWER TO COMPLAINT

**FIFTH AFFIRMATIVE DEFENSE (Estoppel)**

Defendants Lander are informed and believe and based thereon allege that, by conduct, representations and omissions of Plaintiff and/or that of its agents, representatives and/or that of any other persons and/or entities for whose conduct Plaintiff is vicariously and legally responsible, Plaintiff is equitably estopped to assert any claim for relief against Defendants Lander respecting the matters which are the subject of the Verified Complaint and each of the causes of action contained therein. Such conduct is manifested in Plaintiff's basically ignoring its own experience and expertise and in making the loan and including progressive disbursements under all the circumstances and documentation available to it as well as its own uninterrupted inspections.

**SIXTH AFFIRMATIVE DEFENSE (Failure to Mitigate)**

Defendants Lander are informed and believe and based thereon allege that Plaintiff and/or any others for whom Plaintiff is vicariously responsible failed, and continue to fail, to use reasonable care to reduce and minimize as much as reasonably possible, the damages, if any, sought because of the alleged acts, omissions of Defendants Lander, and that this failure on the part of Plaintiff was the direct and proximate cause of any and all damages, if any, sustained by Plaintiff, and Plaintiff's recovery, if any, against Defendants Lander should be barred or reduced according to law, up to and including the whole thereof as applicable to the Verified Complaint and each of the causes of action contained therein.  Such includes, but is not limited to Plaintiff refusing to reasonably advance more monies which were fully secured, in order to complete the project.

**SEVENTH AFFIRMATIVE DEFENSE (Insufficient Pleadings)**

Plaintiff has failed to plead her claims with sufficient particularity to Defendants Lander to allege all appropriate affirmative defenses and therefore, Defendants Lander reserve the right to allege additional affirmative defenses as needed.

**EIGHTH AFFIRMATIVE DEFENSE (Failure to Disclose Material Risks)**

At the inception the transaction, the Plaintiff represented to the Lander Defendants that the budget attached to the Loan Agreement as Exhibit "C" (see section 10.7) (the "Budget") had been

SECOND AMENDED VERIFIED ANSWER TO COMPLAINT

approved, and that the Plaintiff intended to advance the loan proceeds in accordance with this Budget. In fact, the Budget had not been approved by the Plaintiff, and the Plaintiff did not intend to make advances in accordance therewith. The Plaintiff failed to disclose these material facts to the Lander Defendants because it knew the Budget was at least ten million dollars short of what was needed to complete the construction project. If Lander had been aware of these facts, Lander would not have executed the Indemnity and Guaranty Agreement, because these undisclosed facts materially and in fact catastrophically increased the risk being imposed upon him as a guarantor. The Plaintiff had a duty to disclose these material facts to Lander, and its failure to do so exonerated the Indemnity And Guaranty Agreement.

**NINTH AFFIRMATIVE DEFENSE (Fraud)**

The material representations recited in the Eighth Affirmative Defense were false, the Plaintiff knew they were false when it made them, Lander reasonably and justifiably relied upon these misrepresentations, and he was damaged by the same. The Plaintiff's fraud and malfeasance bars recourse on Indemnity and Guaranty Agreement.

**TENTH AFFIRMATIVE DEFENSE (Fraud-in-the-execution)**

The material representations by the Plaintiff as recited in the Eighth Affirmative Defense so materially changed the contractual bargain in the Loan Agreement that Lander's assent to the obligations undertaken in the Indemnity and Guaranty Agreement was rendered void.

**ELEVENTH AFFIRMATIVE DEFENSE (Fraud-in-the-inducement)**

The facts stated in support of the Ninth and Tenth Affirmative Defenses also give rise to the defense of fraud in the inducement, rendering the Indemnity and Guaranty Agreement voidable via rescission, and Lander has in fact formally rescinded this contract. Accordingly, no relief can be granted to the Plaintiff based upon this writing.

**TWELFTH AFFIRMATIVE DEFENSE (Unclean Hands)**

Defendants Lander repeat and realleges the facts stated in the Fifth, Sixth, Eighth and Ninth Affirmative defenses as though more fully set forth herein. As a result of the acts and omissions

SECOND AMENDED VERIFIED ANSWER TO COMPLAINT

described in these defenses, Plaintiff has unclean hands and is therefore barred from asserting any claims against Defendants Lander as applicable to the Verified Complaint and each of the causes of action contained therein, including but not limited to the Fifth Cause of Action.

**THIRTEENTH AFFIRMATIVE DEFENSE (Civil Code § 3517)**

Pursuant to Civil Code Section 3517 "No one can take advantage of his own wrong." The facts stated in the Eighth and Ninth Affirmative Defenses coupled with the prohibition in this statute bar relief against Lander under the Indemnity and Guaranty Agreement.

**FOURTEENTH AFFIRMATIVE DEFENSE (Equitable Estoppel)**

The facts stated in the Eighth and Ninth Affirmative Defenses equitably estop the Plaintiff from obtaining any recovery from Dr. Lander on the basis of the Indemnity and Guaranty Agreement.

**FIFTEENTH AFFIRMATIVE DEFENSE (No recovery due under contract terms)**

Pursuant to the Indemnity and Guaranty Agreement, only debts that "arise under the Loan Documents" are guaranteed. The alleged debts that the Plaintiff is seeking to recover from Lander did not "arise under the Loan Documents", but through fraud, or pursuant to an undisclosed quasi contractual agreement between the Plaintiff and Glenroy Coachella, LLC that arose after the Indemnity And Guaranty Agreement was executed by Lander. Accordingly, no relief can be granted against Lander based upon this writing.

**SIXTEENTH AFFIRMATIVE DEFENSE (Offset for usurious interest charges, referral fee, and attorney fees charged by USRECH)**

Section 22100 of the California Financing Law (Cal.Fin.Code § 22000 et. seq.) (the "CFL") provides "No person shall engage in the business of a finance lender or broker without obtaining a license from the commissioner." Section 22100(c) of the CFL states that unlicensed persons are barred from engaging in any of the following activities: A. Participating in any loan negotiation; B. counseling or advising the borrower about a loan; C. participating in the preparation of any loan documents, including credit applications; D. contacting the licensee on behalf of the borrower other than to refer the borrower; E. gathering loan documentation from

SECOND AMENDED VERIFIED ANSWER TO COMPLAINT

1   the borrower or delivering the documentation to the licensee. F. communicating lending

2   decisions or inquiries to the borrower; G. participating in establishing any sales literature or

3   marketing materials; and H. obtaining the borrower's signature on documents. ("Licensed

4   Activities").

5       Calmwater has never been a licensed Broker or Lender under the CFL and it unlawfully

6   engaged in all of the foregoing Licensed Activities in 2017 and 2018 during the process of

7   arranging and closing the Loan. In fact, USRECH, which is an offshore passive entity controlled

8   by Calmwater, was only inserted into the Loan transaction by Calmwater at the proverbial last

9   minute. USRECH, which had no involvement in the Loan negotiations on became licensed

10  lender under the CFL in January 23, 2018.

11      USRECH paid Calmwater an origination fee of $366,000 upon the closing of the Loan

12  and charged this fee to the Borrowers. Section 1451(c) of the California Code of Regulation

13  expressly barred this payment. Section 22004(b) of the CFL provides "A licensee that pays

14  compensation to a person that is not licensed pursuant to this division in connection with a

15  referral for a commercial loan made by that licensee to a borrower shall be liable for any

16  misrepresentation made to that borrower in connection with that loan." This fee is also deemed

17  interest under California law.

18

19      If an entity, such as Calmwater or USRECH is not licensed under the CFL, or otherwise

20  exempt, it is subject to California's usury laws. The Loan was negotiated, arranged, and initially

21  offered by unlicensed broker/lender Calmwater. USRECH was only substituted into the Loan

22  transaction in April of 2018, as the nominal CFL licensed lender. Since Calmwater is USRECH's

23  manager, and in all respect controls USRECH, USRECH is deemed to have knowledge of all of

24  Calmwater's pre-Loan closing unlawful actions, and it is also deemed to be responsible for the

25  same, the real "lender" in this transaction is unlicensed Calmwater, not the  A licensed CFL

26  lender is not authorized to use an unlicensed broker to arrange a loan.

27

28

SECOND AMENDED VERIFIED ANSWER TO COMPLAINT

USRECH, having worked with Calmwater to evade the CFL's licensing provisions, should be denied the benefit of the usury exemption afforded under the CFL to licensed lenders who comply with the CFL.

The non-default interest rate charged by USRECH under the Loan from September 11, 2018 to May 7, 2019 was the sum of the following:

A. One month LIBOR, which averaged 2.02% in 2018, and 2.22% in 2019, plus 8.75%. (See § 1(e) Promissory Note);

B. Loan Commitment Fee of 1.5% of $24.4 million or $366,000 paid on the day the Loan was made; and

C. A Non-Usage Fee equal to 1% of the unadvanced part of the so-called "Future Advance Funding Amount", which sum was approximately $13.0 million throughout 2018.

Together, these charges equate to a non-default "interest rate" of approximately 13%, a rate well in excess of the 10% usury limit. The "Default Interest Rate" under the Loan was five percentage points higher than the nondefault rate (see Promissory Note § 4(b)), and this rate was charged by USRECH from at least May 7, 2019 (per default letter). Accordingly, USRECH charged and was paid interest in the 17% to 18% range from and after May 7, 2019, again a rate well in excess of the 10% usury limit.

The Loan was a loan or forbearance of money to the Borrowers. The interest paid by the Borrowers on the Loan exceeded the statutory maximum for nonexempt lenders. The Loan was absolutely repayable by the Borrowers. USRECH had willful intent when it entered into the usurious transaction provided for in the Loan. Lander is entitled to an offset against the principal balance claimed due on the Loan in the amount of the sum of the following: any interest charged on the Loan since the interest was facially usurious (thereby voiding the savings clause), or alternatively any interest charged and paid in excess of ten percent, the treble penalty provided for in Section 1916-3(a) of the Civil Code as to any usurious payments to the extent applicable, the referral fee paid to Calmwater and charged to the Loan, and all attorneys fees charged to collect these illegal charges.

SECOND AMENDED VERIFIED ANSWER TO COMPLAINT

**SEVENTEENTH AFFIRMATIVE DEFENSE (Waiver and release)**

The Plaintiff waived and released any and all claims against the Defendants Lander by, inter alia, executing a mutual release in favor of Gary Stiffelman and his "affiliates" in the Settlement and Release entered into by these parties. This release includes the Defendants Lander as affiliates of Stiffelman according to the Complaint and according to the positions asserted by the Plaintiff in a series of pleadings including its motion for summary adjudication.

**EIGHTEENTH AFFIRMATIVE DEFENSE (Offset for damages arising from wrongful attachment)**.

The Plaintiff attached to Defendant Landers' assets pursuant to an attachment order and thereby damaged his reputation and business. This relief was secured by a false declaration. The Defendants Lander are entitled to offset all damages arising from this wrong against any claim asserted by the Plaintiff.

**RESERVATION OF ADDITIONAL AFFIRMATIVE DEFENSES**

Defendants Lander do not yet have sufficient knowledge or information upon which to form a belief as to whether they may have additional as yet unknown affirmative defenses.  Defendants Lander reserve the right to assert further affirmative defenses upon discovery of further information.

SECOND AMENDED VERIFIED ANSWER TO COMPLAINT

056

**WHEREFORE**, Defendants Lander pray for judgment against Plaintiff as follows:

**First Cause of Action:**

1)      For judgment against Plaintiff on its request for the Judicial Foreclosure sought in the First Cause of Action and that Plaintiff take nothing on the First Cause of Action;

2)      For dismissal of the First Cause of Action with prejudice and a determination that Plaintiff be awarded nothing thereon;

3)      For a declaration that Defendants Lander have no obligation to pay any sum or sums to Plaintiff, or undertake or avoid any action, on account of, or based upon, allegations contained in the First Cause of Action of the Verified Complaint;

4)      For an award to Defendants Lander of their costs and expenses herein;

5)      For such other and further relief that this Court deems just and proper in the premises.

**Second Cause of Action:**

1)      For judgment against Plaintiff on its request for specific performance sought in the Second Cause of Action and that Plaintiff take nothing thereon;

2)      For dismissal of the Second Cause of Action with prejudice and a determination that Plaintiff is entitled to no relief thereon;

3)      For a declaration that Defendants Lander have no obligation to pay any sum or sums to Plaintiff, or undertake or avoid any action, on account of, or based upon, allegations contained in the Second Cause of Action of the Verified Complaint;

4)      For a determination that Plaintiff has an adequate remedy at law for any claimed loss, if any were found to exist, and therefore is not entitled to any injunctive relief, including specific performance as alleged in the Second Cause of Action.

5)      For an award to Defendants Lander of their costs and expenses herein;

SECOND AMENDED VERIFIED ANSWER TO COMPLAINT

057

6)    For such other and further relief that this Court deems just and proper in the premises.

**Third Cause of Action:**

1)    For judgment against Plaintiff on its request for injunctive relief sought in the Third Cause of Action;

2)    For dismissal of the Third Cause of Action with prejudice and a determination that Plaintiff is entitled to no relief thereon;

3)    For a declaration that Defendants Lander have no obligation to pay any sum or sums to Plaintiff, or undertake or avoid any action, on account of, or based upon, allegations contained in the Third Cause of Action of the Verified Complaint;

4)    For a determination that Plaintiff has an adequate remedy at law for any claimed injury, if any were found to exist, and therefore is not entitled to any injunctive relief, including injunctive relief sought in the Third Cause of Action.

5)    For an award to Defendants Lander of their costs and expenses herein;

6)    For such other and further relief that this Court deems just and proper in the premises.

**Fourth Cause of Action:**

1)    For judgment against Plaintiff on its claim for breach of contract in the Fourth Cause of Action;

2)    For dismissal of the Fourth Cause of Action with prejudice and a determination that Plaintiff is entitled to no relief thereon;

3)    For a declaration that Defendants Lander have no obligation to pay any sum or sums to Plaintiff, or undertake or avoid any action, on account of, or based upon, allegations contained in the Fourth Cause of Action of the Verified Complaint;

4)    For an award to Defendants Lander of their costs and expenses herein;

5)    For an award to Defendants Lander for their reasonable attorneys' fees incurred herein;

SECOND AMENDED VERIFIED ANSWER TO COMPLAINT

6)    For such other and further relief that this Court deems just and proper in the premises.

**Fifth Cause of Action:**

1)    For judgment against Plaintiff on its claim for breach of indemnity and guaranty agreement in the Fifth Cause of Action;

2)    For dismissal of the Fifth Cause of Action with prejudice and a determination that Plaintiff is entitled to no relief thereon;

3)    For a declaration that Defendants Lander have no obligation to pay any sum or sums to Plaintiff, or undertake or avoid any action, on account of, or based upon, allegations contained in the Fifth Cause of Action of the Verified Complaint;

4)    For an award to Defendants Lander of their costs and expenses herein;

5)    For an award to Defendants Lander for their reasonable attorneys' fees incurred herein;

6)    For such other and further relief that this Court deems just and proper in the premises.

**Sixth Cause of Action:**

1)    For judgment against Plaintiff on its claim for breach of completion guaranty agreement in the Sixth Cause of Action;

2)    For dismissal of the Sixth Cause of Action with prejudice and a determination that Plaintiff is entitled to no relief thereon;

3)    For a declaration that Defendants Lander have no obligation to pay any sum or sums to Plaintiff, or undertake or avoid any action, on account of, or based upon, allegations contained in the Sixth Cause of Action of the Verified Complaint;

4)    For an award to Defendants Lander of their costs and expenses herein;

5)    For an award to Defendants Lander for their reasonable attorneys' fees incurred herein;

SECOND AMENDED VERIFIED ANSWER TO COMPLAINT

059

6)    For such other and further relief that this Court deems just and proper in the premises.

**Seventh Cause of Action:**

1)    For judgment against Plaintiff on its claim for fraud in inducement in the Seventh Cause of Action;

2)    For dismissal of the Seventh Cause of Action with prejudice and a determination that Plaintiff is entitled to no relief thereon;

3)    For a declaration that Defendants Lander have no obligation to pay any sum or sums to Plaintiff, or undertake or avoid any action, on account of, or based upon, allegations contained in the Seventh Cause of Action of the Verified Complaint;

4)    For an award to Defendants Lander of their costs and expenses herein;

5)    For such other and further relief that this Court deems just and proper in the premises.

**Eighth Cause of Action:**

1)    For judgment against Plaintiff on its claim for negligent misrepresentation in the Eighth Cause of Action;

2)    For dismissal of the Eighth Cause of Action with prejudice and a determination that Plaintiff is entitled to no relief thereon;

3)    For a declaration that Defendants Lander have no obligation to pay any sum or sums to Plaintiff, or undertake or avoid any action, on account of, or based upon, allegations contained in the Eighth Cause of Action of the Verified Complaint;

4)    For an award to Defendants Lander of their costs and expenses herein;

5)    For such other and further relief that this Court deems just and proper in the premises.

**As to all causes of action:**

1)    For attorney's fees and costs of suit incurred herein; and

2)    For such other relief as the Court deems just and proper.

Page **22** of **24**

SECOND AMENDED VERIFIED ANSWER TO COMPLAINT

060

1

2   Dated: May 1, 2023                OKEEFE & ASSOCIATES
                                      LAW CORPORATION, P.C.
3
                                        /s/ Sean A/ O'Keefe
4
                                      _____
5                                     Sean A. O'Keefe (SBN 122417)
                                      Attorneys for defendants, Elliot B. Lander
6                                     and Coachella Resort, LLC

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Page **23** of **24**

SECOND AMENDED VERIFIED ANSWER TO COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**VERIFICATION**

I, Elliot B. Lander, declare:

I am a defendant named in the above-captioned action and am an agent of Coachella Resort, LLC, a California limited liability company.

I have read the foregoing Answer and know the contents thereof. The matters set forth are true of my personal knowledge, except where identified as based on information and belief, in which instances I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at Palm Springs, California, on May 1st, 2023.

_____
Elliot B. Lander, individually and as
agent of Coachella Resort, LLC

Page **24** of 24

SECOND AMENDED VERIFIED ANSWER TO COMPLAINT

**PROOF OF SERVICE**
**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Orange, State of California. My business address is 26 Executive Park, Suite 250, CA 92614. On May 11, 2023, a copy of the following document was served as indicated below:

**SECOND AMENDED VERIFIED ANSWER TO COMPLAINT FOR: 1. JUDICIAL FORECLOSURE OF DEED OF TRUST; 2. SPECIFIC PERFORMANCE OF DEED OF TRUST; 3. INJUNCTIVE RELIEF; 4. BREACH OF CONTRACT; 5. BREACH OF INDEMNITY AND GUARANTY AGREEMENT; 6. BREACH OF COMPLETION GUARANTY AGREEMENT; 7. FRAUD IN INDUCEMENT; AND 8. NEGLIGENT MISREPRESENTATION.**

A copy of this document was served via First Class Mail, postage prepaid, care of the below address, on May 11, 2023:

Christopher O. Rivas
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA 90071-1514

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on May 11, 2023, Orange County, California.

_Sean O'Keefe_
_____
Sean A. O'Keefe

063

**EXHIBIT 3**

John A. Messina, Jr. (SBN 171148)
Evan L. Smith (SBN 101369)
Jeffrey J. Van Wick (SBN 330915)
MESSINA & HANKIN LLP
24910 Las Brisas Road, Suite 102
Murrieta, CA 92562
jmessina@messinahankinlaw.com
elsmith@messinahankinlaw.com
jvanwick@messinahankinlaw.com
Telephone: (951) 894-7332
Fax: (951) 346-3334

Sean A. O'Keefe (SBN 122417)
OKEEFE & ASSOCIATES LAW CORP., P.C.
26 Executive Park, Suite 250
Irvine, CA 92614
sokeefe@okeefelawcorporation.com
Telephone: (949) 334-4135
Fax: (949) 209-2625

Co-counsel to defendants Elliot B. Lander
and Coachella Resort, LLC, a California
limited liability company.

## SUPERIOR COURT OF THE STATE OF CALIFORNIA,

## COUNTY OF RIVERSIDE - SOUTHWEST JUSTICE CENTER

| | |
|---|---|
| U.S. REAL ESTATE CREDIT HOLDINGS III-A, LP, an Irish limited partnership,<br><br>Plaintiff,<br><br>v.<br><br>GLENROY COACHELLA, LLC, a Delaware limited liability company, et al.,<br><br>Defendants. | Case No: RIC1905743<br><br>**SECOND AMENDED VERIFIED ANSWER TO COMPLAINT FOR:**<br><br>**1. JUDICIAL FORECLOSURE OF DEED OF TRUST;**<br><br>**2. SPECIFIC PERFORMANCE OF DEED OF TRUST;**<br><br>**3. INJUNCTIVE RELIEF;**<br><br>**4. BREACH OF CONTRACT;**<br><br>**5. BREACH OF INDEMNITY AND GUARANTY AGREEMENT;**<br><br>**6. BREACH OF COMPLETION GUARANTY AGREEMENT;**<br><br>**7. FRAUD IN INDUCEMENT; AND**<br><br>**8. NEGLIGENT MISREPRESENTATION.** |

Defendants ELLIOT LANDER **("Lander")** AND COACHELLA RESORT, LLC, a California limited liability company **("Resort") (Jointly "Defendants Lander")** in answer to the Complaint on file, admit, deny and allege as follows:

**PARTIES ALLEGATIONS**

1.      In answer to paragraphs 1, 2, 3, 4, 8, 9, 10, 12, 13, 14, 18, and 19, of the Parties Allegations of the Complaint, Defendants Lander admit said paragraphs.

2.      In answer to paragraphs 5, 6, 7, 11, 15, 16 and 17 of Parties' Allegations, Defendants Lander lack information sufficient to form a belief upon which to admit or deny the allegations of said paragraphs and based on such lack of information and belief, deny generally and specifically each and every allegation contained in said paragraphs and the whole thereof.

3.      In answer to paragraph 20 of Parties Allegations, Defendants Lander admit that named contractors and material men have filed Mechanics liens against the subject project. Except as expressly admitted, Defendants Lander lack information sufficient to form a belief upon which to admit or deny the remaining allegations of said paragraph and based on such lack of information and belief, deny generally and specifically each and every remaining allegation contained in said paragraph and the whole thereof.

4.      In answer to paragraph 21 of Parties Allegations, Defendants Lander lack information sufficient to form a belief upon which to admit or deny the allegations of said paragraph and based on such lack of information and belief, deny generally and specifically each and every allegation contained in said paragraph and the whole thereof.

5.      In answer to paragraph 22 of Parties Allegations, Defendants Lander lack information sufficient to form a belief upon which to admit or deny the allegations of said paragraph and based on such lack of information and belief, deny generally and specifically each and every allegation contained in said paragraph and the whole thereof.

6.      In answer to paragraph 23 of Parties Allegations, Defendants Lander deny the allegations in said paragraph.

///

SECOND AMENDED VERIFIED ANSWER TO COMPLAINT

066

///

## THE LOAN DOCUMENTS

7.     In answer to paragraphs 24, 25, 26, 27, 28, 29, 30, 31, 32, 34, 35, 36, and 37 of the Loan Document allegations of the Complaint, Defendants Lander admit said paragraphs.

8.     In answer to paragraphs 33 and 38 of the Loan Document allegations, Defendants Lander deny generally and specifically each and every allegation contained in said paragraphs and the whole thereof.

## DEFENDANTS' OMISSIONS, CONCEALMENT AND DEFAULTS

9.     In answer to paragraphs 39, 40 and 42 of Defendants' Omissions, Concealment and Defaults allegations, Defendants Lander, deny generally and specifically each and every allegation contained in said paragraphs and the whole thereof.

10.     In answer to paragraphs 41 of the Defendants' Omissions, Concealment and Defaults allegations of the Complaint, Defendants Lander deny generally and specifically each and every allegation contained in said paragraph and the whole thereof based upon a lack of information and belief.

11.     In answer to paragraphs 43, 44, 45, 47, 48, 49, 50, 51 and 52, of Defendants' Omissions, Concealment and Defaults allegations of the Complaint, Defendants Lander lack information sufficient to form a belief upon which to admit or deny the allegations of said paragraphs and based on such lack of information and belief, deny generally and specifically each and every allegation contained in said paragraphs and the whole thereof.

12.     In answer to paragraph 46 of Defendants' Omissions, Concealment and Defaults allegations, Defendants Lander deny generally and specifically each and every allegation contained in said paragraph and the whole thereof, that Lender reasonably relied on Borrower's representations contained in Borrower's Budget which was incorporated into Exhibit C to the Loan Agreement, which contains the approved budget for the Project.  In this regard, Defendants Lander are informed and believe and based thereon allege, that Plaintiff had the experience and expertise and made its own evaluation as to the viability of the Project before making the subject

SECOND AMENDED VERIFIED ANSWER TO COMPLAINT

loan. If there were insufficient funds to complete the Project Plaintiff knew, or should have known such to exist.  Except as expressly admitted or alleged, Defendants Lander lack information sufficient to form a belief upon which to admit or deny the remaining allegations of said paragraph and based on such lack of information and belief, deny generally and specifically each and every remaining allegation contained in said paragraph and the whole thereof.

13.    In answer to paragraph 53 of Defendants' Omissions, Concealment and Defaults allegations, Defendants Lander deny each and every allegation based upon a lack of information or belief.

14.    In answer to paragraphs 54, 55, 56, 57, 58, and 59 of the Defendants' Omissions, Concealment and Defaults allegations, of the Complaint, Defendants Lander deny the allegations made in said paragraphs, subject to the following caveat: Defendants Lander do not dispute that Exhibits 13 through 15 are true and correct copies of the original.

## NEED FOR A RECEIVER

15.    In answer to paragraph 60 of Need For A Receiver allegations, Defendants Lander deny generally and specifically allegations that Borrower is not adequately maintaining and preserving the Property and deny there is an immediate risk of loss, theft, or damage to the Property and other assets of the Borrower located at the Property and deny the Property is irreparably impaired or that the value of the Property is damaged in any way. Defendants Lander lack information sufficient to form a belief upon which to admit or deny the remaining allegations of said paragraph and based on such lack of information and belief, deny generally and specifically each and every remaining allegation contained in said paragraph and the whole thereof, that Borrower is not paying its debts.  Except as expressly denied, Defendants Lander admit the remaining allegations of said paragraph.

16.    In answer to paragraph 61 of Need for a Receiver allegations, Defendants Lander, deny generally and specifically each and every allegation contained in said paragraph and the whole thereof.

SECOND AMENDED VERIFIED ANSWER TO COMPLAINT

17.     In answer to paragraph 62 of Need for a Receiver allegations, Defendants Lander, allege on information and belief that the property taxes are now paid, but deny information sufficient to form a belief upon which to admit or deny that material permits have been permitted to lapse. On information and belief Defendants Lander admit the remaining allegations of said Paragraph.

18.     In answer to paragraph 63 of Need for a Receiver allegations, Defendants Lander, Deny generally and specifically each and every allegation contained in said paragraph and the whole thereof.

19.     In answer to paragraph 64 of Need for A Receiver allegations, Defendants Lander admit said paragraph.

20.     In answer to paragraph 65 of Need for a Receiver allegations, Defendants Lander, Deny generally and specifically each and every allegation contained in said paragraph and the whole thereof.

## FIRST CAUSE OF ACTION

21.     In answer to paragraph 66 of the First Cause of Action of the Complaint, Defendants Lander repeat and re-allege each and every admission, denial and allegation to paragraphs 1 through 65 of the Complaint and incorporate the same by this reference as though more fully set forth at length herein.

22.     In answer to paragraphs 67 and 68, of the First Cause of Action of the Complaint Defendants Lander admit said paragraphs.

## SECOND CAUSE OF ACTION

23.     In answer to paragraph 69 of the Second Cause of Action of the Complaint, Defendants Lander repeat and re-allege each and every admission, denial and allegation to paragraphs 1 through 68 of the Complaint and incorporate the same by this reference as though more fully set forth at length herein.

SECOND AMENDED VERIFIED ANSWER TO COMPLAINT

069

24.     In answer to paragraphs 70 and 71 of the Second cause of Action of the Complaint, Defendants Lander deny generally and specifically each and every allegation contained in said paragraphs and the whole thereof

25.     In answer to paragraph 72 of the Second Cause of Action of the Complaint Defendants Lander admit the Loan Agreement contains a paragraph to this effect.

## THIRD CAUSE OF ACTION

26.     In answer to paragraph 73 of the Third Cause of Action of the Complaint, Defendants Lander repeat and re-allege each and every admission, denial and allegation to paragraphs 1 through 72 of the Complaint and incorporate the same by this reference as though more fully set forth at length herein.

27.     In answer paragraphs 74 and 76 of the Third Cause of Action of the Complaint Defendants Lander admit said paragraphs.

28.     In answer paragraph 75 of the Third Cause of Action of the Complaint Defendants Lander deny generally and specifically each and every allegation contained in said paragraph and the whole thereof and expressly allege that the value of the subject project far exceeds any damages that Plaintiff has or may incur until any judgment is entered.

## FOURTH CAUSE OF ACTION

29.     In answer to paragraphs 77 of the Fourth Cause of Action of the Complaint Defendants Lander repeat and re-allege each and every admission, denial and allegation to paragraphs 1 through 76 of the Complaint and incorporate the same by this reference as though more fully set forth at length herein.

30.     In answer paragraph 78 of the Fourth Cause of Action of the Complaint Defendants Lander deny generally and specifically each and every allegation contained in said paragraph and the whole thereof.

31.     In answer to paragraph 79 of the Fourth Cause of Action, Defendants Lander deny each and every allegation in paragraph 79.

SECOND AMENDED VERIFIED ANSWER TO COMPLAINT

32.    In answer to paragraph 80 of the Fourth Cause of Action, Defendants Lander admit that Plaintiff has declared that all sums secured by Deed of Trust are immediately payable under the Loan Documents. Except as expressly admitted, Defendants Lander lack information sufficient to form a belief upon which to admit or deny the remaining allegations of said paragraph and based on such lack of information and belief, deny generally and specifically each and every remaining allegation contained in said paragraph and the whole thereof.

33.    In answer to paragraph 81 of the Fourth Cause of Action, Defendants Lander deny generally and specifically each and every allegation contained in said paragraph.

34.    In answer paragraphs 82 of the Fourth Cause of Action of the Complaint Defendants Lander Defendants Lander deny generally and specifically each and every allegation contained in said paragraph. The Defendants Lander admit the allegations in paragraph 83 of the Complaint.

## FIFTH CAUSE OF ACTION

35.    In answer to paragraphs 84 of the Fifth Cause of Action of the Complaint Defendants Lander repeat and re-allege each and every admission, denial and allegation to paragraphs 1 through 83 of the Complaint and incorporate the same by this reference as though more fully set forth at length herein.

36.    In answer paragraph 85 of the Fifth Cause of Action of the Complaint Defendants Lander deny generally and specifically each and every allegation contained in said paragraph and the whole thereof.

37.    In answer to paragraph 86 of the Fifth Cause of Action of the Complaint, Defendants Lander deny each and every allegation in this paragraph.

38.    In answer to paragraph 87 of the Fifth Cause of Action of the Complaint, Defendants Lander deny each and every allegation in this paragraph.

39.    In answer to paragraph 88 of the Fifth Cause of Action of the Complaint, Defendants Lander admit Guarantors signed the indemnity and Loan Agreement (Exhibit "8").

SECOND AMENDED VERIFIED ANSWER TO COMPLAINT

071

1   Said Agreement is the best evidence of what it means and they deny the meaning attributed to it

2   in paragraph 88.

3          40.     In answer paragraphs 89 and 90 of the Fifth Cause of Action of the Complaint,

4   Defendants Lander deny generally and specifically each and every allegation contained in said

5   paragraph and the whole thereof.

6          41.     In answer to paragraph 91 of the Fifth Cause of Action of the Complaint,

7   Defendants Lander deny generally and specifically each and every allegation contained in said

8   paragraph.

9          42.     In answer to paragraph 92 of the Fifth Cause of Action of the Complaint,

10  Defendants Lander deny generally and specifically each and every allegation contained in said

11  paragraph.

12         43.     In answer paragraph 93 of the Fifth Cause of Action of the Complaint Defendants

13  Lander admit the Loan Agreement contains a paragraph to this effect.

14                              **SIXTH CAUSE OF ACTION**

15         44.     In answer to paragraphs 94 of the Sixth Cause of Action of the Complaint

16  Defendants Lander repeat and re-allege each and every admission, denial and allegation to

17  paragraphs 1 through 93 of the Complaint and incorporate the same by this reference as though

18  more fully set forth at length herein.

19         45.     In answer paragraph 95 of the Fifth Cause of Action of the Complaint, Defendants

20  Lander deny generally and specifically each and every allegation contained in said paragraph and

21  the whole thereof.

22         46.     In answer to paragraph 96 of the Fifth Cause of Action of the Complaint,

23  Defendants Lander a deny each and every allegation in this paragraph.

24         47.     In answer to paragraph 97 of the Sixth Cause of Action of the Complaint,

25  Defendants Lander deny each and every allegation in this paragraph.

26         48.     In answer to paragraph 98 of the Sixth Cause of Action of the Complaint,

27  Defendants Lander admit Guarantors signed the Completion Guarantee Agreement (Exhibit "9").

28

SECOND AMENDED VERIFIED ANSWER TO COMPLAINT

Said Agreement is the best evidence of what it means and they deny the meaning attributed to it in paragraph 98.

49.    In answer paragraphs 99 and 100 of the Sixth Cause of Action of the Complaint, Defendants Lander deny generally and specifically each and every allegation contained in said paragraph and the whole thereof.

50.    In answer to paragraph 101 of the Sixth Cause of Action of the Complaint, Defendants Lander deny generally and specifically each and every remaining allegation contained in said paragraph and the whole thereof.

51.    In answer to paragraph 102 of the Sixth Cause of Action of the Complaint, Defendants Lander deny the allegations of said paragraph.

52.    In answer paragraph 103 of the Sixth Cause of Action of the Complaint Defendants Lander admit the Loan Agreement contains a paragraph to this effect.

**SEVENTH CAUSE OF ACTION**

53.    In answer to paragraph 104 of the Seventh Cause of Action of the Complaint Defendants Lander repeat and re-allege each and every admission, denial and allegation to paragraphs 1 through 103 of the Complaint and incorporate the same by this reference as though more fully set forth at length herein.

54.    In answer paragraphs 105, 106, 107, 108, 109, 110, and 111 of the Seventh Cause of Action of the Complaint, Defendants Lander deny generally and specifically each and every allegation contained in said paragraphs and the whole thereof.

55.    In answer paragraph 112 of the Seventh Cause of Action of the Complaint, Defendants Lander lack information sufficient to form a belief upon which to admit or deny the allegations of said paragraph and based on such lack of information and belief, deny generally and specifically each and every allegation contained in said paragraph and the whole thereof. Further Defendants Lander allege that the Loan Agreement is the best evidence as to what Defendants or either of them agreed to, and not as is alleged by Plaintiff.

SECOND AMENDED VERIFIED ANSWER TO COMPLAINT

073

56. In answer to paragraph 113 of the Seventh Cause of Action, Defendants Lander deny that they misrepresented anything to anyone.  Except as expressly denied, Defendants Lander lack information sufficient to form a belief upon which to admit or deny the remaining allegations of said paragraph and based on such lack of information and belief, deny generally and specifically each and every remaining allegation contained in said paragraph and the whole thereof.

57. In answer to paragraph 114 of the Seventh Cause of Action, Defendants Lander deny that they misrepresented anything to anyone.  Except as expressly denied, Defendants Lander lack information sufficient to form a belief upon which to admit or deny the remaining allegations of said paragraph and based on such lack of information and belief, deny generally and specifically each and every remaining allegation contained in said paragraph and the whole thereof.

58. In answer to paragraph 115 of the Seventh Cause of Action, Defendants Lander deny that they misrepresented anything to anyone.  Except as expressly denied, Defendants Lander lack information sufficient to form a belief upon which to admit or deny the remaining allegations of said paragraph and based on such lack of information and belief, deny generally and specifically each and every remaining allegation contained in said paragraph and the whole thereof.

59. In answer to paragraph 116 of the Seventh Cause of Action, Defendants Lander deny that they misrepresented anything to anyone and admit that without additional funding the Project cannot be completed.  Except as expressly admitted and denied, Defendants Lander lack information sufficient to form a belief upon which to admit or deny the remaining allegations of said paragraph and based on such lack of information and belief, deny generally and specifically each and every remaining allegation contained in said paragraph and the whole thereof.

60. In answer to paragraphs 117, 118, and 119 of the Seventh Cause of Action of the Complaint, Defendants Lander deny generally and specifically each and every allegation contained in said paragraphs and the whole thereof. Defendants Lander are informed and believe

SECOND AMENDED VERIFIED ANSWER TO COMPLAINT

074

1   and based thereon allege, that Plaintiff basically relied on its own expertise and experience in

2   making the subject loan and in advancing progressive monies pursuant to its own evaluations.

3                          **EIGHTH CAUSE OF ACTION**

4          61.    In answer to paragraphs 120 of the Eighth Cause of Action of the Complaint,

5   Defendants Lander repeat and re-allege each and every admission, denial and allegation to

6   paragraphs 1 through 119 of the Complaint and incorporate the same by this reference as though

7   more fully set forth at length herein.

8          62.    In answer to paragraph 121 of the Eighth Cause of Action, Defendants Lander

9   deny that they provided or caused to be provided any inaccurate information to anyone.  Except

10  as expressly denied, Defendants Lander lack information sufficient to form a belief upon which

11  to admit or deny the remaining allegations of said paragraph and based on such lack of

12  information and belief, deny generally and specifically each and every remaining allegation

13  contained in said paragraph and the whole thereof.

14         63.    In answer to paragraph 122 of the Eighth Cause of Action, Defendants Lander

15  deny that they provided or caused to be provided any inaccurate information to anyone.  Except as

16  expressly denied, Defendants Lander lack information sufficient to form a belief upon which to

17  admit or deny the remaining allegations of said paragraph and based on such lack of information

18  and belief, deny generally and specifically each and every remaining allegation contained in said

19  paragraph and the whole thereof.

20         64.    In answer to paragraph 123, 124, 125, and 126 of the Eighth Cause of Action,

21  Defendants Lander deny that they misrepresented anything to anyone.  Except as expressly

22  denied, Defendants Lander lack information sufficient to form a belief upon which to admit or

23  deny the remaining allegations of said paragraphs and based on such lack of information and

24  belief, deny generally and specifically each and every remaining allegation contained in said

25  paragraphs and the whole thereof.

26         65.    In answer to paragraphs 126, 127, and 129 of the Eighth Cause of Action,

27  Defendants Lander deny generally and specifically each and every allegation contained in said

28

SECOND AMENDED VERIFIED ANSWER TO COMPLAINT

075

1  paragraphs and the whole thereof. Defendants Lander are informed and believe and based

2  thereon allege, that Plaintiff basically relied on its own expertise and experience in making the

3  subject loan and in advancing progressive monies pursuant to its own evaluations.

4       66.    In answer to paragraphs 128 of the Eighth Cause of Action, Defendants Lander

5  deny Lender has been, or will be damaged in any sum or amount, or has been damaged at all,

6  inasmuch as the security in place will more than cover any alleged damages. Except as expressly

7  denied the remaining allegations are admitted.

8              **AFFIRMATIVE DEFENSES AS TO ALL CAUSES OF ACTION**

9  **FIRST AFFIRMATIVE DEFENSE (Failure to State a Cause of Action)**

10  The Verified Complaint and each purported cause of action contained therein, fails to state facts

11  sufficient to state a cause of action against Defendants Lander.

12  **SECOND AFFIRMATIVE DEFENSE (Uncertain Complaint and Causes of Action)**

13  The Verified Complaint and each and every cause of action contained therein, is uncertain in that

14  it cannot be ascertained from the allegations of the Verified Complaint whether there are any

15  facts constituting an actionable claim against Defendants Lander.

16  **THIRD AFFIRMATIVE DEFENSE (Laches)**

17  Any actions for equitable relief, including injunctive relief in this action are barred from any

18  recovery against Defendants Lander by reason of the doctrine of laches and undue delay in

19  giving notice to Defendants Lander of the matters alleged in the Verified Complaint and in

20  commencing this litigation.

21  **FOURTH AFFIRMATIVE DEFENSE (Adequacy of remedy at law)**

22  The injury or damage suffered by Plaintiff, if any there be, would be adequately compensated in

23  an action at law for damages as more than adequate security exists for the payment of any

24  conceivable damages as pled in the Verified Complaint Accordingly, Plaintiff has a complete

25  and adequate remedy at law and is not entitled to seek equitable, including injunctive, relief and

26  for the appointment of a Receiver as is applicable to the Verified Complaint and each of the

27  causes of action contained therein.

28

SECOND AMENDED VERIFIED ANSWER TO COMPLAINT

076

**FIFTH AFFIRMATIVE DEFENSE (Estoppel)**

Defendants Lander are informed and believe and based thereon allege that, by conduct, representations and omissions of Plaintiff and/or that of its agents, representatives and/or that of any other persons and/or entities for whose conduct Plaintiff is vicariously and legally responsible, Plaintiff is equitably estopped to assert any claim for relief against Defendants Lander respecting the matters which are the subject of the Verified Complaint and each of the causes of action contained therein. Such conduct is manifested in Plaintiff's basically ignoring its own experience and expertise and in making the loan and including progressive disbursements under all the circumstances and documentation available to it as well as its own uninterrupted inspections.

**SIXTH AFFIRMATIVE DEFENSE (Failure to Mitigate)**

Defendants Lander are informed and believe and based thereon allege that Plaintiff and/or any others for whom Plaintiff is vicariously responsible failed, and continue to fail, to use reasonable care to reduce and minimize as much as reasonably possible, the damages, if any, sought because of the alleged acts, omissions of Defendants Lander, and that this failure on the part of Plaintiff was the direct and proximate cause of any and all damages, if any, sustained by Plaintiff, and Plaintiff's recovery, if any, against Defendants Lander should be barred or reduced according to law, up to and including the whole thereof as applicable to the Verified Complaint and each of the causes of action contained therein.  Such includes, but is not limited to Plaintiff refusing to reasonably advance more monies which were fully secured, in order to complete the project.

**SEVENTH AFFIRMATIVE DEFENSE (Insufficient Pleadings)**

Plaintiff has failed to plead her claims with sufficient particularity to Defendants Lander to allege all appropriate affirmative defenses and therefore, Defendants Lander reserve the right to allege additional affirmative defenses as needed.

**EIGHTH AFFIRMATIVE DEFENSE (Failure to Disclose Material Risks)**

At the inception the transaction, the Plaintiff represented to the Lander Defendants that the budget attached to the Loan Agreement as Exhibit "C" (see section 10.7) (the "Budget") had been

approved, and that the Plaintiff intended to advance the loan proceeds in accordance with this Budget. In fact, the Budget had not been approved by the Plaintiff, and the Plaintiff did not intend to make advances in accordance therewith. The Plaintiff failed to disclose these material facts to the Lander Defendants because it knew the Budget was at least ten million dollars short of what was needed to complete the construction project. If Lander had been aware of these facts, Lander would not have executed the Indemnity and Guaranty Agreement, because these undisclosed facts materially and in fact catastrophically increased the risk being imposed upon him as a guarantor. The Plaintiff had a duty to disclose these material facts to Lander, and its failure to do so exonerated the Indemnity And Guaranty Agreement.

**NINTH AFFIRMATIVE DEFENSE (Fraud)**

The material representations recited in the Eighth Affirmative Defense were false, the Plaintiff knew they were false when it made them, Lander reasonably and justifiably relied upon these misrepresentations, and he was damaged by the same. The Plaintiff's fraud and malfeasance bars recourse on Indemnity and Guaranty Agreement.

**TENTH AFFIRMATIVE DEFENSE (Fraud-in-the-execution)**

The material representations by the Plaintiff as recited in the Eighth Affirmative Defense so materially changed the contractual bargain in the Loan Agreement that Lander's assent to the obligations undertaken in the Indemnity and Guaranty Agreement was rendered void.

**ELEVENTH AFFIRMATIVE DEFENSE (Fraud-in-the-inducement)**

The facts stated in support of the Ninth and Tenth Affirmative Defenses also give rise to the defense of fraud in the inducement, rendering the Indemnity and Guaranty Agreement voidable via rescission, and Lander has in fact formally rescinded this contract. Accordingly, no relief can be granted to the Plaintiff based upon this writing.

**TWELFTH AFFIRMATIVE DEFENSE (Unclean Hands)**

Defendants Lander repeat and realleges the facts stated in the Fifth, Sixth, Eighth and Ninth Affirmative defenses as though more fully set forth herein. As a result of the acts and omissions

SECOND AMENDED VERIFIED ANSWER TO COMPLAINT

described in these defenses, Plaintiff has unclean hands and is therefore barred from asserting

any claims against Defendants Lander as applicable to the Verified Complaint and each of the

causes of action contained therein, including but not limited to the Fifth Cause of Action.

**THIRTEENTH AFFIRMATIVE DEFENSE (Civil Code § 3517)**

Pursuant to Civil Code Section 3517 "No one can take advantage of his own wrong." The facts

stated in the Eighth and Ninth Affirmative Defenses coupled with the prohibition in this statute

bar relief against Lander under the Indemnity and Guaranty Agreement.

**FOURTEENTH AFFIRMATIVE DEFENSE (Equitable Estoppel)**

The facts stated in the Eighth and Ninth Affirmative Defenses equitably estop the Plaintiff from

obtaining any recovery from Dr. Lander on the basis of the Indemnity and Guaranty Agreement.

**FIFTEENTH AFFIRMATIVE DEFENSE (No recovery due under contract terms)**

Pursuant to the Indemnity and Guaranty Agreement, only debts that "arise under the Loan

Documents" are guaranteed. The alleged debts that the Plaintiff is seeking to recover from Lander

did not "arise under the Loan Documents", but through fraud, or pursuant to an undisclosed quasi

contractual agreement between the Plaintiff and Glenroy Coachella, LLC that arose after the

Indemnity And Guaranty Agreement was executed by Lander. Accordingly, no relief can be

granted against Lander based upon this writing.

**SIXTEENTH AFFIRMATIVE DEFENSE (Offset for usurious interest charges, referral
fee, and attorney fees charged by USRECH)**

Section 22100 of the California Financing Law (Cal.Fin.Code § 22000 et. seq.) (the

"CFL") provides "No person shall engage in the business of a finance lender or broker without

obtaining a license from the commissioner." Section 22100(c) of the CFL states that unlicensed

persons are barred from engaging in any of the following activities: A. Participating in any loan

negotiation; B. counseling or advising the borrower about a loan; C. participating in the

preparation of any loan documents, including credit applications; D. contacting the licensee on

behalf of the borrower other than to refer the borrower; E. gathering loan documentation from

SECOND AMENDED VERIFIED ANSWER TO COMPLAINT

the borrower or delivering the documentation to the licensee. F. communicating lending decisions or inquiries to the borrower; G. participating in establishing any sales literature or marketing materials; and H. obtaining the borrower's signature on documents. ("Licensed Activities").

Calmwater has never been a licensed Broker or Lender under the CFL and it unlawfully engaged in all of the foregoing Licensed Activities in 2017 and 2018 during the process of arranging and closing the Loan. In fact, USRECH, which is an offshore passive entity controlled by Calmwater, was only inserted into the Loan transaction by Calmwater at the proverbial last minute. USRECH, which had no involvement in the Loan negotiations on became licensed lender under the CFL in January 23, 2018.

USRECH paid Calmwater an origination fee of $366,000 upon the closing of the Loan and charged this fee to the Borrowers. Section 1451(c) of the California Code of Regulation expressly barred this payment. Section 22004(b) of the CFL provides "A licensee that pays compensation to a person that is not licensed pursuant to this division in connection with a referral for a commercial loan made by that licensee to a borrower shall be liable for any misrepresentation made to that borrower in connection with that loan." This fee is also deemed interest under California law.

If an entity, such as Calmwater or USRECH is not licensed under the CFL, or otherwise exempt, it is subject to California's usury laws. The Loan was negotiated, arranged, and initially offered by unlicensed broker/lender Calmwater. USRECH was only substituted into the Loan transaction in April of 2018, as the nominal CFL licensed lender. Since Calmwater is USRECH's manager, and in all respect controls USRECH, USRECH is deemed to have knowledge of all of Calmwater's pre-Loan closing unlawful actions, and it is also deemed to be responsible for the same, the real "lender" in this transaction is unlicensed Calmwater, not the  A licensed CFL lender is not authorized to use an unlicensed broker to arrange a loan.

SECOND AMENDED VERIFIED ANSWER TO COMPLAINT

USRECH, having worked with Calmwater to evade the CFL's licensing provisions, should be denied the benefit of the usury exemption afforded under the CFL to licensed lenders who comply with the CFL.

The non-default interest rate charged by USRECH under the Loan from September 11, 2018 to May 7, 2019 was the sum of the following:

A. One month LIBOR, which averaged 2.02% in 2018, and 2.22% in 2019, plus 8.75%. (See § 1(e) Promissory Note);

B. Loan Commitment Fee of 1.5% of $24.4 million or $366,000 paid on the day the Loan was made; and

C. A Non-Usage Fee equal to 1% of the unadvanced part of the so-called "Future Advance Funding Amount", which sum was approximately $13.0 million throughout 2018.

Together, these charges equate to a non-default "interest rate" of approximately 13%, a rate well in excess of the 10% usury limit. The "Default Interest Rate" under the Loan was five percentage points higher than the nondefault rate (see Promissory Note § 4(b)), and this rate was charged by USRECH from at least May 7, 2019 (per default letter). Accordingly, USRECH charged and was paid interest in the 17% to 18% range from and after May 7, 2019, again a rate well in excess of the 10% usury limit.

The Loan was a loan or forbearance of money to the Borrowers. The interest paid by the Borrowers on the Loan exceeded the statutory maximum for nonexempt lenders. The Loan was absolutely repayable by the Borrowers. USRECH had willful intent when it entered into the usurious transaction provided for in the Loan. Lander is entitled to an offset against the principal balance claimed due on the Loan in the amount of the sum of the following: any interest charged on the Loan since the interest was facially usurious (thereby voiding the savings clause), or alternatively any interest charged and paid in excess of ten percent, the treble penalty provided for in Section 1916-3(a) of the Civil Code as to any usurious payments to the extent applicable, the referral fee paid to Calmwater and charged to the Loan, and all attorneys fees charged to collect these illegal charges.

SECOND AMENDED VERIFIED ANSWER TO COMPLAINT

081

1    **SEVENTEENTH AFFIRMATIVE DEFENSE (Waiver and release)**

2    The Plaintiff waived and released any and all claims against the Defendants Lander by,

3    <u>inter alia</u>, executing a mutual release in favor of Gary Stiffelman and his "affiliates" in the

4    Settlement and Release entered into by these parties. This release includes the Defendants

5    Lander as affiliates of Stiffelman according to the Complaint and according to the positions

6    asserted by the Plaintiff in a series of pleadings including its motion for summary adjudication.

7    **EIGHTEENTH AFFIRMATIVE DEFENSE (Offset for damages arising from wrongful**

8    **attachment)**.

9    The Plaintiff attached to Defendant Landers' assets pursuant to an attachment order and

10    thereby damaged his reputation and business. This relief was secured by a false declaration. The

11    Defendants Lander are entitled to offset all damages arising from this wrong against any claim

12    asserted by the Plaintiff.

13    <u>**RESERVATION OF ADDITIONAL AFFIRMATIVE DEFENSES**</u>

14    Defendants Lander do not yet have sufficient knowledge or information upon which to form a

15    belief as to whether they may have additional as yet unknown affirmative defenses.  Defendants

16    Lander reserve the right to assert further affirmative defenses upon discovery of further

17    information.

18

19

20

21

22

23

24

25

26

27

28

SECOND AMENDED VERIFIED ANSWER TO COMPLAINT

082

**WHEREFORE**, Defendants Lander pray for judgment against Plaintiff as follows:

**First Cause of Action:**

1)    For judgment against Plaintiff on its request for the Judicial Foreclosure sought in the First Cause of Action and that Plaintiff take nothing on the First Cause of Action;

2)    For dismissal of the First Cause of Action with prejudice and a determination that Plaintiff be awarded nothing thereon;

3)    For a declaration that Defendants Lander have no obligation to pay any sum or sums to Plaintiff, or undertake or avoid any action, on account of, or based upon, allegations contained in the First Cause of Action of the Verified Complaint;

4)    For an award to Defendants Lander of their costs and expenses herein;

5)    For such other and further relief that this Court deems just and proper in the premises.

**Second Cause of Action:**

1)    For judgment against Plaintiff on its request for specific performance sought in the Second Cause of Action and that Plaintiff take nothing thereon;

2)    For dismissal of the Second Cause of Action with prejudice and a determination that Plaintiff is entitled to no relief thereon;

3)    For a declaration that Defendants Lander have no obligation to pay any sum or sums to Plaintiff, or undertake or avoid any action, on account of, or based upon, allegations contained in the Second Cause of Action of the Verified Complaint;

4)    For a determination that Plaintiff has an adequate remedy at law for any claimed loss, if any were found to exist, and therefore is not entitled to any injunctive relief, including specific performance as alleged in the Second Cause of Action.

5)    For an award to Defendants Lander of their costs and expenses herein;

SECOND AMENDED VERIFIED ANSWER TO COMPLAINT

083

6)      For such other and further relief that this Court deems just and proper in the
premises.

**Third Cause of Action:**

1)      For judgment against Plaintiff on its request for injunctive relief sought in the
Third Cause of Action;

2)      For dismissal of the Third Cause of Action with prejudice and a determination
that Plaintiff is entitled to no relief thereon;

3)      For a declaration that Defendants Lander have no obligation to pay any sum or
sums to Plaintiff, or undertake or avoid any action, on account of, or based upon,
allegations contained in the Third Cause of Action of the Verified Complaint;

4)      For a determination that Plaintiff has an adequate remedy at law for any claimed
injury, if any were found to exist, and therefore is not entitled to any injunctive
relief, including injunctive relief sought in the Third Cause of Action.

5)      For an award to Defendants Lander of their costs and expenses herein;

6)      For such other and further relief that this Court deems just and proper in the
premises.

**Fourth Cause of Action:**

1)      For judgment against Plaintiff on its claim for breach of contract in the Fourth
Cause of Action;

2)      For dismissal of the Fourth Cause of Action with prejudice and a determination
that Plaintiff is entitled to no relief thereon;

3)      For a declaration that Defendants Lander have no obligation to pay any sum or
sums to Plaintiff, or undertake or avoid any action, on account of, or based upon,
allegations contained in the Fourth Cause of Action of the Verified Complaint;

4)      For an award to Defendants Lander of their costs and expenses herein;

5)      For an award to Defendants Lander for their reasonable attorneys' fees incurred
herein;

SECOND AMENDED VERIFIED ANSWER TO COMPLAINT

084

6)    For such other and further relief that this Court deems just and proper in the premises.

**Fifth Cause of Action:**

1)    For judgment against Plaintiff on its claim for breach of indemnity and guaranty agreement in the Fifth Cause of Action;

2)    For dismissal of the Fifth Cause of Action with prejudice and a determination that Plaintiff is entitled to no relief thereon;

3)    For a declaration that Defendants Lander have no obligation to pay any sum or sums to Plaintiff, or undertake or avoid any action, on account of, or based upon, allegations contained in the Fifth Cause of Action of the Verified Complaint;

4)    For an award to Defendants Lander of their costs and expenses herein;

5)    For an award to Defendants Lander for their reasonable attorneys' fees incurred herein;

6)    For such other and further relief that this Court deems just and proper in the premises.

**Sixth Cause of Action:**

1)    For judgment against Plaintiff on its claim for breach of completion guaranty agreement in the Sixth Cause of Action;

2)    For dismissal of the Sixth Cause of Action with prejudice and a determination that Plaintiff is entitled to no relief thereon;

3)    For a declaration that Defendants Lander have no obligation to pay any sum or sums to Plaintiff, or undertake or avoid any action, on account of, or based upon, allegations contained in the Sixth Cause of Action of the Verified Complaint;

4)    For an award to Defendants Lander of their costs and expenses herein;

5)    For an award to Defendants Lander for their reasonable attorneys' fees incurred herein;

SECOND AMENDED VERIFIED ANSWER TO COMPLAINT

085

6)      For such other and further relief that this Court deems just and proper in the premises.

**Seventh Cause of Action:**

1)      For judgment against Plaintiff on its claim for fraud in inducement in the Seventh Cause of Action;

2)      For dismissal of the Seventh Cause of Action with prejudice and a determination that Plaintiff is entitled to no relief thereon;

3)      For a declaration that Defendants Lander have no obligation to pay any sum or sums to Plaintiff, or undertake or avoid any action, on account of, or based upon, allegations contained in the Seventh Cause of Action of the Verified Complaint;

4)      For an award to Defendants Lander of their costs and expenses herein;

5)      For such other and further relief that this Court deems just and proper in the premises.

**Eighth Cause of Action:**

1)      For judgment against Plaintiff on its claim for negligent misrepresentation in the Eighth Cause of Action;

2)      For dismissal of the Eighth Cause of Action with prejudice and a determination that Plaintiff is entitled to no relief thereon;

3)      For a declaration that Defendants Lander have no obligation to pay any sum or sums to Plaintiff, or undertake or avoid any action, on account of, or based upon, allegations contained in the Eighth Cause of Action of the Verified Complaint;

4)      For an award to Defendants Lander of their costs and expenses herein;

5)      For such other and further relief that this Court deems just and proper in the premises.

**As to all causes of action:**

1)      For attorney's fees and costs of suit incurred herein; and

2)      For such other relief as the Court deems just and proper.

Page **22** of **24**

SECOND AMENDED VERIFIED ANSWER TO COMPLAINT

1

2    Dated: May 1, 2023                    OKEEFE & ASSOCIATES
                                          LAW CORPORATION, P.C.
3
                                           /s/ Sean A/ O'Keefe
4                                         _____
                                          Sean A. O'Keefe (SBN 122417)
5                                         Attorneys for defendants, Elliot B. Lander
                                          and Coachella Resort, LLC
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SECOND AMENDED VERIFIED ANSWER TO COMPLAINT

**VERIFICATION**

I, Elliot B. Lander, declare:

I am a defendant named in the above-captioned action and am an agent of Coachella Resort, LLC, a California limited liability company.

I have read the foregoing Answer and know the contents thereof. The matters set forth are true of my personal knowledge, except where identified as based on information and belief, in which instances I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at Palm Springs, California, on May 1st, 2023.

_____
Elliot B. Lander, individually and as
agent of Coachella Resort, LLC

Page **24** of 24

SECOND AMENDED VERIFIED ANSWER TO COMPLAINT

088

**PROOF OF SERVICE**
**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am

employed in the County of Orange, State of California. My business address is 26 Executive Park,

Suite 250, CA 92614. On May 11, 2023, a copy of the following document was served as indicated

below:

**SECOND AMENDED VERIFIED ANSWER TO COMPLAINT FOR: 1.
JUDICIAL FORECLOSURE OF DEED OF TRUST; 2. SPECIFIC
PERFORMANCE OF DEED OF TRUST; 3. INJUNCTIVE RELIEF; 4. BREACH
OF CONTRACT; 5. BREACH OF INDEMNITY AND GUARANTY
AGREEMENT; 6. BREACH OF COMPLETION GUARANTY AGREEMENT; 7.
FRAUD IN INDUCEMENT; AND 8. NEGLIGENT MISREPRESENTATION.**

A copy of this document was served via First Class Mail, postage prepaid, care of the below

address, on May 11, 2023:

Christopher O. Rivas
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA 90071-1514

I declare under penalty of perjury under the laws of the State of California that the

foregoing is true and correct.

Executed on May 11, 2023, Orange County, California.


_Sean O'Keefe_
_____
Sean A. O'Keefe

089

**EXHIBIT 4**

Electronically FILED by Superior Court of California, County of Riverside on 03/01/2023 04:40 PM
Case Number RIC1905743 0000050631657 - Marita C. Ford, Interim Executive Officer/Clerk of the Court By Jose Valdez, Clerk

JOHN A. MESSINA, JR. (SBN 171148)
EVAN L. SMITH (SBN 101369)
JEFFREY J. VAN WICK (SBN 330915)
MESSINA & HANKIN LLP
24910 Las Brisas Road, Suite 102
Murrieta, CA 92562
jmessina@messinahankinlaw.com
elsmith@messinahankinlaw.com
jvanwick@messinahankinlaw.com
Telephone: (951) 894-7332
Fax: (951) 346-3334

Attorneys for Defendants and/or Cross-complainants
FORCE RUBIN, LLC; FORCE RUBIN 2, LLC;
COACHELLA RESORTS, LLC; A. STUART RUBIN;
ELLIOT E. LANDER; and GLENROY COACHELLA HOLDINGS, LLC.

## SUPERIOR COURT OF CALIFORNIA

### COUNTY OF RIVERSIDE-SOUTHWEST JUSTICE CENTER

| | |
|---|---|
| U.S. REAL ESTATE CREDIT HOLDINGS III-A, L.P., an Irish limited partnership, <br><br> Plaintiff, <br><br> vs. <br><br> GLENROY COACHELLA, LLC, a Delaware limited liability company, et al., <br><br> Defendants. <br><br> FORCE RUBIN, LLC; FORCE RUBIN 2, LLC;  COACHELLA RESORTS, LLC; A. STUART RUBIN; ELLIOT E. LANDER; and GLENROY COACHELLA HOLDINGS, LLC, <br> Cross-complainants, <br> vs. <br><br> U.S. REAL ESTATE CREDIT HOLDINGS III-A, LP, an Irish limited partnership, CALMWATER ASSET MANAGEMENT, LLC, a Delaware limited liability company DBA Calmwater Capital, and ROES 1 through 50 inclusive, <br> Cross-defendants. | CASE NUMBER: RIC 1905743 <br><br> *(Assigned for all purposes to the Honorable Angel Bermudez , Dept. S-302)* <br><br> **THIRD AMENDED CROSS-COMPLAINT FOR:** <br><br> 1. Rescission of Loan Agreement, Restitution, and Damages; <br> 2. Rescission of Surety Agreements, Restitution, and Damages; <br> 3. Fraud in the Inception; <br> 4. False Promise; <br> 5. Negligent Misrepresentations; <br> 6. False Pretenses Theft; and <br> 7. Intentional Interference With Prospective Economic Advantage. <br><br> **JURY DEMAND** |

1   Force Rubin, LLC, Force Rubin 2, LLC, Coachella Resort, LLC, A. Stuart Rubin, and Elliot E.

2   Lander, each a defendant in this action, and Glenroy Coachella Holdings, LLC (collectively the "Cross-

3   complainants"), hereby allege as follows:

4   ## I. **INTRODUCTION**

5   1.   California through laws including the California Financing Law ("CFL", Finance Code §§

6   22000-22780.1) regulates the business of making business loans within the State.  The CFL imposes on

7   lenders licensed under it, and unlicensed actors who for compensation work with them in lending

8   transactions duties to not commit prohibited acts in connection with the lending process.  These duties

9   include prohibitions on making  a materially false or misleading statement or representation to a

10  prospective borrower about the terms or conditions of a prospective loan; engaging in any act in violation

11  of Section 17200 of the Business and Professions Code; or committing an act that constitutes fraud or

12  dishonest dealings.

13  2.   The CFL provides that a licensed lender that pays compensation to a person that is not licensed

14  pursuant to it in connection with a referral for a commercial loan made by that licensee to a borrower

15  shall be liable for any misrepresentation made to that borrower in connection with that loan.  The CFL

16  also prohibits unlicensed persons from participating in any loan negotiation; participating in the

17  preparation of any loan documents, including credit applications; gathering loan documentation from the

18  borrower or delivering the documentation to the lender licensee; communicating lending decisions or

19  inquiries to the borrower; participating in establishing any marketing materials; or obtaining the

20  borrower's signature on documents.

21  3.   As is alleged below, cross-defendants U.S. REAL ESTATE CREDIT HOLDINGS III-A, L.P.

22  ("USRECH"), a lender licensed under the CFL, in concert with the entity that created and controls it,

23  CALMWATER ASSET MANAGEMENT, LLC ("Calmwater"), which is not licensed under the CFL,

24  violated their aforesaid duties under the CFL in their successful effort to induce the borrowers and certain

25  of their principals to enter into a secured loan for their hotel development project in the City of

26  Coachella, California, and execute personal surety guarantees of that loan.  Had USRECH and

27

28

Calmwater honestly and not fraudulently performed their duties under the CFL, Cross-complainants

would not have signed those documents and been harmed, and this cross-action would not be necessary .

4. As alleged below, USRECH and Calmwater breached their duties under the CFL by, among

other actions, with fraudulent and dishonest intent concealing from Cross-complainants the material facts

known to them which if disclosed would have caused Cross-complainants to withdraw from the

transaction, including that the amount of the proposed loan would not be sufficient to fund the project,

and that USRECH and Calmwater had not actually approved a lendable budget adequate for the

development (which was an express condition precedent to making the loan).  As a result of the active

and intentional concealment of the material facts by USRECH and Calmwater, Cross-complainants

executed the loan and personal surety guarantee agreements, and have consequently suffered great

financial injuries for which they are hereby seeking to remedy.

5. The fraudulent and dishonest conduct of USRECH and Calmwater has continued during the

course of this action, as they have cynically, actively, and with fraudulent intent worked to conceal and

suppress from disclosure to Cross-complainants the material and detailed facts evidencing their fraud

long enough to prevent those facts from being pleaded with detailed specificity in this Third Amended

Cross Complaint within the 70 days period for leave to amend granted by the Court at the 12/21/2022

hearing on the demurrer to Cross-complainants' Second Amended Cross Complaint.

6. Among the reasons the Court granted Cross-complainants 70 days leave to amend their Third

Amended Cross-Complaint was that USRECH and Calmwater in response to a production demand by

cross-complainant Elliot Lander had produced over 11,000 separate files of electronically stored

information ("ESI") in a manner that did not comply with the discovery rules for production both

generally, and as specifically required for productions of ESI.  The Court directed the parties to work

together to effectuate the production of the ESI to Cross-complainants.

7. On 12/22/2022 Cross-complainants' attorneys participated in a conference call with counsel

for USRECH and Calmwater, and other parties, during which issues related to completion of the ESI

production by USRECH and Calmwater were discussed.  Several other calls and emails between counsel

did not result in the production by USRECH and Calmwater of ESI in either in the form or forms in

which it is ordinarily maintained or in a form that is reasonably usable as required by C.C.P. §

2031.280(d)(1).  Instead, the 11,000+ ESI files produced were intentionally converted from their original

formats into less useable .TIFF (Tag Image Format Files) files.  By so converting the files USRECH and

Calmwater have destroyed important information contained in the code of the files, thereby making it

difficult and time consuming for the recipient to review and categorize the files.  Conversion from the

original or native format to .TIFF also has made it difficult if not impossible to use automated ESI

management processes to review and analyze the information produced, and determine if emails are

missing from chains, or content was altered.  This alteration of the ESI required a great deal of work by

USRECH and Calmwater.  USRECH and Calmwater have the ability to produce the data in the original

or native format because the original production contained five native format email files, but thousands

of converted emails files now must be manually opened and inspected rather than processed in bulk.  The

unnecessary conversion of the format only destroyed relevant data, frustrates Cross-complainants' ability

to use the data, and therefore is not substantially compliant with the discovery request.  It has been done

for no other reasons than to suppress from disclosure to Cross-complainants the full information and facts

concerning the controversy now before the Court, and thereby prevent Cross-complainants from

obtaining those details of the fraud and dishonest dealings by USRECH and Calmwater for inclusion in

this Third Amended Cross-Complaint.

## II. PARTIES

8.  Cross-complainant Force Rubin, LLC is a Delaware limited liability company, doing business

in Riverside County, California ("Force Rubin"), and a defendant in this action.

9.  Cross-complainant Force Rubin 2, LLC is a Delaware limited liability company, doing

business in Riverside County, California ("Force Rubin 2"), and a defendant in this action.  Cross-

complainant Coachella Resort, LLC is a Delaware limited liability company, doing business in Riverside

County, California ("Coachella Resort"), and a defendant in this action.  Coachella Resort acquired its

minority interest in the Property and Project just a few days before loan closing, and is a passive investor.

10.  Cross-complainant A. Stuart Rubin ("Rubin") is an adult individual who resides in Los

Angeles County, California, and a defendant in this action.

11.  Cross-complainant Elliot E. Lander ("Lander") is an adult individual who resides in Riverside County, California, and a defendant in this action.  Lander is the beneficial equity owner in Coachella Resort, and is a minority passive investor.

12.  Cross-complainant Glenroy Coachella Holdings, LLC is a Delaware limited liability company, doing business in Los Angeles County, California, ("Glenroy Holdings"), and has not previously appeared in this action.

13.  The plaintiff and a cross-defendant in this action, USRECH, is an Irish limited partnership doing business in the State of California, with offices in Los Angeles County, holds California Finance Lender license number 60 DBO-79992, and is therefore subject to regulation under the California Financing Law ("CFL", Finance Code §§ 22000 – 22780.1).  Cross-complainants are informed and believe, and based thereon allege, that in connection with the subject matter of this action USRECH was and is with its consent managed and controlled by its Co-Cross-Defendant Calmwater, through and in concert with it performed the acts described and alleged in this Third Amended Cross-Complaint.

14.  Cross-defendant Calmwater Asset Management, LLC is a Delaware limited liability company doing business as Calmwater Capital, with offices in Los Angeles County. Calmwater is not licensed under the CFL, but is in some instances governed by its provisions.  Calmwater caused USRECH to be formed and capitalized, and at all times relevant to the causes of action alleged herein Calmwater has represented, managed, controlled, and dominated USRECH, in concert with whom it performed the acts described and alleged in this Third Amended Cross-Complaint.  Calmwater has not previously appeared in this action.

15. The true names and capacities, whether individual, corporate, or otherwise of the cross-defendants named in this Cross-Complaint as Roes 1 through 50, inclusive, are unknown to Cross-complainants. Cross-complainants are informed and believe, and on that basis allege, that each of said fictitiously named cross-defendants is liable to Cross-complainants on the causes of action herein alleged and/or asserts some interest, legal or equitable, in the subject matter of this action, and therefore Cross-complainants sue said cross-defendants by said fictitious names. Cross complainants will move to amend this Cross-Complaint when the true names and capacities of said fictitiously named cross-defendants

have been ascertained.  All allegations made in this Cross-complaint against USRECH and/or Calmwater are also alleged and made as to and against each said fictitiously named cross-defendant.

### III. <u>JURISDICTION AND VENUE</u>

16.  This Court has jurisdiction over all causes of action asserted in this Cross-Complaint pursuant to California Constitution, Article VI, § 10 and California Code of Civil Procedure § 410.10. The acts and omissions alleged herein were committed in the State of California, this is a civil action wherein the matter in controversy, exclusive of interest, exceeds $25,000, and this case is a cause not given by statute to other trial courts.

17.  Venue is proper in this Court pursuant to California Code of Civil Procedure §§ 428.10 to 428.20 and the unlawful conduct alleged herein relates to real property located in Riverside County, California.

### IV. <u>ORIGINS Of RESORT HOTEL PROJECT</u><br><u>AND CALMWATER'S DISHONEST FINANCING SCHEME</u>

18.  In 2017, Force Rubin, LLC, Force Rubin 2, LLC, and non-party, Glenroy Coachella, LLC ("Glenroy", of which cross-complainant Glenroy Coachella Holdings, LLC is the Sole Member) (together the "Developers"), owned approximately thirty-seven acres located at the Southwest corner of Avenue 48 and Van Buren in Coachella, California (the "Property"), as tenants-in-common. Beginning in or about 2007, and continuing through 2017 and into 2018, Developers invested over $ 15 million to acquire the Property and obtain entitlements necessary to proceed with development of a resort, and fund preliminary design and construction work.

19.  The Developers formulated a plan to develop the Property by commissioning the building of a luxury resort hotel and entertainment complex that included 250 guest rooms located in 51 individual prefabricated casita units (to be constructed offsite prior to installation), and a main hotel building (the "Project").  In furtherance of the development plan, Developers in or about February 2018, entered into a contract with Hilton hotels to brand, operate, and manage the hotel portion of the Project when complete. The entertainment portion of the project was intended to be exclusively managed by Gary Stiffelman

("Stiffelman"), an Entertainment lawyer who at that time was a managing member of Glenroy. The other individual member of the Developers group, Stuart Rubin ("Rubin") intended to be passive investor once the Project was completed, as he lacked the experience necessary to develop, construct, or operate a hotel. In early 2018 the Hilton contract was terminated, and a replacement contract was signed with ISG Indigo brand hotels.

20. In or about mid-2017, Developers engaged the services of architecture firm Carrier Johnson + Culture ("Carrier") to produce plans for the Project's common area buildings, site layout, restaurant, gym, and coordinate with the manufacturers of the pre-fabricated casitas.

21. In furtherance of the Project, Developers in 2017 sought to retain a General Contractor with significant experience in the construction of luxury hotels to provide general contracting services for the Project. During this process, Developers were introduced to Mr. Doug Wall ("Mr. Wall"), the President of Doug Wall Construction, Inc., a California corporation ("DWC"), which is a licensed General Contractor whose primary office is located in the Riverside County city of Bermuda Dunes.

22. Mr. Wall represented to Developers that he and DWC had extensive experience in providing contracting services for luxury hotel and hospitality developments similar to the Project, had favorable relationships with local subcontractors and trade contractors, and possessed the ability to prepare an accurate budget detailing all material construction costs associated with a luxury hotel project that would comply with the specifications common to the industry, including the build-out of both interior and exterior guest rooms.

23. Developers expressly informed Mr. Wall and DWC that if they were engaged as general contractors for the Project, Developers would be relying on their experience, expertise and skill to timely and competently complete Project, as Developers were not qualified or experienced themselves in the construction of luxury hotel projects.

24. On June 1, 2017, Developers entered into a contract with DWC, under which DWC undertook the duties of General Contractor for the Project, which included provision of design and construction work, coordination of the work of the Project designers including Carrier, creation of budgets and schedules, coordination of design documents and reporting of deficiencies in such

documents, on-site supervision, planning and sourcing of construction materials and pre-fabricated casitas to serve as detached guest rooms, reporting and correcting deviations, and retention of subcontractors.

25. Upon being engaged as General Contractor for the Project, DWC began site work, including constructing foundations for the prefabricated casitas, installation of certain utilities, and excavation and grading of the approximately 30 acre Project site, all of which was substantially completed by the end of January 2018.

26. In mid-2017, Developers engaged the services of George Smith Partners, Inc. ("GSP") a leading, national provider of capital market services to the commercial real estate industry to represent them in obtaining construction financing for the Project. Among the GSP executives working on the engagement were Managing Director & Principal Steve Bram, and Senior Vice President David R. Pascale, Jr.

27. DWC at Developers request prepared a Construction Budget ("First Budget") estimating and detailing the expected costs of completing the Project, for GSP and Developers to use in soliciting Project financing from lenders. DWC also prepared a proposed schedule for completion of the Project which set forth and delineated the various portions of the construction process, scheduled in chronological order with the estimated duration of each portion of the Project, and estimated the time needed for overall completion of the Project.

28. In August 2017 Stiffelman proposed to the other Developers that the plans for the Project needed to be upgraded to appeal to more upscale guests, which would entail changing the plans from a mixture of ground-up and prefabricated construction to fully ground up construction, a step which would also necessitate revising the architectural plans and performing additional site work including excavation and changes to in ground utilities. His suggestions for doing so were approved by the other Developers. These changes were discussed with DWC's Chief Estimator Bill Butler and Mr. Wall, who assured Developers the changes would not materially cost more than the then current estimate for a mixed construction project as set forth in the First Budget.

29. In and about August 2017 Developers terminated Carrier as architects for the Project, and hired KHA Architects-Kristi Hanson, Inc. ("KHA") to produce architectural plans for the Project as updated from partially prefabricated to fully ground up construction.

30. In or about August 2017, GSP introduced Developers to Calmwater Capital ("Calmwater" and/or "CW") and its Managing Principal, Larry Grantham ("Grantham"), who told Developers that as a member of CW's Executive and Investment Committees he was the key decision maker for Calmwater on lending decisions. Grantham did not disclose to Developers that Calmwater was not licensed under the CFL, and therefore was prohibited from making a loan to them, from participating in any loan negotiations, participating in the preparation of any loan documents, including credit applications, gathering loan documentation from them, or delivering the documentation to a CFL licensed lender.

31. During August and September 2017 the Developers and GSP personnel had several in person meetings with Grantham and other CW executives including Simond Lavian ("Lavian"), then CW's Director of Asset Management (Debt), Tristine Lim ("Lim"), Director of CW Underwriting, Huell Kim ("Kim"), then an Asset Manager with CW, and Paul Slider ("Slider"), then a Director of Underwriting at CW, at locations including CW's headquarters offices in Los Angeles to negotiate the parameters for a loan by CW to fund the Project. These meetings were supplemented by telephone calls and conferences. The culmination of these discussions was the issuance by CW of a detailed Term Sheet on CW letterhead addressed to Stuart Rubin dated September 8, 2017, detailing the terms of a proposed $ 20 million loan facility from CW or an unnamed affiliate for construction of the Project. Grantham signed the Term Sheet on behalf of CW. It was countersigned by Rubin on September 14, 2017. A true copy of the Term Sheet is attached hereto as Exhibit 2008, and incorporated by reference as if fully set forth herein.

32. In or about September 2017, CW engaged Marx Okubo Associates, Inc. ("Marx Okubo"), a national architectural and engineering consulting services company, to review code requirements, construction documents, and specifications proposed for the Project, and based on its review prepare a report for CW 's use in performing due diligence as to whether the Project satisfied underwriting requirements for making the proposed construction loan to fund its completion.

33. In mid-October 2017 Lim of CW Underwriting informed Developers that CW had retained Marx Okubo to review and advise it regarding the Project. Rubin advised DWC of those facts, and that it needed to cooperate with Marx Okubo, and provide it with pertinent information. DWC complied with Marx Okubo's initial document requests by email to Richard Milstead of Marx Okubo on October 25, 2017, with copies to other involved persons including Lim of CW.

34. In or about September 2017, Grantham, Lim, Kim, and Lavian of CW during a meeting informed Rubin and Stiffelman on behalf of Developers that before CW could finance the Project certain properties it then included would have to be removed in order to comply with Federal loan regulations. Developers agreed and complied with CW's requirement by spinning off those interests to another entity.

35. Over the months following September 2017, CW personnel including Slider, Lim, and Kim on numerous occasions visited the Project site and observed the construction work being done by DWC and subcontractors. On some of their visits the CW personnel were accompanied by Marx Okubo personnel. As a result of these visits CW remained apprised of the on the ground progress of Project construction, including of the ground up casita construction.

36. By an email dated October 30, 2017, to DWC, and copied to others including Marx Okubo and Developers, Lim stated CW wanted Marx Okubo to complete its review of the Project that week, and requested of DWC that it promptly provide some previously requested items, including a detailed construction budget and an anticipated project progress schedule. Cross-complainants are informed and believe, and based thereon allege, that DWC's responses to Lim's request included the provision of a copy of the First Budget it had prepared.

37. Calmwater and Marx Okubo, who each knew the scope of the Project had been changed to include only ground up construction elements, requested confirmation from the City of Coachella ("City") that it approved of the change in scope. By a letter addressed to CW and Marx Okubo dated December 7, 2017, the City confirmed that the change was acceptable, and that it would issue permits for the Project.

38. Based on information now known to them, Cross-complainants are informed and believe, and based thereon allege, that Marx Okubo's review identified several items that needed to be addressed by

CW before its underwriting due diligence could be completed, including provision of an updated construction budget. As a result, from October through December 2017, several meetings, telephone calls and conferences were held to address those items, which variously included Calmwater and its personnel Lim, Kim, and Grantham; Marx Okubo and its personnel including Milstead; Developers by Rubin and Stiffelman; DWC and Mr. Wall; GSP and its personnel Bram and Pascale; and other persons involved in construction and development of the Project.

39.  By an email to Calmwater and Marx Okubo dated December 26, 2017, Bram of GSP on behalf of Developers reaffirmed their desire to close the loan by January 15 or soon thereafter.  In furtherance of that goal, attached to the email for review by the Marx Okubo team were documents including a revised budget updated with details for the entirely ground up construction of the Project ("Construction Budget" or "DWC Budget") and copies of the major subcontracts for the construction of the casitas.

40.  As is addressed and alleged in greater detail below, Marx Okubo renewed its review of the Project and reported only to its client Calmwater that the Construction Budget prepared by DWC was so deficient that the project could not be completed at the proposed loan amount of $ 20 million. Calmwater intentionally did not disclose this information to Developers or Cross-complainants, despite being required to disclose it by California laws, including the CFL.

41.  Based on information now known to them, Cross-complainants are informed and believe, and based thereon allege, that in order to wrongfully enrich itself Calmwater has a history, pattern and practice of entering into secured construction project loans it knows are of insufficient amounts, that CW in connection with such loans obtains personal guarantees from the borrowers' principals, and then after closing those transactions declares the loans in default, forecloses on the collateral including real estate, and sues the principals involved on their guarantees to strip them of their personal assets (the "Scheme").

42.  As is addressed and alleged in greater detail below, Cross-complainants are informed and believe, and based thereon allege, that in or about March 2018, after receiving from Marx Okubo its updated report on the material deficiencies in the Construction Budget, Calmwater and its personnel including Grantham, Lim, and Kim did not as required by the CFL disclose that information to Cross-

complainants, or use it to properly perform loan underwriting for the Project, but instead decided to dishonestly, wrongfully, knowingly, and fraudulently conceal the information and deploy the Scheme against Cross-complainants.

43. Calmwater and USRECH's dishonest, knowing, designed, willful, and intentional fraud has left the Borrowers with, inter alia, millions in unpaid construction bills, a half-completed project, the expenses associated with a plethora of lawsuits filed by unpaid contractors, and severe reputational damage, and has thereby economically damaged Cross-complainants by taking from them their money, and real and personal property interests in the Property and the Project.

44. This action seeks a judgment against Calmwater and USRECH for both restitution and the damages caused by their concealment and suppression of material information from Cross-complaiants, breaches of their duties under the CFL, and breaches of contract, fraud, false pretenses theft, and intentional interference with prospective economic advantage, and for awards of punitive, special, and/or statutory treble damages as well.

## V. GENERAL ALLEGATIONS

45. At the times relevant to the allegations made herein the Borrowers held ownership interests in the thirty-seven-acre property located at the southeast corner of Avenue 48 and Van Buren Street, in Coachella, California (the "Property"), as tenants-in-common.

46. The Borrowers' individual ownership percentages in the Property on the date of loan closing and all subsequent times relevant to the allegations made herein were the following: Glenroy - 70.5%; Force Rubin - 21.2115%, Force Rubin 2 – 3.7885%, and Coachella Resort – 4.5% (the "TIC Interests").

47. At the times relevant to the allegations made herein Glenroy Holdings was the Sole Member and equity owner of Borrower Glenroy.

48. The Borrowers acquired the TIC Interests that collectively comprise the Property with the intent of constructing a luxury, branded, hotel facility on the Property that would include guest casitas, a pool area, an area for concerts and other amenities, and a parking lot (the "Project").

49.     Grantham on behalf of Calmwater did not express any concern regarding the Borrowers' lack of experience in hotel construction, but instead emphasized that its own experienced due diligence team would carefully assess the financial viability of the Project before it, or any of its captive financing sources such as USRECH, agreed to provide financing.  Grantham did not ever disclose to Borrowers or Sureties that Calmwater was not licensed under the CFL, and therefore was prohibited from making a loan to them, from participating in any loan negotiations, participating in the preparation of any loan documents, including credit applications, gathering loan documentation from them, or delivering the documentation to a CFL licensed lender.

50.     As a precondition to advancing financing for the construction of the Project, Calmwater required that the Borrowers provide to it a detailed construction budget itemizing every material cost that would have to be paid to complete the Project (the "Construction Budget").

51.     Calmwater further advised the Borrowers that it would only proceed with the financing if it received, reviewed in detail, and approved the Construction Budget as being adequate to complete the Project.

52.     DWC was selected as the Project's general contractor based on DWC's alleged experience in constructing hospitality improvements of the kind described in the Project's building plans, its allegedly favorable relationship with local subcontractors, *and its self-professed ability to prepare an accurate budget detailing all material construction costs associated with the Project* as required by Calmwater and USRECH.

53.     DWC's representations regarding its ability to prepare a detailed and accurate budget were particularly important to the Borrowers for the following reasons:

A. The beneficial owner of Coachella Resort, Lander, is a medical doctor who was a passive investor in the Project, with no experience in hotel development or construction;

B. Rubin, who controls Force Rubin, Force Rubin 2, and Glenroy Holdings has experience in commercial real estate construction, but no experience in the construction of a hotel from the ground up. Accordingly, Force Rubin, Force Rubin

2, Glenroy, and Glenroy Holdings were also entirely reliant upon DWC's expert advice in all construction matters related to the Project;

C. DWC's construction budget would potentially be submitted to a number of construction lenders as part of construction loan submissions and these submissions would according to proper loan underwriting procedures be rejected if the budget was found to be materially in error; and

D. If after the loan closed the DWC budget turned out to be materially in error, Rubin and Lander (together with Stiffelman who is currently not a party the "Sureties") would be called upon to make up any shortfalls, and they were not willing to assume this financial risk unless they had absolute confidence in the construction budget prepared by DWC for the Project.

54.    In accordance with Calmwater's requirements, DWC prepared a construction budget purportedly detailing all material costs associated with the completion of the Project dated November 11, 2017 (the "DWC Budget"). DWC represented to the Borrowers that the DWC Budget accurately detailed all of the costs necessary for the completion of the Project.

55.    Unbeknownst to the Borrowers and the Sureties, the DWC Budget massively and materially underestimated the construction costs, a fact which USRECH and Calmwater learned through their conduct of pre-closing Due Diligence, and failed to disclose to Cross-complainants, despite having duties under California law to do so.

56.    Had the Borrowers and the Sureties been made aware of the magnitude of the errors in the DWC Budget—facts well known to and concealed by Calmwater and USRECH before they closed the loan *without approving the DWC Budget as required by the Loan Agreement*—the Borrowers would never would have signed the Loan Agreement, and the Sureties would never have signed the Indemnity and Guarantee Agreement, nor the Completion Guaranty Agreement (Glenroy Coachella, California), both dated April 18, 2018 (the "Surety Agreements") drafted and presented to them by Calmwater and USRECH.

57.     The Loan Agreement presented to the Borrowers, Stiffelman, Rubin, and Lander by Calmwater for execution included the following explicit representation: USRECH would not advance any money to finance the construction of the Project unless USRECH reviewed *and approved* the construction budget beforehand. In fact, the defined term "Approved Budget" appears *over fifty* times in Loan Agreement.

58.     The term "Approved Budget" which in the Loan Agreement is referred to in several places as Exhibit C, was in fact the DWC Budget which was so designated, attached and incorporated into the Loan Agreement .

59.     The forty references to the term "Approved Budget" in the Loan Agreement establish the following facts:

A.  The loan transaction between USRECH and the Borrowers was predicated upon the existence of a USRECH reviewed and properly approved construction budget;

B.  No funds could be advanced under the Loan Agreement unless and until USRECH approved the construction budget; and

C.  No loan proceeds could be expended outside this "Approved Budget".

60.     The term "Approved Budget" in the Loan Agreement is defined in Section 10.06 as the combination of the following (with emphasis added):

> "the Construction Budget for the Property, if construction is ongoing, which shall not include any payment to Borrower or any Affiliate unless expressly approved by Lender, in writing, in its sole discretion, the Construction Budget approved as of the date hereof is attached hereto as **Exhibit** C, (b) an annual operating budget (the **"Operating Budget")** for the Property, which may include separate operating budgets for the Hotel and the Playground, and (c) an annual FF&E budget governing the purchase and replacement of furniture, fixtures and equipment at the Property, once approved by Lender in its discretion, the Construction Budget, the Operating Budget(s) and the FF&E Budget, shall be collectively referred to herein as the **"Approved Budget").**

61.     The Loan Agreement states in paragraph 10.06 (with emphasis added):

> **The Approved Budget <u>as of the date hereof</u> is attached hereto as Exhibit C**. Borrower shall cause the Property to be constructed, owned and operated in accordance with the Approved Budget attached hereto, and Borrower shall make no

changes to any the Approved Budget or portion thereof without the prior written consent of Lender, except as otherwise expressly permitted hereunder. The Approved Budget for the remainder of 2018 is attached as **Exhibit C** attached hereto.

62.    The defined term "Approved Budget" in the Loan Agreement specifically refers to the DWC Budget attached to the Loan Agreement as Exhibit C.

63.    The "Approved Budget" not only itemized all of the costs that USRECH agreed to pay to ensure the completion of the Project, it also listed the exact amount of the first draw that USRECH was agreeing to pay by signing the Loan Agreement: $7,737,175 (the "First Draw").

64.    Although prohibited by the CFL from doing so, Grantham on behalf of USRECH signed the Loan Agreement and induced the Borrowers to sign the contract through the representations made therein; all the while concealing from the Borrowers and Sureties that neither Calmwater or USRECH had approved the Approved Budget, did not intend to pay, and in fact never paid, the $7,737,175 First Draw as USRECH represented and agreed to in the Loan Agreement.

65.    Over a month *before* the Loan Agreement and the Indemnity Agreement were executed, Calmwater and USRECH ostensibly as part of their loan underwriting process presented Borrowers with a list of questions raised by Marx-Okubo regarding the Project.  Rubin on behalf of Borrowers promptly prepared detailed written responses to those questions and returned them to Calmwater and USRECH. Borrowers reasonably expected Calmwater and USRECH would forward those responses to Marx-Okubo for its use in preparing its final due diligence report to the those Lenders.

66.    The resulting report, which was clear, comprehensive, and detailed, established that the DWC Budget, which was later attached to the Loan Agreement as the "Approved Budget", was underfunded by more than 30% (the "Okubo Report"). Id. *Stated otherwise, the Okubo Report established that the construction of the Project was bound to fail if it proceeded based on the DWC Budget.*

67.    Although Calmwater and USRECH outwardly claimed to be relying on the DWC Budget for loan underwriting purposes, they secretly commissioned HVS Consulting and Valuation ("HVS") to appraise the Project as an ISG Indigo managed hotel.  HVS under cover of a letter addressed to David Magruder of USRECH dated March 26, 2018, delivered that appraisal which states that the total cost  to

complete construction of the Project as being $ 37,737,872, or more simply stated 75% more than the DWC Budgeted amount. As disclosure would have caused Borrowers and Sureties to withdraw from the loan transaction, Calmwater and USRECH intentionally concealed this information from Cross-complainants in violation of California laws requiring disclosure in order to make sure their Scheme would proceed.

68.    Calmwater and USRECH received the Okubo Report and understood its contents and importance well before the closing date, but in furtherance of their Scheme withheld the facts that they were proceeding in disregard of its contents and conclusions from the Borrowers and Sureties in violation of the duties imposed on USRECH as a licensed California Finance Lender by California Finance Code § 22161(a) to not knowingly misrepresent, circumvent, or conceal, through subterfuge or device, any material aspect or information regarding a transaction to which the person is a party.

69.    The Borrowers and the Sureties were unaware of the magnitude of the fatal deficiencies in the DWC Budget when they executed the Loan Agreement and the Surety Agreements, respectively.

70.    Not only were Calmwater and USRECH fully aware of the DWC Budget deficiencies, in recognition of the same Calmwater and USRECH never approved the Approved Budget, as required by the Loan Agreement, and never intended to advance the First Draw referenced in this budget.

71.    In February of 2021 the Borrowers and the Sureties first became aware of Calmwater and USRECH's fraud and non-disclosures regarding the Approved Budget. Had they been apprised of these facts before the Loan Agreement and Surety Agreements were executed, they never would have signed those contracts.

72.    The deficiencies in the DWC Budget/"Approved Budget" cited in the Okubo Report totaled between $ 21.8 million and $ 26 million.

73.    Collectively the deficiencies in the DWC Budget cited in the Okubo Report exceed *40% of the USRECH loan total*.

74.    Notwithstanding these facts and the mandate in the Loan Agreement requiring an "Approved Budget" *before* the contract was entered into, Calmwater and USRECH in furtherance of

their Scheme intentionally failed to disclose the magnitude of the budget shortfalls to the Borrowers and the Sureties, and USRECH never disclosed that it had never approved the DWC Budget/"Approved Budget" as required by California laws, the Loan Agreement, and as represented in the Loan Agreement.

75.    The intentional nature of the USRECH/Calmwater fraudulent Scheme is acknowledged in at least two emails from Calmwater to Rubin.[1] In the first email, dated April 27, 2018—*just one day after the Loan Agreement and Surety Agreements were executed*— Kim of Calmwater, states "we'll figure out the budget ***after** the first draw*."

76.    The statement in the April 27, 2018, email is directly contrary to the explicit representations and covenants in the Loan Agreement stating that the Approved Budget was in fact approved by Calmwater and USRECH as of April 26, 2018, the date the Loan Agreement was executed.

77.    In the second email dated May 21, 2018, less than thirty days after the Loan Agreement was executed, Kim on behalf of Calmwater and USRECH purported to express concern about the DWC Budget, as if Calmwater and USRECH were just discovering for the first time, that the budget was materially in error. In fact, Calmwater and USRECH knew the budget grossly underestimated the Project completion costs weeks before the parties entered into the Loan Agreement. Calmwater and USRECH also knew and concealed, despite their express representations to the contrary in the Loan Agreement, that they were not approving the DWC  Budget, and were not going to fund the loan advances in accordance therewith.

78.    The above-referenced emails establish a) that Calmwater and USRECH knew the DWC Budget substantially understated construction completion costs before the Loan Agreement and the Surety Agreements were executed; b) that Calmwater and USRECH did not approve, and never intended to approve the DWC Budget; and c) that Calmwater and USRECH never intended to advance the agreed upon loan proceeds to the Borrowers because this would have required approval of the deficient DWC Budget. Collectively these facts yield one conclusion: Calmwater and USRECH knew the Project was destined to fail due to underfunding well before entering into the Loan Agreement, and they concealed

---

[1] Undoubtedly, far more admissions will be obtained in discovery. ,

these facts in furtherance of their Scheme which required that the Project fail so they could declare the Loan in default, execute on their collateral, and move to seize the Sureties personal assets by enforcement of their guarantees.

79.    After the Loan Agreement was executed, USRECH both delayed making, and short-funded the First Draw due under the loan by $4.5 million, despite the fact that this draw was approved in the supposedly Approved Budget attached to the Loan Agreement as of the date it was executed. This material breach of the Loan Agreement doomed construction of the Borrowers' Project. By the end of 2018, construction was at a standstill, with Calmwater and USRECH refusing to fund the remaining $ 5 million of loan proceeds. This disaster was caused by the misrepresentations and false promises that Calmwater and USRECH made in the Loan Agreement in furtherance of their Scheme, and materially enabled by their concealment of facts and other violations of their duties under the CFL.

80.    In 2019, having breached the Loan Agreement <u>ab initio</u>, USRECH sought to profit from its own wrongdoing by filing a foreclosure action, which it double-tracked by also pursuing a non-judicial foreclosure.

81.    When the Borrowers attempted by reasonable efforts to rid themselves of this fraudulent loan through a refinancing, Calmwater and USRECH compounded their wrongdoing by refusing to give the Borrowers a valid payoff figure.

82.    After Calmwater and USRECH materially breached the terms of the Loan Agreement as more fully described in the First and Second Causes of Action, the Borrowers attempted rid themselves of their destructive lender by refinancing USRECH's debt position through what is commonly known as the EB-5 Program.

83.    The EB-5 Program is a USCIS (United States Citizenship and Immigration Services) employment-based visa program that allows foreign investors to gain permanent residency in the United States through a $500,000–$1,000,000 investment in a new commercial enterprise that creates at least 10 full-time jobs.

84. Pursuant to 9.9(d) of the Loan Agreement, the Borrowers had the right to raise funds through the sale of equity interests in the Borrowers, or a successor entity, through the EB-5 Program, subject to USRECH's consent. However, such consent could not be unreasonably withheld.

85. In accordance with this financing right, the Borrowers expended over $ 700,000.00 preparing an EB-5 offering that would have raised sufficient funds to refinance USRECH's loan position.

86. When the Borrowers requested that USRECH consent to this refinancing, and withdraw the notice of default that it recorded against the Property (the "NOD"), USRECH unreasonably refused, even though its lien against the Property was fully perfected, and would have remained so if the NOD had been withdrawn.

87. As USRECH had materially breached the Loan Agreement first, and in fact breached it ab initio, the Borrowers were not required to comply with the Loan Agreement until USRECH cured these breaches, which in fact it never did. Accordingly, USRECH was not only required to withdraw the NOD, but its recording of the NOD was barred under California law, because it was USRECH, not the Borrowers who were in default under the terms of the Loan Agreement.

88. USRECH's recording of the NOD, and its refusal to withdraw the NOD and consent to the refinancing proposed by the Borrowers under the EB-5 Program, were additional material breaches of the terms of the Loan Agreement in furtherance of its Scheme, and acts prohibited by the CFL.

89. By its actions and misconduct as alleged in the paragraphs above, USRECH and Calmwater have violated the duties imposed under Cal. Finance Code § 21161(a) to not commit any act that constitutes fraud or dishonest dealings.

90. Calmwater and USRECH's fraud and dishonest dealings ultimately forced Glenroy, the Borrower holding the largest ownership interest in the Property, to file a Chapter 11 petition in the United States Bankruptcy Court for the Central District of California on February 15, 2021, in order to protect its interests in the Property and the Project from loss by foreclosure. Glenroy's case remains pending as bankruptcy case no. 2:21-BK-11188 BB (the "Bankruptcy Case").

91.  Calmwater, and its executives Grantham, Lavian, Strider, Lim, and Kim in violation of California laws do not have California Finance Lender licenses, yet they regularly willfully engage in the business of making commercial loans, including the one at issue in this action and cross-action which they negotiated, arranged, and then placed with Calmwater's controlled affiliate USRECH in violation of the CFL.

## VI. FIRST CAUSE OF ACTION

### (Against USRECH for Rescission of Loan Agreement, Restitution, and Damages)

92.    The Cross-complainants incorporate by reference and re-allege each and every allegation contained in Paragraphs 1 through 91, inclusive, as though fully set forth herein.

93.    The Loan Agreement was a binding contract between the Borrowers and USRECH.

94.    The Borrowers fully performed under the terms of the Loan Agreement prior to its breach by USRECH.

95.    By the presentation of the Loan Agreement to Borrowers for execution, and having it signed by Grantham, Calmwater and USRECH represented to the Borrowers and the Sureties that the DWC Budget attached to it as Exhibit C was approved by Calmwater and USRECH, and that they were entering into a legitimate loan transaction.

96.    In the Loan Agreement, Calmwater and USRECH promised to fund the costs listed in the DWC Budget.

97.    In the Loan Agreement, Calmwater and USRECH promised to fully fund the First Draw listed in the DWC Budget.

98.    Calmwater and USRECH wrongfully concealed from Borrowers and Sureties the fact that the DWC Budget had not been approved as represented in the Loan Agreement.

99.    After the Loan Agreement was entered into, USRECH failed and refused to advance funds in accordance with the DWC Budget.

100.    After the Loan Agreement was entered into USRECH failed and refused to fund the First Draw as promised in the Loan Agreement.

101.    USRECH breached the Loan Agreement.

102.   USRECH's breach of the Loan Agreement has directly and proximately caused the Cross-complainants to suffer compensable damages in an amount not less than $ 52,000,000.00.

103.   USRECH's breach of the terms of the Loan Agreement as set forth in the First Cause of Action above breached the implied covenant of good faith and fair dealing in the Loan Agreement by interfering with the Cross-complainants' right to receive the benefits they bargained for under it.

104.   As a result of USRECH's breaches of the terms of the Loan Agreement Borrowers did not receive the consideration they had bargained for thereunder.

105.   As empowered to do by USRECH's multiple breaches of the Loan Agreement, and other wrongdoing alleged above, on May 14, 2021, Force Rubin, LLC served on USRECH, its attorneys, and Stewart Title of California, Inc. a Notice of Rescission of the Loan Agreement and each and every Loan Document listed on Exhibit B.I thereto, including without limitation *DEED OF TRUST, SECURITY AGREEMENT, FINANCING STATEMENT AND FIXTURE FILING*, which was recorded in the official records of the County of Riverside, California on 04/26/2018 as DOC# 2018-0162476, a true copy of which notice is attached hereto as Exhibit "2001", and incorporated by reference as if fully set forth herein.

106.   As empowered to do by USRECH's multiple breaches of the Loan Agreement, and other wrongdoing alleged above, on May 14, 2021, Force Rubin 2, LLC served on USRECH, its attorneys, and Stewart Title of California, Inc. a Notice of Rescission of the Loan Agreement and each and every Loan Document listed on Exhibit B.I thereto, including without limitation *DEED OF TRUST, SECURITY AGREEMENT, FINANCING STATEMENT AND FIXTURE FILING*, which was recorded in the official records of the County of Riverside, California on 04/26/2018 as DOC# 2018-0162476, a true copy of which notice is attached hereto as Exhibit "2002", and incorporated by reference as if fully set forth herein.

107.   As empowered to do by USRECH's multiple breaches of the Loan Agreement, and other wrongdoing alleged above, on May 14, 2021, Coachella Resort, LLC served on USRECH, its attorneys, and Stewart Title of California, Inc. a Notice of Rescission of the Loan Agreement and each and every Loan Document listed on Exhibit B.I thereto, including without limitation *DEED OF TRUST,*

*SECURITY AGREEMENT, FINANCING STATEMENT AND FIXTURE FILING*, which was recorded in the official records of the County of Riverside, California on 04/26/2018 as DOC# 2018-0162476, a true copy of which notice is attached hereto as Exhibit "2003", and incorporated by reference as if fully set forth herein.

## VII. <u>SECOND CAUSE OF ACTION</u>

### (Against USRECH for Rescission of Surety Agreements, Restitution, and Damages)

108.    The Cross-complainants incorporate by reference and re-allege each and every allegation contained in Paragraphs 1 through 107, inclusive, as though fully set forth herein.

109.    The Loan Agreement was a binding contract between the Borrowers and USRECH.

110.    The Borrowers fully performed under the terms of the Loan Agreement prior to its breach by USRECH.

111.    By the presentation of the Loan Agreement to Borrowers for execution, and having it signed by Grantham, Calmwater and USRECH knowingly, willfully, and falsely represented to the Borrowers and the Sureties that the DWC Budget attached to it as Exhibit C was approved by Calmwater and USRECH, and that they were entering into a legitimate loan transaction.  In violation of their duties under California to disclose to the Sureties the true facts as to the risks they were undertaking, Calmwater and USRECH presented to them for execution the Surety Agreements, which include provisions unlawful under California law purporting to waive the Sureties' rights to their defenses of non-disclosure in the event Calmwater and USRECH sought to enforce the Surety Agreements.

112.    Calmwater and USRECH did not approve the DWC Budget as represented in the Loan Agreement.

113.    Calmwater and USRECH concealed the contents of the Okubo Report from the Sureties in order to induce them to sign the Surety Agreements.

114.    In justifiable reliance on the false representations of Calmwater and USRECH that the DWC Budget had been approved the Sureties each signed the Surety Agreements.

115.     After the Loan Agreement and Surety Agreements were entered into, USRECH failed and refused to advance funds in accordance with the DWC Budget.

116.     After the Loan Agreement was entered into USRECH failed and refused to fund the First Draw as promised in the Loan Agreement.

117.     USRECH breached the Loan Agreement.

118.     USRECH has sought to knowingly, designedly, and by fraudulent means utilize the Surety Agreements  to defraud each of the Sureties of their money, real or personal property.

119.     USRECH's breach of the Loan Agreement has directly and proximately caused the Cross-complainants to suffer compensable damages of not less than $ 52,000,000.00, including reasonably foreseeable attorneys' fees and costs to defend themselves in this action.

120.     USRECH's breach of the terms of the Loan Agreement as set forth in the First Cause of Action above breached the implied covenant of good faith and fair dealing in the Loan Agreement by interfering with the Cross-complainants' right to receive the benefits they bargained for under it.

121.     As a result of USRECH's breaches of the terms of the Loan Agreement Borrowers did not receive the consideration they had bargained for thereunder.

122.     As empowered to do by USRECH's multiple breaches of the Loan Agreement, and other wrongdoing alleged above, on May 13, 2021, Lander, for himself alone, served on USRECH, its attorneys, and Stewart Title of California, Inc. a Notice of Rescission of the *INDEMNITY AND GUARANTY AGREEMENT (Glenroy Coachella, California)* made as of April 26, 2018 by GARY STIFFELMAN, ELLIOT LANDER and A.STUART RUBIN in favor of U.S. REAL ESTATE CREDIT HOLDINGS III-A, L.P., an Irish limited partnership, a true copy of which notice is attached hereto as Exhibit "2004", and incorporated by reference as if fully set forth herein.

123.     As empowered to do by USRECH's multiple breaches of the Loan Agreement, and other wrongdoing alleged above, on May 13, 2021, Lander, for himself alone, served on USRECH, its attorneys, and Stewart Title of California, Inc. a Notice of Rescission of the *COMPLETION GUARANTY AGREEMENT (Glenroy Coachella, California)* made as of April 26, 2018 by GARY STIFFELMAN, ELLIOT LANDER and A.STUART RUBIN in favor of U.S. REAL ESTATE CREDIT

HOLDINGS III-A, L.P., an Irish limited partnership, a true copy of which notice is attached hereto as Exhibit "2005", and incorporated by reference as if fully set forth herein.

124.      As empowered to do by USRECH's multiple breaches of the Loan Agreement, and other wrongdoing alleged above, on May 13, 2021, Rubin, for himself alone, served on USRECH, its attorneys, and Stewart Title of California, Inc. a Notice of Rescission of the *INDEMNITY AND GUARANTY AGREEMENT (Glenroy Coachella, California)* made as of April 26, 2018 by GARY STIFFELMAN, ELLIOT LANDER and A.STUART RUBIN in favor of U.S. REAL ESTATE CREDIT HOLDINGS III-A, L.P., an Irish limited partnership, a true copy of which notice is attached hereto as Exhibit "2006", and incorporated by reference as if fully set forth herein.

125.      As empowered to do by USRECH's multiple breaches of the Loan Agreement, and other wrongdoing alleged above, on May 13, 2021, Rubin, for himself alone, served on USRECH, its attorneys, and Stewart Title of California, Inc. a Notice of Rescission of the *COMPLETION GUARANTY AGREEMENT (Glenroy Coachella, California)* made as of April 26, 2018 by GARY STIFFELMAN, ELLIOT LANDER and A.STUART RUBIN in favor of U.S. REAL ESTATE CREDIT HOLDINGS III-A, L.P., an Irish limited partnership, a true copy of which notice is attached hereto as Exhibit "2007", and incorporated by reference as if fully set forth herein.

## VIII. <u>THIRD CAUSE OF ACTION</u>

### (Fraud-In-The-Inception)

126.      The Cross-complainants incorporate by reference and re-allege each and every allegation contained in Paragraphs 1 through 125, inclusive, as though fully set forth herein.

127.      Calmwater and USRECH falsely represented to the Borrowers and the Sureties that the DWC Budget attached to the Loan Agreement as Exhibit C was in fact approved by Calmwater and USRECH.

128.      Calmwater and USRECH falsely represented to the Borrowers and the Sureties that USRECH intended to fund, and agreed to fund, the construction of the Project in accordance with the DWC Budget attached to the Loan Agreement as Exhibit C.

129.     By its presentation of the Loan Agreement and the Surety Agreements to Cross-complainants for execution, Calmwater and USRECH knowingly, willfully, and falsely represented to the Borrowers and the Sureties that USRECH intended to fund, and agreed to fund, the First Draw listed in the DWC Budget attached to the Loan Agreement as Exhibit C.

130.     In violation of their duties to disclose, Calmwater and USRECH concealed from the Borrowers and the Sureties USRECH's failure and refusal to approve the DWC Budget, USRECH's intent to refuse to fund the First Draw, and USRECH's knowledge of the fact that the DWC Budget substantially understated the Project's construction completion costs.

131.     Calmwater and USRECH concealed the material facts, and knew the above representations were false when they made them to the Borrowers and the Sureties.

132.     Calmwater and USRECH concealed the material facts, and made the above false representations to induce the Borrowers to enter into the Loan Agreement and to induce the Sureties to enter into the Surety Agreements.

133.     The Cross-complainants, in justifiable reliance upon Calmwater and USRECH's false representations, and their intentional concealment of the truth regarding the DWC Budget, to their detriment justifiably relied upon those representations and entered into the Loan Agreement in good faith.

134.     The Sureties, in justifiable reliance upon Calmwater and USRECH's false representations and their intentional concealment of the truth regarding the DWC Budget, to their detriment justifiably relied upon these representations and entered into the Surety Agreements in good faith.

135.     Calmwater and USRECH's false representations, and concealments of material facts, were made with a fraudulent and malicious intent, and with a conscious disregard of the Cross-complainants' rights.

136.     The Cross-complainants have been damaged by Calmwater and USRECH's fraud through, inter alia, the loss of their investment in the Project, through the costs and liabilities incurred in the form of unpaid contractor and subcontractor bills associated with the Project, and through the damage to their reputations in the community. The amounts of compensable damages so proximately caused by Calmwater and USRECH's wrongful acts shall be proved at trial to be not less than $ 52,000,000.00.

## IX. <u>FOURTH CAUSE OF ACTION</u>

### (False Promise)

137.     The Cross-complainants incorporate by reference and re-allege each and every allegation contained in Paragraphs 1 through 136, inclusive, as though fully set forth herein.

138.     In the Loan Agreement, Calmwater and USRECH represented to the Borrowers and the Sureties that the DWC Budget attached to the contract as Exhibit C was approved by Calmwater and USRECH.

139.     In the Loan Agreement, Calmwater and USRECH represented to the Borrowers and the Sureties that USRECH would fund the costs listed in the DWC Budget.

140.     In the Loan Agreement, Calmwater and USRECH represented to the Borrowers and the Sureties that USRECH would fully fund the First Draw listed in the DWC Budget attached to the contract.

141.     When Calmwater and USRECH made the foregoing promises, they consciously did so knowing USRECH had not approved the DWC Budget, USRECH did not intend to fund the costs listed in the DWC Budget, and USRECH did not intend to fully fund the First Draw listed in the DWC Budget.

142.     USRECH failed to fund the DWC Budget as promised in the Loan Agreement and USRECH did not fund the First Draw as promised in the Loan Agreement.

143.     The Cross-complainants reasonably and to their detriment justifiably relied upon Calmwater's and USRECH's promises when they entered into the Loan Agreement.

144.     The Sureties reasonably and to their detriment justifiably relied upon Calmwater's and USRECH's promises when they entered into the Surety Agreements.

145.     In reasonable and justifiable reliance upon the false promises that USRECH made in the Loan Agreement, the Cross-complainants incurred millions of dollars in construction costs and these costs were never funded for payment as agreed in the Loan Agreement.

146.     Calmwater and USRECH's false promises were made with fraud and malice, and with a conscious disregard of the Cross-complainants' rights.

147.    The Cross-complainants have been damaged by Calmwater and USRECH's fraud through the loss of their investment in the Project, through the costs and liabilities incurred in the form of unpaid contractor and subcontractor bills associated with the Project, and through the damage to their reputations in the community. The amounts of compensable damages so proximately caused by Calmwater and USRECH's wrongful acts shall be proved at trial to be not less than $ 52,000,000.00.

## X. FIFTH CAUSE OF ACTION

### (Negligent Misrepresentation)

148.    The Cross-complainants incorporate by reference and re-allege each and every allegation contained in Paragraphs 1 through 147, inclusive, as though fully set forth herein.

149.    When Calmwater and USRECH made the false representation and false promises more fully described in the Third and Fourth Causes of Action above they did not have reasonable grounds for believing these representations were true.

150.    The false representations made by Calmwater and USRECH more fully described in the Third and Fourth Causes of Action were made with the intent of inducing the Borrowers to rely upon the same.

151.    The Cross-complainants to their detriment justifiably relied upon the false representations and false promises made by Calmwater and USRECH more fully described in the Third and Fourth Causes of Action.

152.    The Cross-complainants were damaged by the false representations made by Calmwater and USRECH. The amounts of compensable damages so proximately caused by said false representation by Calmwater and USRECH shall be proved at trial to be not less than $ 52,000,000.00.

## XI. SIXTH CAUSE OF ACTION

### (False Pretenses Theft)

153.    The Cross-complainants incorporate by reference and re-allege each and every allegation contained in Paragraphs 1 through 152, inclusive, as though fully set forth herein.

154.    Cross-complainants  are informed and believe, and based thereon allege, that Grantham, Lavian, Lim, Kim, Calmwater and USRECH, and each of them, knowingly, designedly, and fraudulently,

under the false pretense of providing legitimate financing to Borrowers for the purpose of constructing the Project, obtained funds in the form of fees from the Loan proceeds which were Borrowers' property, and control of the assets composing the Property and the Project, in a manner constituting theft, which possession, control, and access they have wrongfully and fraudulently exploited to the detriment and harm of Borrowers and Coachella Holdings in violation of Penal Code §496(a) and their duties under Finance Code § 22161(a).

155.    Borrowers and Coachella Holdings have been proximately harmed by Defendants' wrongful acts in violation of Penal Code §496(a), and are therefore entitled to recover three (3) times the amounts of their actual damages of not less than $ 52,000,000.00, including costs of suit, and reasonable attorney's fees as provided in Penal Code §496(c).

## XII. <u>SEVENTH CAUSE OF ACTION</u>

### (Intentional Interference With Prospective Economic Advantage)

156.    The Cross-complainants incorporate by reference and re-allege each and every allegation contained in Paragraphs 1 through 155, inclusive, as though fully set forth herein.

157.    Cross-complainants each between and among themselves, Glenroy, and third parties, entered into contracts and other economic relationships for the purpose of developing and constructing the Project (the "Project Relationships"), the completion of which contained the probability of substantial future economic benefits to each and all of them.

158.    Calmwater and USRECH developed and obtained intimate knowledge of the existence and details of the Project Relationships from the information provided to them by Cross-complainants as part of the loan application and underwriting process.

159.    In deploying their fraudulent Scheme, Calmwater and USRECH knew that their intentional acts of knowingly, designedly, and fraudulently, under the false pretense of providing legitimate financing to Borrowers for the purpose of constructing the Project, by which they obtained funds in the form of fees from the Loan proceeds which were Borrowers' property, and control of the assets composing the Property and the Project, were certain or substantially certain to interfere with the Cross-complainants' Project Relationships.

160.   Cross-complainants' Project Relationships were in fact actually disrupted by Calmwater and USRECH's intentional, knowing and designed, fraudulent and dishonest acts which violated their duties under the CFL, and each constitute independent wrongful acts.

166.   Cross-complainants have each suffered substantial economic damages due to the loss in value of their Project Relationships, which shall be proved at trial to be not less than $ 82,000,000.00, and which were proximately caused by Defendants' intentional, knowing and designed, fraudulent and dishonest acts that caused the irreparable destruction of the Project Relationships.

**WHEREFORE, Cross-complainants pray for judgment against Cross-defendants, and each of them, as follows:**

### First Cause of Action

1.  For Rescission;

2.  For restitution plus actual damages including attorney's fees and costs  against Cross-defendants to fully compensate Cross-complainants, in an amount according to proof of not less than $ 52,000,000.00;

3. For an award of attorney's fees and costs; and

4. For such other and further relief as the court deems just and proper.

### Second Cause of Action

1.  For Rescission;

2.  For restitution plus actual damages including attorney's fees and costs  against Cross-defendants to fully compensate Cross-complainants, in an amount according to proof of not less than $ 52,000,000.00;

3. For an award of attorney's fees and costs; and

4. For such other and further relief as the court deems just and proper.

### Third Cause of Action

1. For compensatory damages including attorney' fees and costs of not less than $ 52,000,000.00, according to proof;

2. For Punitive Damages in an amount to be determined;

3. For an award of attorney's fees and costs; and

4. For such other and further relief as the court deems just and proper.

**Fourth Cause of Action**

1. For compensatory damages including attorney' fees and costs of not less than $ 52,000,000.00, according to proof;

2. For Punitive Damages in an amount to be determined;

3. For an award of attorney's fees and costs; and

4. For such other and further relief as the court deems just and proper.

**Fifth Cause of Action**

1. For compensatory damages including attorney' fees and costs of not less than $ 52,000,000.00, according to proof;

2. For an award of attorney's fees and costs; and

3. For such other and further relief as the court deems just and proper.

**Sixth Cause of Action**

1. For statutory damages equal to three (3) times Plaintiffs' actual damages of $ 52,000,000.00 pursuant to Penal Code § 496(c), of not less than $ 156,000,000.00, according to proof;

2. For an award of attorney's fees and costs; and

3. For such other and further relief as the court deems just and proper.

**Seventh Cause of Action**

1. For compensatory damages including attorney' fees and costs of not less than $ 82,000,000.00, according to proof;

2. For Punitive Damages in an amount to be determined;

3. For an award of attorney's fees and costs; and

4. For such other and further relief as the court deems just and proper.

DATED: _March 1, 2023_                                    **MESSINA & HANKIN, LLP**

                                          By: _Evan L. Smith_
                                          **EVAN L. SMITH**
                                          **Attorneys for Cross-complainants**

**EXHIBIT 5**

DocuSign Envelope ID: 39BF0D9D-3694-40A0-ADBE-9202EBADE998

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Settlement Agreement") is entered into by and between U.S. Real Estate Credit Holdings III-A, LP ("Plaintiff") and Defendant Gary Stiffelman ("Defendant") with respect to the matters set forth below. Collectively, Plaintiff and Defendant are referred to herein as the "Parties", and each are a "Party" hereto.

## RECITALS

A.    There is pending in the Superior Court of California, County of Riverside (the "Court"), a civil action entitled *U.S. Real Estate Credit Holdings III-A, LP v. Glenroy Coachella, LLC, et al.* bearing Case No. RIC1905743 (the "Action").

B.    Plaintiff commenced the Action seeking to, among other things, enforce an Indemnity and Guaranty Agreement dated April 27, 2018 (all causes of action alleged in the Action, referred to herein as the "Claims").

C.    The Parties have agreed to settle all claims against each other arising out of or related to the Action and the Claims in their entirety pursuant to the terms and conditions set forth below.

In consideration of the promises, covenants, representations and warranties contained herein, and for good and valuable consideration given hereunder, the sufficiency of which is hereby acknowledged by the signatories to this Settlement Agreement, the Parties hereby agree as follows:

## INCORPORATION OF RECITALS

The foregoing recitals are an integral part of this Settlement Agreement and are incorporated herein by reference.

## TERMS, COVENANTS AND CONDITIONS

1.    **EFFECTIVE DATE**

This Settlement Agreement shall become effective on the last date of full execution by the Parties.

2.    **CONSIDERATION**

2.1    Obligations of Defendant

Immediately following the execution of this Settlement Agreement, and by not later than Friday, April 23, 2021 (the "Payment Deadline"), Defendant shall cause an electronic transfer in immediately available funds in the amount of US $3,100,000 (the "Settlement Payment") to be made to Plaintiff from the escrow sale of the real property located at 383 Beverly Glen Blvd., Los Angeles, CA 90024. Additionally, immediately following the execution of this Settlement Agreement, Defendant shall send a letter to the escrow agent consistent with the draft attached hereto as **Exhibit A**, with a copy to counsel for Plaintiff, instructing the escrow agent to deliver the Settlement Payment to Plaintiff at an account selected by Plaintiff. Should Defendant fail to immediately send the letter, Defendant expressly authorizes Plaintiff to do so and to disclose the terms of this Settlement Agreement (as well as providing a copy), to the escrow agent notwithstanding anything to the contrary in Section 6, below.

US_ACTIVE-159620235.3-CORIVAS

DocuSign Envelope ID: 39BF0D9D-3694-40A0-ADBE-9202EBADE998

**General Release and Settlement Agreement**
Page 2 of 7

2.2    Obligations of Plaintiff

Expressly conditional upon Defendant delivering the timely Settlement Payment and delivering an executed copy of this Settlement Agreement to Plaintiff, Plaintiff shall cease any efforts to enforce the Action or the Claims against Defendant, with the understanding, however, that in the interests of confidentiality that Plaintiff will refrain from dismissing the Action or Claims as to Defendant until such time as: (a) the monetary terms of the Settlement Agreement are disclosed in accordance with Section 6 below, (b) Plaintiff has obtained judgment against the Borrowers and the other guarantors (other than Defendant) in the Action; (c) the debt owed to Plaintiff, as further evidenced by the Claims, is fully satisfied; or (d) the real property has been foreclosed upon by Plaintiff.

The timely-made Settlement Payment shall constitute a full and complete settlement and compromise of all of Plaintiff's claims against Defendant, whether now known or unknown, asserted or unasserted, for damages, costs, and attorney's fees against Defendant arising out of or related in any way to the Claims.

## 3.    MUTUAL RELEASES

In consideration for receipt by Plaintiff of the Settlement Amount, the Plaintiff, for itself and on behalf of its successors, entities, and assigns, hereby releases, acquits and forever discharges Defendant, and his spouse, heirs, successors, affiliates (including affiliated trusts), assigns, and attorneys, of and from any and all claims, demands, obligations, liabilities, indebtedness, breaches of contract, breaches of duty or of any relationship, acts, omissions, misfeasance, malfeasance, causes of action, defenses, offsets, debts, sums of money, accounts, compensation, contracts, controversies, promises, damages, costs, losses and expenses, of every type, kind, nature, description or character, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, each as though fully set forth herein at length, from any and all claims arising out of or relating to the Action and/or Claims, except for any claim for relief arising from the breach of this Agreement (collectively, the "Plaintiff Released Claims"), and Defendant, for himself and on behalf of his successors, entities, and assigns, does hereby release, acquit and forever discharge Plaintiff, its successors, affiliates, entities, assigns (including, without limitation, Calmwater Asset Management, LLC), and all of their respective past and present officers, directors, attorneys, affiliates, employees and agents, of and from any and all claims, demands, obligations, liabilities, indebtedness, breaches of contract, breaches of duty or of any relationship, acts, omissions, misfeasance, malfeasance, causes of action, defenses, offsets, debts, sums of money, accounts, compensation, contracts, controversies, promises, damages, costs, losses and expenses, of every type, kind, nature, description or character, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, each as though fully set forth herein at length arising out of or relating to the Action and/or Claims, except for any claim for relief arising from the breach of this Agreement (collectively, the "Defendant Released Claims").

The Parties each acknowledge that they have read each of the provisions of these releases. The Parties fully understand that these releases have important legal consequences and realize that they are respectively releasing any and all Plaintiff Released Claims and Defendant Released Claims. The Parties each acknowledge that they are represented by competent counsel and have obtained their respective lawyer's advice concerning the legal consequences of each of the provisions of this release.

The Parties hereby specifically acknowledge and agree that any attempt to assert a released claim barred by the provisions of this release shall subject such Party to the provisions of applicable law setting forth the remedies for the bringing of groundless, frivolous or baseless claims or causes of action.

DocuSign Envelope ID: 39BF0D9D-3694-40A0-ADBE-9202EBADE998

General Release and Settlement Agreement
Page 3 of 7

### 4.   WAIVER OF CIVIL CODE § 1542

The Parties understand the meaning and effect of Section 1542 of the California Civil Code which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

With regard to Section 1542 of the California Civil Code, the Parties agree to assume the risk of any and all unknown, unanticipated or misunderstood defenses with respect to the Plaintiff Released Claims and Defendant Released Claims which are herein released, and the Parties hereby waive and release all rights and benefits that they might otherwise have under Section 1542 of the California Civil Code with regard to the release of such unknown, unanticipated or misunderstood defenses.

### 5.   COOPERATION

Defendant understands that it is important that the terms of this Settlement Agreement remain confidential and understands that Plaintiff will not be immediately dismissing Defendant from the Action. Plaintiff will refrain from seeking formal discovery from Defendant, without his permission (e.g., if a subpoena may be needed), and will not file any motions to enforce the Claims against Defendant in the Action or in another forum. Defendant will cooperate with Plaintiff regarding its pursuit of recoveries with respect to other defendants in the Action and with respect to strategic matters in connection with the pending bankruptcy case of Glenroy Coachella, LLC, and will provide documents and information reasonably requested by Plaintiff in connection with the Action, and will assist Plaintiff (at Plaintiff's expense) regarding any necessary authentication or testimony reasonably requested by Plaintiff.

### 6.   CONFIDENTIALITY

The Parties agree that the terms and conditions of this Agreement, the amount of the settlement (including any reference to the range of settlement), all offers or counteroffers, all non-publicly disclosed facts, information, documents and/or details about the Action (including, but not limited to, all information governed by a protective order or confidentiality order), and all other aspects of negotiations between the Parties are confidential and shall not be disclosed or revealed by them, except as specified below. The Parties expressly agree that the terms and conditions of this Agreement **may** be disclosed:

a.   By the Parties to their tax return preparer, the IRS, accountants, auditors, or attorneys;

b.   By the Parties if necessary to enforce or litigate over any provision of this Agreement, provided that the terms of the Settlement Agreement should be filed under seal and other steps taken to maintain the confidentiality of its terms to the maximum extent possible;

c.   By Plaintiff solely for purposes of filing or amending its proof(s) of claim in the United States Bankruptcy Court;

d.   In the event a court or other tribunal of competent jurisdiction shall compel disclosure or production of this Settlement Agreement or any part hereof, the Party compelled to disclose will provide immediate written notice to the non-disclosing Party or its

US_ACTIVE-105849221.4

DocuSign Envelope ID: 39BF0D9D-3694-40A0-ADBE-9202EBADE998

**General Release and Settlement Agreement**
Page 4 of 7

attorney and will cooperate with the efforts of the non-disclosing Party to maintain the confidentiality of its terms to the maximum extent possible. For the avoidance of doubt, and solely by way of example, if Defendant is asked in written discovery or deposition for information regarding the terms of this Settlement Agreement, Defendant shall object and state that there is a Settlement Agreement the terms of which are confidential and that Defendant is obligated to maintain such confidentiality. Defendant shall then promptly notify Plaintiff of the issue and may involve Plaintiff in meet and confer correspondence and provide Plaintiff with notice of any motion to compel so that Plaintiff may object and oppose such motion (and if Plaintiff is unable to intervene into another proceeding, as a practical matter, Defendant will file oppositions at Plaintiff's behest and at Plaintiff's expense).

7. **ENTIRE AGREEMENT**

The Parties agree that no representations or inducements of any kind which are not contained in this Settlement Agreement have been made by either Party to the other and that no matter extraneous to this Settlement Agreement has been relied upon by the Parties as an inducement or otherwise, either verbal or written, in entering into this Settlement Agreement.

8. **REPRESENTATIONS AND WARRANTIES**

In making and executing this Settlement Agreement, the Parties hereby represent, warrant and agree that:

8.1 Investigation: The Parties have made such investigation of all matters pertaining to this Settlement Agreement as they deem necessary, and do not rely on any statement, promise or representation by any other party with respect to such matters.

8.2 Authority to Execute Agreement: The Parties have full power and authority to execute this Settlement Agreement on their own behalf and, to the extent required by law, have obtained all necessary approvals to do so.

8.3 No Assignment of Claims: The Parties each represent and warrant that they have not assigned or otherwise transferred, or attempted to assign or transfer, any claim or claims against the other and that there is no other person or legal entity that has not executed this Settlement Agreement as a releasing party that has any interest in any such claim or claims.

9. **NO RESCISSION**

This Settlement Agreement is intended to be final and binding regardless of any claim of misrepresentation, promise made without the intention of performance, concealment of fact, mistake of fact or law, duress, or any act, omission or circumstance heretofore or hereafter occurring or any other circumstance whatsoever.

10. **CONSTRUCTION**

10.1 Agreement Prepared by All Parties: This Settlement Agreement shall not be construed in favor of or against any Party on grounds that said Party prepared the Settlement Agreement, but shall be construed as if all Parties prepared this Settlement Agreement.

10.2 Severance: If any provision of this Settlement Agreement is held by a Court of competent jurisdiction to be invalid, void or unenforceable, the balance of the

US_ACTIVE-105849221.4

DocuSign Envelope ID: 39BF0D9D-3694-40A0-ADBE-9202EBADE998

**General Release and Settlement Agreement**
Page 5 of 7

provisions shall nevertheless remain in full force and effect. The waiver of any one provision of this Settlement Agreement shall not be deemed a waiver of any other provision hereof.

10.3    California Law: This Settlement Agreement shall in all respects be interpreted and governed by and under the laws of California.

10.4    Headings: Headings or captions contained in this Settlement Agreement are solely for the convenience of the Parties, are not a part of this Settlement Agreement, and shall not be used for the interpretation of, or determination of the validity of, this Settlement Agreement or any provision hereof.

## 11.    INTEGRATION

This Settlement Agreement constitutes a single integrated written contract expressing the entire agreement between the Parties. There are no other agreements, written or oral, express or implied, between the Parties except as set forth in this Settlement Agreement, and this Settlement Agreement supersedes and replaces all prior negotiations and agreements between the Parties, or any of them, whether written or oral, relating to the Action or Account.

## 12.    NOTICES

Any notice or communication required under this Settlement Agreement shall be effective when received and sufficient if given in writing, and shall be addressed as follows:

For Plaintiffs:            U.S. Real Estate Holdings III-A,L.P
                           c/o Calmwater Asset Management, LLC
                           11755 Wilshire, Blvd., Suite 1425
                           Los Angeles, CA 90025
                           Attn: Simond Lavian

                           With a copy to:
                           Marsha A. Houston
                           Christopher O. Rivas
                           REED SMITH LLP
                           355 South Grand Avenue, Suite 2900
                           Los Angeles, CA 90071

For Defendant:             Gary Stiffelman
                           5011 Serena Circle, Tarzana, CA  91356

                           With a copy to:
                           Damian D. Capozzola
                           Timothy Laquer
                           LAW OFFICES OF DAMIAN D. CAPOZZOLA
                           609 Deep Valley Drive, Ste. 310
                           Rolling Hills Estates, CA  90274
                                -and-
                           Richard M. Pachulski

DocuSign Envelope ID: 39BF0D9D-3694-40A0-ADBE-9202EBADE998

**General Release and Settlement Agreement**
Page 6 of 7

> Pachulski Stang Ziehl & Jones
> 10100 Santa Monica Blvd., 13th Floor
> Los Angeles, CA 90067-4003

## 13.  OTHER

15.1  <u>No Modification Except in Writing</u>: This Settlement Agreement may not be changed, modified or amended unless by a written instrument signed by the Parties.

15.2  <u>Further Cooperation</u>: The Parties agree to execute promptly any and all additional documents necessary to implement this Settlement Agreement.

## 14.  COUNTERPARTS

This Settlement Agreement may be executed in multiple counterpart copies and/or by facsimile signature, each of which shall be deemed an original.

[Signatures on Following Page]

US_ACTIVE-105849221.4

**General Release and Settlement Agreement**
Page 7 of 7

## ACCEPTED AND AGREED

DATED: _April 22_, 2021

**U.S. REAL ESTATE CREDIT
HOLDINGS III-A, LP**

_____
By: Calmwater Asset Management, LLC, a
Delaware limited liability company
Its: Investment Manager
    By: Dean Chang, Authorized Signer

DATED: _____, 2021

**GARY STIFFELMAN**

_____
Gary Stiffelman

US_ACTIVE-105849221.4

DocuSign Envelope ID: 39BF0D9D-3694-40A0-ADBE-9202EBADE998

**General Release and Settlement Agreement**
Page 7 of 7

## ACCEPTED AND AGREED

DATED: _____, 2021          **U.S. REAL ESTATE CREDIT
HOLDINGS III-A, LP**

_____
By: Calmwater Asset Management, LLC, a
Delaware limited liability company
   Its: Investment Manager
      By: Dean Chang, Authorized Signer

DATED: April 22nd , 2021          **GARY STIFFELMAN**

DocuSigned by:

_ςοl

_____
Gary Stiffelman

US_ACTIVE-105849221.4

130

DocuSign Envelope ID: 39BF0D9D-3694-40A0-ADBE-9202EBADE998

**General Release and Settlement Agreement**
Page 8 of 7

## EXHIBIT A

Gary Stiffelman

310-709-2200
gary.stiffelman@gmail.com

**Re: Escrow No. 018038-MD**

To: Camden Escrow:

We write to you in connection with certain obligations owed by Gary Stiffelman to U.S. Real Estate Credit Holdings III-A, LP ("Lender") pursuant to a Settlement Agreement and Release (the "Settlement Agreement"). Mr. Stiffelman is obligated to pay to Lender the sum of US $3,100,000.00 (the "Settlement Payment") from the proceeds of this escrow.

Please be advised that, pursuant to the Settlement Agreement, you are to immediately remit the Settlement Payment to Lender by wire as follows:

> Wells Fargo Bank
> ABA #: 121000248
> Account #: 4375500956
> Credit:  U.S. Real Estate Credit Holdings
> Reference: 2306001

Should you have any questions about this, please contact the undersigned. Thank you for your assistance.

DATED: _April 22nd_ , 2021

**GARY STIFFELMAN**

DocuSigned by:

_Gary Stiffelman_

US_ACTIVE-105849221.4

131

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 26 Executive Park, Suite 250, Irvine, CA 92614.

A true and correct copy of the foregoing document entitled: **DEFENDANT ELLIOT B. LANDER'S OPPOSITION TO CHAPTER 7 TRUSTEE'S MOTION FOR ENTRY OF ORDER (1) DETERMINING THAT TRUSTEE DOES NOT HAVE TO RESPOND TO NON-BANKRUPTCY COURT SUBPOENA FOR FAILURE TO COMPLY WITH BARTON DOCTRINE; OR, IN THE ALTERNATIVE, (2) AUTHORIZING TRUSTEE TO INCUR ADMINISTRATIVE EXPENSES AND TO USE ESTATE PROPERTY TO RESPOND TO NON-BANKRUPTCY COURT SUBPOENA; DECLARATION OF SEAN A. O'KEEFE IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On August 23, 2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:  On _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 8/20/2023 | Sean A. O'Keefe | /s/ Sean A. O'Keefe |
|-----------|-----------------|---------------------|
| *Date* | *Printed Name* | *Signature* |

**NEF LIST**

1

2   **Steven M Berman**    sberman@shumaker.com,
    cparrish@shumaker.com;bgasaway@shumaker.com
3   **Joseph Boufadel**    jboufadel@salvatoboufadel.com,
    Gsalvato@salvatoboufadel.com;gsalvato@ecf.inforuptcy.com
4   **Daren Brinkman**    firm@brinkmanlaw.com, 7764052420@filings.docketbird.com
    **Caroline Djang**    cdjang@buchalter.com, docket@buchalter.com;lverstegen@buchalter.com
5   **Jenny L Doling**    jd@jdl.law,
6   dolingjr92080@notify.bestcase.com;15994@notices.nextchapterbk.com;jdoling@jubileebk.net
    **Jonathan R Doolittle**    jonathan.doolittle@pillsburylaw.com, courtalertecf@pillsburylaw.com
7   **Richard T Egger**    richard.egger@bbklaw.com, linda.tapia@bbklaw.com
    **Eryk R Escobar**    eryk.r.escobar@usdoj.gov
8   **Chad V Haes**    chaes@marshackhays.com,
9   chaes@ecf.courtdrive.com;cmendoza@ecf.courtdrive.com;cmendoza@marshackhays.com;kfreder
    ick@ecf.courtdrive.com
10  **Brian Stuart Harnik**    bharnik@rhlawfirm.com, bharnik@rhlawfirm.com
    **Sarah Rose Hasselberger**    shasselberger@marshackhays.com,
11  shasselberger@ecf.courtdrive.com;cbastida@marshackhays.com;kfrederick@ecf.courtdrive.com
    **D Edward Hays**    ehays@marshackhays.com,
12  ehays@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@marshackhays.com;cmend
    oza@ecf.courtdrive.com
13
    **William C Hoggard**    wch@wchlawgroup.com, admin@wchlawgroup.com
14  **Mark S Horoupian**    mark.horoupian@gmlaw.com,
    mhoroupian@ecf.courtdrive.com;cheryl.caldwell@gmlaw.com;karen.files@gmlaw.com
15  **Marsha A Houston**    mhouston@reedsmith.com, hvalencia@reedsmith.com
    **Aluyah Imoisili**    aimoisili@drwelchlaw.com
16  **Sandra Khalili**    skhalili@rpblaw.com, maltamirano@rpblaw.com
    **Michael S Kogan**    mkogan@koganlawfirm.com
17  **Timothy R Laquer**    trl@ddclaw.com, trl@ddclaw.com
    **Crystle Jane Lindsey**    crystlelindsey27@gmail.com
18  **Tinho Mang**    tmang@marshackhays.com,
19  tmang@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@ecf.courtdrive.com
    **Richard A Marshack (TR)**    pkraus@marshackhays.com,
20  rmarshack@iq7technology.com;ecf.alert+Marshack@titlexi.com
21  **Stacey A Miller**    smiller@tharpe-howell.com
    **Michael K Murray**    mkmurray@lanak-hanna.com, lrarriaga@lanak-hanna.com
22  **Dustin Nirschl**    dustin.nirschl@bbklaw.com,
    linda.tapia@bbklaw.com;wilma.escalante@bbklaw.com
23  **Ryan D O'Dea**    rodea@shulmanbastian.com, lgauthier@shulmanbastian.com
24  **Sean A OKeefe**    sokeefe@okeefelc.com, seanaokeefe@msn.com
    **Zachary Page**    ztp@lnbyg.com
25  **R Gibson Pagter**    gibson@ppilawyers.com, pagterandperryisaacson@jubileebk.net
    **Ronak N Patel**    rpatel@rivco.org, suhernandez@rivco.org;dresparza@rivco.org
26  **Matthew D Pham**    mpham@allenmatkins.com, mdiaz@allenmatkins.com
    **Sheila M Pistone**    sheila@pistonelawoffice.com, sheilapistone@yahoo.com
27  **Maria Plumtree**    agrow@plumtreelaw.com, mplumtree@plumtreelaw.com
28  **Thomas J Polis**    tom@polis-law.com, paralegal@polis-law.com;r59042@notify.bestcase.com

**Arvind Nath Rawal**    arawal@aisinfo.com
**Ronald N Richards**    ron@ronaldrichards.com, 7206828420@filings.docketbird.com
**Debra Riley**    driley@allenmatkins.com
**Christopher O Rivas**    crivas@reedsmith.com, chris-rivas-8658@ecf.pacerpro.com
**James R Selth**    jselth@wztslaw.com,
jselth@yahoo.com;maraki@wztslaw.com;sfritz@wztslaw.com
**Leonard M Shulman**    lshulman@shulmanbastian.com
**Evan L Smith**    els@elsmithlaw.com
**Alan G Tippie**    Alan.Tippie@gmlaw.com,
atippie@ecf.courtdrive.com;Karen.Files@gmlaw.com,patricia.dillamar@gmlaw.com,denise.walker@gmlaw.com
**United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
**Daniel J Weintraub**    dweintraub@wztslaw.com, vinnet@ecf.inforuptcy.com
**Beth Ann R. Young**    bry@lnbyg.com, bry@lnbyb.com

4                                                                    134